ORIGINAL

Approved: _____
          Ryan Finkel / Juliana Murray / Micah Fergenson
          Assistant United States Attorneys

Before:   THE HONORABLE GABRIEL W. GORENSTEIN
          United States Magistrate Judge          **23 MAG 2007**
          Southern District of New York

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                              :
UNITED STATES OF AMERICA                      :     **SEALED COMPLAINT**
                                              :
        - v. -                                :     Violations of
                                              :     18 U.S.C. §§ 371, 1343, 1957 and 2;
YANPING WANG,                                 :     15 U.S.C. §§ 78j(b) & 78ff; and
    a/k/a "Yvette,"                           :     17 C.F.R. § 240.10b-5
                                              :
                                              :     COUNTY OF OFFENSE:
        Defendant.                            :     NEW YORK
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        Special Agent Nicholas DiMarino, being duly sworn, deposes and says that he is a Special
Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
**(Conspiracy to Commit Wire Fraud and Securities Fraud)**

        1.      From at least in or about 2018 up to and including at least in or about March 2023,
in the Southern District of New York and elsewhere, YANPING WANG, a/k/a "Yvette," the
defendant, and others known and unknown, willfully and knowingly combined, conspired,
confederated, and agreed together and with each other to commit offenses against the United
States, to wit, (1) wire fraud, in violation of Title 18, United States Code, Section 1343; and
(2) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title
17, Code of Federal Regulations, Section 240.10b-5.

        2.      It was a part and an object of the conspiracy that YANPING WANG, a/k/a
"Yvette," the defendant, and others known and unknown, knowingly having devised and intending
to devise a scheme and artifice to defraud, and for obtaining money and property by means of false
and fraudulent pretenses, representations, and promises, would and did transmit and cause to be
transmitted by means of wire, radio, and television communication in interstate and foreign
commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme
and artifice, in violation of Title 18, United States Code, Section 1343, to wit, WANG conspired
with others to obtain victims' money through the use of materially false information and
misrepresentations transmitted over interstate wires, in connection with the unregistered offering

of common stock of GTV Media Group, Inc. ("GTV") via a private placement (the "GTV Private Placement).

3.      It was further a part and an object of the conspiracy that YANPING WANG, a/k/a "Yvette," the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security registered on a national securities exchange and any security not so registered, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.l0b-5, by (a) employing a device, scheme and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statement made, in light of the circumstances under which it was made, not misleading; and (c) engaging in an act, practice and course of business which operated and would operate as a fraud and deceit upon a person, to wit, WANG conspired with others to fraudulently induce investors to participate in the GTV Private Placement by providing materially false and misleading information and representations in connection with purported shares of GTV's common stock.

4.      In furtherance of the conspiracy and to effect its illegal objects, YANPING WANG, a/k/a "Yvette," the defendant, and others known and unknown, committed the following overt act, among others, in the Southern District of New York and elsewhere:

        a.   On or about June 5, 2020, WANG, while located in the Southern District of New York, authorized a wire transfer of $100 million of fraud proceeds to a particular hedge fund.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Wire Fraud)

5.      From at least in or about April 2020 up to and including at least in or about March 2021, in the Southern District of New York and elsewhere, YANPING WANG, a/k/a "Yvette," the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, WANG conducted the GTV Private Placement to sell GTV stock and fraudulently obtain money from victims through false statements and misrepresentations, which scheme was furthered through electronic communications and monetary transfers to and from the Southern District of New York and elsewhere.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Securities Fraud)

6.      From at least in or about April 2020 up to and including at least in or about March 2021, in the Southern District of New York, and elsewhere, YANPING WANG, a/k/a "Yvette," the defendant, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security registered on a national securities exchange and any security not so registered, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statement made, in light of the circumstances under which it was made, not misleading; and (c) engaging in an act, practice and course of business which operated and would operate as a fraud and deceit upon a person, to wit, WANG conducted the GTV Private Placement to sell GTV stock and fraudulently obtain money from victims through false statements and misrepresentations, which scheme was furthered through electronic communications and monetary transfers to and from the Southern District of New York and elsewhere.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT FOUR
### (Unlawful Monetary Transaction)

7.      On or about June 5, 2020, YANPING WANG, a/k/a "Yvette," the defendant, in the Southern District of New York and elsewhere, within the United States, knowingly engaged and attempted to engage in a monetary transaction, as defined in Title 18, United States Code, Section 1957(f)(1), in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, WANG, while located in the Southern District of New York, authorized a wire transfer of $100 million of fraud proceeds to a particular hedge fund.

