UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------:

UNITED STATES OF AMERICA,　　　　: Case No.:23-MJ-2007

　　　　　　　　　　Plaintiff,　　:

　　-against-　　　　　　　　　　:

YANPING WANG,　　　　　　　　　　: New York, New York

　　　　　　　　　　Defendant.　: March 15, 2023

--------------------------------: Conference

PROCEEDINGS BEFORE

THE HONORABLE KATHERINE H. PARKER

UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:　　　　UNITED STATES ATTORNEY'S OFFICE
　　　　　　　　　　　SOUTHERN DISTRICT OF NEW YORK
　　　　　　　　　　　BY:　Juliana Murray
　　　　　　　　　　　　　Ryan B. Finkel
　　　　　　　　　　　　　Micah F. Fergenson
　　　　　　　　　　　One St. Andrew's Plaza
　　　　　　　　　　　New York, New York 10007

For Defendant:　　　　CHAUDHRYLAW PLLC
　　　　　　　　　　　BY:　Priya Chaudhry
　　　　　　　　　　　147 West 25th Street
　　　　　　　　　　　New York, New York 10001

For Defendant:　　　　Lipman Law PLLC
　　　　　　　　　　　BY:　Alex Lipman
　　　　　　　　　　　147 West 25th Street
　　　　　　　　　　　New York, New York 10001


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1                  THE DEPUTY CLERK:  Calling Case
 2      23-MG-2007, U.S. versus Yanping Wang.
 3                  MS. MURRAY:  Good afternoon, Your Honor.
 4      Juliana Murray, Ryan Finkel and Micah Fergenson on
 5      behalf of the United States.
 6                  THE COURT:  Good afternoon.
 7                  THE DEPUTY CLERK:  And counsel for
 8      Ms. Yang, can you -- Ms. Wang, can you state your
 9      appearance for the record.
10                  MS. CHAUDHRY:  Good afternoon,
11      Your Honor.  Priya Chaudhry of ChaudhryLaw, along
12      with Alex Lipman of Lipman PLLC.  We are
13      representing Yvette Wang, who is present, seated
14      between us, and being assisted by a Mandarin
15      interpreter.
16                  THE COURT:  Good afternoon.
17                  MR. LIPMAN:  Good afternoon, Your Honor.
18                  THE COURT:  Good afternoon, Ms. Wang.
19      I'm Judge Parker.  Can you clearly hear the
20      interpreter?
21                  THE DEFENDANT:  Yes.
22                  THE COURT:  Okay.  Great.
23                  You've been arrested based on charges
24      filed against you in a complaint.  The purpose of
25      the proceeding today is to inform you of certain
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    rights that you have, inform you of the charges

2    against you, consider whether counsel should be

3    appointed for you, and decide under what conditions,

4    if any, you shall be released pending trial.

5            Can I please have the date and time of

6    arrest.

7            MS. MURRAY:  Yes, Your Honor.  The

8    defendant was arrested this morning at approximately

9    6:00 a.m.

10           THE COURT:  I'm now going to explain

11   certain constitutional rights that you have.

12           You have the right to remain silent.

13   You're not required to make any statements.  Even if

14   you've already made statements to the authorities,

15   you're not required to make any further statements.

16   Any statements you do make can be used against you.

17           You have the right to be released with or

18   without conditions imposed pending trial, unless I

19   find that there are no conditions that would

20   reasonably assure your presence at future court

21   appearances and the safety of the community.  If you

22   are not a U.S. citizen, you have the right to

23   request that a government attorney or a

24   law-enforcement official notify a consular officer

25   from your country of origin that you've been

1    arrested.  And in some cases, a treaty or other

2    agreement may require the U.S. government to give

3    that notice, whether you request it or not.

4              You have the right to be represented by

5    an attorney during all court proceedings, including

6    this one, and during all questioning by the

7    authorities.  You have the right to hire your own

8    attorney, but if you cannot afford one, the Court

9    will appoint one to represent you.

10             Do you understand your rights as I've

11   just explained them?

