# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re:  ) | Chapter 11 |
| ) | Case No. 22-50073 (JAM) |
| HO WAN KWOK, *et al.*,  ) | (Jointly Administered) |
| ) | |
| Debtors.  ) | Re: ECF Nos. 717 and 913 |
| ) | |

### ORDER GRANTING MOTION TO HOLD DEBTOR
### IN CONTEMPT OF CORPORATE GOVERNANCE ORDER

**I.   INTRODUCTION**

Before the Court is the motion of Luc A. Despins, in his capacity as the Chapter 11 trustee (the "Trustee") for the estate (the "Estate") of Ho Wan Kwok (the "Debtor"), to hold the Debtor in civil contempt. (ECF No. 913, the "Contempt Motion.") The Contempt Motion asserts that the Debtor has not complied with the Court's order regarding the transfer of economic and corporate governance rights from the Debtor to the Trustee. (ECF No. 717, the "Corporate Governance Order.") For the reasons stated below, the Court finds the Debtor in civil contempt and will sanction him reasonable attorneys' fees and costs in the event he fails to purge himself of contempt.

**II.   BACKGROUND**

On February 15, 2022, the Debtor filed his voluntary Chapter 11 petition, commencing this case. (ECF No. 1.) His individual case is jointly administered with two affiliated corporate cases. (ECF Nos. 970 and 1141.) On June 15, 2022, after developments the Court has discussed in a prior opinion, the Court ordered the appointment of a Chapter 11 trustee. *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022). (ECF No. 465.) On July 8, 2022, the Court appointed Mr. Despins as the Chapter 11 Trustee. (ECF No. 523.)

On July 23, 2022, the Trustee filed a motion to confirm that he held the Debtor's economic and corporate governance rights. (ECF No. 598, the "Corporate Governance Motion.") On July 29, 2022, the Debtor filed an objection to the Corporate Governance Motion, which he supplemented with a further objection on August 4, 2022. (ECF Nos. 643 and 678.) Also on August 4, 2022, the Trustee filed a reply in support of the Corporate Governance Motion. (ECF No. 679.) That same date, a hearing was held on the Corporate Governance Motion. The Court granted the Corporate Governance Motion during the hearing and entered the Corporate Governance Order on August 10, 2022. (ECF No. 717.)

On October 4, 2022, the Trustee filed the Contempt Motion asserting that the Debtor had failed to comply with the Corporate Governance Order and requesting that he be held in civil contempt of court. (ECF No. 913.) On October 25, 2022, the Debtor filed his objection to the Contempt Motion. (ECF No. 1026, the "Objection.") On November 14, 2022, the Trustee filed his reply. (ECF No. 1092, the "Reply.") The instant matter is fully briefed.

An evidentiary hearing (the "Hearing") on the Contempt Motion was held on November 16, 17, and 18, 2022. On November 17, 2022, the Court entered an order partially resolving the Contempt Motion (ECF No. 1110, the "Partial Resolution Order"), which Order the Debtor insisted the Court enter prior to continuing with the evidentiary hearing. During the Hearing, no testimony was heard but evidence, including excerpts from deposition testimony, was admitted.

### III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. The instant proceedings are

2

statutorily core proceedings. 28 U.S.C. § 157(b)(2)(A), (E). This Court explicitly retained jurisdiction over all matters all matters arising from or related to the implementation, interpretation, and enforcement of the Corporate Governance Order. There is no constitutional issue precluding the exercise of jurisdiction in the instant case. *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV. FINDINGS OF FACT

The Court has already made the findings of fact contained in paragraphs 1 and 2 below, as set forth in the Partial Resolution Order:

1. The Debtor exclusively beneficially owned and controlled Ace Decade Holdings Limited ("Ace Decade") on the February 15, 2022 petition date (the "Petition Date") and maintained such exclusive beneficial ownership and control up to and including immediately prior to the date of the Trustee's appointment, and (ii) Dawn State Limited ("Dawn State" and, together with Ace Decade, the "Ace Decade Entities") is Ace Decade's wholly-owned subsidiary and is exclusively owned and controlled by Ace Decade. For the avoidance of doubt, Yanping "Yvette" Wang (hereinafter, Ms. Wang) is not and has never been a beneficial owner of the shares in Ace Decade or Dawn State. (Trustee 6–7, 10, 15.)[1]

2. But for the Trustee's appointment and his rights under the Bankruptcy Code and the Corporate Governance Order, the Debtor would still exclusively beneficially own and control Ace Decade. (Trustee 6–7, 10, 15.)

