# EXHIBIT E

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HO WAN KWOK, *et al.*, | ) | Case No. 22-50073 (JAM) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | ) | Adv. P. No. 23-05013 (JAM) |
| | ) | Re: ECF No. 4 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HCHK TECHNOLOGIES, INC., HCHK PROPERTY MANAGEMENT, INC., LEXINGTON PROPERTY AND STAFFING, INC., HOLY CITY HONG KONG VENTURES, LTD., ANTHONY DIBATTISTA, YVETTE WANG, and BRIAN W. HOFMEISTER, ASSIGNEE FOR THE BENEFIT OF CREDITORS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART EMERGENCY *EX PARTE* MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

# I. INTRODUCTION

Before the Court is the Emergency *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction (in pertinent part, the "TRO Motion"), ECF No. 4,[2] filed by Mr. Luc A. Despins, in his capacity as the Chapter 11 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Mr. Ho Wan Kwok (the "Individual Debtor"). For the reasons stated below, the Court **GRANTS IN PART** the TRO Motion and issues the Temporary Restraining Order set forth herein.

# II. BACKGROUND

The Individual Debtor filed a voluntary Chapter 11 petition in this Court on February 15, 2022. (Main Case ECF No. 1.) The Individual Debtor's case is jointly administered with two affiliated corporate Chapter 11 cases. (Main Case ECF Nos. 970 & 1141.) For the reasons set forth therein, on June 15, 2022, the Court entered a memorandum of decision and order appointing a Chapter 11 trustee. (Main Case ECF No. 465.) *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022). On July 8, 2022, Mr. Despins was appointed as the Trustee. (Main Case ECF No. 523.)

On June 8, 2023, the Trustee filed the Complaint Pursuant to Sections 105, 362, 363, 541, 542, 544, and 549 of the Bankruptcy Code Seeking (I) Declaratory Judgment that HCHK Technologies, Inc., HCHK Property Management, Inc., and Lexington Property and Staffing, Inc. are (A) Alter Egos of Debtor; or, (B) in the Alternative, an Order that Debtor Equitably Owns Such Entities and/or Their Property; and (II) Injunctive Relief (the "Complaint"). (ECF Nos. 1 (redacted), 2 (sealed).) Twenty-four exhibits are attached to the Complaint.

---

[2] References to the docket in this adversary proceeding will be styled "ECF." References to the docket in the main case, *In re Kwok*, Case No. 22-50073, will be styled "Main Case ECF."

2

The Complaint alleges that HCHK Technologies, Inc., HCHK Property Management, Inc., and Lexington Property and Staffing, Inc. (the "HCHK Entities") are the alter egos of the Individual Debtor and/or the HCHK Entities are and/or their respective property is beneficially owned by the Individual Debtor. (Complaint ¶¶ 62–73.) Upon these bases, the Complaint seeks declaratory relief pursuant to 11 U.S.C. §§ 541, 542, and 544 that the property of and/or ownership interests in the HCHK Entities is/are property of the Estate, which must be delivered to the Trustee. (*Id.*) Holy City Hong Kong Ventures, Ltd. ("Holy City"), which is allegedly wholly owned by Ms. Yvette Wang, is the alleged record owner of a 99.9999% equity interest in each of the HCHK Entities, and Mr. Anthony DiBattista is the alleged record owner of the remaining 0.0001% interest in each of the HCHK Entities. (Complaint ¶¶ 12–14.) The Complaint alleges that Ms. Wang, Mr. DiBattista, and others involved in the management and operations of the HCHK Entities are employees and agents of the Individual Debtor and that through these employees and agents, the Individual Debtor beneficially owns and controls the HCHK Entities and/or their assets. (Complaint ¶¶ 62–73.)

