UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

 v.

YANPING WANG,
 a/k/a "Yvette,"

     Defendant.

S1 23 Cr. 118 (AT)

**PARTIALLY SEALED AND *EX PARTE***
**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA**
**IN SUPPORT OF ITS MOTION TO DISQUALIFY EMIL BOVE**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Juliana N. Murray
Ryan B. Finkel
Micah F. Fergenson
Assistant United States Attorneys
 *Of Counsel*

# **TABLE OF CONTENTS**

BACKGROUND ......................................................................................................... 2

ARGUMENT ........................................................................................................... 11

    I. Because Bove Previously Supervised a Federal Criminal Investigation of Kwok, Bove Should Be Disqualified from Representing Kwok's Co-Defendant ........................................ 11

      A. Applicable Law ............................................................................................ 11

        1. The *Evans* Test ........................................................................................ 13

        2. Ethical and Criminal Prohibitions Specific to Former Government Attorneys ........... 15

        3. Knowing Waivers of Conflicts ...................................................................... 18

      B. Discussion ................................................................................................. 20

        1. Bove Should Be Disqualified Under the *Evans* Test ......................................... 20

        2. Bove Should be Disqualified Under New York Rule of Professional Conduct 1.11(a)(2) and 18 U.S.C. § 207 ............................................................................ 25

        3. Bove Should Be Disqualified to Avoid Trial Taint ............................................ 26

CONCLUSION ........................................................................................................ 28

## PRELIMINARY STATEMENT

This Court should disqualify Emil Bove from representing Yanping Wang.

From September 19, 2019, through December 20, 2021, Bove was Co-Chief of the Terrorism and International Narcotics Unit ("TIN") for the United States Attorney's Office for the Southern District of New York (the "Office"). In that role, Bove personally supervised a TIN investigation of Ho Wan Kwok—Wang's co-defendant, the leader of the charged criminal conspiracy, and Wang's longtime boss. Now, less than two years after leaving the Office for private practice, Bove is seeking to represent Wang in this prosecution by the United States of Wang and Kwok.

Applicable statutes, ethical rules, and Second Circuit precedent regarding conflicts of interest require Bove's disqualification in this case on two primary grounds. *First*, this Court can have no confidence that Bove will not use, whether intentionally or not, information obtained while a Government lawyer against the Government. Bove's representation would thereby prejudice his former client, the United States, and undermine trust in the notion that public employees must work for the public benefit and not their own private interests. *Second*, the Government has an interest in a fair trial and in obtaining a conviction that can be defended on appeal and from collateral attack. Those interests are at risk if Bove represents Wang, because she cannot give the informed consent required to validly waive Bove's conflicts. Specifically, Bove cannot explain to Wang the numerous limitations on the kinds of information he can share and the actions he can take on behalf of Wang in light of his prior work as an AUSA, because such an explanation would require divulging classified, privileged, and confidential information, which the law and the rules of professional conduct governing attorneys prevent Bove from doing. Accordingly, the Court should disqualify Bove from representing Wang.

1

# **BACKGROUND**

### **A.  Bove's Employment with the U.S. Attorney's Office**

Bove was an Assistant United States Attorney in this Office from approximately October 2012 to December 20, 2021.  On September 19, 2019, Bove was appointed as a supervisor of the Office's TIN Unit.  Bove remained in that position until his departure from the Office in December 2021.  Supervisory AUSAs participate "personally and substantially" in any and all cases under their supervision.  *See* 18 U.S.C. §  207(a)(1).  During his time as a TIN supervisor, Bove was responsible for supervising all matters in the TIN unit, which includes consulting with AUSAs regarding their cases, receiving factual briefings, reviewing AUSA work product, providing advice and guidance, and directing investigative steps and other government actions.  Supervisors often brief the Office's executive management on selected matters and interface with supervisors of other units as appropriate, including when cases overlap.

### **B.  The TIN Investigation of Kwok**

Kwok emigrated from China to the United States in approximately 2015.  On or about September 6, 2017, Kwok filed an application for political asylum from the Chinese Communist Party, which remains pending.  (Dkt. 10 at 1-2.)  From April 2018 through May 2019, Kwok voluntarily provided information to the Federal Bureau of Investigation ("FBI") in the hope of receiving assistance with respect to his U.S. immigration status.  Typically, Kwok met with a particular FBI agent ("FBI Agent-1").

*See* Classified Supplement Part I.[1]

---

[1] The Government has prepared and will submit a sealed, *ex parte* classified supplement.



(the "TIN Matter").  Two AUSAs were assigned to the matter, and FBI Agent-1 was the case agent.  Eleven days after the TIN Matter opened, Bove was appointed Co-Chief of TIN, and became responsible for supervising the matter.

In late September 2019, the AUSAs working on the TIN Matter drafted, and obtained for the FBI, a warrant to search Kwok's residence at the Sherry-Netherland Hotel in Manhattan and Kwok's then-office, which was located on the sixth floor of a townhouse located on East 64th

---

[2] The Government respectfully requests that portions of this brief be filed under seal, or under seal and *ex parte*, in order to protect the Government's confidential information and identifying information of third parties.  In the Court's unredacted copy, sealed portions of the brief are highlighted in yellow; sealed and *ex parte* portions of the brief are highlighted in red.

