UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES,

v.

YANPING WANG,

                Defendant.

No. 23 Cr. 118 (AT)

**SUR-REPLY IN FURTHER OPPOSITION TO
GOVERNMENT'S MOTION TO DISQUALIFY COUNSEL**

Emil Bove
Chiesa Shahinian & Giantomasi PC
11 Times Square, 34th Floor
New York, NY 10036
(212) 324 7265
ebove@csglaw.com

*Attorney for Yanping Wang*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

DISCUSSION .................................................................................................................................. 1

    I.    HEAVILY REDACTED *EX PARTE* SUBMISSIONS DO NOT YIELD UNDISPUTED FACTS ............................................................................... 1

    II.    THE PROSECUTORS CANNOT ESCAPE THE TEXT OF RULE 1.11(A) AND § 207(A) ................................................................................ 3

        A.    "Matter" Does Not Mean "Matters" ............................................................. 3

        B.    "Official Responsibility" Is Not The Same As "Personal And Substantial" ....................................................................................................... 4

    III.    THE PROSECUTORS HAVE NOT MET THEIR BURDEN UNDER THE *EVANS* TEST ........................................................................... 5

        A.    Public Information Is Not "Privileged" ........................................................ 6

        B.    Non-Privileged "Context" Does Not Establish A Substantial Relationship ................................................................................................... 8

        C.    *Prevezon Holdings* Did Not Abrogate The Prosecutors' Heavy Burden ................................................................................................. 10

    IV.    THE POTENTIAL CONFLICT IS WAIVABLE ............................................. 12

CONCLUSION ............................................................................................................................. 13

**PRELIMINARY STATEMENT**

The prosecutors' reply submission is a strained effort in further pursuit of an unconstitutional objective: disqualification of Ms. Wang's chosen counsel in a case I did not supervise, based on a separate investigation that involved search warrants I have not seen. Facing a heavy burden, the prosecutors self-servingly credit themselves with having established "undisputed" facts based on *ex parte* submissions I am unable to contest. They ignore the plain meaning of terms like "matter," "particular matter," and "substantial participation" in Rule 1.11(a) and § 207(a). Under *Evans*, the prosecutors try to dodge their prior representation to the Court regarding the TIN Matter, and they frivolously suggest that binding appellate precedent requiring that the matters be "identical" and "essentially the same" has been impliedly abrogated by *Prevezon Holdings*. The prosecutors fail to acknowledge that public information is not "privileged," and that non-privileged "context" cannot be used to expand the TIN Matter so that it sounds more related to this case. Instead, they re-emphasize that Mr. Kwok was the "focus" of the TIN Matter, without recognizing that the 2019 warrants do not reference Ms. Wang or the entities in this case, and without submitting the warrant materials so that the Court can evaluate these arguments.

None of these contentions can withstand the level of scrutiny that Ms. Wang's Sixth Amendment right requires. Accordingly, the motion should be denied, and the Court should hold a *Curcio* hearing.

**DISCUSSION**

**I.     Heavily Redacted *Ex Parte* Submissions Do Not Yield Undisputed Facts**

The prosecutors "carry a heavy burden and must satisfy a high standard of proof." *United States v. Shea*, No. 20 Cr. 412 (AT), 2022 WL 4298704, at *6 (S.D.N.Y. Sept. 19, 2022) (cleaned up). At least six times in their reply, they contend that there is no "dispute" regarding certain

1

issues. (Gov't Reply at 2, 5, 12 n.9, 13, 16).[1] They find this "notable" and "telling." (*Id.* at 2, 12 n.9, 13 (cleaned up)). They go so far as to proclaim that I am "not even seriously disputing the majority" of their "factual assertions." (*Id.* at 12 n.9).

These are bold claims indeed from prosecutors relying on a heavily redacted, unsworn brief. I have sworn under penalty of perjury to my recollection of the TIN Matter. (*See* Aug. 7, 2023 Declaration of Emil Bove ("Bove Decl.")). Ms. Wang and I do not have access to the most important parts of this disqualification motion. Our inability to contest factual claims should be regarded as nothing more than a constitutionally dangerous consequence of the manner in which the prosecutors have proceeded.

