UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

YANPING WANG, a/k/a "Yvette,"

Defendant.

S1 23 Cr. 118 (AT)

**DECLARATION**

I, Kimberly Ravener, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York (the "Office").

2. Since approximately January 2019, I have been assigned to the Office's National Security and International Narcotics Unit, which was formerly known as the Terrorism and International Narcotics ("TIN") Unit.

3. While in TIN, along with AUSA Elizabeth Hanft, I was assigned to an investigation concerning Ho Wan Kwok, a/k/a "Miles Guo" ("Guo"), which began in or about September 2019 (the "TIN Matter").

4. On September 19, 2019, Emil Bove ("Bove") and Shawn Crowley ("Crowley") were appointed Co-Chiefs of TIN and, in that capacity, were my direct supervisors. As TIN Co-Chiefs, Bove and Crowley were responsible for overseeing all matters in TIN, including the TIN Matter.

5. Starting in or about late September 2019, AUSA Hanft[1] and I worked with the FBI to draft premises search warrants authorizing the search of Guo's Manhattan penthouse apartment

---

[1] AUSA Hanft transferred to a different unit in January 2020.

1

at the Sherry-Netherland Hotel and Guo's office on East 64th Street for evidence relevant to the TIN Matter. The FBI executed the warrants on or about October 3, 2019 and October 4, 2019 (the "Warrants"). I recall that Crowley and another supervisor reviewed the Warrants prior to their being submitted to the court.

6. Following the execution of the Warrants, the TIN Matter remained active, and I continued to work with the FBI regarding the FBI's review and analysis of the evidence recovered during the searches. This was a significant undertaking given the volume of materials seized, the nature of the materials ███████████████████████████████████████████

███████████████████████████████████████████

███████████████

7. It is my practice to regularly update my supervisors regarding all of my cases. As a general matter, I updated Bove and Crowley frequently regarding the status of my cases, including the TIN Matter. My updates to Bove and Crowley regarding the TIN Matter also would have included classified information or information that otherwise raised national security concerns. Those updates were primarily oral, whether in person or on the telephone. In my experience, substantive calls or in-person discussions often included both of the TIN Chiefs. The TIN Matter was no different. I recall that Bove was a hands-on supervisor, which means that he was engaged and attentive to all cases he supervised, including the TIN Matter.

8. My conversations with Bove and Crowley regarding the TIN Matter included, among other things, discussion of the status of the search warrant return review (which involved a large number of electronic devices, documents that were in Mandarin, ███████████████

███████████████████████████████████████████

2

██████████████████████████, and ████████████████████████████

████████████

9. One of the issues I discussed with Bove and Crowley was the FBI's analysis of the search warrant returns. ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████

10. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████

11. I also believe that I updated Bove and Crowley on a variety of idiosyncrasies concerning Guo's conduct and the potential implications for the TIN Matter. Specifically, I recall ████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ ████████████████████████████████

████████████████████████████████████████████████ I believe I conveyed this information to Bove and Crowley.

12. In or about 2020, I became aware that the Complex Frauds & Cybercrime Unit ("CFU") had opened a fraud investigation into Guo (the "CFU Matter"). I recall having brought

the fact of the CFU Matter to Bove's and Crowley's attention, given its potential for factual overlap with the TIN Matter.

13. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████

14. After Crowley raised her potential conflict through the time of her departure from the Office in December 2020, Bove was the only supervisor available to consult on all aspects of the TIN Matter. Bove continued to supervise the TIN Matter until he left the Office in December 2021.

15. On or about July 25, 2023, I spoke with AUSAs handling the CFU Matter regarding Bove's supervision of the TIN Matter. The AUSAs asked me to search my emails for communications with Bove regarding the TIN Matter, which I did, to the extent I was able. Based on that review, and emails provided to me by the CFU AUSAs, I have reviewed several emails, including the following:

      a.      On or about October 21, 2019, I sent an email to AUSA Hanft regarding a conversation I had with the FBI case agent on the TIN Matter. (I understand that this email is marked as Exhibit G.) This email reflects my practice of updating the TIN chiefs on my matters. This email reflects that I updated Bove regarding the TIN Matter and that Bove then provided me advice concerning the TIN Matter.

      b.      On or about July 1, 2020, Bove copied me into an email to the Office's Criminal Division Chief, which was a response to an email regarding a press inquiry into a potential SDNY investigation relating to Miles Guo, among others. (I understand that this email was attached to the Government's Motion as Exhibit B.) Bove's email reflected information that I had provided to the TIN Co-Chiefs regarding the status of the TIN Matter—specifically, that I was "working with FBI on a [TIN] investigation of Guo"; that "the FBI executed premises warrants targeting Guo in the fall;" and that the FBI and I were "still reviewing the warrant take ([the FBI] seized a lot of media) and following up on leads." (Gov't Ex. B.) ████████████ ████████████████████████████████████████████████████████████████████████████████ Based on my review of Exhibit B, Bove appears to have conveyed that information to the Chief of the Criminal Division.

      c.      On or about July 9, 2020, Crowley forwarded me an email, copying Bove, that included a link to a Wall Street Journal article regarding Guo. (I understand that this email was attached to the Government's Motion as Exhibit C.) In turn, I forwarded the email chain to

5

AUSA Hanft and the particular CFU AUSA who was then working on the CFU Matter. ■

■

■

d.      On or about August 20, 2020, Crowley emailed me, copying Bove, and stated, "Assume you're tracking ■

■

In response, I confirmed to Crowley and Bove that I was "[t]racking ■

■

■

■ did not notify "CFU either," which is a reference to the AUSAs handling the CFU investigation into Guo.  I believe that this email reflects that Bove, Crowley, and I were aware of

■

■ the CFU Matter.

e.      On or about January 20, 2022, I was copied into an email from the Office's Associate United States Attorney, John McEnany, requesting information regarding Bove's supervision of the TIN Matter, in connection with Bove's potential representation of Mei Guo, who is Guo's daughter, in a matter involving Guo's yacht, the Lady May.  (I understand that McEnany's email was attached to the Government's Motion as Exhibit D.)  Several days later, McEnany advised me and AUSA Hanft, in sum and substance, that McEnany had spoken with Bove and indicated that Bove should not represent Mei Guo, given that Bove had supervised the TIN Matter.

6

16. Other than what is set forth herein, I do not at this time have a specific recollection of other oral conversations with Bove about the TIN Matter.

17. I declare under penalty of perjury that the information contained in this declaration is true and correct.

Dated: New York, New York
August 18, 2023

Respectfully submitted,

*Kimberly J. Ravener*
Kimberly Ravener
Assistant United States Attorney
Southern District of New York