UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

YANPING WANG, a/k/a "Yvette,"

Defendant.

S1 23 Cr. 118 (AT)

**DECLARATION**

I, John McEnany, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I joined the United States Attorney's Office for the Southern District of New York in 1983. In 1991 I joined the executive staff of the Office as Associate U.S. Attorney, a position I maintained until I retired on April 15, 2022.

2. Among other duties and responsibilities as Associate U.S. Attorney, I became, in or around 1991, Government Ethics Advisor, a position I maintained until my retirement. As Government Ethics Advisor, one of my responsibilities was to provide training and advice concerning government ethics statutes and regulations, including the Standards of Ethical Conduct for Employees of the Executive Branch, 5 C.F.R. Part 2635. Subpart F of the Standards addresses conflicts that may arise when a government employee is seeking employment with an entity that is involved in a matter that the government employee is also working on. My training and advice also included the post-employment restrictions contained in 18 U.S.C. § 207 and 5 C.F.R. Part 2641.

3. In addition, in or around 1994, I became the Professional Responsibility Officer for the Criminal Division of the U.S. Attorney's Office, a position I maintained until my retirement. Among my responsibilities in that position was to provide training and advice concerning standards of professional attorney conduct, including the New York Lawyer's Code of

Professional Responsibility, supplanted in 2009 by the New York Rules of Professional Conduct, 22 N.Y.C.R.R Part 1200, and the New York State Bar Association's Comments thereto. (Post-employment restrictions on former government attorneys are addressed in Rule of Professional Conduct 1.11.)

4. The Office of Government Ethics and the Department of Justice required, among other things, that attorneys receive annual government ethics training. I gave and/or supervised the provision of this training every year. The conflicts that could arise when seeking other employment, and subsequent post-employment restrictions—both of which derive from criminal statutory provisions—were an element of this training. Because the U.S. Attorney's Office for the Southern District of New York is a high-turnover Office, this was a matter to which I gave particular emphasis. And most particularly, since these were somewhat complicated matters that would not usually be of importance to an Assistant U.S. Attorney until that attorney was actually seeking other employment, my training emphasized that the attorney should consult with me at that time. Most attorneys contemplating leaving the Office did so. In addition, I made clear that, after leaving the Office, attorneys should freely call me with any conflict-related questions, and I fielded many such questions during my tenure.

5. In addition, commencing many years before I left the Office, I instituted the practice of setting up an exit meeting with each departing Assistant U.S. Attorney. This covered a case review; ministerial matters, such as record preservation procedures; and a review of post-employment ethical restrictions under both government ethics provisions and the Rules of Professional Conduct. My discussion covered, among other things, the lifetime bar on working on any matter on which the attorney had participated personally and substantially while at the Office; and (when speaking with a departing unit chief) that the Office considered unit chiefs as having in

fact participated personally and substantially in every matter within the chief's unit: that was their job. I also stressed that the departing attorney could always call me with potential conflict questions. I do not have a specific recollection of an exit meeting with Emil Bove (and cannot check all of my old records to verify) but since we were both conscientious about such matters, and since we did have the post-employment conversation discussed below, I am fairly confident that we did indeed meet. I also have a vague recollection of a discussion with Mr. Bove before he left the Office that he was looking at a law firm in New Jersey, and that, given the nature of the firm's practice, I commented that that firm was unlikely to have any cases with the Office that would raise a conflict question while Mr. Bove was considering joining that firm.

6. I do have a specific recollection that after Mr. Bove left the Office he called me (my notes referenced below indicate that this call was on January 19, 2022) to ask if I saw any issue with him taking on a potential client in a civil matter, given that Mr. Bove had supervised an investigation relating to the client's father when Mr. Bove was in the Office. (I did not note the name of the prospective client other than that she was Guo's daughter.) I recall looking into the facts with attorneys in the Terrorism and International Narcotics Unit and getting back to Mr. Bove with the concern that the civil matter would inevitably lead back into facts relating to the investigation that Mr. Bove had supervised while he was co-Chief of that unit. At my urging, Mr. Bove agreed to stay away from the civil matter.

7. On August 17, 2023, AUSA Juliana Murray provided me with a copy of the handwritten notes I made of my first telephone call with Mr. Bove, dated January 19, 2022; and I have also reviewed the email string that was previously submitted, *ex parte*, as Exhibit D to an

earlier filing in the instant case. Those records confirm and supplement my recollection of this matter.

    8.    I declare under penalty of perjury that the information contained in this affidavit is true and correct.

Executed:
New York, New York
August 18, 2023

                                                      John M. McEnany