

**CHIESA SHAHINIAN & GIANTOMASI PC**

11 TIMES SQUARE, 34TH FLOOR
NEW YORK, NY 10036

csglaw.com

**EMIL BOVE**
ebove@csglaw.com
(O) 212.324.7265

September 1, 2023

Via ECF
The Honorable Analisa Torres
U.S. District Judge
Southern District of New York

Re:   United States v. Yanping Wang, et al., No. 23 Cr. 118 (AT)

Dear Judge Torres:

Defendant Yanping Wang respectfully submits this letter joining in the August 30, 2023 motion by co-defendant Ho Wan Kwok to stay proceedings in *In re Ho Wan Kwok, et al.*, No. 22-50073 (JAM) (Bankr. D. Conn.) pending resolution of this case. As noted by Mr. Kwok, a stay is necessary to protect the integrity of these proceedings and because of recent developments in the bankruptcy proceedings. Ms. Wang adopts Mr. Kwok's arguments, and respectfully submits that a stay is appropriate for the additional reasons set forth below.

*Fifth Amendment*. Like Mr. Kwok, Ms. Wang is a criminal defendant facing serious charges of, among other things, securities fraud and money laundering, which are based on allegations that overlap significantly with the claims that the Trustee is pressing in the bankruptcy case. (*See* Dkt. No. 131, Kwok Mem. at 17, 24). As a result, even though Ms. Wang is not the debtor in the bankruptcy, she is a potential non-party witness in many of the matters the Trustee is pursuing. The bankruptcy proceedings therefore present Fifth Amendment concerns and risks of related prejudice that are personal to Ms. Wang and that imperil her constitutional rights. *See, e.g.*, *In re Kowalski*, 633 B.R. 822, 827 (Bankr. N.D. Ill. 2021) ("[I]t is important to note that a non-party witness, like anyone else, is entitled to the protection of the Fifth Amendment."); *In re Zinnel*, No. 12 Civ. 1541, 2013 WL 2449546, at *6 (E.D. Cal. June 5, 2013) (finding stay appropriate where, *inter alia*, "it is conceivable that [civil] discovery may touch on the Fifth Amendment rights of witnesses who are not parties to the bankruptcy appeal but who may be targets of the criminal investigation"); *In re Garsia*, No. 09-22233, 2011 WL 1045295, at *5 (D.N.J. Mar. 17, 2011) (finding stay appropriate where, *inter alia*, "certain witnesses for the Defendant may also seek Fifth Amendment protections, further limiting [the Defendant's] ability to disprove the fraud allegations"). For example— notwithstanding the obvious Fifth Amendment implications—on July 21, 2023, counsel to the Trustee inquired about deposing Ms. Wang in connection with an adversarial proceeding related to the Chapter 11 case, *Despins v. HCHK Technologies, Inc., et al.*, Adv. Proc. No. 23-05013 (Bankr. D. Conn.). Moreover, the bankruptcy court has suggested that Ms. Wang's status as a criminal defendant subject to pretrial detention is not sufficient to obviate the need to seek to collect documents from her. (*See* Dkt. No. 2036 at 5, *In re Ho Wan Kwok, et al.*, No. 22-50073 (JAM)

September 1, 2023
Page 2

(Bankr. D. Conn. July 28, 2023) ("[W]hile Ms. Wang is presently detained pending trial, Hudson Diamond Holding LLC did not establish that it cannot contact her – through counsel if necessary.")).  As a result—and, once again, notwithstanding the Fifth Amendment implications—counsel for third parties in adversarial proceedings such as *HCHK Technologies, Inc., et al.* have contacted the undersigned in an effort to obtain documents from Ms. Wang.  To the extent Ms. Wang possesses responsive materials, the requests implicate, at minimum, her act-of-production privilege.  Because Ms. Wang is not the debtor, the bankruptcy court's application of the required-records doctrine does not apply to her.  (*See* Dkt. No. 131, Kwok Mem. at 8-9).

<u>*Attorney-Client Privilege*</u>.  Although Ms. Wang does not control Mr. Kwok's attorney-client privilege, Ms. Wang faces prejudice from the Trustee's overbroad and unnecessary waivers of Mr. Kwok's privilege with respect to subjects that are relevant to this case.

