# EXHIBIT E1

```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF CONNECTICUT
                         BRIDGEPORT DIVISION

   In Re                           *   Case No. 22-50073 (JAM)
                                   *
   HO WAN KWOK and GENEVER         *
    HOLDINGS CORPORATION,          *
                                   *
           Debtor.                 *

   LUC A. DESPINS,                 *   Adv. Proc. No. 22-05027
                                   *
           Plaintiff,              *
                                   *
      v.                           *
                                   *
   BRAVO LUCK, LIMITED, et al.,    *
                                   *
           Defendant.              *

   LUC A. DESPINS,                 *   Adv. Proc. No. 23-05017
                                   *
                                   *   Bridgeport, Connecticut
           Plaintiff,              *   August 29, 2023
                                   *
      v.                           *
                                   *
   TAURUS FUND, LLC, et al.,       *
                                   *
           Defendants.             *
                                   *
   * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:


Chapter 11 Trustee:              LUC A. DESPINS, ESQ.
                                 Paul Hastings LLP
                                 200 Park Avenue
                                 New York, NY  10166




Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES: (Cont'd)

| | |
|---|---|
| For the Chapter 11 Trustee: | PATRICK R. LINSEY, ESQ.<br>Neubert Pepe and Monteith<br>195 Church Street, 13th Floor<br>New Haven, CT 06510 |
| For U.S. Trustee: | HOLLEY L. CLAIBORN, ESQ.<br>Office of U.S. Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT 06510 |
| For the Creditors Committee: | IRVE J. GOLDMAN, ESQ.<br>Pullman & Comley<br>850 Main Street<br>Bridgeport, CT 06601 |
| For Bravo Luck: | FRANCIS J. LAWALL, ESQ.<br>Troutman Pepper Hamilton Sanders, LLP<br>3000 Two Logan Square<br>18th and Arch Street<br>Philadelphia, PA 19103 |
| For Hing Chi Ngok and Greenwich Land, LLC: | CHRISTOPHER J. MAJOR, ESQ.<br>Meister Seelig & Fein LLP<br>125 Park Avenue<br>New York, NY 10017 |
| For Taurus Fund, LLC: | MICHAEL T. CONWAY, ESQ.<br>Lazare Potter Giacovas & Moyle, LLP<br>747 Third Avenue<br>New York, NY 10017 |

1   held the status conference with regard to that matter.
2           The only other thing the U.S. Trustee's Office may
3   want, I have no idea, Attorney Claiborn, but that motion
4   that's seeking to remediate different issues at the Sherry-
5   Netherland apartment also seeks the employment.  So I don't
6   know if you want the order to refer to Section 327 or
7   something too.  I have no idea.  But maybe you can all work
8   that out before we have a hearing.
9           And maybe if you all come in and there's no
10  problem, you'll go first at 2 p.m.  Okay?
11          MR. DESPINS:  That's a good incentive.
12          THE COURT:  All right.  So with regard to the
13  status conference that was held today that -- the status
14  conference has been held.  There's no need for any -- no
15  further status conferences will be scheduled and a notice of
16  hearing will issue on ECF No. 2113.  Okay?
17          So then how would you like to proceed next?
18          MR. DESPINS:  We'll go to Mahwah at this point.
19          THE COURT:  Go right ahead.
20          MR. DESPINS:  Thank you, Your Honor.
21          So Your Honor, this is a motion to approve a
22  settlement with the Department of Justice.  That's under
23  document 24 in the adversary proceeding.  And I have already
24  testified as to this, but I think it's important that we set
25  the stage again on this because last time that was not the

1   main focus.  I wanted the Court to know about it, but
2   clearly that was not the purpose of that hearing.
3           So the first question is why enter into a
4   settlement with the DOJ?  Second question is what does the
5   settlement do or not do?  And so let me try to address that.
6           The first question is why?
7           As we state in the motion, the DOJ has expressly
8   targeted the Mahwah mansion as a -- that's not a verb --
9   forfeitable asset and they've actually identified that
10  asset.  We did not know about it.  So we have to be candid
11  with the Court.  We did not know about that asset until the
12  indictment was released.
13          And, however, the Department of Justice, their
14  tools are sort of limited in the pre-conviction phase in the
15  sense that they cannot obtain title to this property now or
16  do much with it before there's a conviction, which is a
17  final conviction.  Given that the trial is not going to last
18  -- not going to start until April I think, at least until
19  April of next year, obviously, the DOJ and we were aware of
20  what was going there and we're really concerned about this
21  very valuable asset being left in limbo for lack of a better
22  term.
23          So, however, because they identified this asset as
24  a potentially forfeitable asset, we did not want to begin
25  any adversary proceeding which could be perceived as hostile

1    towards the DOJ because obviously it's important we believe
2    to work with them as cooperatively as possible.  Why?
