**BAKER BOTTS** LLP

30 ROCKEFELLER PLAZA
NEW YORK, NEW YORK
10112-4498

TEL  +1 212.408.2500
FAX  +1 212.408.2501
BakerBotts.com

AUSTIN
BRUSSELS
DALLAS
DUBAI
HOUSTON
LONDON

**NEW YORK**
PALO ALTO
RIYADH
SAN FRANCISCO
SINGAPORE
WASHINGTON

April 4, 2024

Brendan F. Quigley
TEL: 2124082520
FAX: 2122592520
brendan.quigley@bakerbotts.com

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *United States v. Yanping Wang*, 23 Cr. 118-3 (AT)

Dear Judge Torres:

We represent Yanping Wang in this matter.  We write in response to the government's March 31, 2024 letter.  *See* ECF No. 255 ("Gov. Letter").

As set forth in more detail below, the Court should (i) grant the relief sought by Ms. Wang in her March 28, 2024 letter, ECF No. 253, and (ii) enter a pre-trial schedule consistent with the schedule entered in other document-heavy, complex fraud cases in this District.

## I.    The Court Should Grant the Relief Requested By Ms. Wang in Her March 28 Letter

The government's March 31 letter essentially confirms the appropriateness of the relief Ms. Wang requested in her March 28 letter.

### A.    Any Discovery Schedule Entered by the Court Should Set an April 10 Deadline for the Government to Complete Rule 16 Discovery

*First*, we appreciate the government's representation that it will complete Rule 16 discovery by April 10.  *See* Gov. Letter at 2.  In numerous previous conversations, it had neglected to agree to a deadline.  For the record, the government's voluminous discovery productions continued unabated, over year after the defendants were initially indicted. In the week since we filed our March 28 letter, the government has made four additional productions, totaling approximately 141,000 pages. Only one of these productions (of approximately 9,000 pages) was in response to the Court's February "Foxhunt order." The April 10 deadline is necessary to ensure the defense has adequate time to review the voluminous discovery the government has produced over the last several weeks before the May 20 trial date.

**BAKER BOTTS** LLP

The Honorable Analisa Torres                    - 2 -                    April 4, 2024

### B. The Court Should Order the Government to Hand Deliver Discovery to MDC and Order MDC to Promptly Provide the Discovery to the Defendants

*Second*, the Court should order the government to hand deliver all recent productions and any subsequent productions to the appropriate officials at MDC Brooklyn for prompt delivery to the defendants.

In the March 31 letter, the government claims it "has been accommodating the defense's requests to delivery discovery [sic] to the MDC." But the government's March 31 letter also makes clear that it took *five weeks* from Ms. Wang's counsel's February 20 request for some (but not all) of that discovery to reach Ms. Wang. During that time, it took the U.S. Attorney's office almost two weeks to load the hard drive provided by Ms. Wang's counsel,[1] that hard drive was then apparently lost by the MDC, and a new hard drive was containing some but not all of the original discovery was delivered to Ms. Wang hours after our March 28 letter was filed. That is some "accommodation."

A similar delay in the delivery of subsequent productions would mean those productions would not reach MDC until the eve, or during, trial.[2] In this regard, it is important to note that providing discovery to Ms. Wang at MDC is not merely a matter of "accommodation" or even simply of the government's obligations under Rule 16. Ms. Wang's access to discovery is critical to ensuring her rights to a fair trial and to notice of the allegations against her. Indeed, just months ago, in opposing Ms. Wang's motion for a bill of particulars in this very case, the government argued that the "the Indictment and *discovery materials* provide the defendant with more than enough factual information to adequately defend against the charges." Gov't Opp'n to Pre-Trial Motions, ECF No. 232 at 29; *see also id. at 30* ("In exercising its broad discretion to determine whether the charges are 'so general' that they require supplementing, the Court should consider not just the text of the Indictment, but *also the discovery* and other filings by the Government."). But Ms. Wang cannot "adequately defend against the charges" if there are lengthy delays in her obtaining access to these very discovery materials, particularly as trial approaches. Accordingly, going forward, the Court should order the government to hand deliver all recent productions and

---

[1] The government claims in the March 31 letter that it loaded the hard drive "within the ensuing days" following its delivery to the USAO. That is, at best, a stretch. Contemporaneous emails make clear it took almost two weeks, from February 27 to approximately March 10, for the USAO to load the drive. *See* Ex. A.

