

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

April 8, 2024

**VIA ECF AND EMAIL**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    *United States v. Yanping Wang*, S2 23 Cr. 118 (AT)

Dear Judge Torres:

    The Government respectfully writes in advance of the April 9, 2024 suppression hearing to address the applicable law and to preview facts that the Government expects will be established by the evidence introduced at the hearing.

    I.    **Background**

    On March 15, 2023, Wang was arrested, and her apartment and certain of its contents were searched and seized, pursuant to judicially authorized warrants. Among the items seized pursuant to the premises warrant were 13 mobile devices—12 iPhones and one iPad. After Wang's arrest and the reading of her *Miranda* rights, but before she requested a lawyer, Wang provided at least a single passcode (or "PIN") that opened eight of those devices. The other five of the seized devices either required a different PIN or no PIN at all. FBI digital forensic examiners later accessed and extracted the data from all 13 of those mobile devices.

    On December 15, 2023, Wang filed pretrial motions seeking, among other relief, suppression of "her post-arrest statements"—in particular, the PINs to certain of those 13 mobile devices—"and any fruits thereof" as obtained in violation of Wang's *Miranda* rights to silence and counsel. (Dkt. 197 at 1). Wang filed an affidavit in which she claimed to have twice asked for a lawyer: once "while I was still handcuffed in the hallway" outside of her apartment, (Dkt. 197-4), and then again *after* she provided "locations of, and passwords for, electronic devices, in the apartment," (*id.*).

    The Government opposed Wang's motions. (Dkt. 232). With respect to Wang's *Miranda* suppression motion, the Government argued that the exclusionary rule does not apply to evidence derived from uncoerced statements that follow a request for counsel. (*See id.* at 23-28). The Government also argued that should the exclusionary rule apply, Wang's *Miranda* objection is

nonetheless moot because the Government would inevitably have discovered the contents of her relevant devices even without her provision of her PINs. (*See id.* at 28-29).[1]

By an order dated March 22, 2024 (Dkt. 251 (the "Order")), the Court, in relevant part, declined to decide whether the exclusionary rule applies to the purported fruits of statements allegedly obtained through violations of *Miranda*'s application to requests for counsel, *Edwards v. Arizona*, 451 U.S. 477 (1981), (*see* Dkt. 251), and instead ordered a hearing to determine "whether Wang invoked her right to counsel prior to being questioned regarding her phone passwords," and, if she had, "whether the Government would inevitably have accessed the phones." (*See id.* at 22).

## II. Applicable Law

### A. The *Miranda/Edwards* Right to Counsel

"[W]hen an accused has invoked [her] right to have counsel present during custodial interrogation, . . . [she] is not subject to further interrogation by the authorities until counsel has been made available to [her], unless the accused [herself] initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). The invocation of the right "requires a *clear* assertion of the right to counsel," not an ambiguous statement such as, "Maybe I should talk to a lawyer." *United States v. Medunjanin*, 752 F.3d 576, 586–87 (2d Cir. 2014) (cleaned up and emphasis in original).[2]

### B. Inevitable Discovery

The doctrine of inevitable discovery caveats the exclusionary rule to permit the admission of unlawfully obtained evidence where the Government can "establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). A two-step process determines whether contested evidence avoids suppression on this ground. *In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66, 103 (2d Cir. 2016). First, "the court must evaluate the progress of the investigation

---

[1] Wang filed a reply in further support of her pretrial motions on February 1, 2024. (Dkt. 236).

[2] The Government respectfully maintains its position that *Miranda*'s exclusionary rule is limited to *statements* obtained in violation of a defendant's rights to silence or counsel, and that no controlling authority provides for suppression of *derivative evidence* as a remedy for purported violations of a defendant's *Edwards* right to counsel. (*See* Dkt. 232). A violation of *Miranda*'s prophylactic rules does not require "suppression of the [nontestimonial] physical fruits of the suspect's unwarned but voluntary statements." *United States v. Patane*, 542 U.S. 630, 634 (2004) (plurality opinion); *United States v. Gonzalez-Garcia*, 708 F.3d 682, 687 (5th Cir. 2013) (when seized is "physical, nontestimonial evidence, an *Edwards* violation itself would not justify suppression"). As three Justices explained in *Patane*, "the *Miranda* rule is a prophylactic employed to protect against violations of the Self-Incrimination Clause. The Self-Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement. Accordingly, there is no justification for extending the *Miranda* rule to this context." 542 U.S. at 636.

at the time of the government misconduct to determine whether an active and ongoing investigation . . . was in progress." *Id.* Second, "the court must, for each particular piece of evidence, specifically analyze and explain how, if at all, discovery of that piece of evidence would have been more likely than not inevitable absent the unlawful search." *Id.*

    C. Evidentiary Standards at Suppression Hearings

The Court is free to consider hearsay or any other nonprivileged evidence to decide a suppression motion. *See* Fed. R. Evid. 104(a) (court "is not bound by evidence rules, except those on privilege," when deciding whether "evidence is admissible"); Fed. R. Evid. 1101(d)(1) (evidentiary rules other than privilege do not apply to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under rule 104"); *see also United States v. Raddatz*, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."); *accord United States v. Yousef*, 327 F.3d 56, 145 (2d Cir. 2003).