(Title 18, United States Code, Sections 1957 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

8.      I am a Special Agent with the FBI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, and my conversations with law enforcement officers, law enforcement employees, and witnesses, as well as a review of documents. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3

Overview

9.       Based on my involvement in this investigation, my review of documents, conversations with witnesses, and other law enforcement officers, I have learned the following, in substance and in part:

a.       Between in or about April 2020 and in or about June 2020, YANPING WANG, a/k/a "Yvette," the defendant, and others known and unknown, fraudulently obtained approximately $452 million in victim funds through an illegal private stock offering related to GTV.  WANG was an Executive Director of GTV and was one of the key individuals responsible for transferring the money raised from the GTV Private Placement.  Rather than investing the funds raised through the GTV Private Placement as the defendant, and others, had promised to victim-investors, WANG, and others known and unknown, misappropriated approximately $100,000,000 into a high-risk hedge fund for the ultimate benefit of a close family relative of one of WANG's co-conspirators.    WANG well knew that funds from the GTV Private Placement could not be used to invest in a high-risk hedge fund.  Indeed, when WANG sought to open a bank account comprised of funds raised from the GTV Private Placement, WANG stated to a bank, in part, that such "funds of GTV Media Group [ ] are strickly [sic] for operational purposes and acquisitions."

The GTV Private Placement

10.      Based on my review of documents, videos, conversations with witnesses, and other law enforcement officers, I have learned the following, in substance and in part:

a.       On or about April 21, 2020, a co-conspirator not named herein ("CC-1")[1] posted, and caused to be posted, a video on social media (the "Video") announcing the unregistered offering of GTV common stock via a private placement (the "GTV Private Placement").  CC-1 has a substantial online following, and the Video was viewed by thousands of individuals.

b.       Based on my review of the Video, I have learned that, in the Video, CC-1 described, in substance and in part, the investment terms for the GTV Private Placement and directed people to contact CC-1, via a mobile messaging application, with any questions about the GTV Private Placement.  The Video and GTV Private Placement materials—including the written "Confidential Information Memorandum" (the "PPM"), Subscription Agreement, and Investment Procedure Guidelines—were transmitted to thousands of potential investors, including those in the Southern District of New York, via mobile messaging applications, social media, and text messages.

c.       Based on my review of the PPM, I have learned that the PPM promoted GTV as the "first ever platform which will combine the power of citizen journalism and social news with state-of-the-art technology, big data, artificial intelligence, block-chain technology and

---

[1] CC-1 has been charged in eleven counts in an Indictment filed in this District with conspiring to commit wire fraud, securities fraud, bank fraud, and money laundering; and committing wire fraud, bank fraud and money laundering in connection with, among other conduct, the GTV Private Placement discussed herein.

real-time interactive communication." The PPM also contained the following representations, in substance and in part, among others:

> i.      The GTV Private Placement was for investors who were "interested in evaluating an opportunity to invest capital into GTV";

> ii.      GTV planned to use the proceeds raised from the GTV Private Placement "to expand and strengthen the business;" and

> iii.      The PPM included a chart itemizing the "contemplated use of proceeds" raised from the GTV Private Placement:

| Description | Investment as a Percent |
|---|---|
| Acquisition of companies to strengthen and grow GTV | Approximate 70% |
| Upgrade of GTV technology and security | Approximate 10% |
| Marketing | Approximate 8% |
| Working capital | Approximate 7% |
| Other | Approximate 5% |
| Total | 100% |

> d.      The PPM identified three "Executive Directors" of GTV. The first Executive Director identified was "Yvette Y. Wang"— *i.e.*, YANPING WANG, a/k/a "Yvette," the defendant. The PPM described WANG as "experienced in management, financial investment and merger and acquisition" and "instrumental in building Saraca's media business."[2] Elsewhere in the PPM, WANG was described as "key personnel" for GTV. The PPM further stated, in part, that GTV's "success depends in part upon the continued services of [its] key executive officers, including Yvette Wang" and two other particular individuals, including another coconspirator not named herein ("CC-2").

> e.      Based on conversations with witnesses who previously worked for CC-1, I have learned, in substance and in part, that WANG has had a close personal relationship with CC-1. In particular, WANG has worked for CC-1 and CC-1's family for several years, since at least in or about 2018. Indeed, based on documents I have reviewed, I have learned that WANG is the President, Treasurer, and Secretary of an entity that manages CC-1's purportedly vast personal wealth.