12             THE DEFENDANT:  I understand.

13             THE COURT:  Okay.  Now, I understand

14   you've retained counsel, so there's no -- is that

15   correct?  I don't have any financial affidavit.

16             THE DEFENDANT:  That's correct.

17             THE COURT:  Yes, right.  Okay.

18             So now I'm going to review the charges in

19   the complaint.  The complaint charges you with

20   conspiring with others to commit wire fraud and

21   securities fraud in violation of Title 18 of the

22   United States Code § 371.

23             Count II charges you with committing wire

24   fraud in violation of Title 18 of the United States

25   Code § 1343 and § 2.

1          Count III charges you with committing
2    securities fraud in violation of Title 15 of the
3    United States Code §§ 78j(b) and 78ff, as well as
4    Title 17 of the Code of Federal Regulations
5    § 240.10(b)(5) and Title 18 of the United States
6    Code § 2.
7          Count IV charges you with engaging in an
8    unlawful monetary transaction in violation of
9    Title 18 of the United States Code §§ 2 and 1957.
10         And these charges all relate to your
11   involvement with GTV and a private placement in
12   connection with GTV, and transfer of money
13   associated with that.
14         Counsel, have you reviewed the complaint
15   with your client with the aid of a Mandarin
16   interpreter?
17         MS. CHAUDHRY:  Your Honor, we have.
18         THE COURT:  And does she waive its public
19   reading?
20         MS. CHAUDHRY:  She does.
21         THE COURT:  Okay.  Ms. Wang, do you
22   understand what you're being charged with?
23         THE DEFENDANT:  Yes, I understand.
24         THE COURT:  Okay.  Now, in addition to
25   the rights that I've already told you about, you

1    have the right to a preliminary hearing at which the

2    government will have the burden of showing that

3    there is probable cause to believe that the crime

4    for which you're being charged has been committed

5    and that you're the person who committed it.  At the

6    hearing, you and your counsel would be entitled to

7    cross examine any witnesses and introduce evidence.

8              If you're held in custody, you have the

9    right to a preliminary hearing within 14 days.  If

10   you're not in custody, you have the right to a

11   preliminary hearing in 21 days.  But a preliminary

12   hearing will not be held if you are indicted by a

13   grand jury before the date of a preliminary hearing.

14   I'll set the date for a preliminary hearing in a

15   moment.

16             What is the government's position as to

17   bail, detention or release?

18             MS. MURRAY:  Just, first, one note for

19   the record, Your Honor, the defendant is a citizen

20   of China, and consular notification was made this

21   morning of her arrest.

22             THE COURT:  Okay.  That's noted for the

23   record.  Thank you.

24             MS. MURRAY:  The government has spoken

25   with defense counsel, and we have a largely

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    agreed-upon bail package.  There are two key

2    differences.  So I'm happy to address the

3    differences first, if Your Honor would like, and

4    then we can talk through the conditions, or I can

5    take it in the inverse order.

6              THE COURT:  Let's start with what you do

7    agree with, and then you can tell me what you don't

8    agree with.

9              MS. MURRAY:  The government would agree

10   to a personal recognizance bond of $5 million

11   co-signed by two financially responsible persons

12   approved by the government and secured by $1 million

13   in real property and/or cash; an agreement on travel

14   restriction to the Southern and Eastern Districts of

15   New York; the surrender of any travel documents, and

16   that the defendant make no new applications for any

17   travel documents; that the defendant disclose all

18   assets to Pretrial Services and the U.S. Attorney's

19   Office, including any assets over which she has

20   possession, custody or control; and to include any

21   joint or business accounts and any cash,

22   cryptocurrency or digital assets; that the defendant

23   not open any new bank accounts or lines of credit

24   without approval of Pretrial Services; that the

25   defendant have no contact with Ho Wan Kwok, also

1    known as Miles Guo or Kin Ming Je, J-E, also known

2    as William Je, or any alleged victims or witnesses

3    outside the presence of counsel; and any other

4    conditions recommended by Pretrial Services.