---

[1] Exhibits submitted during the Hearing by the Trustee will be styled Trustee [No.] and exhibits submitted by the Individual Debtor will be styled Kwok [Letter].

3

From the evidence on the record and introduced during the Hearing, the Court makes the following additional findings of fact:

3. Ms. Yvette Wang is the nominee owner of Ace Decade for the benefit of the Debtor. (Trustee 27.)

4. The Debtor has control over Ms. Wang. The Debtor has employed Yvette Wang for several years, and has directed her to take actions on his behalf, including directing her to act on his behalf to purchase properties such as the Sherry-Netherland apartment. (Trustee 29 and 30.)

5. The Debtor did not sufficiently establish that the letter (the "Letter," Kwok B) and the purportedly attached share transfer instrument and share transfer resolution were delivered to Ms. Wang directing her to transfer the corporate and economic rights of Ace Decade to the Trustee. The Debtor represented he does not believe he has any ability to take the actions he directs Ms. Wang to take in the Letter. (Trustee 27, at 87:3–13.) The Debtor represents he sent the Letter to Ms. Wang via personal delivery (Kwok B), and asserts this personal delivery was completed through his personal bodyguards. However, the Debtor does not remember which bodyguard he directed to deliver the Letter, and "can never remember the names" of his security guards. (Trustee 27, at 88:3–13.) Beyond the Debtor's deposition testimony and the description "via personal delivery" on the Letter, there is no evidence to support the Letter was actually delivered. The Letter does not contain an address. (Kwok B.) There is no receipt nor sworn affidavit regarding service or delivery of the Letter from the unidentified bodyguard. (*Id.*)

6. Even if the Letter was delivered, the language in it signals to its reader that the Debtor does not fully support executing the share transfer instrument. Instead, the Letter states "The Trustee believes that I control Ace Decade and that I utilize that perceived control to direct you to execute the Share Transfer Instrument and Share Transfer Resolution." [emphasis added].

4

The Letter further states, ". . . in compliance with the Trustee's demands and to the extent that I may have any authority over Ace Decade, I hereby direct you to execute the attached Share Transfer Instrument and Share Transfer Resolution." (Kwok B.)

7.  The Debtor represents he has had no communications of any kind with Yvette Wang about the contempt motion. (Trustee 27, at 84:5–85:5.)

8.  The Trustee has been unable to service Yvette Wang with a subpoena. (Trustee 32–33).

V. **DISCUSSION**

   a. **Legal Standard**

This Court has the power to hold parties in contempt of court under 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9020. *Taggart v. Lorenzen ex rel. Brown*, 139 S. Ct. 1795, 1801 (2019); *PHH Mortg. Corp. v. Sensenich ex rel. Gravel (In re Gravel)*, 6 F.4th 503, 512 (2d Cir. 2021); *Mar. Asbestosis Legal Clinic v. LTV Steel Co. (In re Chauteaugay Corp.)*, 920 F.2d 183, 187 (2d. Cir. 1990). Contempt may be sought to "'coerce the defendant into compliance'" with a court order or to "'compensate the complainant for losses'" resulting from noncompliance with a court order. *Taggart*, 139 S. Ct. at 1801 (citing *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947)). A finding of civil contempt requires "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *see Gravel*, 6 F.4th at 512 (adding that the contemnor must have notice of the order). "A long recognized defense to a civil contempt citation is the cited individual's inability to comply with the court's order." *United States v. Wendy*, 575 F.2d 1025, 1030 (2d Cir. 1978).

5

Contempt "'should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct.'" *Taggart*, 139 S. Ct. at 1801 (citing *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609 (1885)). This standard is generally objective – a "party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Taggart*, 139 S. Ct. at 1802 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of wilfulness [sic] does not relieve from civil contempt.")). Nevertheless, a party's bad faith may justify "placing 'the burden of any uncertainty in the decree . . . on [the] shoulders' of the party who violated the court order," and "a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." *Taggart*, 139 S. Ct. at 1802 (citing *McComb*, 336 U.S. at 192–93 and *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 801 (1987)).

    b. **Conclusions of Law**

        1. **The Debtor Had Notice of the Corporate Governance Order**

The Court concludes that the Individual Debtor had notice of the Corporate Governance Order. *See Gravel*, 6 F.4th at 512. As outlined above, he litigated its entry. Furthermore, he did not contest notice in his Objection or during the Hearing.