The Complaint additionally alleges that, on April 20, 2023, a representative of each of the HCHK Entities executed a Deed of Assignment for the Benefit of Creditors (collectively, the "Deeds of Assignment"), assigning all of the HCHK Entities' assets to Mr. Brian W. Hofmeister, esquire (in his capacity as assignee for the benefit of creditors, the "Assignee Defendant," and together with the HCHK Entities, Holy City, Ms. Wang, and Mr. DiBattista, collectively, the "Defendants"). (Complaint ¶¶ 15, 41.) On April 25, 2023, the Complaint alleges the Deeds of Assignment were filed with the Supreme Court of the State of New York for New York County (the "State Court"), after which the State Court issued orders to show cause (each a "Show Cause Order," and together, collectively, the "Show Cause Orders") why an assignment for the benefit

3

of creditors proceeding (each an "Assignment Proceeding," and together, collectively, the "Assignment Proceedings") should not begin regarding each of the HCHK Entities. (Complaint ¶¶ 42–45.) The Complaint alleges the first responses to a Show Cause Order are due on or before June 15, 2023 with the relevant hearing on whether to initiate an Assignment Proceeding to be held, on the papers, on June 20, 2023. (Complaint ¶ 43.)

To prevent the Assignment Proceedings from commencing or continuing, the Complaint seeks injunctive relief pursuant to 11 U.S.C. §§ 105, 362, 363, and 549 enjoining the Defendants from transferring or using the assets of the HCHK Entities and from continuing to prosecute the Assignment Proceedings. (Complaint ¶¶ 74–80.) The Complaint additionally seeks related declaratory relief pursuant to 11 U.S.C. §§ 362, 541, and 544 that the execution of the Deeds of Assignment and the commencement and prosecution of the Assignment Proceedings were and are violations of the automatic stay. (Complaint ¶¶ 62–73.)

On June 8, 2023, the Trustee additionally filed the TRO Motion, ECF No. 4, and the supporting Affidavit of Chapter 11 Trustee (the "Trustee Affidavit"), ECF No. 5, and Certification of Douglass E. Barron (the "Barron Certification"), ECF No. 6. In pertinent part, the TRO Motion seeks an *ex parte* temporary restraining order ("TRO") pursuant to 11 U.S.C. §§ 105, 362, 363, and 549 enjoining the Defendants from commencing or prosecuting the Assignment Proceedings and/or otherwise transferring or using the assets of the HCHK Entities. The Trustee Affidavit is sworn under the penalty of perjury and asserts, to the best of the Trustee's knowledge, the veracity of the core allegations of the Complaint and that the exhibits to the Complaint are true and correct copies of documents. The Barron Certification is a declaration of counsel in support of issuing a TRO on an *ex parte* basis. On June 9, 2023, the Trustee filed a supplements to the TRO Motion, Trustee Affidavit, and Barron Certification

4

regarding a particular facet of the Assignment Proceedings and a particular individual involved with the Defendants. (ECF Nos. 14–16.)

### III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. The instant proceedings are statutorily core proceedings. 28 U.S.C. § 157(b)(2)(A), (E), (O).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### IV. DISCUSSION

The Trustee requests *ex parte* relief because he is concerned that should the Defendants and/or their agents and those acting in concert with them learn of this adversary proceeding before receiving actual notice of a TRO issued by this Court, the Defendants and/or their agents and those acting in concert with them will seek to dissipate potential Estate assets through other means. Unfortunately, upon the basis of the Trustee Affidavit and Barron Certification, the Court concludes the Trustee's concern is justified. In particular, the allegation that Ms. Wang transferred Ace Decade Holdings Limited after this Court had already determined that Ace Decade Holdings Limited was property of the Estate is troubling. Similarly, the apparent sale of the Ferncliff Mansion and the Bombardier jet – which are disputed assets of the Estate – during the pendency of these Chapter 11 cases and upon no notice to the Court and the parties-in-interest is also troubling. Therefore, the Court considers the TRO Motion on an *ex parte* basis.

The "underlying purpose" of an *ex parte* TRO is "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."

5

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). "It is well established that in [the Second] Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (citing multiple cases); *see Ross v. Rell*, 398 F.3d 203, 204–05 (2d Cir. 2005) (applying preliminary injunction standard articulated in *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.* 596 F.2d 70, 72 (2d Cir. 1979) in appeal regarding temporary restraining order). In addition to injunctive relief under the standard of *Jackson Dairy*, courts sitting in bankruptcy may issue injunctive relief under 11 U.S.C. § 105(a), with the "traditional [TRO] standard as modified to fit the bankruptcy context." *Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 409 (S.D.N.Y. 2007) (internal citations omitted); *see Marshall v. Picard (In re Bernard L. Madoff Inv. Securities LLC)*, 740 F.3d 81 (2d Cir. 2014) (affirming affirmance of *Securities Inv. Protection v. Bernard L. Madoff Inv. Securities LLC (In re Madoff)*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010)); *Lautenberg Found. v. Picard (In re Bernard L. Madoff Inv. Sec.)*, 512 F. App'x 18, 20 (2d Cir. 2013); *Ball ex rel. Soundview Elite Ltd. v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*, 543 B.R. 78, 115 (Bankr. S.D.N.Y. 2016); *Lyondell Chemical Co. v. CenterPoint Energy Gas Services (In re Lyondell Chemical Co.)*, 402 B.R. 571, 588–89 (Bankr. S.D.N.Y. 2009).