Street.[3] ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████

   The FBI executed the warrants on October 3, 2019, and seized, among other evidence, more than 100 electronic devices and documents that were stored inside safes. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

   At the time that the search warrants were executed, Bove was participating in a trial, which ended on October 18, 2019.  Following trial, Bove returned to his full-time responsibilities supervising TIN and all of its matters, including the TIN Matter.

---

[3] The Sherry-Netherland was where Kwok was arrested in the case before this Court.  The day of Kwok's arrest, the FBI executed a search warrant at that same apartment and located dozens of electronic devices, valuables, and documents.

Bove was not recused from the TIN Matter and thus was briefed, consulted, and provided advice regarding the case.  As is typical with TIN investigations, Bove had knowledge of, or access to, classified information relating to the investigation.

As an example of Bove's general supervision of the TIN Matter, on October 31, 2019—shortly after his trial ended—Bove sent the TIN Matter AUSAs an email titled "Guo."  The body of the email requested that the TIN AUSAs pass along the internal case tracking number for the TIN Matter.  (Ex. A (Oct. 31, 2019 email).)  This email likely signifies that Bove was drafting a case update regarding the TIN Matter to send to the Office's executive leadership.  As a general practice, case updates contain both public and non-public information including, for example, strategy, short and long-term goals of an investigation, individuals whom the Office may be proffering and seeking to cooperate, and discussions about possible future investigative actions (such as search warrants or arrests) which may (or may not) happen.  In the TIN Unit, drafting case updates for the Office's executive management was the responsibility of the unit supervisors and necessarily required the unit supervisors to have knowledge of each of their unit's cases.

Over the next several months, the TIN Matter AUSAs kept Bove and his Co-Chief regularly updated on the progress of the TIN Matter.  Given the sensitivity of aspects of the investigation, those updates were often oral.[4]  Among other things, the AUSAs discussed with Bove ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████.

---

[4] These facts are based on the Government's discussions with the AUSAs assigned to the TIN Matter.

On July 1, 2020, Bove and his TIN Co-Chief received an email from the Office's Criminal Division Chief regarding a press inquiry into a potential SDNY investigation "related to the source of funds that ███████████ received through his work with Chinese businessman Miles Guo and his associate, William Je." ((Ex. B [July 1, 2020 email).)  Approximately 16 minutes later, Bove responded to the email with the following message, copying in one of the TIN Matter AUSAs:

> I copied in [TIN AUSA], who is working with FBI on a [TIN] investigation of Guo in which ██████████████████████.  [TIN AUSA] and FBI executed premises warrants targeting Guo in the fall, which led him to retain [a particular attorney ("Attorney-1")[5]] to convey ████████████████████████ ██████.  The team is working still reviewing the warrant take (they seized a lot of media) and following up on leads.  [TIN AUSA] is also aware of a [Complex Frauds and Cybercrime Unit ("CFU")] investigation being run by [a particular CFU AUSA] that involves Guo and relates to cryptocurrency investments.

(*Id.*)  Thus, in this email, Bove responded to a question about Kwok and another co-defendant in this case, William Je, by referencing an interaction the Office had with Kwok's then-counsel.  Indeed, Bove offered an opinion about the counsel's outreach.  Bove also was aware of, and referenced, the CFU investigation—which is the investigation that led to the charges in the case before this Court.[6]

On July 8, 2020, Bove and his TIN Co-Chief received an email from FBI agents with a link to an article that referenced Kwok ████████████████████.  (Ex. C (July 8-9, 2020 email chain).)  The next day, Bove's Co-Chief forwarded that message, copying Bove, and wrote, "In case you haven't seen it" to one of the TIN AUSAs assigned to the TIN Matter.  (*Id.*)

---

[5] Attorney-1 represented Kwok throughout the Government's fraud investigation.  On the day of Kwok's arrest, the Government spoke with Attorney-1's partner and understood that Attorney-1 would be representing Kwok in this case.  However, it appears that changed and ultimately Kwok hired different attorneys.

[6] The CFU AUSA named by Bove is presently the Deputy Chief of CFU and is supervising this case.

That AUSA, in turn, forwarded the message to the particular CFU AUSA then working on the instant case. (*Id.*)

In the ensuing months, Bove's Co-Chief became conflicted from aspects of the TIN Matter, meaning as a practical matter that Bove became the only supervisor of the matter. As the sole direct supervisor of the TIN Matter, Bove continued receiving updates on the investigation and was consulted about the case.

### C.  The Current Case

The CFU investigation resulting in the case before this Court was opened in or around May 2020. As this Court is aware, Kwok, Wang, and Je are charged with conspiring to defraud thousands of victims of more than $1 billion through several interrelated schemes (the "Fraud"). The proceeds of the fraud were then laundered and misappropriated. Kwok is the leader of, and directed, the Fraud. Je is the financial architect and key money launderer for the Fraud. Wang operated as Kwok's "chief of staff" and managed the day-to-day operations of the entities used to perpetrate the fraud. The investigation has revealed that Wang's relationship with Kwok extends back many years including during the time of the TIN search warrants. Indeed, in this case, Kwok's counsel has represented that Wang was a translator for Kwok including during conversations with Attorney-1.