If the Court determines that *ex parte* filings are appropriate, we have full confidence that Your Honor will carefully examine submissions from prosecutors who just months ago averred in writing that the TIN Matter was unrelated to this case. The prosecutors find it "[n]eedless to say" that they did not mean what they said in March 2023. (Gov't Reply at 3). Their more recent submissions further illustrate the importance of close scrutiny. (*Compare* Gov't Mem. at 7 (arguing that "[i]*n the ensuing months*, Bove's Co-Chief became conflicted from some aspects of the TIN Matter" and "[Bove] continued receiving updates" as "the sole direct supervisor of the TIN Matter"), *with* Gov't Reply at 15 n.11 (clarifying that "Bove was the only supervisor on the TIN Matter" from "*early November 2020 through . . . the end of November 2020*") (emphases added)). While perhaps this is the type of information that the prosecutors regard as "semantic[s]," the accuracy of their word choices should matter. (Gov't Reply at 16). As the Court suggested by

---

[1] "Gov't Mem." refers to the prosecutors' August 4, 2023 opening brief. (Dkt. No. 120). "Wang Opp'n" refers to Ms. Wang's August 7, 2023 brief in opposition to the motion. (Dkt. No. 124). "Gov't Reply" refers to the prosecutors' August 9, 2023 reply submission. (Dkt. No. 125).

2

its order requiring the prosecutors to submit affidavits, timeframes and specifics are critical to this motion. In light of the vague and *ex parte* factual assertions in their briefing thus far, and my sworn declaration, the prosecutors give themselves far too much credit regarding the state of the record.

**II.       The Prosecutors Cannot Escape The Text Of Rule 1.11(a) and § 207(a)**

Rule 1.11(a) and § 207(a) are distinct from the *Evans* test, and they do not prohibit my representation of Ms. Wang.

**A.     "Matter" Does Not Mean "Matters"**

The prosecutors argue that the TIN Matter and this case are "the same 'matter'" because they "are 'substantially related.'" (Gov't Reply at 10). The fatal flaw in their argument is that the term "substantially related" does not appear in Rule 1.11(a) or § 207(a).

Faced with a reality that does not suit their mission, the prosecutors argue that *Evans* applies to Rule 1.11(a) and § 207(a) because they are "motivated by the same concern." (Gov't Reply at 1). The prosecutors' motive argument is not a basis for ignoring or supplementing the words chosen by the authors of these authorities—particularly given the constitutional interests that Ms. Wang has at stake. *See, e.g.*, *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms . . . ."). Grasping for support, the prosecutors cite Rule 1.11(a)(1), which incorporates Rule 1.9(c). (Gov't Reply at 2). Neither of those provisions prohibits successive representations. Thus, those Rules do not support disqualification. Rules 1.9(a) and 1.9(b) prohibit successive representations in "the same or a substantially related matter," which is the phrase that gave rise to *Evans* and its progeny in civil litigation without the Sixth Amendment. But Rule 11.1 does not incorporate those aspects of Rule 1.9, and Rule 1.11(a)(2) only applies to the same "matter." *See O & G Indus., Inc. v. Nat'l R.R. Passenger Corp.*,

3

537 F.3d 153, 161 (2d Cir. 2008) ("Because the language is unambiguous on this point, we cannot supply that which is omitted by the legislature."). The prosecutors point out that the commentary to Rule 1.11 "does not even mention the phrase 'substantially related.'" (Gov't Reply at 10). That is because there is no basis for their campaign to add that phrase to the Rule.

The result is the same with respect to § 207(a), which uses the more emphatic "particular matter" and, like Rule 1.11(a), lacks the phrase "substantially related." Two opinions from DOJ's Office of Legal Counsel dictate that the Rule of Lenity "requires that any remaining ambiguity in [§ 207] be construed so as to narrow, not broaden, the statute's prohibitions." 25 U.S. Op. Off. Legal Counsel 120, 2001 WL 36209373, at *5 (June 20, 2001) (citing October 17, 1990 OLC memorandum reaching the same conclusion). While I appreciate the prosecutors' clarification that I am "not a criminal defendant," the same was true of the former government attorneys at issue in those memoranda. (Gov't Reply at 10). The prosecutors elsewhere cloak themselves in the auspices of their employer—referring to "the United States's confidential information"—but they are unduly dismissive of the considered views of attorneys working under the same flag in the same agency. (*Id.* at 1, 19). The Rule of Lenity applies because § 207(a) is a criminal statute, and lenity principles provide further support for the conclusion that the prosecutors should not be permitted to deprive Ms. Wang of her Sixth Amendment right.