> Of significance . . . is the fact that the Trustee and the Debtors are in an adversarial relationship. As a consequence, the Trustee's assumption of the Debtor's attorney-client privilege could potentially cause the Debtors a great deal of harm, as the Trustee's sole purpose for seeking to waive the Debtors' attorney-client privilege is to use that information directly against them. (*i.e.*, to revoke the Debtors' bankruptcy discharge). Furthermore, when one also considers that such information could potentially be used against the Debtors if they are ultimately prosecuted for criminal violations of the Bankruptcy Code, the potential for harm against the Debtors becomes particularly acute.

*In re Miller*, 247 B.R. 704, 710 (Bankr. N.D. Ohio 2000); *In re Bame*, 251 B.R. 367, 377 (Bankr. D. Minn. 2000) ("As to . . . questions . . . going to activities giving rise to potential criminal prosecution, the balance would probably tip in favor of sustaining assertion of the privilege, in which case the trustee would have the opportunity to raise the crime-fraud exception to the privilege.").  For example, the bankruptcy court's September 2022 privilege-waiver order states that the Trustee controls "any interests" of Mr. Kwok "in any common interest or joint defense privilege alleged to be held with other parties." (Dkt. No. 130-12, Kwok Ex. 12 at 2 ¶ 2).  The privilege-waiver order does not afford Ms. Wang an opportunity to be heard in connection with privilege waivers that could prejudice her in this case.  (*See id.* at 4-5 at ¶¶ 7-8).

The Trustee is currently seeking to serve a Rule 2004 subpoena on Victor Cerda, an attorney who has participated in a joint-defense meeting with Ms. Wang, presumably to obtain evidence for use in the bankruptcy case and its related adversarial proceedings.  (*See* Dkt. No. 125-1).  The Trustee's efforts to obtain otherwise-privileged materials could result in a situation where the prosecutors have access to materials that they ordinarily would not be permitted to obtain.  *See* Justice Manual § 9-13.410 ("Because of the potential effects upon an attorney-client relationship that may result from the issuance of a subpoena to an attorney for information relating to the

September 1, 2023
Page 3

attorney's representation of a client, the Department exercises close control over such subpoenas"), *available at* https://www.justice.gov/jm/jm-9-13000-obtaining-evidence.[1]

*Brady and Spoliation*. The prosecutors' agreement with the Trustee relating to the liquidation of the Mahwah Facility implicates Ms. Wang's due process rights and the prosecutors' obligations to make exculpatory evidence available to the defense. Specifically, evidence from the Mahwah Facility will undercut the prosecutors' claim that the proceeds of the GTV offering were used at the Facility in a manner inconsistent with the offering documents. (*See* Dkt. No. 131, Kwok Mem. at 20). In a "Stipulation" bearing this Court's caption—but not its approval—the prosecutors agreed (1) to "not oppose" the Trustee's "effort[s]" to "obtain control of and/or sell" the Mahwah Facility; (2) to "execute promptly any documents which may be required to convey clear title to the [Mahwah Facility] and complete the sale of the [Mahwah Facility]"; and (3) to permit the Trustee to deduct from sale proceeds "any costs of seizure, maintenance, marketing and sale of the Subject Property, including legal fees of Paul Hastings . . . ." (Dkt. No. 130-5, Kwok Ex. 5 at 22, 24 ¶¶ 1, 3, 6). The July 13, 2023 "stipulation" is the product of "extensive" negotiations between the prosecutors and the Trustee. (*Id.* at 7 ¶ 12, 8 ¶ 14). However, "the Government's loss of evidence may deprive a defendant of the right to a fair trial." *United States v. Rahman*, 189 F.3d 88, 139 (2d Cir. 1999). "[T]he only way to protect *Brady* material before the defendant requests it is to require the government to safeguard potentially exculpatory evidence." *United States v. Bakhtiar*, 994 F.2d 970, 975 (2d Cir. 1993).[2] Indeed, the day after the Trustee notified the bankruptcy judge of Mr. Kwok's stay motion, the bankruptcy judge modified the preliminary injunction concerning the Mahwah Facility to further restrict access to the Facility. (*See* Dkt. No. 2158, *In re Ho Wan Kwok, et al.*, No. 22-50073 (JAM) (Bankr. D. Conn. Aug. 30, 2023); Dkt. No. 58, *Despins v. Taurus Fund LLC, et al.*, No. 23-5017 (JAM) (Bankr. D. Conn. Aug. 31, 2023)). Accordingly, a stay is necessary in order to prevent evidence at the Mahwah Facility from being lost or destroyed.