3               Because they have all sorts of tools that we don't
4    have.  We don't want them to be fighting us and us being at
5    cross purposes with them with respect to this asset, and
6    this is where we came up with this idea of -- first of all,
7    we did our homework.  We believe that this asset through the
8    relief we're seeking in the adversary proceeding is an
9    estate asset.  We're convinced of that.  The Court will have
10   to determine if that's the case or not.  That's for another
11   day.
12              But we approached the DOJ and said we want to go
13   forward with this adversary proceeding to try to establish
14   that this is an asset of the estate.  And eventually, if the
15   Court rules in our favor, to sell this asset to liquidate it
16   for the benefit of holders of allowed claims.
17              And so we had this discussion about, okay, how is
18   that going to play out, because their view is that they have
19   superior claims.  And I'm not going to go into all the
20   details on this, but we pointed out and we cited in the
21   motion some case law, because there's a lot of cases on this
22   where Chapter 11 trustees or Chapter 7 trustees are battling
23   against the DOJ over issues like that as to who has first
24   dibs on an asset of the -- and I'm saying in those cases the
25   alleged wrongdoer -- and, you know, obviously we want to

1  avoid that.
2              And we also wanted to avoid the following, which
3  is we filed this adversary proceeding.  In my dreams, we
4  prevail.  We sell the assets and the DOJ comes in and says
5  thank you very much, we will take that money, and thank you
6  for your work, and that's the end of it.  We could not have
7  that.
8              This estate cannot be in a position where it's
9  financing any other activity.  It has to net neutral.  And I
10 believe move than net neutral, and I'll get to that piece in
11 a second.  So that we negotiated the fact that if we
12 prevail, that's very important, only if we prevail.
13             This settlement agreement does not dictate the
14 sale of the property because it provides that certain things
15 will happen if we prevail.
16             So if we prevail and we sell the asset, we can use
17 the net proceeds to pay all the expenses that the estate
18 will have incurred.  At that time, we thought we would incur
19 not only legal fees, but security fees, a broker to sell the
20 property, a mortgage if -- there's no mortgage on the
21 property, but if there are people that have mechanics liens
22 that need to be paid, that of course comes off the top.
23             So that creates a concept of net proceeds.  And
24 the net proceeds under that stipulation, we're kicking down
25 -- that down the road, which is to be determined.  And I'll

1   come back to why there's not more progress on that.  So the
2   net proceeds are very important.
3              And what I said is, okay, that's great.  We're
4   going to get all our expenses back.  That's good.  But this
5   case is not being run for the professionals for the case.
6   There has to be a benefit to the estate.  That's where we
7   came in with the deemed expense of a million dollars.
8              So that assuming for a second that we prevail, the
9   mansion is sold, we get all the expenses paid, and the DOJ
10  and us cannot agree on the distribution of the net proceeds,
11  we're getting a million dollars to the estate guaranteed.
12  And it says in there to be paid to the holders of allowed
13  claims, so an allowed claim in your court, so it has to be
14  an allowed claim, allowed claims of victims.  And, you know,
15  people pointed out, well, victims is not defined.
16             That's not an accident.  Meaning, I want to have a
17  shot at convincing the DOJ that the victims -- first of all,
18  you have to have an allowed claim.  You cannot receive a
19  penny of this unless you have an allowed claim as determined
20  by Your Honor.  But if you have an allowed claim, the issue
21  of who's a victim or not, that's -- I would like that to be
22  subject to further discussion.
23             But the bottom line is this estate will end up
24  with a million positive, if we're right that this property
25  is part of the estate.  And we feel pretty strongly that is

1   the case, but of course Your Honor will have to rule on
2   that.
3           So the estate is not worse off because the fees
4   and expenses are covered.  It's better off by a million
5   dollars.  And it can be better off by a lot more than that
6   if we are successful in convincing the DOJ that the
7   distribution of proceeds from this property -- and by the
8   way, we're going to try that with other -- you know, for
9   example, I've mentioned the cash that's being frozen right
10  now, $630 million we -- that's not today's issue, but the
11  game plan here, based on other cases where the DOJ has
12  sought and obtained forfeiture of assets, is for the Chapter
13  11 Trustee to wear two hats, Chapter 11 Trustee and
14  forfeiture receiver.  And it all comes back to this court
15  for distribution.
16          And I know there are issues there.  And they know
17  that too, meaning the DOJ.  They're not naive.  They know
18  that.
19          The question is, okay, who's a victim?  In their
20  book, a victim might be only the victim of certain alleged
21  schemes.  But, you know, I can see that there are other
22  people in this case that Mr. Goldman represents that also
23  are victims.
24          For example, Bru Ma(ph), you don't know her, but
25  I'm using her as an example, because if you ever read her