[2] Earlier this week, in response to my outreach, the government made a proposal that would involve its vendor directly copying a drive for discovery to the MDC. I understand that proposal not to be finalized at this time, and, in any event, while we appreciate the government's efforts to find some solution to this issue, it would not solve for the delays in getting Ms. Wang discovery once the drive arrives at MDC. Accordingly, we still request that any drives be hand-delivered to MDC and that MDC be ordered to promptly deliver those drives to Ms. Wang.

**BAKER BOTTS** LLP

The Honorable Analisa Torres                    - 3 -                    April 4, 2024

any subsequent productions to the appropriate officials at MDC Brooklyn for prompt delivery to the defendants.

### C. The Court Should Restrict the Government's Ability to Designate Certain Material As AEO

The government has produced, and continues to produce, significant amounts of material as Attorneys' Eyes Only ("AEO"), meaning they cannot be shown to or even discussed with the defendants. A significant portion of these material are plainly not, in any way, the type of "highly confidential and highly sensitive" material that AEO status is reserved for. *See* Protective Order, ECF No. 63 ¶ 4. Instead, the government has marked, to give a few examples, as AEO, a picture that appears to be of



Notably—even though AEO status requires, by the plain terms of the protective order, that the material be "highly confidential and highly sensitive," ECF No. 63 ¶ 4—the government's March 31 letter admits it has designated material as AEO even though the "content" of the material is "not . . . highly sensitive." Gov. Letter at 12 ("it is not their content that is highly sensitive"). The Court should reject the government's position on that basis alone

The government nonetheless claims AEO treatment is justified simply because the materials have the "potential to *identify* the individuals who have provided materials to the Government." *Id.* at 12 (emphasis in original).

The government's position proves too much. To be sure, all materials produced by the government have the "potential to *identify* the individuals who have provided materials to the Government." And there is no credible basis to explain how a photo of Ms. Wang or text messages to which she is party necessarily "identif[ies]" how (or from whom) the government obtained that

---

[3] *See* Ex. B.

[4] *See* Ex. C.

[5] *See* Ex. D.

[6] *See* Ex. E

[7] *See* Ex. F.

[8] *See* Ex. G.

**BAKER BOTTS** LLP

The Honorable Analisa Torres                          - 4 -                          April 4, 2024

evidence. Indeed, the government has numerous means for obtaining these categories of evidence, and, even if the evidence was obtained directly from a particular individual, individuals provide information to the government for a variety of reasons, including because they were forced by the government to provide the information in response to compulsory process such as a search warrant or subpoena, not necessarily because they are sympathetic to the government's case. Finally, as discussed below, there is no basis to argue that Ms. Wang has "harass[ed], threaten[ed], or intimidat[ed]"[9] *anyone*, much less in connection with this case.

In short, the government's logic is severely flawed, proves too much, and directly impacts—indeed eliminates—counsel's ability to discuss discovery with Ms. Wang directly relevant to her case—including conversations involving her and photographs of her in meetings and other contexts—thereby directly impacting her defense.

The Court should presumptively prohibit the government from designating photographs of the defendants or communications involving the defendants as AEO.

\*\*\*

In short, the Court should grant the relief requested by Ms. Wang in her March 28 letter

**II.      The Court Should Enter the Pre-Trial Schedule Proposed by Ms. Wang to the Government on March 26**

The Court should enter the pre-trial schedule that Ms. Wang proposed to the government via email on March 26, 2024 (and to which the government never substantively responded until it filed its March 31 letter).