A defendant's affidavit should be disregarded if she chooses not to testify. *See United States v. Deleston*, No. 15 Cr. 113 (PKC), 2015 WL 4745252, at *5 (S.D.N.Y. July 24, 2015); *United States v. James*, No. 10 Cr. 1293 (RPP), 2011 WL 6306721, at *7 (S.D.N.Y. Dec. 16, 2011); *United States v. Al-Marri*, 230 F. Supp. 2d 535, 539 (S.D.N.Y. 2002); *United States v. Polanco*, 37 F. Supp. 2d 262, 264 & n.4 (S.D.N.Y. 1999) ("[T]he self-serving affidavit of the moving defendant is usually disregarded if [she] declines to testify at the hearing.").

**III.**     **Anticipated Evidence**

    A. Overview

As a preliminary matter, the Government expects to offer evidence at the suppression hearing that five of the 13 mobile devices seized pursuant to the premises warrant were accessed without entering or referring to the PINs provided by Wang. In other words, these five devices cannot be subject to suppression, because their contents were *actually* discovered independent of Wang's provision of PINs to the FBI. The other eight devices were accessed using the 777777 PIN that Wang provided *before* she invoked her right to counsel. But even if that were not so, the contents of the remaining eight mobile devices would inevitably have been discovered through other means. Evidence from these devices should therefore be admissible at trial.

    B. Wang Provided the 777777 PIN Before Asking for an Attorney

The Government expects that Special Agent Melissa Baccari's testimony will establish that Wang provided the only relevant passcode—777777—prior to invoking her right to speak with an attorney. Special Agent Baccari is expected to testify that she participated in Wang's arrest on March 15, 2023. Agent Baccari read Wang her *Miranda* rights in the hallway outside of Wang's apartment. Wang acknowledged them, but she did not then ask for or mention a lawyer. After Agent Baccari and another female agent walked with Wang to her bedroom, Wang freely answered questions about her phones and provided the passcode "777777." Thereafter, however, when Agent Baccari asked about Kwok's whereabouts, Wang asked for a lawyer.

Agent Baccari's testimony will establish an independent basis for denying Wang's suppression motion, by establishing that Wang voluntarily provided at least the 777777 passcode

after being read her *Miranda* rights and before invoking her right to counsel. (*See* Order at 22 ("If Wang provided the passwords before invoking her right to counsel or re-initiated contact with the agents after her invocation, then there was no *Edwards* violation, and the issue is moot.")).

### C. The FBI Would Have Accessed the Devices Even Without Wang's Providing the PIN

Moreover, the Government expects that additional witnesses will offer brief testimony about the extraction of Wang's mobile devices and the case-wide passcode list compiled by the FBI. This testimony will establish that, even without Wang's "777777" statement, the FBI would more likely than not have been able to access all of her devices. Without Wang's statement of the PIN, the FBI's forensic examiners would have consulted a passcode list that identified the same "777777" PIN at the top of a list of potential case-wide PINs based on its identification in a document recovered at a different premises search in Mahwah, New Jersey. And certain of the devices either did not require a PIN, or the PIN was obtained through means independent of Wang's statements.

Special Agent Jessica Cardenas is expected to testify that she was present at the March 15, 2023 search of Kwok's apartment where Kwok and a confidant both voluntarily provided the passcode "777777" for cellphones in their possession, including a cellphone that Kwok was holding in his hand when he was arrested.[3]

Digital Forensics Examiner Jessica Volchko is expected to testify that, consistent with typical practice, FBI case agents provided the Bureau's Computer Analysis and Response Team ("CART") with a list of common passcodes sourced from evidence obtained during searches of *other sites* (namely, Kwok's premises) to use, when necessary, on devices across this case (the "Passcode List"). The first passcode on the list was "777777" and the FBI case agents directed CART examiners to "try all 7s to start with."

Digital Forensics Examiner Christian Isolda of CART's Mobile Device Unlock Service is expected to testify about technical capabilities that enable the FBI to access certain devices for which a PIN is necessary but unavailable.