---

[2] "Saraca" refers to "Saraca Media Group," which is identified in the PPM as GTV's parent company.

WANG Received and Transferred Fraud Proceeds

11.      Based on my review of videos and documents, including bank records and subpoena returns, my conversations with witnesses and other law enforcement officers, open-source research on the Internet, and my participation in this investigation, I have learned the following, in substance and in part:

a.      On or about July 24, 2018, YANPING WANG, a/k/a "Yvette," the defendant, opened a particular bank account in the name of Saraca ("Account-5601"). Account opening documents for Account-5601, which I have reviewed, identify WANG as "Acting Secretary" for Saraca. On or about May 21, 2020, WANG signed an additional business signature card for Account-5601, in which WANG identified herself as "President" of Saraca. As of at least that date, Account-5601 was held in the name of "Saraca Media Group DBA Himalaya Dollar." There are no other authorized signatories on Account-5601.

b.      On or about July 24, 2018, WANG opened another particular bank account in the name of "Saraca Media Group Inc." ("Account-2038"). Account opening documents for Account-2038 identity WANG as "Acting Secretary" for Saraca. On or about May 21, 2020, WANG signed an additional business signature card for Account-2038 and identified herself as "President." As of at least that date, Account-2038 was held in the name of "Saraca Media Group DBA Himalaya Dollar." On or about June 3, 2020, WANG signed an additional business signature card for Account-2038 and, again, identified herself as "President" of Saraca. There are no other authorized signatories on Account-2038.[3]

c.      Both Account-5601 and Account-2038 are held by a particular bank, which is headquartered int Manhattan ("Bank-1").

d.      Between on or about April 20, 2020, and on or about June 2, 2020, approximately $452 million worth of GTV common stock was purportedly sold to more than 5,500 investors located in the United States, including in the Southern District of New York, and abroad. Investors participated in the GTV Private Placement based, in part, on the belief that their money would be invested into GTV to develop and grow that business, as the PPM promised.

e.      In or about April 2020, Account-5601 received approximately 291 deposits and transfers totaling approximately $32,543,000. Most of these deposits and transfers were investments made by individuals seeking to participate in the GTV Private Placement. The transfers appear to be from individuals located throughout the world, and many deposits and transfers bear reference or memo information referring to the GTV Private Placement. For example, memo lines state, among other things, in substance and in part: "Gtv Investment," "Stock Subscription," "Investment," "G- Tv Common Stock Subscription," "InvestmeNt [sic]," "Investment To G- Tv [sic]," and "Gtv Stockpurchase." On or about April 30, 2020, the balance of Account-5601 was approximately $32,474,000.

f.      In or about May 2020, Account-5601 received approximately 2,450 deposits and transfers totaling approximately $291,899,000. Most of these deposits and transfers

---

[3] Based on bank records, CC-2 appears to have an online banking account with access to Account-5601 and Account-2038.

were investments made by individuals seeking to participate in the GTV Private Placement. Like the prior month's deposits and transfers, the transfers in or about May 2020 appear to be from individuals located throughout the world, and many bear reference or memo information referring to the GTV Private Placement. For example, memo lines state, among other things, in substance and in part: "Capital Injection Infusion," "To Inves Stment [sic]," "Private Placement Investment," "Gtv Media Investment," "Gtv Inv," and "Additional Stock Purchase." On or about May 29, 2020, the balance of Account-5601 was approximately $313,213,000.

## The Misappropriation

12.    Based on my review of documents, conversations with witnesses, and other law enforcement officers, I have learned the following, in substance and in part:

a.    On or about June 3, 2020, YANPING WANG, a/k/a "Yvette," the defendant, signed a "Subscription Agreement" in her capacity as "President" of Saraca. Pursuant to the Subscription Agreement, Saraca agreed to invest $100,000,000 into a high-risk hedge fund ("Fund-1"). In the Subscription Agreement, WANG identified Account-5601 as the bank account from which Saraca's capital contribution would be wired. WANG further identified herself as the only "Authorized Signatory" of Account-5601. In or about the morning of June 3, 2020, an employee of the Fund-1 investment manager confirmed receipt of the signed subscription documents.