5              And then, Your Honor, the two points that

6    the parties are not in agreement on -- first, the

7    government would seek home detention, reinforced by

8    GPS location monitoring, and the government would

9    seek that the defendant be detained until all

10   conditions are met.

11             THE COURT:  Okay.  Now, am I correct that

12   the crimes for which Ms. Wang is charged are not

13   ones that carry a presumption of detention?

14             MS. MURRAY:  That is correct, Your Honor.

15             THE COURT:  And under the Bail Reform

16   Act, I'm required to release the defendant on the

17   least restrictive means necessary to reasonably

18   assure the defendant's return to court and the

19   safety of the community.

20             So I'd like to understand first why you

21   believe that home detention with GPS is the least

22   restrictive means necessary to achieve those

23   purposes.

24             MS. MURRAY:  Sure.  So with respect to

25   this defendant's risk of flight, the government

1    certainly thinks there's more than a preponderance

2    of the evidence that the defendant poses a

3    significant risk of flight.  The defendant -- even

4    though these are not charges that carry presumption

5    of detention, the defendant is charged with crimes

6    that carry a very large dollar amount.  She's

7    charged with a $100 million wire transfer.  That's a

8    sole transfer of money that the government alleges

9    is fraud proceeds over which she had sole authority

10   to authorize that wire transfer in addition to the

11   securities fraud and the wire fraud conspiracy.

12          The defendant has access to significant

13   assets.  Some of those are known to the government.

14   Some of them, frankly, may not be known to the

15   government because the defendant and others that she

16   has conspired with operate through the use of

17   extremely sophisticated and complicated shell

18   companies.

19          So as a few examples for Your Honor, the

20   defendant's apartment was purchased in the name of

21   an LLC that she fully owns.  I'm not suggesting that

22   there's anything questionable about that

23   necessarily, but I'm using it as an example of one

24   of more than a dozen entities that we are aware that

25   the defendant either has or had control over,

1    including financial control.  And some of those

2    entities, whether the defendant is the primary

3    shareholder of the entities or has access

4    necessarily to the bank accounts, the defendant

5    certainly has decisive control at least in the

6    corporate documentation over those companies.

7         The defendant also is not a resident of

8    the United States.  There's a pending application

9    for asylum, but the universe within which the

10   defendant and Miles Guo and William Je and others

11   operate is an extensive network that is bolstered by

12   hundreds of thousands of online followers throughout

13   the globe, so it's not limited to the New York area.

14        We are aware that there are people who

15   support Mr. Guo and Ms. Wang and their comrades, as

16   they call them, throughout, as I mentioned, this

17   global network known as the Himalaya Farm Alliance,

18   and so we have serious reason to believe that there

19   are people in other jurisdictions who would be

20   supportive to Ms. Wang were she to flee and that she

21   has significant assets to be able to flee.

22        And then I would also note, with respect

23   to risk of flight, the strength of the government's

24   evidence in this case.  The Court has before it a

25   complaint, but just to represent to the Court, the

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    complaint is supported by bank records, bank records

2    the defendant signed.  IP logs that indicate that

3    the defendant was the person who authorized the

4    transfer of the $100 million, that she did so from

5    her apartment here in Manhattan, that she had sole

6    authority for numerous bank accounts that were

7    involved in, as alleged, hundreds of millions of

8    dollars worth of fraud.

9           Another point that we would note for Your

10   Honor are the circumstances of the defendant's

11   arrest this morning.  The defendant was arrested in

12   her apartment in Manhattan.  She is the -- per the

13   Pretrial Services report, the sole occupant of that

14   apartment.  During the search of the apartment,

15   pursuant to a judicially authorized search warrant,

16   the FBI found $138,000, approximately, in cash, that

17   was in a safe, largely in $100 bills.  They appeared

18   to be new bills.  In that safe, they also found what

19   appeared to be old passports of both Ms. Wang and

20   Miles Guo, or Ho Wan Kwok.  So she was holding the

21   old, but the travel documents for both herself and

22   for Mr. Guo, or Mr. Kwok.