        2. **The Corporate Governance Order Clearly and Unambiguously Directs the Debtor to Cooperate with the Trustee**

The Court concludes that the Corporate Governance Order is clear and unambiguous, *see King*, 65 F.3d at 1058, and that there is no fair ground of doubt as to its meaning, *see Taggart*, 139 S. Ct. at 1801. Under the Corporate Governance Order, the Debtor is required to cooperate with the Trustee regarding the Trustee's control of the Ace Decade Entities and also required to

6

surrender the Ace Decade Entities, ownership interests in the Ace Decade Entities, and corporate governance documents relating to the Ace Decade Entities.

The Trustee argues that paragraph 2 of the Corporate Governance order needs to be read in concert with paragraph 3 and the underlying provisions of the Bankruptcy Code. In this context, the Trustee argues that the Debtor was clearly and unambiguously directed to cooperate with the Trustee and turn over assets of the Estate and related records to the Trustee. The Debtor argues that the Trustee obtained control over the Ace Decade Entities via operation of law under paragraph 2 of the Corporate Governance Order and, therefore, the Debtor need not do anything to comply with the Corporate Governance Order. The Debtor further argues that the Trustee can assert control over the Ace Decade Entities and the present dispute is manufactured and unnecessary.

The Court agrees with the Debtor that there is no fair ground of doubt that paragraph 2 of the Corporate Governance Order allows the Trustee to act of his own accord to assert control over corporate entities, including the Ace Decade Entities. Paragraph 2 provides in pertinent part:

> For the avoidance of doubt, the foregoing rights include the Trustee's asserted authority to replace any existing officer, director, manager, or similar person of the Debtor-Controlled Entities. As part of the foregoing, to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter 11 trustee in this Chapter 11 Case, as any such officer, director, manager, or similar person who has been removed.

Paragraph 2 does allow the Trustee to issue new shares or membership interests and appoint new directors in the Debtor's corporate entities. However, paragraph 2 does not require the Trustee to do so. Even if the Trustee did issue new shares or membership interests or appoint new directors in the Ace Decade Entities, without the corporate documents and access to any

7

corporate accounts, it is unclear how the Trustee would operate the Ace Decade Entities. The Trustee's desire for an orderly and complete transition is reasonable.

Moreover, recourse to self-help may be in contravention of applicable non-bankruptcy law or existing governance documents and could create legal problems for the Trustee. The Debtor raised this exact issue during the August 4th hearing on the Corporate Governance Motion and noted that paragraph 2 would "give [the Trustee] authority that may not be provided for under applicable non-bankruptcy law and the governing documents of particular entities." (ECF No. 746, at 63:15–18.) The Trustee assured the Court that his intent was to act where he had authority under applicable non-bankruptcy law and the governing documents. (*Id.* at 64:14–15.) The Trustee stated

> The reason we asked for blanket authority is because we will not exercise that right unless we believe through due diligence we have the power to do it. And if we're doubtful, we'll come back to the Court. But we cannot be in a position where there's a satellite litigation open whether – what state law provides, what foreign law provides, because that's a – that's going to be another case basically.

(*Id.* at 64:19–65:1.) The Debtor then insisted that his intent was not to enter into litigation about corporate governance, but that he was concerned about the Trustee acting contrary to applicable non-bankruptcy law and the governing documents of particular entities. (*Id.* at 65:2–8.) In response to the Debtor's concern, the Court inserted the word "asserted" into paragraph 2 of the Corporate Governance Order to address this issue. (*Id.* at 65:11–21.) At that point, the Debtor did not press his objection to paragraph 2. (*Id.* at 65:23–24.) The Court finds the Trustee's desire to avoid "satellite litigation" about corporate governance is reasonable. However, despite paragraph 2 of the Corporate Governance Order and the Debtor's stated intent not to engage in satellite litigation, the Trustee has had to engage in litigation against the Debtor and the Ace Decade Entities in the High Court of England and Wales, Chancery Division, regarding

recognition of these bankruptcy cases in the United Kingdom.  *See* Despins v Kwok (Re Cross-Border Insolvency Regulations 2006) [2023] EWHC 74 (Ch) (20 January 2023).  Ace Decade argued against the Trustee's application seeking recognition under the Cross-Border Insolvency Regulations 2006 (the "CBIR") of the Debtor's Chapter 11 case in that court.