### A. *Jackson Dairy* Standard

The general standard for Fed. R. Civ. P. 65(a) preliminary injunctive relief in the Second Circuit is "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy*, 596 F.2d at 72; *see Citigroup Global Mkts., Inc. v. VCG Special Opportunities*

*Master Fund Ltd.*, 598 F.3d 30, 35–38 (2d Cir. 2010) (holding *Jackson Dairy* remained the law of the Second Circuit); *see also Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023).

### i. Irreparable Harm

Irreparable harm is the most important element of a TRO. *See Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009). Irreparable harm must be "likely," not merely possible. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). While outside of bankruptcy proceedings, irreparable harm generally must be the sort that cannot be adequately compensated by legal remedies, *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) (holding that a district court "had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages"), this rule does not apply in bankruptcy proceedings because "[t]he law of fraudulent conveyances and bankruptcy was developed to prevent [the disposition of assets pending adjudication]," *Grupo Mexicano*, 527 U.S. at 322. *See Rubin v. Pringle ex rel. Focus Media Inc. (In re Focus Media Inc.)*, 387 F.3d 1077 (9th Cir. 2004); *Soundview Elite*, 543 B.R. at 115; *see also In re Owens Corning*, 419 F.3d 195, 208 n. 14 (3d Cir. 2005).

The automatic stay provided by section 362(a) is "'one of the fundamental debtor protections provided by the bankruptcy laws,' designed to relieve 'the financial pressures that drove [debtors] into bankruptcy.'" *E. Refractories Co. v. Forty Eight Insulations Inc.,* 157 F.3d 169, 172 (2d Cir.1998) (citing H.R. Rep. No. 95–595, at 340 (1977)). Moreover, as House of Representative Report Number 95-595 additionally observes:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claim in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under

7

> which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R. Rep. No. 95–595, at 340; *see In re Alyucan Interstate Corp.*, 12 B.R. 803, 806 (Bankr. D. Utah 1981) (citing *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976) (case under the Bankruptcy Act)). A bankruptcy case is an all-encompassing action intended to equitably – and finally – liquidate, reorganize, or adjust the assets, affairs, and liabilities of the bankruptcy estate for the benefit of all creditors, providing an individual debtor or reorganizing corporate debtor with a fresh start. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991).

For this reason, the automatic stay, among other things, prevents (i)"the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, " 11 U.S.C. § 362(a)(1); and (ii) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3). Under Second Circuit precedent, the automatic stay protects property of a non-debtor where "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate," such as when a debtor owns a non-debtor. *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003). Willful violations of the automatic stay *shall* be sanctioned. 11 U.S.C. § 362(k). Bankruptcy proceedings are undermined by violation of the automatic stay.

Here, the Trustee alleges that the property of the HCHK Entities is and/or the HCHK Entities themselves are property of the Estate. (Complaint ¶¶ 62–73.) Pursuant to the Second Circuit's ruling in *Queenie*, if the Trustee is successful on the merits, the Assignment Proceedings – or any other dissipation or exercise of control over the assets of the HCHK Entities – would have been found to have been violations of the automatic stay. Furthermore, the

8

Trustee asserts that more than $35 million in alleged Estate assets could be dissipated through the Assignment Proceedings and, moreover, dissipated with the imprimatur of the State Court and distributed only to the creditors of the Individual Debtor who participate in the Assignment Proceedings. (Complaint ¶¶ 2, 3.) In the context of these Chapter 11 cases, where the scheduled assets are less than $4 thousand and the scheduled liabilities exceed $300 million, $35 million is not an insignificant sum. (Main Case ECF No. 78.) Finally, insofar as the Trustee is correct in his allegations, the Assignment Proceedings invite conflict with these Chapter 11 cases and this Court's bankruptcy jurisdiction, increasing the costs borne by the Estate and decreasing the recovery of creditors. The Court concludes that the Trustee has sufficiently alleged likely irreparable harm to support the issuance of an *ex parte* TRO to preserve the *status quo* pending a hearing on the request for a preliminary injunction.