As noted above, as a supervisor of the TIN Matter, Bove was at least aware of the Office's ongoing fraud investigation of Kwok, Wang and ▮▮▮▮ that led to the charges in *this* case. Specifically, by at least July 2020, Bove was at least aware of the Office's fraud investigation of Kwok and others (*i.e.*, the instant case); he was at least aware of the identities of certain of the subjects of this investigation (*i.e.*, Kwok and ▮▮▮▮▮▮); and he was at least aware of the subject matter of this investigation (*i.e.*, fraud and cryptocurrency investments). (Ex. B (July 1, 2020 email).)

### D. Bove Agrees He Is Barred From Representing Kwok's Daughter in a Civil Matter in January 2022

Bove left the Office in December 2021 and joined the law firm of Chiesa Shahinian & Giantomasi P.C. as a partner. In late January 2022, weeks after Bove left the Office, Bove contacted the Office's then-Associate United States Attorney regarding a potential representation of Kwok's daughter. Bove inquired whether the Office believed such representation could raise any post-government employment restriction issues. Specifically, Bove indicated that he had been contacted to represent Kwok's daughter, Mei Guo,[7] in connection with her deposition in the New

---

[7] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

York State Supreme Court PAX Lawsuit regarding her purported ownership of the Lady May yacht, which was subject to Judge Ostrager's Order of Civil Contempt against Kwok for his "shell game" of shielding assets. (*See* Dkt. 10 at 12.)

The Associate United States Attorney consulted with the TIN Matter AUSAs regarding, among other things, the nature of the TIN Matter and whether Bove had awareness of the Office's ongoing fraud investigation into Kwok and others (*i.e.*, the CFU investigation that led to the charges in this case). Contemporaneous emails reflect that, during Bove's consultation with the Office in January 2022, Bove "mentioned that when chief of [TIN] he supervised a [TIN] investigation involving" Kwok—*i.e.*, the TIN Matter. (Ex. D (Jan. 20, 2022 email chain).)

On January 24, 2022, the Associate United States Attorney emailed the two AUSAs on the TIN Matter to advise them, in sum and substance, that he had "strongly indicated to [Bove] that he should stay away from [the Mei Guo representation] and [Bove] said he would." (Ex. D (Jan. 20, 2022 email chain).) Ultimately, Bove's firm represented Mei Guo (and continues to do so today), but Bove indicated to the Office he would not be involved in his firm's representation of Mei Guo.[8]

### E.  Bove Files a Notice of Appearance in This Case

On July 22, 2023, Bove filed a notice of appearance on behalf of Wang. (Dkt. 112.) Before doing so, Bove did not contact the Office's Associate United States Attorney as he had done when contemplating representing Kwok's daughter. Rather, the same day, Bove also filed a Stipulation

[8] Kwok's counsel provided the Government a list of attorneys and their clients whose privileged communications may be present on devices seized by the Government in this case. That list includes two other partners from law firm Chiesa Shahinian & Giantomasi P.C. (*i.e.*, Bove's firm), and lists Mei Guo and another entity as Bove's firm's clients.

and Proposed Order of Substitution of Counsel, signed by Wang and her counsel of record, requesting to substitute Bove for Wang's lead counsel, Priya Chaudhry. (Dkt. 113.) Alex Lipman, meanwhile, was set to remain as additional counsel to Wang.[9]  On July 24, 2023, the Government advised the Court that it was considering potential conflict issues associated with Bove's representation of Wang and requested that the Court stay its consideration of the Proposed Order of Substitution of Counsel to permit the Government and Bove to discuss potential conflict issues. (Dkt. 114.)

The AUSAs presently assigned to the instant case spoke with Bove on July 24, 2023. During the call, Bove confirmed he was a supervisor of TIN while that unit was investigating Kwok.  But Bove said, in sum and substance, that he had no real recollection of the TIN Matter, and was on trial when the TIN search warrant was executed, so was not involved in it.  The AUSAs also noted that Bove's firm represents Kwok's daughter, Mei Guo, in the Connecticut bankruptcy proceedings and in a parallel Securities and Exchange Commission case before the Honorable Paul G. Gardephe in this District.  Bove stated that he was not personally working on the Mei Guo representation but that both Mei Guo and Wang had waived any conflict, and Bove stated that a *Curcio* hearing regarding that potential conflict would be appropriate.

Days after that conversation, the Associate United States Attorney discussed the matter with Bove and advised him that representing Wang implicated conflict-of-interest restrictions in 18 U.S.C. § 207, as well as applicable rules of professional conduct.  Bove disagreed.  The Associate United States Attorney subsequently emailed Bove to memorialize his determination.

---

[9] Despite the proposed substitution, Chaudhry appears to continue to represent Wang.  On July 31, 2023, Chaudhry sent the Office an eight-page letter requesting a Bill of Particulars.

## ARGUMENT

### I.  Because Bove Previously Supervised a Federal Criminal Investigation of Kwok, Bove Should Be Disqualified from Representing Kwok's Co-Defendant

To safeguard the United States's confidential information, ensure fairness, and protect the integrity of the adversary process, Bove should be disqualified from representing a defendant in this prosecution.  Bove directly supervised the TIN Matter—one of this Office's investigations of Kwok—*concurrently* with the investigation of Kwok that led to the charges in this case.  As a result, Bove had knowledge of, or access to, confidential and classified factual matters that are potentially relevant to this prosecution. These circumstances plainly call for Bove's disqualification under Second Circuit precedent, ethical rules, and statutory prohibitions. Moreover, Bove's proposed client, Wang, cannot knowingly waive Bove's conflicts, because Bove is restricted from informing Wang of material facts of his prior representation of the United States in connection with its investigation of Kwok.  That inability risks tainting the trial, to the prejudice of the Government, should it obtain a conviction.  Conversely, Wang will not be prejudiced by Bove's disqualification, as the Government has sought his disqualification promptly, minimizing any potential delay, and Wang will retain her other lawyer in all events. For these reasons, the Court should disqualify Bove.