### B. "Official Responsibility" Is Not The Same As "Personal And Substantial"

Rule 1.11(a) and § 207(a) do not apply for the additional reason that I did not participate "personally and substantially" in the CFU investigation that led to this case. The prosecutors have described that investigation as "independent." (Gov't Reply at 3). I was never a member of CFU, and the prosecutors have backed away from the meritless suggestion that an attorney participates

4

"personally and substantially" in a matter whenever s/he is "aware" of it. (*E.g.*, Gov't Mem. at 23).

With regard to the TIN Matter, the prosecutors conflate "official responsibility" with personal and substantial participation. My declaration in *Nejad*, which I stand by, establishes that the TIN Matter was within my "official responsibility." *See* 18 U.S.C. §§ 202(b), 207(a)(2)(B). The phrase "personally and substantially" requires more. *See* 5 C.F.R. § 2641.201(i)(1) ("An employee does not participate in a matter merely because he had knowledge of its existence or because it was pending under his official responsibility."); *see also United States v. Medico Indus. Inc.*, 784 F.2d 840, 843 (7th Cir. 1986).

The prosecutors protest that I have focused too much on the use of a single word, "unrelated," in their March 2023 letter to the Court. (Gov't Reply at 3). Yet they devote nearly a page of their reply to speculating about the meaning of a six-word email that I sent to my former colleagues in October 2019: "Do you guys have a USAO#?" (Gov't Reply at 12-13). A search warrant may not be "the *sine qua non* of substantial participation," but neither is a "case update." (Gov't Reply at 12, 15). The prosecutors have thus far not submitted the 2019 warrants to the Court, but the drafting and submission of those warrants appears to have been the most significant step undertaken in the TIN Matter. I did not participate in the preparation of those documents because of my role in the *Hernandez* case, and I have no recollection of ever seeing them. (Bove Decl. ¶¶ 7-8). For all of these reasons, the prosecutors have not established that I participated "personally and substantially" in the TIN Matter, much less the CFU investigation that led to this case. For this additional reason, Rule 1.11(a) and § 207(a) do not apply.

### III.     The Prosecutors Have Not Met Their Burden Under The *Evans* Test

Public information and documents disclosed in discovery cannot support the type of access to "privileged" information from a former client that warrants disqualification. Similarly, so-

called "context," *i.e.*, non-privileged events that occurred before or during the TIN Matter, do not establish the required substantial relationship under *Evans*.

### A. Public Information Is Not "Privileged"

If the *Evans* test applies, the prosecutors should be required to demonstrate that I had access to "relevant privileged information."[2] Existing disclosures regarding what might otherwise be considered sensitive information underscore the need for the prosecutors to establish with specificity, and by affidavits, the confidences they believe require disqualification. *See Tradewinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901, 2009 WL 1321695, at *5 (S.D.N.Y. May 12, 2009) (reasoning that movant "cannot satisfy his high standard of proof merely by drawing a 'reasonable inference' of misconduct, or with vague speculation about prohibited disclosures").

Thus far, the prosecutors have submitted general, *ex parte* descriptions of the information they regard as "the Government's confidential information." (Gov't Mem. at 3 n.2). "Confidential government information" is information "that has been obtained under governmental authority and that, at the time [Rule 1.11] is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and that is not otherwise available to the public." Rule 1.11(c); *see also* Cmt. 3, Rule 1.9 ("Information that has been disclosed to the public . . . will not be disqualifying."). The prosecutors acknowledge that they have "already publicly relied on information derived from the TIN Matter." (Gov't Reply at 2-3). For example, they elected not

---

[2] Despite the prosecutors' heavy burden, and notwithstanding the Sixth Amendment, they continue to urge the Court to presume—without evidence—that I accessed relevant privileged information under the *Evans* test. (Gov't Reply at 7-8). The authorities cited by the prosecutors do not support such a presumption because (1) this case did not arise from the TIN Matter I supervised, and (2) the prosecutors have not identified "specific confidential information" that I accessed previously and can be used to their detriment. (*See* Wang Opp'n at 20).

6

to submit the following information *ex parte*, which has been disclosed to the public and is therefore not "privileged" under *Evans*:

- The FBI searched the Sherry-Netherland Hotel during the fall of 2019 and seized the items described in the prosecutors' March 2023 letter. (*See* Dkt. No. 7 at 20; *see also* Gov't Mem. at 4).