*Forfeiture and Restitution*. The Trustee's operations in the bankruptcy proceedings are rapidly depleting assets and property that one would expect the prosecutors to seek to preserve in the event that forfeiture or restitution becomes appropriate in this case. Even the bankruptcy judge has characterized these expenses as a "heavy cost" and "enormous." *In re: Kwok*, No. 22-50073 (JAM), 2023 WL 4772420, at *18 (Bankr. D. Conn. July 26, 2023). And "there are creditors in these Chapter 11 cases that are not alleged fraud victims." *Id.* at *19. Under these circumstances, it

---

[1] Under Section 9-13.410, federal prosecutors are required to obtain approval from the Assistant Attorney General or a Deputy Assistant Attorney General for the Criminal Division to issue a subpoena to an attorney, and the "principles" that are relevant to such approval include: "The information sought shall not be protected by a valid claim of privilege."

[2] *Accord Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 285 (E.D. Va. 2001) ("The destruction of evidence can lead to manifest unfairness and injustice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action and can increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence that may be less persuasive, less accessible or both.").

September 1, 2023
Page 4

is not clear why the prosecutors and the Trustee are as "aligned" as they appear to be. (Dkt. No. 130-5, Kwok Ex. 5 at 5 ¶ 6).

Having elsewhere touted the seizure of "$634 million from 21 different bank accounts,"[3] the prosecutors have elected not to seize other assets that are tied up in the bankruptcy and subject to extensive fees based on the Trustee's activities. In *HCHK Technologies, Inc., et al.*, the Trustee is seeking to bring more than $35 million into the bankruptcy estate, and he acknowledges that the funds are related to this case. (*See, e.g.*, Dkt. No. 23-5013 ¶¶ 4, 39, Adv. Proc. No. 23-05013 (Bankr. D. Conn. June 8, 2023)). As noted, the prosecutors have also consented to the Trustee's fees being paid from the proceeds of any sale of the Mahwah Facility rather than preserving important evidence at the property, which the prosecutors have alleged is forfeitable. (*See* Dkt. No. 19 ¶ 55(v); Dkt. No. 38 ¶ w).

The prosecutors' decision to permit the Trustee to proceed against assets that could be subject to forfeiture and restitution, and to incur the attendant costs, is not consistent with the tone of their "Motion For Victim Rights." (*See* Dkt. No. 10). In 2009, the same U.S. Attorney's Office opposed the imposition of a bankruptcy trustee in connection with an involuntary bankruptcy petition against Bernard Madoff on the basis that "[t]he movants . . . suggest incorrectly that a bankruptcy action is the appropriate forum for the marshalling and distribution of assets to victims of the fraud." (Dkt. No. 50 at 2, *SEC v. Madoff, et al.*, No. 08 Civ. 10791 (S.D.N.Y. Apr. 10, 2009); *see also id.* ("Under the well-established relation-[b]ack doctrine, the Government's interest in forfeitable property vests at the time of the offense giving rise to the forfeiture . . . .")). The Office argued that "the motion, if granted, would risk detracting from recovery to victims because funds otherwise available for return to victims by way of forfeiture would unnecessarily be used to pay the fees of a bankruptcy trustee." (*Id.* at 1; *see also id.* at 5 (arguing that imposition of a trustee "would both drain fees from the total recovery available to the victims of this offense and delay the recovery of victim funds . . .")). The Office had it right in 2009, and these principles further support a stay of the bankruptcy proceedings.

\*       \*       \*

---

[3] DOJ, Ho Wan Kwok, a/k/a "Miles Guo," Arrested For Orchestrating Over $1 Billion Dollar Fraud Conspiracy (Mar. 15, 2023), https://www.justice.gov/usao-sdny/pr/ho-wan-kwok-aka-miles-guo-arrested-orchestrating-over-1-billion-dollar-fraud-conspiracy.

In sum, Ms. Wang joins Mr. Kwok's motion for a stay of the proceedings in *In re Ho Wan Kwok, et al.*, Dkt. No. 22-50073 (JAM) (Bankr. D. Conn.). Such a stay is necessary and appropriate, under the All Writs Act and the Court's inherent supervisory authority, for the reasons set forth herein, in Mr. Kwok's motion papers, and in the prosecutors' letter seeking a stay in *SEC v. Kwok*, No. 23 Civ. 2200 (PGG) (S.D.N.Y.). (*See* Dkt. No. 130-7).

Respectfully submitted,

/s/
Emil Bove
Chiesa Shahinian & Giantomasi PC

Alex Lipman
Lipman Law PLLC

*Attorneys for Yanping Wang*

Cc: Counsel of Record
(Via ECF)