First, to level set, this is, in fact, "a fraud case," not a terrorism case, a witness-tampering case, or a murder case. Just a few months ago, the government stressed that point in opposing Mr. Kwok's motion to compel discovery, beginning its brief by stating "[t]his is a fraud case." ECF No. 201 at 1. The return of a RICO indictment just weeks later did not change that. Indeed, in arguing that only a "modest adjournment" of the original April 8 trial date was necessary despite the RICO indictment, the government noted that, while adding a RICO charge, the S2 RICO indictment "relies principally on the same allegations as the S1 Indictment" and that both the prior indictment and the new RICO indictment "both rely upon the same conduct, the same evidence, and the same witnesses." ECF No. 228 at 1. In short, this has been, and still is a fraud case, with attendant large amounts of documentary evidence and no allegations of violence.

---

[9] *See* Govt. Letter at 12.

**BAKER BOTTS** LLP

The Honorable Analisa Torres                          - 5 -                                      April 4, 2024

The pre-trial schedule Ms. Wang proposed to the government, and proposes again here, is consistent with the practice in recent similar trials in this District.

| Pretrial Disclosures | Ms. Wang's Proposed Schedule (as proposed in 3/26 email to the government) | The government's Proposed Schedule per 3/31 letter |
|---|---|---|
| Expert Disclosures (excluding Mandarin language experts) | April 1 | April 1 |
| Government Rule 16 Discovery Materials | April 10 | April 10 |
| Notice of Certain Defenses | Left for Discussion[10]<br><br>[Close of the Government's Case] | April 20 |
| Government Trial Exhibits | April 22 | April 30 (only non-AEO materials can be shared with defendants; AEO materials can be shared four days prior to relevant testimony, i.e., during trial)). |
| Government § 3500 Material | April 22 | May 6 (only non-AEO materials can be shared with defendants; AEO materials can be shared four days prior to relevant testimony, i.e., during trial) |

---

[10] Specifically, in March 26 correspondence with the government, I told the government "[w]e're not aware of any basis in the rules or the case law for requiring the defense to provide notice of [defenses] 'premised on advice of counsel, reliance on counsel, presence of counsel, or other involvement of counsel, and produce discovery materials relating to any such defense,' at any point, much less two weeks before the government's case begins. The cite to Bankman-Fried in [one AUSA's] email appears to have been stipulation between the parties in that case. If you want to provide us with an actual basis in the rules or caselaw for such broad disclosure, we will consider it." The government did not do so until it filed the March 31 letter. As discussed below, that case law is not remotely persuasive.

**BAKER BOTTS** LLP

The Honorable Analisa Torres                    - 6 -                    April 4, 2024

| Government Witness List | May 6 | May 6 |
|---|---|---|
| Defendants' Rule 16 Materials | May 6 | April 22 |
| Defendants' Trial Exhibits | May 10 | May 10 |
| Defendants' Witness List | May 13 | May 10 |
| Defense 26.2 Material | May 27 | May 13 |

Again, Ms. Wang's schedule is consistent with the schedules in other similar cases in this District. In particular:

**Government Exhibits and 3500:** The schedule contemplates production of government exhibits and 3500 material on April 22, four weeks before trial, consistent with the practice in recent document-heavy, fraud trials in the Southern District of New York. *See, e.g.*, Scheduling Order for Trial-Related Motions and Discovery, *United States v. Bankman-Fried,.*, No. 22-CR-00673 (S.D.N.Y. July 1, 2023), ECF No. 173 (government to provide § 3500 material by September 8, 2023 where jury selection was set to begin October 3, 2023); Letter, *United States v. Milton*, No. 21-CR-00478 (S.D.N.Y. Jan. 19, 2022), ECF No. 73 (government to provide § 3500 material by March 7, 2022 where trial was scheduled for April 4, 2022), Memo Endorsement, *United States v. Cole*, 19-CR-00869 (S.D.N.Y. Feb. 18, 2020), ECF No. 23 (granting schedule requiring the government to provide § 3500 material four weeks before trial).