### D. Summary of Relevant Mobile Devices

To aid the Court's understanding of the evidence that the Government expects to be adduced at the forthcoming hearing, this summary chart identifies the mobile devices at issue, and further identifies which devices are relevant to Wang's suppression motion:

---

[3] "Brother Seven" is one of Kwok's aliases listed in the Indictment. Kwok used the name "Brother Seven" in his broadcasts, proclaiming he is the seventh of seven brothers.

| FBI Reference Number | Device | PIN | FBI's Means of Access | Government's Inevitable Means of Access |
|---|---|---|---|---|
| 1B17 | iPhone 13 | No PIN required | Freely accessible | N/A |
| 1B19 | iPhone 6s | 100423 | "Brute-force" entry[4] | N/A |
| 1B 20 | iPhone 14 | No PIN required | Freely accessible | N/A |
| 1B 68 | iPhone XR | No PIN required | Freely accessible | N/A |
| 1B 77 | iPad | PIN not provided by Wang | AFU extraction | N/A |
| 1B 15 | iPhone 12 | 777777 | Entry of PIN | Passcode List |
| 1B 16 | iPhone 13 | 777777 | Entry of PIN | Passcode List |
| 1B 18 | iPhone 12 | 777777 | Entry of PIN | Passcode List |
| 1B 69 | iPhone 12 | 777777 | Entry of PIN | Passcode List |
| 1B 70 | iPhone 11 | 777777 | Entry of PIN | Passcode List |
| 1B 71 | iPhone XR | 777777 | Entry of PIN | Passcode List |
| 1B 72 | iPhone 12 | 777777 | Entry of PIN | Passcode List |
| 1B 93 | iPhone 13 | 777777 | Entry of PIN | Passcode List |

  The Government expects that the testimony and the related exhibits will establish by a preponderance of the evidence that (1) five of the 13 Wang mobile devices were accessed without use of or reference to Wang's statement of her PIN and are not reasonably subject to suppression and that (2) the eight remaining devices would more likely than not have inevitably been accessed through reference to the Passcode List that identified the same "777777" code from other sources and agents' instructions to try that passcode first when encountering case-wide devices for which

---

[4] The Government expects that a witness from the FBI's Computer Analysis and Response Team ("CART") will testify about the FBI's technical capabilities to access mobile devices for which a confirmed PIN is unavailable. These include so-called "brute force" techniques that use software to access a locked device by guessing potentially millions of potential PINs until entering the correct one, and an "AFU" or "after first unlock" extraction by which FBI can extract substantially all of the data from a device that was unlocked at least once after the last time it was powered off.

a PIN was unavailable. *See, e.g.*, *United States v. Eldarir*, No. 20 Cr. 243 (LDH), 2023 WL 4373551, at *9 (E.D.N.Y. July 6, 2023) (publication forthcoming) (denying motion to suppress where Court "[found] with high confidence that the evidence Defendant seeks to suppress would have been discovered even if, as Defendant argues, he had not been compelled to unlock the phone"); *see also, e.g.*, *United States v. Jackson*, No. 19 Cr. 6026, 2020 WL 810747, at *12 (W.D.N.Y. Feb. 19, 2020) ("On this record, I find that the evidence which Jackson seeks to suppress would have been discovered even if Jackson had not been compelled to provide the passcode to the phone or present his biometric features to unlock the phone"); *United States v. Will*, No. 15 Cr. 6, 2015 WL 3822599, *16 (N.D. W. Va. June 19, 2015) (finding that suppression not warranted under doctrine of inevitable discovery where evidence demonstrated contents of phone would have been extracted without [a] password); *United States v. Todd*, No. 16 Cr. 305, 2017 WL 1197849, *13 (S.D. Ga. Feb. 10, 2017) ("as [the agent] testified, [the] FBI offices ... had the technological capabilities to bypass the swipe pattern and access the contents of [d]efendant's cell phone[;] [t]hus, regardless of whether officers violated [d]efendant's Miranda rights in obtaining [d]efendant's swipe pattern, the inevitable discovery doctrine prevents suppression of the evidence attained from the cell phone search"), *report and recommendation adopted*, 2017 WL 1172113 (S.D. Ga. March 29, 2017); *United States v. Ashmore*, No. 16 Cr. 20016, Dkt. 36 at 12 (W.D. Ark. Dec. 7, 2016) (denying suppression of contents of device where Government "would have been able to access the information on [the defendant's] computer and cell phone without the passwords provided by [the defendant] at his residence").

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
    Micah F. Fergenson
    Ryan B. Finkel
    Justin Horton
    Juliana N. Murray
    Assistant United States Attorneys
    (212) 637-2190 / 6612 / 2276 / 2314