b.    Also, on or about June 3, 2020, $100,000,000 was transferred from Account-5601 to Account-2038. Prior to the transfer, the balance of Account-2038 was $0. Based on bank records, this $100,000,000 transfer was conducted online by the user "yvettewang2018," which is WANG's Bank-1 online banking user ID. While authorizing that transfer, WANG was logged into WANG's Bank-1 online account from an IP address that geolocates to Manhattan.

c.    On or about June 5, 2020, WANG authorized a $100,000,000 wire transfer from Account-2038[4] to a bank account associated with Fund-1. This $100,000,000 transfer to a Fund-1 bank account consisted of proceeds from investors in the GTV Private Placement. As described above, the PPM did not contemplate using investor funds to invest into a high-risk hedge fund. The PPM also did not contemplate using investor funds for the benefit of companies other than GTV, including Saraca, whose ultimate beneficial owner is a close relative of CC-1.

## WANG Transfers Additional Fraud Proceeds to Other Bank Accounts

13.    Based on my review of documents and videos, my conversations with witnesses and other law enforcement officers, and my participation in this investigation, I have learned the following, in substance and in part:

a.    On or about May 20, 2020, YANPING WANG, a/k/a "Yvette," the defendant, and CC-2 opened an account in the name of GTV ("Account-6691"). Account-6691 was opened at a particular FDIC-insured bank ("Bank-2"). WANG and CC-2 were the only

---

[4] Although the Subscription Agreement identified Account-5601 as the source of the capital contribution, the transfer originated from Account-2038.

authorized signatories for Account-6691. In account opening documents, WANG was identified as "Director" of GTV. The account opening documents further stated that the intended balance of Account-6691 would be between $25,000 to $50,000.

   b.   On or about June 3, 2020, Account-5601 transferred $200,000,000 to Account-6691. The reference line for this transfer read, in part, "Gtv Private Placement." Just prior to this transfer Account-6691's balance was $0.

   c.   On or about June 9, 2020, Account-2038 transferred $38,000,000 to Account-6691. That $38,000,000 was made up of investor funds from the GTV Private Placement first sent to Account-5601 and another particular Bank-1 account, which were then transferred, from on or about June 3, 2020 through on or about June 9, 2020, to Account-2038. Thus, as of on or about June 10, 2020, the full $237,999,970[5] in Account-6691 was compromised of proceeds from the GTV Private Placement.

   d.   On or about June 9, 2020, approximately $30,906 was wired from Account-5601 to a bank account in the name of "Yanping Wang." The reference line for this wire transfer stated, in part, "Director Fee."

   e.   Starting in or about June 2020, domestic banks that held accounts used to process the funds raised through the GTV Private Placement began to freeze and close GTV-associated bank accounts (including bank accounts held in the name of Saraca) because, among other reasons, the accounts had received dozens of large incoming wire transfers, some of which referenced the unregistered GTV Private Placement. Banks closings were also due to concerns about money movements to and from GTV-associated and Saraca-associated accounts, which raised questions about the propriety of the incoming transfers.

   f.   On or about July 10, 2020, Bank-2 closed Account-6691 and provided the account holders, including WANG, one check in the amount of $137,999,970 ("Check-1") and a second check in the amount of $100,000,000 ("Check-2").

   g.   In or about July 2020, WANG and others known and unknown attempted to open a bank account in the name of GTV at a particular bank ("Bank-3"). In connection with that attempt, on or about July 20, 2020, WANG signed an "Enhanced Diligence Request" which contained information about the purpose for which the Bank-3 account would be used. WANG signed the "Enhanced Diligence Request" in her capacity as "Director" of GTV.

   h.   In the "Enhanced Diligence Request," WANG stated, in substance and in part, that the initial deposit into the account would "be approximately $138 million that was raised from private placement in the form of a cashiers check." According to WANG, "Saraca Media Group was the recipient of [GTV] Private Placement funds on behalf of GTV (guided by [law firm] in [Bank-1]. Saraca Media Group transferred the funds to GTV ([Bank-2])." WANG further stated, in substance and in part, that "[t]he funds in the account are funds of GTV Media Group and are strickly [sic] for operational purposes and acquisitions." Accordingly, WANG well knew that the funds raised from the GTV Private Placement could not be invested in a high-risk hedge fund held for the benefit of CC-1's close relative.

---

[5] Bank-3 debited $30 from Account-6691 for the two incoming wire transfers.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of YANPING WANG, a/k/a "Yvette," the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.

/s/ Nicholas DiMarino (sworn telephonically)

_____

Nicholas DiMarino
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this 10 day of March, 2023.

_____

THE HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York