23          They recovered more than, approximately,

24   12 iPhones.  And I think it's important for the

25   Court to note the circumstances that these items

1   were found in.  But more than approximately

2   12 iPhones, several laptops, and then documents that

3   relate to, among other things, entities involved

4   with the fraud.

5            The 12 iPhones or so, as an example, were

6   not all in plain view.  They weren't all plugged in.

7   Some of them were in what appeared to be original

8   packaging.  They appeared to be new.  They were

9   inside bags or luggage inside of a closet.  And yet,

10  when the FBI searched those phones to determine

11  whether they were, in fact, fresh out of the box or

12  whether they had data, all of those phones had data

13  on them, which, to the government, is powerful

14  evidence of concealment and hiding evidence that we

15  would allege to be certainly evidence of the crimes.

16           Similarly, laptops and documents were

17  found concealed within the apartment.  So, as an

18  example, a laptop was between two sweaters on a

19  shelf in the back of a closet.  Documents were found

20  between couch cushions or between the mattress and

21  the bed.

22           In terms of luxury items, and, again, we

23  would allege it's not consistent with, at least, the

24  defendant's reported income, as we understand it

25  from our evidence, 15 to 20 boxes of Hermes scarves

1    that seemed to be new, several Hermes wallets, a

2    large Hermes bag.  And then additional electronics

3    that we don't yet know what they contain, but

4    multiple terabyte hard drives, multiple flash

5    drives.  And then also within the space was

6    contained a pouch that had seven to eight SIM cards.

7            In light of those circumstances and the

8    defendant's deep connection with numerous shell

9    entities, for lack of ties to the community in the

10    sense of any status within the U.S., her extensive

11    connections to a network of very supportive

12    followers throughout the country and the world.  And

13    then also the defendant's role in the charged

14    offenses.  She was a signatory, as I mentioned, of

15    numerous accounts, not just the account from which

16    the $100 million was transferred, but the head of

17    the various entities that make up the Kwok or Guo

18    family offices.  She had control over those

19    entities.  She had authority.  She was essentially

20    the chief of staff to Miles Guo or Miles Kwok.

21            She ran the operations.  At certain

22    points when he was operating various of his

23    controlled companies out of a townhouse on the Upper

24    East Side, right near Ms. Wang's apartment, there

25    were several different purported businesses working

1    out of the same townhouse, and Ms. Wang was the
2    command center.  It didn't matter which business.
3    If someone was asking for approval for a wire,
4    approval for a business decision, they would go to
5    her.  So she was the one who was tasked with being
6    the primary right-hand person for this billion
7    dollar fraud.
8              Those are the reasons the government
9    thinks that home detention with GPS monitoring is
10   appropriate.  And we also believe that it's
11   important for the conditions to be met and for the
12   government to get comfort that the conditions are
13   met, including the financial bond and the co-signers
14   before the defendant is released.
15             THE COURT:  Okay.  Thank you.
16             I'll hear from defense counsel next.
17             MS. CHAUDHRY:  Thank you, Your Honor.  I
18   think the government missed a very big point in
19   their risk of flight argument, which is that
20   Ms. Wang is unique.  She's not just a citizen of
21   China that is in the U.S., she is a political
22   refugee.  The idea that she would flee to China --
23   whatever she's looking at in terms of the
24   government's proof in the government's case, what
25   she is looking at if she were to go back to China

1    ever in this lifetime is much worse, which is why

2    she's seeking political asylum.  Going to China is

3    not an option for her.  So there is no risk of

4    flight to China in this lifetime for Ms. Wang.

5    That's one.

6              Two, these passports that were found are

7    old and expired passports.  And as the government

8    conceded, Ms. Wang was the chief of staff to Miles

9    Kwok, so having her an his expired passport is not

10   out of the ordinary, since she's also handling their

11   immigration asylum application.

12             In addition, while the government says

13   that she does have followers, this case, especially

14   Mr. Kwok's case, is going to get so much publicity

15   that it would be very unusual for Interpol to not

16   notice that one of the three very high-profile

17   defendants in this case has crossed a border.  She

18   doesn't have any travel documents anymore.