The Court also disagrees with the Debtor that the Trustee's rights in paragraph 2 end the analysis.  Simply because the Trustee has recourse to self-help under paragraph 2 of Corporate Governance Order, does not mean that the Trustee has no other recourse under its terms.

With respect to paragraph 3 of the Corporate Governance Order, the Court concludes that it clearly and unambiguously directs the Debtor to cooperate with the Trustee.  There is no fair ground of doubt that paragraph 3 requires the Debtor's cooperation with the Trustee in locating the Debtor's nominee, Ms. Wang, and in effectuating turnover of her ownership interest in Ace Decade.

Paragraph 3 clearly and unambiguously states, in pertinent part:

In accordance with [section] 521(a)(3) . . . of the Bankruptcy Code, the Debtor is hereby directed to . . .  (a) cooperate with the Trustee as necessary to enable the Trustee to perform his duties, including, without limitation, the Trustee's investigation into the assets of the Debtor . . . ."

Section 521 of the Bankruptcy Code is entitled "Debtor's duties."  Section 521(a)(3)'s language is almost identical to the language of the Corporate Governance Order: "The debtor shall . . . if a trustee is serving in the case . . . cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title."  The duty to cooperate under section 521(a)(3) is interpreted broadly.  *In re Cambridge Analytica LLC*, 596 B.R. 1, 8 (Bankr. S.D.N.Y. 2019) ("Section 521(a)(3) of the Bankruptcy Code similarly requires a debtor to 'cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties.'  ''Cooperate' is a broad term, indeed, and must be construed that whenever the trustee calls upon

9

the debtor for assistance in the performance of his duties, the debtor is required to respond, at least if the request is not unreasonable.' 'Indeed, '[i]t is well settled that a trustee should not be required to drag information from a reluctant and uncooperative debtor. Because of the extraordinary relief offered under the Bankruptcy Code delay and avoidance tactics are inconsistent with, and offensive to, its purpose and spirit.'") (internal citations omitted); *see Beach v. Morris (In re Beach)*, 281 B.R. 917, 921 (B.A.P. 10th Cir. 2002) ("In addition to imposing affirmative duties on the Debtors, these provisions impress the policy that a debtor who voluntarily submits him or herself to the jurisdiction of the bankruptcy court to obtain the benefit of a discharge of debts, must fulfill certain duties to insure that estate assets are administered in accordance with applicable law."); *see also* 4 COLLIER ON BANKRUPTCY ¶ 521.15[5] (16th ed. 2022) ("The debtor's cooperation may involve informing the trustee of and assisting in locating property of the estate in the possession of third parties, executing documents necessary to convey property and assisting in the collection of accounts receivable."). Given the close resemblance of the text of the Bankruptcy Code and the explicit cite to section 521 in the Corporate Governance Order, it is clear and unambiguous that paragraph 3 should be read similarly broadly.

      As set forth above and in the uncontested Partial Resolution Order, the Debtor has been found to have exclusively beneficially owned and controlled Ace Decade and, through it, Dawn State, as of the petition date and as of the appointment of the Trustee. Pursuant to paragraph 2 of the Corporate Governance Order, the Trustee "holds all of the Debtor's economic and governance rights, for the benefit of the Estate, with respect to all Debtor-Controlled Entities." Therefore, the Trustee holds the Debtor's economic and governance rights with respect to the Ace Decade Entities in furtherance of his duties to the Estate. The Debtor no longer contests this fact. The Debtor is required by the clear terms of paragraph 3 to cooperate with the Trustee as

10

necessary to realize this assertion of control and possession over the Ace Decade Entities for the benefit of the Estate, whether that furthers the Trustee's investigation of assets or some other duty to the Estate. *See Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 356 (W.D.N.Y. 2011) ("First, Global Crossing offers no authority, nor is this Court aware of any, to support its argument that the clause "including, without limitation" should be read as a limiting clause."); *Shugrue v. Cont'l Airlines*, 977 F. Supp. 280, 285 (S.D.N.Y. 1997) ("Even assuming there is some ambiguity as to what was actually attached to the first page of Schedule C, the language on that first page—'[a]ll of Eastern[ ]'s computer programs and software, including without limitation'—makes it clear that the attached list was not an exclusive list.").