### ii. Balance of the Hardships

Absent a TRO, the Assignment Proceedings will commence before this Court can conduct a hearing on the Trustee's request for a preliminary injunction, likely causing irreparable harm. The Defendants, however, will suffer minimal hardship by the imposition of an *ex parte* TRO – a delay of a few weeks of the commencement of the Assignment Proceedings should the Defendants prevail at the hearing on the Trustee's request for a preliminary injunction. Moreover, a TRO issued by this Court would prevent the dissipation of the HCHK Entities assets pending the hearing on the Assignment Proceeding. The *status quo* would be preserved both in relation to these Chapter 11 cases and the Assignment Proceedings. Therefore, the Court concludes that in the context of the request for an *ex parte* TRO, the balance of hardships tips decidedly in the Trustee's favor.

9

### iii. Likelihood of Success on the Merits or
### Sufficiently Serious Questions Going to the Merits

A likelihood of success on the merits is established where "the moving party is more likely than not to prevail on the merits of the underlying claims." *Citigroup*, 598 F.3d at 35. In *Citigroup*, the Second Circuit explained the alternate "serious questions" standard as permitting a court "to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Id.* (internal citations omitted). The Second Circuit continued: "Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips *decidedly*' in its favor, its overall burden is no lighter than the one it bears under the 'likelihood of success' standard." *Id.* (internal citations omitted). Because the Court has determined that the balance of hardships tips decidedly in the Trustee's favor with regards to the imposition of an *ex parte* TRO, the Court need only find that the Trustee has established "serious questions going to the merits" to grant an *ex parte* TRO. *Jackson Dairy*, 596 F.2d at 72.

The Complaint alleges that each of the HCHK Entities are Delaware entities. (Complaint ¶¶ 9–11.) "Delaware courts use the terms 'piercing the corporate veil' and 'alter ego' theory interchangeably." *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 609 n. 4 (D. Del. 2018). Under Delaware law, alter ego or piercing the corporate veil has two elements: (i) the alleged alter egos are effectively one and the same economic entity and (ii) the corporate form causes an overall element of fraud or injustice. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) ("To prevail on an alter ego claim under Delaware law, a plaintiff must show (1) that the parent and the subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness . . . [is] present.'") (internal citations omitted). Much the same standard is

10

applied to determinations of equitable ownership. *See LiButti v. United States*, 968 F. Supp. 71, 75 (N.D.N.Y. 1997) (determining whether an owner was a nominee for the purposes of tax levy), *aff'd in part, rev'd in part on other grounds*, 178 F.3d 114 (2d Cir. 1999); *see Paloian ex rel. Dordevic v. Dordevic (In re Dordevic)*, 633 B.R. 553, 558 (Bankr. N.D. Ill. 2021) (using common law nominee factors in a bankruptcy proceeding) *aff'd by* 20 b 9807, 21 C5328, 2022 WL 19638995 (N.D. Ill. July 25, 2022), *aff'd by* No. 22-2500, 2023 WL 3113706 (7th Cir. April 27, 2023).