#### A.  Applicable Law

The Sixth Amendment gives a criminal defendant the right to the assistance of counsel. U.S. Const. amend. VI.  The right to counsel under the Sixth Amendment entails a correlative right to representation that is free from conflicts of interest. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). While a defendant generally may waive her Sixth Amendment right to an unconflicted attorney, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom

11

he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988); *United States v. Lussier*, 71 F.3d 456, 461 (2d Cir. 1995). A "defendant's right to counsel of his choice is not an absolute one." *United States v. Ostrer*, 597 F.2d 337, 341 (2d Cir. 1979) (citations omitted).

When deciding motions for disqualification in criminal cases, the court must balance a defendant's right to counsel of her choice and "the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." *United States v. Levy*, 25 F.3d 146, 155 (2d Cir. 1994); *see United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) ("Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."). The power to disqualify an attorney derives from a court's "inherent power to preserve the integrity of the adversary process," *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005), and "is a matter committed to the sound discretion of the district court." *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994).

Because disqualification motions may cause delay and "are often tactically motivated," they are "generally not favored." *United States v. Shea*, 20 Cr. 412-4 (AT), 2022 WL 4298704, at *6 (S.D.N.Y. Sept. 19, 2022) (quotations omitted); *see id.* ("Disqualification is reserved for situations of prior representation, conflicts of interest, prosecutorial misconduct, and other unethical attorney behavior." (quotations omitted)). Nevertheless, courts in the Second Circuit "have not hesitated to disqualify counsel when the circumstances warranted it." *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983). In such a situation, "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).

12

### 1. The *Evans* Test

When a former client seeks to disqualify an adverse party's counsel, the applicable test in the Second Circuit is well established.  Specifically, the Second Circuit has held that disqualification of an adverse party's counsel is warranted where: "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client." *United States v. Prevezon Holdings, Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016) (citing *Evans*, 715 F.2d at 791 and N.Y. Rules of Prof'l Conduct 1.9(a)).[10]  The *Evans* test "focuses on identifying situations in which there exists the *potential* that confidential information obtained during representation of an adverse party could be used in the present action."  *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 269 (E.D.N.Y. 2015) (emphasis in original); *accord Pergament v. Ladak*, No. CV 2011-2797 ARR MDG, 2013 WL 3810188, at *3 (E.D.N.Y. July 23, 2013) ("The central concern underlying disqualification based on successive representation is the *possibility however slight*, that confidential information acquired from a client during a previous relationship may subsequently be used to the [former] client's disadvantage." (quotations omitted) (emphasis

---

[10] Rule 1.9 of the New York Rule of Professional Conduct provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  N.Y. Rules of Prof'l Conduct 1.9(a).  Subsequent representations are "substantially related" if, among other things, they "involve the same transaction or legal dispute or if, under the circumstances, a reasonable lawyer would conclude that there is otherwise a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."  N.Y. Rules of Prof'l Conduct 1.9, cmt. 3.

added)).   Thus, "'disqualification motions should be granted where the attorney in question is *potentially* in a position to use privileged information obtained during prior representation of the movant.'" *United States v. James*, 708 F.2d 40, 45 (2d Cir. 1983) (quoting *United States v. Cunningham*, 672 F.2d 1064, 1072 (2d Cir. 1982)) (emphasis added); *accord Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (disqualification is warranted "where an attorney is *at least potentially* in a position to use privileged information concerning the other side through prior representation" (emphasis added)).

With respect to the test's second prong, a "'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." *Prevezon Holdings, Ltd.*, 839 F.3d at 239.  The inquiry turns not on "whether the legal claims or underlying theories are similar, but rather whether the successive representations share common material fact issues." *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 272-73 (E.D.N.Y. 2015); *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 392 (S.D.N.Y. 2010) ("It is the congruence of *factual* matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes.") (quoting *U.S. Football League v. National Football League*, 605 F. Supp. 1448, 1460 n.6 (S.D.N.Y. 1985) (emphasis in original) (collecting cases)).  In determining whether a "substantial relationship" exists between two matters, courts have considered, among other things, the breadth of the prior relationship, the extent to which the matters are related, and the timing between the first and second matter.  *See, e.g.*, *Hickman v. Burlington Bio-Med. Corp.*, 371 F. Supp. 2d 225, 230 (E.D.N.Y. 2005).

Once a substantial relationship between two cases is established, the moving party need not prove that the former attorney had access to relevant privileged information.  Instead, "where

the same individual lawyer participated in the prior and current representation, the movant is not required to make a specific showing that confidences were passed to counsel.  Instead, the movant is entitled to the benefit of an irrebuttable presumption that confidences were shared." *Prevezon Holdings, Ltd.*, 389 F.3d at 240.  In other words, the substantial relationship test removes the need for courts to make direct inquiry into whether confidential information was actually transmitted. *Id.* at 241.  After finding that a substantial relationship exists,

> The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.  It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

*Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 570 (2d Cir. 1973) (quoting *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 268-69 (S.D.N.Y. 1953)).  Indeed, disqualification has been warranted to avoid the "risk [of] the chance" that an attorney's "unconscious impressions might be influenced by [his former client's] confidential information." *TufAmerica, Inc. v. Codigo Music LLC*, No. 11 Civ. 1434, 2013 WL 1903867, at *5 (S.D.N.Y. May 7, 2013) (disqualification of attorney sustained regardless "whether or not confidences were shared or either party recalls the confidences" because the current and former matters were substantially related).