- Mr. Kwok had interactions with the FBI in 2018 and 2019, including with "FBI Agent-1." (Gov't Mem. at 2).

- Ms. Wang worked for Mr. Kwok. (Gov't Mem. at 7).

Given the publication of related *Wall Street Journal* articles during the summer of 2020, the prosecutors' decision to submit *ex parte* what appear to be press reports from the same timeframe is confounding. (*See* Gov't Mem. Ex. C). But open-source information in media reports "has been disclosed to the public," and corresponding information in the prosecutors' holdings is not "privileged" under *Evans* either. Cmt. 3, Rule 1.9. This includes the following topics:

- Mr. Kwok's "work with Steve Bannon" (Wang Opp'n Ex. A at 2; *see also id.* Ex. B at 3 ("The FBI had been examining Mr. [Kwok's] work with Mr. Bannon even before the private placement this spring."))

- FBI "national security agents in recent months ha[d] asked people who know [Mr. Kwok and Mr. Bannon] for information on Mr. [Kwok's] activities." (Wang Opp'n Ex. A at 2; *see also id.* at 3 ("FBI agents have asked people familiar with Messrs. Bannon and [Kwok's] activities whether they knew of [co-defendant Kin Ming] Je and ACA, or the source of the money for Mr. Bannon . . . .")).

- "Mr. [Kwok] for years has been a public target of China's government," but "some have raised doubts about Mr. [Kwok's] loyalties." (*Id.* at 4, 5).

- "The FBI viewed Mr. [Kwok] as a potential informant for the agency and tried unsuccessfully to cultivate him as one around 2017," and "[t]he FBI at that time also confronted Chinese agents who had allegedly come to the U.S. to force Mr. [Kwok] to return to China and ordered them to leave the country." (*Id.* at 4; *see also* Sur-Reply Ex. E (Oct. 22, 2017 *Wall Street Journal* article regarding Mr. Kwok)).

Finally, the prosecutors misunderstand the significance of their production of the 2019 warrants in discovery. (*See* Gov't Reply at 9). The warrants are unclassified, they were

7

presumably submitted to a judge for approval, and the prosecutors have provided them to their adversaries in this case. Like public information, "[i]nformation that has been disclosed . . . to other parties adverse to the former client ordinarily will not be disqualifying." Cmt. 3, Rule 1.9; *see also Network Apps, LLC v. AT&T Mobility LLC*, 598 F. Supp. 3d 118, 133 (S.D.N.Y. 2022) ("If a party is capable of securing confidential information by means other than through prior representation—such as through discovery—disqualification may not be merited.").[3] Thus, information contained in warrants that I have not seen, but that have been produced to Ms. Wang and Mr. Kwok, should not be considered "privileged" for purposes of this motion.

### B.   Non-Privileged "Context" Does Not Establish A Substantial Relationship

Even when the Sixth Amendment does not apply, the *Evans* test requires that the issues involved be "identical" or "essentially the same"; the connection must be "patently clear." *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir. 1978). Just as the prosecutors cannot deem open-source topics to be privileged, they should not be permitted to exaggerate the scope of the TIN Matter to establish the required nexus to this case by referencing "context" and "events that occurred during and in relation to the TIN Matter." (Gov't Reply at 3, 4).

For example, the prosecutors re-argue that part of the relevant "context" is that Mr. Kwok was the "focus" of the TIN Matter. (Gov't Reply at 3; *see also* Gov't Mem. at 20). Even if that is

---

[3] *Accord* Dkt. No. 289 at 28-29, *New York, et al., v. Deutsche Telekom AG, et al.*, No. 19 Civ. 5434 (S.D.N.Y. Nov. 26, 2019) (denying disqualification motion where "any relevant information" from the prior representation "is either already or largely already in the public domain or subject of discovery in some way"); *Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 542 F. Supp. 2d 296, 315 (S.D.N.Y. 2008) (denying disqualification motion where "there is no indication that [attorney] had access to confidential information that would not otherwise be available through the discovery process"); *DeVittorio v. Hall*, No. 07 Civ. 812, 2007 WL 4372872, at *10 (S.D.N.Y. Dec. 12, 2007) (denying disqualification motion where "to the extent [privileged] information [from prior client] is relevant in the present action it would presumably be discoverable").