**Defense Rule 16, Exhibits, and Witness List**. The schedule contemplates the production the production of defense Rule 16 materials two weeks before trial and the production defense of exhibits ten days before trial, i.e., ***at least eight weeks before any defense case*** would begin (given the government's estimated six to seven week case-in-chief). Even notwithstanding the lengthy anticipated government case, approximately two weeks before trial is in line with District practice. *See, e.g., Bankman-Fried, supra*, (for trial beginning October 2, 2023; defense exhibits, Rule 16 materials, and 26.2 materials, due September 18, i.e. two weeks before trial); *Milton, supra*, (for April 4 trial, defense Rule 16 to be produced by March 14 and defense exhibits to be produced by March 21); *United States v. Avenatti*, No. 19-cr-374 (JMF), Dkt. 213 (S.D.N.Y. Jan. 7, 2022) (ordering for January 24 trial, defendant to begin rule 16 production by January 16 and complete it by January 18).[11]

---

[11] Further, from Ms. Wang's perspective, the government's speculation about there being a massive amount of defense discovery from her is completely unwarranted.

**BAKER BOTTS** LLP

The Honorable Analisa Torres                           - 7 -                           April 4, 2024

For both government exhibits and defense exhibits, we have no objection to those exhibits and exhibit lists being subject to good-faith revision as the parties continue to prepare their cases.

Accordingly, the Court should enter the schedule requested by Ms. Wang.

### III.    The Court Should Reject the Government's Unique Proposals

The government's proposed schedule has several features that are out of step with District practice and, moreover, unsupported by the facts and the applicable law. The Court should reject these features.

### A.   There is No Basis to Require Notice of Any "Advice of Counsel" Defense Before Trial, Much Less Any Defense Based on "Involvement of Counsel"

The government's proposal for an April 20 deadline for the "defendants [to] notify the Government of their intention, if any, to rely on an advice-of-counsel, reliance on counsel, presence of counsel, or other involvement of counsel as a defense to the charges," has no basis in the record or the law.

*First*, for avoidance of doubt, Ms. Wang has no intention—none—"to rely on the advice of dozens of attorneys, from dozens of different law firms," *cf.* at Gov. Letter at 8, in her defense.[12]

*Second*, requiring notice of any "advice of counsel" defense by April 20 is inappropriate under the circumstances of this case and the law.

To begin with, there is no explicit basis under the Federal Rules of Criminal Procedure to require pre-trial notice of any advice of counsel defense. *See United States v. Ray*, No. 20-CR-110 (LJL), 2021 WL 5493839, at *4 (S.D.N.Y. Nov. 22, 2021) (rejecting government's request for pre-trial notice of advice of counsel defense and instead requiring that any such notice be given "no later than the close of the government's case-in-chief").

And numerous courts have held that it is inappropriate to require any such notice *at all*. *United States v. Wilkerson*, 388 F. Supp. 3d 969, 975 (E.D. Tenn. 2019) (rejecting government request for pre-trial notice of advice of counsel defense, noting "the Court does not know why a criminal defendant must decide what defense (if any) to pursue in advance of trial or risk losing the option altogether"); *accord United States v. Espy*, No. CRIM.A. 96-198, 1996 WL 560354, at *1 (E.D. La. Oct. 2, 1996); *United States v. Meredith*, No. 3:12CR-143-S, 2014 WL 897373, at *1 (W.D. Ky. Mar. 6, 2014) (noting the Court "has no authority to compel pretrial disclosure beyond the bounds of Rule 16"); *United States v. Afremov*, No. CRIM. 06-196 JRT/SRN, 2007 WL

---

[12] To the extent the Court requires additional information concerning Ms. Wang's anticipated defense strategy at this stage, counsel would be willing to provide that on an *ex parte* basis.

**BAKER BOTTS** LLP

The Honorable Analisa Torres                         - 8 -                         April 4, 2024

2475972, at *4 (D. Minn. Aug. 27, 2007) ("Nor does the prosecution have a right to notice from the defense that it intends to assert an advice of counsel defense at trial.")