19             And when we talk about ties to the

20   community, Ms. Wang left China in April of 2015 and

21   has never gone back, ever.  Not even to see her

22   father before he died, not to see her own child, who

23   she cannot return to see.  She has been in New York,

24   and, in fact, in Manhattan since 2017.  And like

25   many New Yorkers, she doesn't drive.  She has lived

1    in this apartment that she owns since 2020.  And

2    before that, she rented an apartment in the same

3    building.  Pretrial Services has called the building

4    and confirmed that she does, in fact, live there.

5          And she does have her asylum application

6    in.  The interviews are done.  So she is actively

7    seeking to not only let the U.S. government know

8    she's here, but to let her stay.  This is not

9    someone who is risking going anywhere where China

10   can get their hands on her again.

11         GPS monitoring for Ms. Wang would assure

12   the government and the Court that we know where she

13   is.  It is used for defendants all over this

14   country.  It is incredibly effective.  I have had

15   clients who face charges in this district who have

16   lived all over the country, and they have faced

17   similar charges, and that was enough to keep them --

18   to -- sorry -- to secure their return to court.

19   That's something that, I think, Pretrial is able --

20   hopefully, able to do today before she leaves.

21         We are happy to agree to the rest of it,

22   but that is asking -- letting her out today, we

23   think is easy to do without the Court really

24   worrying that they will never see her again.  And

25   the government's request for home confinement, we

1    think is also unnecessary, given the effectiveness

2    of the GPS location monitoring.

3                With the travel restrictions of the

4    Southern and Eastern Districts of New York, that

5    should keep us all aware of Ms. Wang's whereabouts.

6    And, in addition, she has no intention of going

7    anywhere.  She has known that the government has

8    been investigating her, and the SEC has been

9    investigating for quite a while, and she has not

10   fled.  And she has no intention of fleeing.  So for

11   that reason, we would agree to all of that with

12   those two requests for a change, and we would ask to

13   have ten days to get the rest of the conditions met,

14   but to release Ms. Wang on her signature today.

15               THE COURT:  So you don't object to an

16   ankle bracelet, you object to home detention?

17               MS. CHAUDHRY:  Correct.

18               THE COURT:  And Ms. Wang being held until

19   the conditions are met.

20               MS. CHAUDHRY:  That's right.

21               THE COURT:  And do you have financial

22   suretors?

23               MS. CHAUDHRY:  We are working on them.

24   The government has agreed to have a dialogue with us

25   in the next day or two to find people that they --

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    we offered some people not yet acceptable.  We will

2    find people that are acceptable.

3                THE COURT:  What's the value of

4    Ms. Wang's apartment, if anybody -- do you -- does

5    any -- either side know?

6                MS. CHAUDHRY:  It was purchased for just

7    over $1 million.  It has no mortgage.  And that was

8    in 2020.  It is in a desirable building on the Upper

9    East Side, so I assume it's worth at least that

10   right now.

11               THE COURT:  Does the government have any

12   comments in response?

13               MS. MURRAY:  Yes.  Thank you, Your Honor.

14   Just briefly, a few points.

15               One, with respect to Ms. Chaudhry's point

16   about Ms. Wang not looking to go to China anytime

17   soon because of the danger that it poses in light of

18   her status as a political asylee applicant here, I

19   would just note there are other places that Ms. Wang

20   could go to.  At least one of her entities is a BVI

21   registered entity.  There are connections in this

22   case and with respect to bank account and money and

23   entities that Ms. Wang had access to, to the UAE,

24   including very recent activity in Dubai and the UAE

25   as recently as a couple of days ago, by people who

1     are involved in these entities and in this fraud

2     scheme.

3              So the expired passports in the safe, one

4     doesn't need a passport to flee somewhere and then

5     seek asylum in that location.  So we would note that

6     we think that there is a significant risk of flight,

7     and Ms. Wang's relationship with China does not

8     mitigate that, particularly in light of her ties to

9     other jurisdictions, including other jurisdictions

10    that do not readily, or even at all, extradite to

11    the United States.