The Court further holds that there is no fair ground of doubt under paragraph 3 of the Corporate Governance Order that the Debtor is required to surrender to the Trustee the Ace Decade Entities, including the ownership interests in the Ace Decade Entities and corporate governance documents relating to the Ace Decade Entities. Paragraph 3 clearly and unambiguously states, in pertinent part and in language closely mirroring § 521(a)(4):

> In accordance with [section] . . . 521(a)(4) of the Bankruptcy Code, the Debtor is hereby directed to . . . (b) surrender to the Trustee all property of the estate and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate (including, without limitation, his shares in Genever (BVI) and all related corporate governance documents).

Section 521(a)(4) of the Bankruptcy Code, and the Corporate Governance Order based on its language, reaches all equitable interests a debtor may have, such as beneficial ownership in corporate entities. 11 U.S.C. § 541(a)(1). The Debtor is required under section 521(a)(4) and the Corporate Governance Order to promptly surrender assets and documents relating to assets upon request. *See Beach*, 281 B.R. at 921; 4 COLLIER ON BANKRUPTCY ¶ 521.16.

11

Because the Debtor exclusively beneficially owned and controlled the Ace Decade Entities as of the petition date and as of the appointment of the Trustee, under paragraph 2 of the Corporate Governance Order, the Trustee controls the Ace Decade Entities for the benefit of the Estate. As noted above, the Debtor does not contest this fact. The Debtor is required by the clear terms of paragraph 3 to surrender the Ace Decade Entities to the Trustee, which includes all recorded information relating the Ace Decade Entities, such as shares and corporate governance documents. *See Star Direct*, 272 F.R.D. at 356; *Shugrue*, 977 F. Supp. at 285.

The Debtor argued in the alternative that the Corporate Governance Order was unclear and ambiguous because paragraphs 2 and 3 of the corporate governance order were in conflict with each other, trapping the Debtor in a "Catch-22." The Debtor argues that paragraph 2 strips him of the economic and corporate governance rights required to comply with paragraph 3.

The Court holds, however, that paragraphs 2 and 3 of the Corporate Governance Order are not in conflict. While the Trustee came into *de jure* control of the Estate and the Debtor's economic and corporate governance rights by operation of law, the Bankruptcy Code – and the clear and unambiguous Corporate Governance Order – require turnover of *de facto* possession and control pursuant to the Trustee's rights under the Corporate Governance Order. Courts routinely provide remedies that bring parties' *de facto* rights in line with their *de jure* rights. There is nothing in this case to create a fair ground of doubt as to what conduct the Corporate Governance Order is requiring.

The Court further finds the Debtor's argument regarding a conflict between paragraphs 2 and 3 would render 11 U.S.C. §§ 521(a)(3)–(4) useless and cannot be correct as a matter of law. The Debtor is directed by the Bankruptcy Code and the Corporate Governance Order to cooperate with the Trustee and surrender assets of the Estate and related records, even if by

12

operation of law control has already passed to the Trustee. Complying would not have frustrated the provisions of the Bankruptcy Code and the Corporate Governance Order, but rather would have furthered them.

Although the Court finds the Corporate Governance Order clearly required the Debtor to cooperate with the Trustee, if a reviewing court were to find the Corporate Governance Order is unclear, the burden of that uncertainty is not upon the Trustee, but upon the Debtor, on account of the Debtor's bad faith. *See Taggart*, 139 S. Ct. at 1802. As detailed above, the Court is not persuaded by the Debtor's interpretation of the Order, and, since the burden has been shifted by the Debtor's bad faith, it is sufficient for the Court to find this element in the Trustee's favor.

The Court finds the Debtor has acted in bad faith for several reasons. Until the hearing, the Debtor's primary argument in his Objection and in his deposition testimony was that he did not own Ace Decade, beneficially or otherwise, as of the petition date and as of the Trustee's appointment. However, during the Hearing he abandoned this argument, sought the entry of the Partial Resolution Order prior to continuing the Hearing, and agreed not to appeal the Partial Resolution Order. Nevertheless, the Partial Resolution Order is not a consent order. The Debtor would not consent to findings in the Partial Resolution Order, which is in tension with his abandonment of his Objection file prior to the Hearing and his agreement not to appeal the order.