The Complaint advances six categories of allegations in support of the prayer for relief: (i) the HCHK Entities are nominally owned by the Individual Debtor's alleged employees or agents – Ms. Wang and Mr. DiBattista – and also staffed by the Individual Debtor's alleged employees or agents, *e.g.*, Mr. Max Krasner, Mr. Joe Wang, Mr. Bernardo Enriquez, Mr. Alex Hadjicharalambous, and Mr. Elliott Dordick, (Complaint ¶¶ 22–26); (ii) the HCHK Entities are affiliated with Gettr GFashion, GMusic, GClub, GNews, GEdu, Saraca Media, and GTV Media (the "G-Series Entities"), which are allegedly affiliated with the Individual Debtor, and the corporate form of the HCHK Entities is disregarded for the benefit of the G-Series Entities, (Complaint ¶¶ 27–30); (iii) the HCHK Entities have a history of paying what are allegedly the expenses of the Individual Debtor, (Complaint ¶¶ 31–32); (iv) the purported creditors of the HCHK Entities alleged in the Assignment Proceedings are either individual supporters of the Individual Debtors or entities affiliated with the Individual Debtor, such as G-Series Entities, (Complaint ¶¶ 33–38); (v) the United States Attorney for the Southern District of New York alleges that the HCHK Entities are involved in a billion dollar fraud for the benefit of the Individual Debtor, (Complaint ¶ 39); and (vi) the Individual Debtor asserted his fifth amendment right against self-incrimination when questioned whether he beneficially owned and controlled

11

the HCHK Entities, (Complaint ¶ 40). The Trustee Affidavit asserts under penalty of perjury that key supporting allegations are true to the best of the Trustee's knowledge and that the exhibits supporting the Complaint are true and correct copies of documents to the best of the Trustee's knowledge.

As the Complaint observes, this Court has already found Ms. Wang to be an employee and/or agent of the Individual Debtor. (Main Case ECF No. 1372.) Ms. Wang is alleged to indirectly nominally control 99.9999% of the ownership interests in each of the HCHK Entities. Many, if not all, of the other names of owners or employees and affiliated entities of the HCHK Entities which the Complaint alleges demonstrate a close connection with the affairs of the Individual Debtor are familiar to the Court in connection with, *e.g.*, the social media and protest campaign, *see, e.g.*, *Pac. All. Asia Opportunity Fund L.P. v. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05032 (JAM) (Bankr. D. Conn. Jan. 13, 2023), ECF No. 133 (hereinafter, the "Social Media and Protest Decision"), or the involvement of Golden Spring (New York) Ltd. and Lamp Capital LLC in these Chapter 11 cases, *see e.g.*, Main Case ECF Nos. 1, 86, 117, 139, 197, 318, 760, 1709. Indeed, the Court has previously found that the G-Series Entities are business vehicles of the Individual Debtor, serve the purposes of the Individual Debtor, and have employees who are personally loyal to the Individual Debtor. (*See* Social Media and Protest Decision.) Moreover, attached to the Complaint are exhibits demonstrating the alleged connection to the G-Series Entities including, among others, the filings of the Assignee Defendant in the State Court, bank records, and emails from the HCHK Entities' professionals. For example, there is an email from an HCHK Entities' professional stating that "We are representing entities indirectly owned by [the Individual Debtor], owner of GTV media." (ECF No. 1 Ex. 14.) The Complaint also alleges that financial documents – not

12

attached, but in the Trustee's possession – indicate that the HCHK Entities have made several payments for the ultimate benefit of the Individual Debtor, *e.g.*, in connection with the Lady May, the Individual Debtor's yacht, *see HK Int'l Funds Invs. (USA) Ltd., LLC v. Despins ex rel. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. Mar. 30, 2023), ECF No. 177, or payment of his employees, such as Ms. Wang. Similarly, the Assignee Defendant's filings suggest that the HCHK Entities' creditors are the G-Series Entities and related individuals. Finally, the Individual Debtor has asserted his fifth amendment right against self-incrimination regarding his control of not just HCHK Technologies, Inc. and HCHK Property Management, Inc. but also, *e.g.*, various G-Series Entities, Ms. Wang, and Mr. DiBattista. (ECF No. 1 Exs. 1, 12.)

Combined with the Trustee's affidavit sworn under penalty of perjury, the Court concludes that the Complaint has *at least* raised sufficiently serious questions going to the merits to support an *ex parte* TRO. Therefore, the Court concludes all *Jackson Dairy* elements are met and a TRO shall issue to maintain the *status quo* pending a trial on the request for a preliminary injunction.

### B. Section 105 Injunction

Even where the automatic stay does not apply – and here the Complaint asserts it does – the Court has authority under section 105(a) to stay suits that may impede an ongoing bankruptcy proceeding. *See McHale v. Alvarez (In re 1031 Tax Grp., LLC)*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008). Section 105(a) injunctive relief may enter if (1) there is a likelihood of successful reorganization; (2) there is an imminent irreparable harm to the estate in the absence of an injunction; (3) the balance of harms tips in favor of the moving party; and (4) the public interest weighs in favor of an injunction. *Calpine*, 365 B.R. at 409.

13

All of these factors except for (1) and (4) have been addressed above in the discussion of *Jackson Dairy*. The Trustee's investigation is proceeding and there will likely be *some* recovery for creditors, although the ultimate dividend is unknown. The recovery will likely at least be greater than that in a hypothetical Chapter 7 liquidation. The public interest supports the issuance of a TRO because the public has an interest, as enshrined in Article I, section 8 of the Constitution, in uniform, federal bankruptcy laws and an equitable distribution to all creditors. As discussed above, such a distribution is presently at risk due to a potential splintering of bankruptcy proceedings between these Chapter 11 cases and the Assignment Proceedings. Therefore, the Court concludes section 105(a) also supports the issuance of a TRO to maintain the *status quo* pending a hearing on the request for a preliminary injunction.

## V.  CONCLUSION AND ORDER

Accordingly, upon review of the TRO Motion, the Complaint and exhibits attached thereto, the Trustee Affidavit, the Barron Certification, and the record in these Chapter 11 cases and this adversary proceeding and for the reasons stated above, the Court issues an *ex parte* TRO to preserve the *status quo* pending a hearing on the request for a preliminary injunction. Therefore, it is hereby

**ORDERED:**  Upon receipt of actual notice of this TRO by personal service or otherwise, (i) the Defendants; (ii) the Defendants' officers, agents, servants, employees, and attorneys; and (iii) any person in active concert or participations with the Defendants and/or the Defendants' officers, agents, servants, employees, and attorneys including, without limitation, G-News Operations, LLC ("G-News") and Ms. Irene Feng, are temporarily restrained and enjoined from commencing or continuing the Assignment Proceedings (or any other judicial, administrative, or

14

other actions or proceedings with respect to the HCHK Entities and/or their assets), including Interim Management Agreement ("IMA") with G-News; and it is further

**ORDERED:** Upon receipt of actual notice of this TRO by personal service or otherwise, (i) the Defendants; (ii) the Defendants' officers, agents, servants, employees, and attorneys; and (iii) any person in active concert or participations with the Defendants and/or the Defendants' officers, agents, servants, employees, and attorneys, including, without limitation, GNews and Irene Feng, are temporarily restrained and enjoined from any transfer or use of the assets, including cash, of the HCHK Entities (including but not limited to such assets purportedly transferred to the Assignee Defendant and/or held by the Assignee Defendant, and including but not limited to any transfer or use of such assets effectuated pursuant to the IMA), or ownership interests in the HCHK Entities, except as authorized or directed by the Trustee or this Court; and it is further

**ORDERED:** Upon receipt of actual notice of this TRO by personal service or otherwise, the Assignee Defendant shall immediately notify the State Court of the issuance of this TRO; and it is further

**ORDERED:** Pursuant to this Court's discretion to set or waive the amount of any bond to be posted under Fed. R. Civ. P. 65, the Trustee need not post a bond; and it is further

**ORDERED:** Any objection or response to the TRO Motion insofar as it requests a preliminary injunction or this Order shall be filed on or before June 23, 2023 at 12:00 p.m. (noon); and it is further

**ORDERED:** The Trustee and the Defendants shall submit lists of witnesses and exhibits on or before June 23, 2023 at 12:00 p.m. (noon); and it is further

15

**ORDERED:** The Trustee shall file any reply on or before June 24, 2023 at 12:00 p.m. (noon); and it is further

**ORDERED:** A hearing on the TRO Motion insofar as it requests the issuance of a preliminary injunction, shall commence on June 26, 2023, at 10:00 a.m. in the United States Bankruptcy Court, 915 Lafayette Boulevard, Bridgeport, CT; and it is further

**ORDERED:** This Court shall retain jurisdiction to hear and determine all matters arising from the implementation, interpretation, and/or enforcement of this TRO.

Entered at Bridgeport, Connecticut at 2:15 p.m. on June 12, 2023.

                         Dated at Bridgeport, Connecticut this 12th day of June, 2023.

                                         *Julie A. Manning*
                                         United States Bankruptcy Judge
                                         District of Connecticut