### 2.   Ethical and Criminal Prohibitions Specific to Former Government Attorneys

"Public service is a public trust."  5 C.F.R. § 2635.101.  The above standards—and others discussed below—apply to former Department of Justice attorneys who seek to represent private clients in matters related to their government service, and courts have consistently given close scrutiny to situations involving "side switching" government attorneys. *See, e.g.*, *United States v. Philip Morris, Inc.*, 312 F. Supp. 2d 27, 38 (D.D.C. 2004) (court "must be especially careful" in

such situations).   Considerations that weigh in favor of disqualification in situations involving former government attorneys include:

> [t]he treachery of switching sides; the safeguarding of confidential information from future use against the government; the need to discourage government lawyers from handling particular assignments in such a way as to encourage their own future employment in regard to those particular matters after leaving government service; and the professional benefit derived from avoiding the appearance of evil.

*United States v. Escobar-Orejuela*, 910 F. Supp. 92 (E.D.N.Y. 1995) (quoting *United States v. Brothers*, 856 F. Supp. 370, 375 (M.D. Tenn. 1992)).

New York Rule of Professional Conduct 1.11 applies the principle of Rule 1.9 more specifically in the context of former government employees: a former government lawyer "(1) shall comply with Rule 1.9(c); and (2) shall not represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee," absent consent of the appropriate government agency.  N. Y. R. Prof'l Conduct 1.11(a)(2).  As the District of Columbia Court of Appeals explained with respect to a similar rule in that District, the limitations on former government lawyers' future representations are "meant to induce a former government lawyer considering a representation to err well on the side of caution."  *In re Sofaer*, 728 A.2d 625, 638 (D.C. 1999).  "Substantially" has been interpreted to mean "substantively," not "extensively"—requiring some involvement, but not necessarily direct responsibility.  *See, e.g., United States v. Smith*, 995 F.2d 662, 675-76 (7th Cir. 1993) (concluding that an attorney's role as immediate supervisor of the attorney in charge of an investigation that was intertwined with the investigation and prosecution at issue were sufficient for the district court to conclude that the attorney had "substantial involvement" with the investigation and thus was presumed to have "received confidential information."); *United States v. Uzzi*, 549 F. Supp. 979 (S.D.N.Y. 1982)

16

(disqualifying law firm of former AUSA, despite former AUSA being walled-off at the firm, and despite the former AUSA having "never had administrative or supervisory responsibilities for the investigation and had no recollection of any substantive aspect of the case" (quotations omitted)). The term "matter" has been given a broad definition, being satisfied when "the former government attorney may have had access to information legally relevant to, or otherwise useful in, the subsequent representation." *Brown v. District of Columbia Bd. of Zoning Adjustment*, 486 A.2d 37, 49-50 (D.C. 1984) (en banc) (recognizing that this standard "broadened the scope of the 'substantially related' test for revolving door purposes").

Former Department of Justice attorneys are also subject to statutory prohibitions relating to conflicts of interest. Title 18, United States Code, Section 207 prohibits certain acts by former government employees that "involve, or may appear to involve, the unfair use of prior Government employment." 5 C.F.R. § 2641.101 (explaining the scope and content of 18 U.S.C. § 207 as it applies to former government employees). The post-employment restrictions under Section 207 vary depending on, among other factors, the nature of the individual's involvement in a prior matter. Former Department of Justice attorneys are *permanently* barred from appearing as private attorneys "in connection with a particular matter" if: (a) the United States "is a party," (b) "the person participated personally and substantially" in the matter as a Government employee, and (c) the matter "involved a specific party or specific parties at the time of such participation." 18 U.S.C. § 207(a)(1). A "particular matter" includes "any investigation, application, . . . or judicial or other proceeding." 18 U.S.C. § 207(i)(3). "The term 'participated' means an action taken as an officer or employee through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or other such action." 18 U.S.C. § 207(i)(2).

17

Even where a former government supervisor did not "participate" in a prior matter, the former supervisor may be subject to a two-year cooling-off period.  Specifically, a former government attorney is restricted from appearing before any court in connection with a particular matter involving specific parties for a period of two years when "such person knows or reasonably should know [the matter] was actually pending under his or her official responsibility as such officer or employee within a period of 1 year before the termination of his or her service or employment."   18 U.S.C. 207(a)(2).   "[O]fficial responsibility" is defined as "the direct administrative or operating authority, whether intermediate or final, and either exercisable alone or with others, and either personally or through subordinates, to approve, disapprove, or otherwise direct Government action."  18 U.S.C. § 202(b).

### 3.  Knowing Waivers of Conflicts

Where a court determines that a conflict of interest exists between an attorney and his current client that is not so severe as to require disqualification automatically, a court may permit the attorney to continue representing that client only if the client makes a "knowing and intelligent waiver of his right to conflict-free counsel." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004); *accord United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003).   Informed consent "requires that each affected client be aware of the relevant circumstances, including the material and reasonably foreseeable ways that the conflict could adversely affect the interests of that client." *Filippi v. Elmont Union Free Sch. Dist. Bd. Of Educ.*, 722 F. Supp. 2d 295, 311 (E.D.N.Y. 2010). A client must be given sufficient information to fully understand that potential conflict before any waiver can be "knowing and intelligent."  *See, e.g.*, *United States v. Armedo-Sarmiento*, 524 F.2d 591, 593 (2d Cir. 1975) ("The district judge should fully explain to [defendants] the nature of the conflict . . . ."); *see generally United States v. Curcio*, 680 F.2d 881, 888 (2d Cir. 1982) ("The first

task of the trial court is to alert the defendants to the substance of the dangers of representation by an attorney having divided loyalties in as much detail as the court's experience and its knowledge of the case will permit."). If counsel cannot apprise his client of the full extent of the conflict—because doing so would require divulging privileged or confidential information—then the client cannot make a "knowing and intelligent waiver." *United States v. Pappa*, 37 F. App'x 551, 554 (2d Cir. 2002) (client could not make "knowing and intelligent" waiver where "attorney-client privilege precluded [current defense counsel] from divulging all of the details of the conflicts . . . and because [defense counsel's] explanation of the conflict indicated there was 'more here than meets the eye'").

A district court has "substantial latitude in refusing waivers of conflicts of interest," not only "in those rare cases where an actual conflict may be demonstrated before trial" but also "in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 162-63. This discretion is necessary because "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict. . . . Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them." *Id.*

Moreover, the Government has an independent interest in ensuring that waivers of conflict of interest are sufficiently informed. Where defense counsel operates with a conflict of interest, the Government's interest in a conviction that can withstand appellate scrutiny and collateral attack is prejudiced. An insufficient waiver can be the basis of a successful collateral attack on an otherwise valid conviction. *See I&Yy*, 25 F .3d at 152 ("a defendant has suffered ineffective assistance of counsel . . . if his attorney has (1) a potential conflict of interest that resulted in

prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance").   "In the disqualification situation, any doubt is to be resolved in favor of disqualification."  *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).

## B. Discussion

Bove should be disqualified to preserve the legitimate interests of the United States in the confidentiality of its privileged information, internal deliberations, and classified information, and to preserve the fairness and integrity of this criminal prosecution.  Specifically, Bove should be disqualified on at least three grounds.  *First*, disqualification is warranted under the Second Circuit's *Evans* test.  *Second*, the ethical rules and statutory prohibitions applicable to former government attorneys bar Bove's representation and require his disqualification.  *Third*, Bove should be disqualified to avoid tainting the trial, as Wang cannot knowingly waive Bove's conflicts.

### 1. Bove Should Be Disqualified Under the *Evans* Test

Application of the *Evans* test calls for Bove's disqualification.  *See Evans*, 715 F.2d at 791. There can be no dispute that the first requirement is satisfied: the moving party, the United States, is Bove's former client.  And since the third requirement (access to confidential information) is presumed from the second, Bove's disqualification turns on the second requirement, namely whether there is a "substantial relationship" between the TIN Matter and this case.  *Prevezon Holdings, Ltd.*, 389 F.3d at 240.  Because "facts pertinent to" issues in the TIN Matter "are relevant to" this criminal prosecution of Kwok and Wang—Kwok's long-time deputy, including at the time of the TIN investigation—such a "substantial relationship" exists.  *Id.*

*First*, Kwok—the leader of the criminal enterprise charged in this case—was not a peripheral figure in the TIN Matter.  Kwok was the *focus* of the TIN Matter.  Wang worked for

Kwok at the time, serving as his effective chief of staff and at times as his translator.  And the TIN Matter directly overlapped with the time period of the charged offenses in this case.  The Indictment alleges that the offense conduct began in or about 2018 and continued at least through the defendants' arrests; the TIN Matter began in the fall of 2019 and continued during Bove's entire tenure as a TIN supervisor.  Notably, in October 2019, the TIN investigation executed search warrants at Kwok's office and penthouse residence, during which approximately 252 electronic devices were recovered.  Over the ensuing months, Bove supervised the TIN investigation as it, among other things, processed the results of that search and reviewed evidence.

Based on these points alone,[11] there can be no question that the TIN Matter that Bove supervised involved facts that are potentially relevant to the criminal case against Kwok and Wang. Indeed, months before Bove's notice of appearance, the Government had already relied on "facts pertinent to" the TIN Matter in its detention memorandum *in this case*.  (*See* Dkt. 7, at 20 ("[I]n October 2019, in connection with an unrelated investigation of Kwok, the FBI executed a search warrant on Kwok's New York City penthouse.  During that judicially-authorized search, the FBI recovered approximately 252 electronic devices (*i.e.*, cellphones, hard drives, flash drives, computers, routers, audio pens, and voice recorders, among other devices), including approximately 96 cellphones, approximately 44 of which were located inside Faraday bags in safes. Another approximately six iPhones were maintained in a Faraday bag inside a desk drawer.")).[12]  Moreover, the penthouse that was subject to a search warrant in the TIN Matter in

---

[11] Facts overlap in other ways.  For example, based on review of one of Wang's cellphones obtained as a result of a search warrant in this case, Wang conducted an internet search for FBI Agent-1 on February 16, 2023—approximately one month before her arrest.

[12] The Government has provided the NSIN investigation's search warrant affidavits and the search inventories to the defendants in this case as part of its Rule 16 discovery.

October 2019 is the same penthouse where Kwok was arrested on the charges in this case on March 15, 2023.  And on the day of Kwok's arrest, the FBI executed a search warrant at the same penthouse and seized a large volume of devices and other evidence.

*Second*, while trial in this case is not set to begin for eight months and the Government does not know definitively the witnesses it will call at trial, the Government may offer evidence or call witnesses in its case-in-chief, or as part of a rebuttal case,[13] related to the TIN Matter.  *See United States v. Escobar-Orejuela*, 910 F. Supp. 92, 100 (E.D.N.Y. 1995) (knowledge of "confidential information regarding any direct evidence [the Government] will adduce at trial" is grounds for disqualification). ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████  That prospect alone compels Bove's disqualification.  *See Ostrer*, 597 F.2d at 340 (affirming disqualification of former AUSA because conflict of interest rules apply "not only where the issues involved in the lawyer's former and present representation are the same, but also where, as here, the privileged information obtained in the course of the former representation may be used to impeach or discredit important Government witnesses in a closely related matter"); *United States v. James*, 708 F.2d 40, 44–46

---

[13] The defense has previously estimated that the defense case will last approximately three weeks.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████

(2d Cir. 1983) (affirming disqualification because "interrogation stemming from confidential communications . . . would give the defendants an advantage that is unfair" and would create an unacceptable "arrangement so open to violation of significant interests" of fairness).

Moreover, to the extent that Wang seeks to blame Kwok for her activities, Bove could be in a position to utilize information he obtained as a Government employee investigating Kwok to advance Wang's interest. On the other hand, to the extent Wang and her counsel enter a joint defense agreement with Kwok and others—through which information is shared among defendants and/or subjects, and which is not uncommon in cases with multiple defendants and/or subjects[14]—confidential information from Bove's government service supervising the TIN Matter could be used improperly for the benefit of others besides Wang. Applicable statutes and rules prohibit these possibilities for good reason.

*Third*, the TIN Matter that Bove supervised existed concurrently with the investigation that led directly to the charges in this case. While the investigation that led to the case before this Court, which began in the summer of 2020, arose independently from and was conducted independently of the TIN Matter, that is not determinative of whether there exists a "substantial relationship" between the two matters, such that the TIN Matter involved confidential facts relevant to this case. As the supervisor of *an* investigation of Kwok, Bove was at a minimum "aware" of *this* fraud investigation of Kwok and his co-conspirators, including Wang. (*See* Ex. B (July 1, 2020 email).) Access to such information raises the concerns that call for disqualification. *See United States v. Huawei Techs. Co.*, No. 18 Cr. 457 (AMD), 2020 WL 903007 (E.D.N.Y. Feb. 25, 2020) (disqualifying the former Deputy Attorney General of the United States based on his

---

[14] ███████████████████████████████████████

access to relevant confidential information during service in government, which he had left five years prior); *United States v. Miller*, 624 F.2d 1198, 1202 (3d Cir. 1980) (opining, in a case where a former AUSA testified that he had no direct involvement in the preparation of the prosecution at issue, that "[i[f the court's hypothetical private citizen were to view the present case, he would see that [the former AUSA] had some involvement in almost all criminal tax cases in the U.S. Attorney's office, including Strike Force cases.  The citizen would see little to assure himself that [the former AUSA] had not utilized his position to obtain confidential information or to serve conflicting loyalties.").

*Fourth*, see classified supplement part II.

*Finally*, it is irrelevant that Bove may not at this time recall the details of the Kwok investigations from his time in the U.S. Attorney's Office.  Indeed, even if Bove does not now recall certain details, his participation in the case may refresh his memory at any point.  *See, e.g.*, *United States v. Uzzi*, 549 F. Supp. 979, 981–83 (S.D.N.Y. 1982) (disqualifying the law firm of a former AUSA, notwithstanding the facts that the former AUSA was walled-off from the case at the law firm, and the former AUSA "could barely remember even discussing the case" with the line prosecutor while at the U.S. Attorney's Office, reasoning in part that "[m]emory is not so fixed and absolute that we can say with confidence: [the former AUSA] has forgotten everything"); *Huawei Techs. Co.*, 2020 WL 903007, at *5 ("The fact that [the former Deputy Attorney General of the United States] currently has 'no recollection of the matters' (ECF No. 51-1) does not change the analysis.").

24

### 2. Bove Should be Disqualified Under New York Rule of Professional Conduct 1.11(a)(2) and 18 U.S.C. § 207

Bove should also be disqualified because the ethical and statutory standards set forth, respectively, in New York Rule of Professional 1.11(a)(2) and 18 U.S.C § 207(a)(1)-(2), bar his representation of Wang.

*First*, for the same reasons that the TIN investigation and this case are substantially related, they qualify as the same "matter" for purposes of Rule 1.11(a)(2).  So too under Section 207, as "matter" there includes an investigation or judicial proceeding, and at the time of Bove's participation the TIN investigation involved a specific party: Kwok, the same party being prosecuted in this case by the same prosecutor's office, and the co-defendant of Bove's proposed client.  And as noted above, the record makes clear that Bove had received information relating to the CFU investigation of Kwok, which led to the charges in this case.

*Second*, Bove participated personally and substantially in the TIN Matter under both provisions.  Bove supervised the TIN Matter as Co-Chief of the TIN Unit.[15]  He was privy to the fruits of the search warrants executed against Kwok and the United States's assessments of that evidence.  He received confidential information and updates, was briefed and consulted by the line AUSAs, and provided advice and guidance.  That amply satisfies the applicable standards for former government attorneys.  *See, e.g.*, *United States v. Smith*, 995 F.2d 662, 675-76 (7th Cir. 1993) (concluding that an attorney's role as immediate supervisor of the attorney in charge of an investigation that was intertwined with the investigation and prosecution at issue were sufficient for the district court to conclude that the attorney had "substantial involvement" with the

---

[15] This Office has long taken the view that, unless recused, unit chiefs participate personally and substantially in *all* matters within their unit.

investigation and thus was presumed to have "received confidential information"); *United States v. Uzzi*, 549 F. Supp. 979 (S.D.N.Y. 1982) (disqualifying law firm of former AUSA, despite former AUSA being walled-off at the firm, and despite the former AUSA having "never had administrative or supervisory responsibilities for the investigation and had no recollection of any substantive aspect of the case," because the former AUSA informally consulted on the investigation) (quotations omitted); *United States v. Brothers*, 856 F. Supp. 370 (M.D. Tenn. 1992) (disqualifying former AUSA who assisted in the drafting and filing of a search warrant and a seizure warrant as a courtesy to an out-of-district investigation).

*Third*, even assuming, *arguendo*, that Bove's involvement in the TIN investigation did not rise to the level of substantial participation, Bove is still within the two-year ban for matters that were "actually pending under his . . . official responsibility . . . within a period of 1 year before" he left the U.S. Attorney's Office.  18 U.S.C. § 207(a)(2).  As Co-Chief of the TIN Unit, Bove supervised the TIN investigation, so he exercised "direct administrative or operating authority, whether intermediate or final, and either exercisable alone or with others, and either personally or through subordinates, to approve, disapprove, or otherwise direct Government action."  18 U.S.C. § 202(b).  Bove held his position as Co-Chief until December 2021, and the TIN investigation was pending when Bove left the Office.  Accordingly, Bove's participation in this matter is proscribed by 18 U.S.C. § 207(a)(2) until at least December 2023.

### 3.  Bove Should Be Disqualified to Avoid Trial Taint

The Government has an interest in "ensuring a just verdict and a fair trial" in this case. *Levy,* 25 F.3d at 155.  That interest will be prejudiced if Bove represents Wang, because Wang will not be able adequately to waive any conflict created by Bove's role.  As a result,

any conviction would likely be vulnerable to an appeal or collateral attack based on a claim of ineffective assistance of counsel.

Bove may be in possession of information he learned when he supervised the TIN Matter, including classified information that he cannot reveal, let alone use, in this representation. This dynamic creates a conflict of interest given that Bove cannot give his clients his undivided loyalty. *See* N. Y. R. Prof'l Conduct l.7(a)(2). The conflict could arguably be resolved by obtaining a knowing and intelligent waiver of any potential conflict from Wang. *See Jones,* 381 F.3d at 119; see also N. Y. R. Prof'l Conduct 1.7(b)(4). Here, however, because Bove may be also aware of classified information, Bove cannot provide Wang with more than the most cursory description of the conflict—that he knows something related to his current representation of Wang that he cannot share or use—because he is not permitted to do so. The limited information Bove could share is far short of what would be required for Wang to waive the potential conflict at issue here knowingly and intelligently. *See, e.g., Pappa*, 37 F. App'x at 554 (statement by a Federal Defender representing defendant that the Federal Defenders had previously represented a potential government witness, but not divulging "all of the details of the conflicts," was insufficient to allow a knowing and intelligent waiver of a potential conflict); *Armedo-Sarmiento*, 524 F.2d at 593 ("The district judge should fully explain to [defendants] the nature of the conflict."); *United States v. Schwarz*, 283 F.3d 76, 95 (2d Cir. 2002) (vacating conviction and ordering a new trial due to conflicted counsel, notwithstanding the defendant's waiver at a *Curcio* hearing). Because Wang cannot knowingly and intelligently determine whether to waive the conflict, any

representation by Bove may taint the trial process and any ultimate conviction, prejudicing the Government and wasting judicial resources.  As a result, Bove should be disqualified.

## **CONCLUSION**

The Government does not make this motion lightly.  This motion was specifically authorized, reviewed, and approved by the Chief of the Criminal Division and the Associate United States Attorney, who is the Ethics Advisor for the U.S. Attorney's Office.  The application of the facts to the law is clear:  Bove is not permitted to represent a defendant in this case.  In 2022, Bove recognized that prior Government employment barred him from representing an individual associated with Kwok (Mei Guo) because, as a Government employee, he supervised an investigation of Kwok.  But eighteen months later, Bove has changed his position, and seeks to represent Kwok's chief of staff in this criminal case.  The Government now asks this Court to safeguard the United States's confidential information, ensure fairness, and protect the integrity of this matter by disqualifying Bove from representing Wang.

Accordingly, the Government's motion should be granted.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____/s/_____
     Julianna N. Murray
     Ryan B. Finkel
     Micah F. Fergenson
     Assistant United States Attorneys
     212-637-2314 / -6612 / -2190