8

true, overlapping targeting is not enough to establish that the TIN Matter and this case involve "identical" issues. The differing units, AUSAs, agents, and subject offenses are all evidence to the contrary. Regardless of Mr. Kwok's investigative status in the TIN Matter, my client is Ms. Wang. The 2019 warrants do not reference her, or any of the entities described in the charging documents in this case. (*See* Aug. 7, 2023 Sealed Declaration of Alex Lipman). And the prosecutors contend that the CFU investigation—not the TIN Matter—"revealed" that Ms. Wang's work for Mr. Kwok "extends back many years." (Gov't Mem. at 7).

Seeking to bridge these gaps, the prosecutors assign probative value to their March 2023 bail submission referencing the 2019 searches in the TIN Matter. (Gov't Reply at 2-3). The fact that the prosecutors found the searches to be relevant to Mr. Kwok under the Bail Reform Act hardly suggests that the issues in the TIN Matter are "essentially the same" as the issues in this case. The tenuous nature of the connection suggested by the bail submission is illustrated by how quickly the prosecutors backed away from its unhelpful aspect through the claim that the letter was submitted in "an entirely different context." (Gov't Reply at 3). They cannot simultaneously rely on that submission and ignore its full contents.

Similarly, the prosecutors cannot manufacture a connection between the TIN Matter and this case by threatening that they "may," or "may well," offer evidence from the TIN Matter at trial. (Gov't Reply at 2, 3). "[A] party that merely articulates a suspicion of or future potential for conflict rather than a real risk that the trial will be tainted, will fail to meet its burden." *Kleeberg v. Eber*, No. 16 Civ. 9517, 2019 WL 2284724, at *6 (S.D.N.Y. May 29, 2019) (cleaned up). Here, the prosecutors describe documents bearing dates from 2018—prior to the initiation of the TIN Matter—that were seized in March 2023. (Gov't Reply at 4). The potential for trial evidence seized in connection with the "independent" CFU investigation does not require that I be

9

disqualified. (Gov't Reply at 3). If there are any valid concerns about me cross-examining trial witnesses who participated in the TIN Matter, the Court can fashion protective measures that are much less severe. *See Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 542 F. Supp. 2d 296, 315 (S.D.N.Y. 2008) ("[T]he risk that an attorney may cross-examine a former client is not sufficient to disqualify an attorney.").

Finally, the prosecutors once again attribute significance to the fact that I "was supervising the TIN Matter during part of the same time period that the subject offenses in this case took place." (Gov't Reply at 5). The problem with that argument is that "this case" focuses almost exclusively on transactions that occurred beginning in the summer of 2020. The only allegations of earlier conduct relate to the opening of bank accounts and establishment of entities that are not connected to the TIN Matter. (*See* Wang Opp'n at 17). Even if those facts are sufficient to establish overlap, concurrent timing is not a basis for disqualification. *See Network Apps, LLC v. AT&T Mobility LLC*, 598 F. Supp. 3d 118, 134 (S.D.N.Y. 2022) (rejecting argument "that Counsel must be disqualified because they were actively representing AT&T during the relevant dates referenced in the Complaint and interacted extensively with two anticipated witnesses in this case during that time period").

### C. *Prevezon Holdings* Did Not Abrogate The Prosecutors' Heavy Burden

The prosecutors criticize citations to *Cook Industries* on the basis that the opinion was "enunciated decades ago," and they refer the Court to what they appear to believe is a more favorable "explication" of the *Evans* test in *United States v. Prevezon Holdings, Ltd.*, 839 F.3d 227 (2d Cir. 2016). (Gov't Reply at 3 n.3). Decisions such as *Cook Industries* are binding "until such time as they are overruled either by an *en banc* panel . . . or by the Supreme Court." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004). That is why, as recently as last week, courts in this District continue to apply the "identical," "essentially the same," and "patently clear"

formulation of the *Evans* test. *See Jackson Hole Burger, Inc. v. Estate of Galekovic*, No. 23 Civ. 4922, 2023 WL 5112925, at *3 (S.D.N.Y. Aug. 10, 2023).

Moreover, *Prevezon Holdings* does not support the prosecutors' disqualification goal. First, *Prevezon Holdings* was a civil asset forfeiture case involving parties who, unlike Ms. Wang, lacked a Sixth Amendment right to choice of counsel. *See* 839 F.3d at 230; *see also, e.g.*, *United States v. Sanchez*, No. 08 Cr. 789, 2015 WL 13450034, at *3 (S.D.N.Y. May 4, 2015) ("Because the Sixth Amendment right to counsel only applies to criminal matters, claimants in civil forfeiture proceedings lack a Sixth Amendment right to counsel." (cleaned up)). Second, in *Prevezon Holdings*, the relationship between the attorney's prior representation and the current one was so clear that the Second Circuit took the "extraordinary" step of granting mandamus relief. 839 F.3d at 229. Specifically, the current client's defense was predicated on establishing the culpability of the former client. *Id.* at 240 ("Plainly, [current client's] trial strategy turns on proving [former client] is not the victim of the Russian Treasury Fraud, but the perpetrator."). Third, the former client's victim status weighed heavily in the court's analysis. *See id.* at 242 (reasoning that former client would "face the risk of prosecution by a foreign government"). Finally, the inference of access to privileged information was indisputably stronger. In contrast to the two lines of redacted text and three emails offered by the prosecutors here, the attorney and his firm had done extensive work for the former client, including "creat[ing] a case timeline and chronology," meeting with prosecutors from the United States and the British Virgin Islands to discuss the matter on behalf of the former client, and "draft[ing] a twenty-five page declaration." 839 F.3d at 231. Accordingly, *Prevezon Holdings* does not support the application of a presumption that I accessed privileged or classified information in the TIN Matter, and it does not advance the prosecutors' argument that disqualification is necessary.

11

### IV. The Potential Conflict Is Waivable

Ms. Wang should be permitted to waive the potential conflict following a *Curcio* hearing. The prosecutors conceded in their opening brief that the potential conflict "could arguably be resolved" in this fashion. (Gov't Mem. at 27). They were right. The prosecutors offered no response in their reply submission to the examples of their Office's routine practice of supporting defendants' waivers of former-client conflicts. Nor did the prosecutors defend the unsupported and incorrect argument that the alleged presence of classified information would somehow prevent Ms. Wang from being adequately advised of the "nature" and "dangers" of the potential conflict so that she could decide whether to enter a knowing and intelligent waiver. (Wang Opp'n at 23-24).

The prosecutors now assert that Ms. Wang's waiver "cannot override the Government's lack of consent." (Gov't Reply at 18). They cite no authority for that contention, and it is inconsistent with *United States v. Armedo-Sarmiento*, 524 F.2d 591 (2d Cir. 1975). There, the Circuit reversed a disqualification ruling and remanded for a conflict-waiver hearing despite the fact that two of the three former clients at issue "were unwilling to waive their attorney-client privileges." *Id.* at 592. The "crucial factor of the criminal defendant's Sixth Amendment rights" was a significant consideration in the ruling, *id.* at 593, as it should be here.

Finally, the prosecutors speculate about the impact of the potential conflict on unspecified testimony or evidence that "may be offered in the Government's case in chief or rebuttal in this matter." (Gov't Reply at 2). The mere possibility of such a situation arising at an April 2024 trial does not warrant disqualification in this case any more than it did in *Zuckerman*, where it was possible at the time of the *Curio* hearing that one or more of the defendant's attorneys would have to testify against him. (*See* Wang Opp'n at 22). "[I]t is to be understood that the witnesses will be entitled to full protection in preserving the confidentiality of their privileged communications,"

12

if any. *Armedo-Sarmiento*, 524 F.2d at 593; *see also id.* ("[T]he trial judge will, in his conduct of the trial, exert every reasonable effort to prevent inadvertent disclosures of confidential information."); *United States v. Basciano*, 384 F. App'x 28, 34 (2d Cir. 2010) ("[A] conflict arising from an attorney's prior representation of a trial witness is generally waivable so long as the waiver is knowing and intelligent."). Accordingly, disqualification is unnecessary because a *Curcio* proceeding is a fair way to address the potential conflict, respect Ms. Wang's Sixth Amendment right, and ensure the integrity of these proceedings.

## CONCLUSION

For the foregoing reasons, the disqualification motion should be denied, and the Court should hold a *Curcio* hearing to give Ms. Wang an opportunity to make a knowing and intelligent waiver of the potential conflicts presented.

Dated: New York, New York
August 16, 2023

Respectfully submitted,

/s/ Emil Bove
Emil Bove
Chiesa Shahinian & Giantomasi PC
11 Times Square, 34th Floor
New York, NY 10036
(212) 324 7265
ebove@csglaw.com

*Attorney for Yanping Wang*

Cc: Counsel of Record
(Via ECF)