To the extent the Court requires any notice of an advice of counsel defense, it is appropriate that such notice await the close of the government's case in chief, as Judge Liman ordered in *Ray*. Here, as in *Ray*, the government's case "is expected to be lengthy [and] last several weeks . . . ."2021 WL 5493839, at *7. As such, "there will be time enough for the Court to test whether there is a viable advice-of-counsel defense to any of the charges and, if there is, for the defense to produce documents that relate to the advice of counsel, even if [that decision] waits until the end of the government's case." *Id.*

An earlier deadline, particularly the government's proposed April 20 deadline, turns the principles of criminal discovery on their head. The government's proposal for the names of attorneys the defendants may rely on "is tantamount to a request for a witness list." *See Ray*, 2021 WL 5493839 at *5. Thus, the government's April 20 deadline would require defense to produce a partial witness list before the government's witness list is due under *either* proposed schedule above, which is completely improper. *See Ray*, 2021 WL 5493839 at *5 ("The request for the names of the attorneys is tantamount to a request for a witness list. Pretrial, the government argued vigorously that [the defendant] is not entitled to the names of the witnesses the government intends to present to support its case-in-chief and to meet the elements of the offenses charged in the indictment. . . . The government has lesser entitlement to require the defense to disclose the witnesses it would call to negate the government's proof." (citations omitted)).

And the April 20 deadline would be only ten days after the government plans to complete its voluminous Rule 16 production, and three weeks *before* the government proposes to produce its witness and exhibit list. The advice of counsel defense is, after all, a defense and choosing to waive privilege "is a consequential event." *Ray*, 2021 WL 5493839 at *6. Requiring the defense to provide notice before the government produces its witness list and exhibit list (much less before the start of the government's lengthy case) would be improper.

*Third,* the government takes a giant, improper leap by suggesting that there is authority not only for providing notice of a "formal advice of counsel defense" but also any "good faith defense" that includes the "involvement of attorneys." Govt. Letter at at 6. None of the cases cited by the government for this proposition go *remotely* this far. All explicitly involved the formal "advice of counsel" defense and indeed, and all are easily distinguishable.

Two—*Schulte* and *Scali*—involved earlier waivers of the attorney-client privilege during the proceedings. *Cf. United States v. Schulte*, No. S2 17 CR. 548 (PAC), 2020 WL 133620, at *6 (S.D.N.Y. Jan. 13, 2020) (granting "the Government's motion for disclosure concerning the advice-of-counsel defense" following the defense's earlier waiver of the privilege); *United States v. Scali*, No. 16-CR-466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018), ("The question of whether the Defendant will assert an advice of counsel defense with regards to the two tax evasion counts is moot because the *Defendant unequivocally admitted to it in his pleading*" (emphasis added)).

**BAKER BOTTS** LLP

The Honorable Analisa Torres                  - 9 -                  April 4, 2024

And finally, in *United States v. Rubin/Chambers, Dunhill Ins. Servs*., 828 F. Supp. 2d 698, 712 (S.D.N.Y. 2011), Judge Marrero "DENIED" the government's request for six weeks' notice of "any advice of counsel defense." 828 F. Supp. at 712 (emphasis in original).

*** *** ***

Accordingly, to the extent the Court requires any notice of an advice of counsel defense, that notice should not need to be provided before the end of the government's case.

### B. The Protective Measures Proposed by the Government Are Not Supported by the Facts and the Law

The government's schedule also contemplates that it "designate a limited set of exhibits that would identify victim-witnesses designated AEO and that AEO designation will be lifted four days prior to the introduction of any so-designated exhibit at trial" and for "victim-witness identities and associated 3500 materials designated AEO[,] [t]he AEO designation will be lifted four days prior to the testimony of any victim-witness."

In other words, the government plans to prohibit defense counsel from even discussing with the defendants untold portions of exhibits and 3500 material until *during trial*, in a trial in which the defendants are incarcerated, that will undoubtedly involve numerous foreign-language exhibits and that it, in the government's own words, is "fraud case," involving no acts of violence.

There is *no* precedent for this.

First, the government claims these procedures are warranted because this case involves "defendants who have gone to great lengths to intimidate, harass, and threaten—and at times physically harm—those who speak out against them." Govt. Letter at 13. In reality, there is *zero* evidence that Ms. Wang, a 45-year old cancer survivor, has gone to any lengths, much less "great lengths" "to intimidate, harass, and threaten—and at times physically harm" *anyone*.

Second, even the specific allegations of "obstruction" the government raises against Ms. Wang do not remotely justify the protective measures the government seeks. Ms. Wang's alleged January 2022 "coaching" of Mr. Kwok's daughter—a 35-year old, college-educated professional—does not come remotely close to the conduct in the cases the government cites in support of its drastic protective measures. *See* Superseding Indictment, *United States v. Jones*, No. 21-CR-00505 (S.D.N.Y. May 11, 2023), ECF No. 35 (charging defendant with, among other things, conspiracy to murder a federal informant to prevent communication to law enforcement, and murder of a federal informant to prevent communication to law enforcement); *United States v. Kandic*, No. 17CR449S1NGGRER, 2021 WL 5505832, at *1 (E.D.N.Y. Nov. 24, 2021) (considering whether to empanel an anonymous and/or semi-sequestered jury where defendant was charged with "conspiring to provide, providing, and attempting to provide material support of terrorism"); Superseding Indictment, *United States v. Garcia*, 21-CR-00412 (July 21, 2021), ECF No. 42 (charging defendant with us[ing] and carry[ing] a firearm"); Indictment, *United States v. Bilal*, 19-CR-00565 (S.D.N.Y. Aug. 6, 2019), ECF No. 1 (charging defendant with "possess[ing]

**BAKER BOTTS** LLP

The Honorable Analisa Torres                    - 10 -                    April 4, 2024

a firearm, and in the course of [a] drug trafficking crime . . . caus[ing] the death of a person through the use of a firearm, which killing is murder").

And, while the government cites "recorded conversations with individuals within the Kwok Enterprise," suggesting "Wang—while in custody, following her arrest in this case—used her prior counsel to ferry her request to retrieve bank checks consisting of millions of dollars of G|CLUBS funds," Govt. Letter at 11, that allegation simply highlights the problems with the government's discovery we discussed above and in our March 28 letter.

The recordings in question appear to have made in April and May 2023; they were produced by the government just weeks, ago on March 15, 2024; and the government has designated them AEO, meaning counsel can't even discuss them with Ms. Wang (even though they involved "individuals within the Kwok Enterprise" and not "victim-witnesses") to get her understanding of the relevant facts. In short, the very evidence the government relies on to justify even more AEO restrictions highlights the problems with its over-designation of AEO materials and its late produced discovery.[13] In any event, none of this alleged conduct actually involves witness intimidation or harassment, much less conduct akin to the terrorism and murder cases the government relies on.

*Finally*, the government's track record of over-designation of AEO, overly broad conceptions of "victim witnesses,"[14] and delays in getting materials to the MDC provide further evidence that restricting the defendants' access to key evidence until trial actually begins is likely to have a significant impact on the defendants' trial rights. It may necessitate mid-trial adjournments if, for example , the defendants need additional time to review that evidence, the MDC needs additional time to get it to the defendants, or there is litigation concerning the government's designations.

In short, the government's requested protective measures are unprecedented in a fraud case, unwarranted under the circumstances, and almost certainly unworkable in practice.

\*\*\*

---

[13] For the record, we strenuously dispute the government's characterization of those recorded conversations (which did not involve Ms. Wang).

[14] While the government's March 31 letter cites the Mandatory Victims Restitution Act, it omits that the statute actually defines "crime victim" relatively narrowly as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(b)(2)(A). Some of the individuals the government apparently classifies "victims" based on its AEO designations appear, based on the defense's review of discovery, more likely to be testifying at trial pursuant to cooperation or similar agreements.

**BAKER BOTTS** LLP

The Honorable Analisa Torres                    - 11 -                    April 4, 2024


  The Court should grant the relief Ms. Wang requested in her March 28 letter and enter her proposed pre-trial schedule.

        Respectfully submitted,

        */s/ Brendan F. Quigley*
        Brendan F. Quigley