12             Another couple of points.  $130,000 in

13    cash, that seems like an emergency flight fund.

14    That is a lot of cash to be having on hand and

15    indicates to us that, even setting aside the bank

16    accounts that she has control over and access to and

17    the entities that she has control and access to, she

18    has been storing cash for some reason in a safe in

19    her apartment.  That gives us grave concerns about

20    potential motivation to flee and also ability to

21    flee on a moment's notice.

22             With respect to the location monitoring,

23    the GPS bracelet versus home detention reinforced by

24    GPS monitoring, I understand Ms. Chaudhry's point,

25    but a bracelet is relatively easy to cut.  I

 1    understand that most people, you know, kind of,
 2    comply with the conditions.  Our concern here, where
 3    we have somebody who had all of that cash just
 4    within her apartment is there could be other
 5    locations she has access to where she has assets
 6    stored away to help her flee.  She could cut the
 7    bracelet.  It's another reason, Your Honor, why it
 8    is so important for us to firm up the conditions of
 9    the bond that the parties do agree on, including the
10    financial conditions, before Ms. Wang is released so
11    that we have some comfort that we have a sense of
12    what would actually be put up in this case as a
13    bond, and we would have a sense of what controls we
14    would have in place if Ms. Wang were to flee.
15           And, finally, with respect to the
16    co-signers that the defense counsel has proposed to
17    us, we are more than happy to work with the defense
18    counsel to find co-signers who would be satisfactory
19    to the government.  I would note that the two names
20    that were floated today are two people that the
21    government will not accept in light of their own
22    participation in the fraud scheme.  So not making
23    any claims about, you know, what Ms. Wang may or may
24    not know about the government's view of those people
25    or its evidence, but it's concerning to us that the

1    financially responsible persons that she presents

2    today are two people who have been alleged had

3    involvement in the fraud.

4            THE COURT:  Okay.  Anything further?

5            MS. CHAUDHRY:  Yes, Your Honor, just on

6    the $138,000 in cash.  It is a fact, and I think

7    it's publically known since the GTV cases have

8    gotten some notoriety, that lots of groups, whether

9    they're countries or companies, have taken political

10   stances in this, including various banks that have

11   closed Ms. Wang's bank accounts down, which is why

12   she ended up with a lot of cash in her safe.  She

13   has gone through nearly a dozen normal banks,

14   whether it is Bank of America or Santander or --

15   they just close her accounts down and make her come

16   get her money.  So that is one of the reasons that

17   she keeps cash on hand.

18           And the second thing is the government's

19   entirely speculative claim that there could be other

20   places where she has cash where she could go are

21   just that, they're just speculation.  They have been

22   investigating this for a long time.  They haven't

23   given the Court a particular place where they think

24   that there's cash.  I mean, either they think this

25   is somebody who has followers in the world who could

1    disappear her or they think she doesn't, but, you

2    know, GPS works for just about every other

3    defendant, and so that -- that would be my response

4    to that.

5           THE COURT:  Okay.  Thank you.

6           I've carefully considered the arguments

7    of the government and defense counsel, and also I

8    consider the recommendations of Pretrial Services.

9    And based on this, I believe that there are

10   conditions that I can impose that will assure

11   Ms. Wang's return to court and the safety of the

12   community.  And the conditions that I'm going to

13   impose are the least restrictive I believe are

14   necessary to achieve that purpose.  So...

15          All right.  Ms. Wang will be released

16   subject to meeting all of the conditions.  In other

17   words, she's going to be detained until all of the

18   following conditions are met:  $5 million bond

19   co-signed by two financially responsible persons

20   approved by the government, and it will be secured

21   by $1 million in cash or property.  Travel

22   restricted to the Southern District, Eastern

23   District of New York.  Surrender all travel

24   documents and make no new applications.  Pretrial

25   supervision as directed by Pretrial Services.  Home

1    detention enforced by location monitoring technology

2    as directed by Pretrial Services.  Defendant will

3    disclose all assets to Pretrial Services and the

4    U.S. Attorney's Office, including any accounts in

5    her name or controlled by her or by companies in

6    which she has an interest, any cryptocurrency, any

7    cash and any other property.

8              Ms. Wang shall have no contact with

9    Mr. Kwok or Mr. Je or other co-conspirators outside

10   presence of counsel.  She shall have no contact with

11   any alleged victims or witnesses outside presence of

12   counsel.  She shall reside at the residence at

13   188 East 64th Street and may not relocate absent

14   permission from Pretrial Services.  Defendant shall

15   not open any new bank accounts, lines of credit or

16   loans without prior approval of Pretrial Services.

17             Now, is there anything further from the

18   government?

19             MS. MURRAY:  If I may just clarify one

20   condition, Your Honor.

21             THE COURT:  Yes.

22             MS. MURRAY:  With respect to the home

23   detention being reinforced by location monitoring,

24   we would ask that it be reinforced by GPS location

25   monitoring so that it -- I understand that location

1    monitoring advises when the defendant leaves or

2    returns.  We would like to know where she goes when

3    she leaves as well.

4              THE COURT:  Yeah, I'm going to -- I will

5    also order the GPS, but location monitoring also can

6    include standalone monitoring in the home -- at the

7    home if Pretrial Services deems that to be

8    appropriate, and so I'm including that within the

9    bail conditions.

10             MS. MURRAY:  Okay.  Thank you, Your

11   Honor.

12             THE COURT:  Okay.  Now, Ms. Wang, I

13   assume you're going to be able to meet these

14   conditions at some point, and once you do and when

15   you are released, I need to warn you that failing to

16   appear in court as required can have serious

17   consequences.

18             If you violate any of the terms of your

19   release, a warrant will be issued for your arrest.

20   You and anyone who signs a bond will each be

21   responsible for paying its full amount.  You may be

22   charged with a separate crime of bail jumping, which

23   can mean additional jail time and a fine.

24             In addition, if you commit any new

25   offense while you're released, in addition to the

1    sentence prescribed for that offense, you'll be

2    sentenced to an additional term of imprisonment of

3    not more than ten years if it's a felony, and not

4    more than one year if it's a misdemeanor.  And this

5    term of imprisonment would be served after any other

6    sentence of imprisonment is completed.

7              And while you're awaiting trial, I also

8    must warn you not to have any contact with or engage

9    in any intimidation of potential or designated

10   witnesses or jurors, not to engage in any

11   intimidation of any court officer, and not to engage

12   in any conduct that would obstruct any investigation

13   by law enforcement.

14             What date shall I set for a preliminary

15   hearing?

16             Defense counsel, do you want to waive to

17   the 30th day for a preliminary hearing?  You want

18   the 14th day?

19             MS. CHAUDHRY:  14th.

20             THE COURT:  Okay.  Preliminary hearing is

21   set for March 29.

22             Anything further from the government?

23             MS. MURRAY:  No, Your Honor.  Thank you.

24             THE COURT:  Anything further from defense

25   counsel?

1                 MR. LIPMAN:  No.  Thank you, Your Honor.

2                 MS. CHAUDHRY:  No.  Thank you,

3      Your Honor.

4                 THE COURT:  All right.  Thank you.  We're

5      adjourned.

6

7                             0o0

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1

2

3                    C E R T I F I C A T E

4

5        I, Adrienne M. Mignano, certify that the

6   foregoing transcript of proceedings in the case of

7   USA v. Yanping Wang, Docket No.: 23-MJ-2007 was

8   prepared using digital transcription software and is

9   a true and accurate record of the proceedings.

10

11

12   Signature  _____
                   Adrienne M. Mignano
13              ADRIENNE M. MIGNANO, RPR

14

15   Date:     March 22, 2023

16

17

18

19

20

21

22

23

24

25
```

AMM TRANSCRIPTION SERVICE - 631.334.1445