Furthermore, the Debtor's only alleged attempt to comply with the Corporate Governance Order came on November 10, 2022, several months after it entered, one month after the Contempt Motion was filed, and less than one week before the Hearing was scheduled to begin. In addition, the Debtor's alleged attempt to comply with the Corporate Governance Order obscured the location of his nominee – Ms. Wang – from the Trustee, who has been unable to serve her with a subpoena. During the Hearing, the Debtor highlighted the Trustee's lack of

13

communication with Ms. Wang despite only informing him she was the nominee owner of Ace Decade shortly before the Hearing. Finally, the Debtor has not sufficiently shown that the Letter was sent to Ms. Wang. The Letter contains no address for Ms. Wang and the Debtor could not remember which of his bodyguards purportedly personally delivered the Letter to Ms. Wang.

### 3. The Debtor Has Not Complied with Corporate Governance Order

The Court concludes, by clear and convincing evidence, that the Debtor has not complied with the Corporate Governance Order. *See King*, 65 F.3d at 1058. The Debtor has not surrendered the Ace Decade Entities, ownership interests in them, or their corporate governance documents to the Trustee. If he had, the Motion would be moot. The Debtor's only purported compliance was the Letter allegedly sent to Ms. Wang, which he failed to sufficiently establish was sent. The Debtor has not cooperated with the Trustee's attempt to locate Ms. Wang and effectuate a surrender. The Debtor only belatedly disclosed that Ms. Wang was the nominee owner of Ace Decade Entities. The Letter, which was produced to the Trustee and during the Hearing, lacks an address for Ms. Wang. The Debtor did not produce the bodyguard who purportedly knew how to find Ms. Wang or otherwise tell the Trustee how to locate Ms. Wang.

### 4. The Debtor Has Not Diligently Attempted to Comply

The Court further concludes that the Debtor has not diligently attempted to comply with the Corporate Governance Order in a reasonable manner. *See id.* As noted immediately above, the only alleged attempt to either cooperate or effectuate a turnover was the Letter. No evidence was introduced to establish that the Letter was sent to Ms. Wang. Nevertheless, assuming the Letter was sent, it was dilatory – not diligent – coming a month after the Contempt Motion was filed and several months after the Corporate Governance Order was entered. Furthermore, again assuming the Letter was sent, it was not sent in a reasonable manner. There is no address on the

14

Letter.  There is no post-mark.  There is no acknowledgment of receipt.  The Debtor does not even know which of his bodyguards allegedly personally delivered the Letter.

### 5.  The Debtor Could Have Complied

Finally, the Court concludes that it is not impossible for the Debtor to comply with the Corporate Governance Order.  *See Wendy*, 575 F.2d at 1030.  The Debtor abandoned his argument that he did not beneficially own or control Ace Decade and, through it, Dawn State, as of the petition date and the appointment of the Trustee.  Therefore, it was not impossible for the Debtor to cooperate or to surrender the Ace Decade Entities to the Trustee for the reasons stated above.

The Trustee introduced into evidence email exchanges showing that Ms. Wang, the nominee owner of Ace Decade, acted under the direction of the Debtor in other transactions, including the New York litigation involving Ace Decade and also matters involving the Sherry Netherland Apartment.  (Trustee 29 and 30.)  On the basis of this evidence, the Court determines that the Debtor could cause her to turnover her ownership interest over to the Trustee.  As of yet, he has not.

## VI.  CONCLUSION & ORDER

For the reasons stated above, the Court finds the Debtor in civil contempt of court.  It is hereby

**ORDERED:**  The Debtor has until at or before 5:00 p.m. (17:00) on March 6, 2023, to purge himself of contempt; and it is further

**ORDERED:**  If the Debtor does not purge himself of contempt at or before 5:00 p.m. (17:00) on March 6, 2023, he will be sanctioned reasonable attorneys' fees and costs that the Trustee has had to incur in pursuing compliance with the Corporate Governance Order as it

relates to the Ace Decade Entities, which reasonable fees will be determined by the Court, and will be paid to the Estate; and it is further

**ORDERED:** The Court may, upon notice, issue further sanctions to secure compliance with the Corporate Governance Order, should the Debtor persist in contempt.

Dated at Bridgeport, Connecticut this 24th day of January, 2023.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut