**BAKER BOTTS** LLP

30 ROCKEFELLER PLAZA
NEW YORK, NEW YORK
10112-4498

TEL +1 212.408.2500
FAX +1 212.408.2501
BakerBotts.com

AUSTIN
BRUSSELS
DALLAS
DUBAI
HOUSTON
LONDON

**NEW YORK**
PALO ALTO
RIYADH
SAN FRANCISCO
SINGAPORE
WASHINGTON

April 16, 2024

Brendan F. Quigley
TEL: 2124082520
FAX: 2122592520
brendan.quigley@bakerbotts.com

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States v. Yanping Wang*, 23 Cr. 118-3 (AT)

Dear Judge Torres:

We represent Yanping Wang in this matter. We write in further support of Ms. Wang's motion to suppress evidence obtained seized from her apartment on March 15, 2023 and in response to the government's April 12, 2024 submission (Gov't 4/12/24 Ltr.).

## I.   The Court Should Reject the Government's Attempt to Introduce New Evidence

First, the Court should reject the government's attempts to inject new evidence, not presented at the hearing, in the 4/12/24 filing. Specifically, the government tries to introduce images from a notebook seized in Mahwah, New Jersey on March 15, 2023. *See* Gov't 4/12/24 Ltr. at 4. There was no testimony at the suppression hearing regarding this notebook or the Mahwah search more generally (beyond the fact that it occurred). The Court should thus exclude this document from its consideration of Ms. Wang's motion. *Cf.* Order, 3/22/24, ECF No. 251 at 22 (ordering the suppression hearing, in part, because the government's unsworn assertions in its opposition brief were insufficient to establish inevitable discovery).

Second, the government seeks to introduce *ten* additional pieces of 3500 material that were not introduced into evidence at the hearing. In footnote 1, the government attempts to elide what it is actually doing (in part by blaming defense counsel). It claims that "[d]efense counsel offered 3501-5 as Defense Exhibit 2 and it was admitted," and "[b]ecause 3501-5 is only the first page of a document from 3501-05 to 3501-15, the Government refers to the entire document as DX-2." Gov't 4/12/23 Ltr. at 4 n.1.

In other words, what the government is really saying is that "3501-06 to 3501-15 were not introduced into evidence at the hearing, but because [supposedly] they are part of the same document as 3501-05, we can rely on that now." Even setting aside the government being less than straightforward in explaining its actions, there is no basis for it to try to sneak 3501-06 through 15 into evidence now. For one, the government—not the defense—in fact chose to mark 3501-05 through 15 as *separate* **documents**. *See, e.g.*, 3501-05 ("Page 1 of 1"). It did not seek to introduce

**BAKER BOTTS** LLP

The Honorable Analisa Torres　　　　　　　　- 2 -　　　　　　　　April 16, 2024

3501-06 through 3501-15 on re-direct of Agent Baccari and through any other witness. And the reason it originally marked these documents separately is **because that is what they are**. 3501-005 is a typed FBI 302. 3501-006 is a cover sheet to photos. 3501-007 is another cover sheet to photos. 3501-008 is a handwritten form. 3501-009 is a photo log. 3501-10 is a sign-in sheet. 3511-01 is a handwritten sketch. 3501-12 is a handwritten evidence collection log. 3501-13 is a handwritten search warrant execution log. 3501-14 is an "administrative worksheet." 3501-15 is the search warrant itself.

No reasonable person would seriously argue, as the government has here, that these are all part of the same document. *Cf.* Gov't 4/16/24 Ltr. at 4 n.1. ("Because 3501-05 is only the first page of a document that spans from 3501-05 to 3501-15 . . .").

\*\*\*

Accordingly, the Court should reject the government's attempts to introduce new evidence through its post-hearing papers.

## II. The Evidence from the Hearing is Consistent with Ms. Wang's Affidavit and with Post-Invocation Questioning Regarding the Phones' Passcodes

The Court should also find that Ms. Wang invoked her right to counsel before she was questioned about the phones' passwords.

In its post-hearing brief, the government's argument largely boils down to "the Court should discredit Ms. Wang's" affidavit because the courts "disregard"[1] affidavits. That is not the law. As the government itself points out elsewhere, the Court may "consider hearsay . . . to decide a suppression motion,"[2] and the Second Circuit has affirmed the grant of a suppression motion even though the defendant did not testify. *United States v. Isiofia*, 370 F.3d 226, 233 (2d Cir. 2004) (affirming suppression where defendant's affidavit "provides a different version of the relevant events and contains evidence . . . that the District Court was free to, and apparently did, credit").

That is particularly appropriate here for multiple reasons.

First, the documentary evidence introduced at the hearing is consistent with Ms. Wang's affidavit that she invoked shortly after the agents initially read her rights to her in the hallway. Most notably, the agent's own notes from that day reflect, at the top of the page, "rights read—invoked."

---

[1] Gov't 4/12/24 Ltr. at 7.

[2] *Id.*

**BAKER BOTTS** LLP

The Honorable Analisa Torres — - 3 - — April 16, 2024



*DX-1/3501-17*

The notes also reflect that substantive questioning concerning the phones took place below "invoked," indicating they occurred after the invocation. *See id.* Similarly, in DX-3, the agent's typed FBI 302 report, the discussion of the phones' passcodes comes below the discussion of Ms. Wang's invocation, similarly indicating the agents asked Ms. Wang for her phone passcodes after she invoked. *See* DX-3.

*Second*, as discussed more fully in our April 12 submission, other aspects of the agent's testimony and the documented circumstances are consistent with post-invocation questioning regarding the phones and with a lack of regard for (or at best ignorance of) the rule of *Edwards*. These aspects include:

- the fact that Agent Baccari was, respectfully, at best, unsure of whether an assertion of the right to counsel precluded her from asking questions about cellphones. She acknowledged, for example, telling the AUSAs that she may have asked Ms. Wang questions about her cellphone even after Ms. Wang had invoked her right to counsel. (Tr. 32:7-33:11 ("Yes. I guess I said that.")).

- the fact that Agent Baccari's testimony notwithstanding, she was more equivocal before the hearing, indicating when meeting with the AUSAs she did not "think" she would have asked Ms. Wang to make a statement in the hallway. (Tr. 27:8-9).

- the fact that, despite Agent Baccari's testimony that, once Ms. Wang invoked, "the next step" was to prepare Ms. Wang for transport to 26 Federal Plaza, (Tr. 44:6-7), the agents kept Ms. Wang on the scene for at least another 45 minutes. (Tr. 34:21-25; 44:8-9).

**BAKER BOTTS** LLP

The Honorable Analisa Torres        - 4 -        April 16, 2024

- the fact that, during these 45 minutes, the agents continued to question Ms. Wang (again consistent with her affidavit and in violation of *Edwards*).[3]

*Finally*, the documentary evidence also shows that the search of the apartment did not actually *begin* until sometime *after* 6:18 a.m., i.e., indisputably after Ms. Wang invoked.

*DX-2/3501-05*

In short, the evidence showed that Ms. Wang—consistent with her affidavit—invoked her right to counsel shortly after she was advised of her rights and before any search of the apartment actually began, and the circumstances of the search (including the fact that the agents kept Ms. Wang on the scene for approximately 45 minutes during which they clearly asked her more questions) are also consistent with post-invocation questioning in violation of *Edwards*.

### III.   The Inevitable Discovery Doctrine Does Not Apply.

Further, the inevitable-discovery doctrine does not apply to the phones accessed by Ms. Wang's "7777777" passcode.

**Brute Force.** As to the FBI's "Brute Force" tool, the hearing evidence showed that Brute Force capabilities are not available for any iPhone that in version 12 or later (Tr. 72:14-16), meaning it was not available for all but two of the iPhones that the agents unlocked using Ms. Wang's password, *see* GX S-1.

In other words, for all but two of the cellphones at issue (1B70 and 1B71), there were not "established technological methods that obviated the need for a passcode." *Cf.* Gov't 4/12/24 Ltr. at 9.[4]

---

[3] Tr. 36:4-5 ("Q. Would they come into the bedroom to ask Ms. Wang questions? A. I recall an instance.")

[4] Judge DeArcy Hall's decision in *United States v. Eldarir* does not help the government here. For one thing, that case involved the independent source doctrine, not inevitable discovery. *United States v. Eldarir*, No. 20-CR-243 (LDH), 2023 WL 4373551, at *7 (E.D.N.Y. July 6, 2023). Further, Judge DeArcy Hall held the independent source doctrine applied because "subsequent to the manual search and image of Defendant's phone, the Government sought and obtained a warrant to search the device. Agent Gamza's affidavit in support of the warrant set forth the following facts in support of a finding of probable cause, which are not tied to any evidence found on Defendant's

**BAKER BOTTS** LLP

The Honorable Analisa Torres        - 5 -                      April 16, 2024

And, for those two iPhones, 1B70 and 1B71, Mr. Isolda testified he determined that those devices could be "Brute Forced" the morning of the hearing. (Tr. 80:3-17). Once again, as in *Lauria*, "but for the defense's exposure of" the potentially unlawful conduct, here the *Edwards* violation concerning the passwords, "the government would have had no reason—and, therefore, would have been unlikely—to pursue alternative lawful means,"[5] of searching 1B70 and 1B71, so the inevitable discovery doctrine does not apply.

**"777777" password.** Nor can the government show the "777777" password obtained from Mr. Kwok at the Sherry Netherland would have inevitably unlocked the phones at issue.

*First*, as we noted in our April 12 brief, the deliberate questioning of Mr. Kwok to obtain his passwords was itself illegal under the Sixth Amendment and thus cannot provide a basis for inevitable discovery.

*Second*, the government cannot show that its decision to use the "777777" password on Ms. Wang's phones was untainted by the *Edwards* violations at Ms. Wang's apartment. *See* Tr 71:19-25 (testimony that CART examiner had "no way of knowing" whether information from search of Ms. Wang's apartment impacted case agent's decision to authorize "777777" password on Wang devices); *In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 105 (2d Cir. 2016) (rejecting inevitable discovery doctrine because the court could not say that the lawful means the government used were "not tainted by the challenged search so as to admit a finding of inevitable discovery").

*Third*, suggestion that agents would have eventually figured out the "777777" password to the non-Brute Forceable devices is belied by Ms. Volchko's own contemporaneous warning to the agents that "it's important to note that unsuccessful PIN attempts *always* run the risk of permanently disabling or wiping the device." GX 4 (emphasis added); *cf. In re 650 Fifth Ave. & Related Props.*, 934 F.3d 147, 164 (2d Cir. 2019) ("[P]roof of inevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment . . . .").

*Finally*, the government cannot show, that at the time of the of the *Edwards* violations at Ms. Wang's apartment, the agents knew they would have obtained Mr. Kwok's passwords. *In re*

---

phone prior to obtaining the warrant." *Id.* Here, by contrast, the government cannot meet its burden to show that the agents' use of the "777777" password on Ms. Wang's phones was independent of the fact that Ms. Wang had provided it. *See* Tr 71:19-25 (testimony that CART examiner had "no way of knowing" whether information from search of Ms. Wang's apartment impacted case agent's decision to authorize "777777" password on Wang devices).

[5] *United States v. Lauria*, 70 F.4th 106, 124 (2d Cir. 2023).

**BAKER BOTTS** LLP

The Honorable Analisa Torres — - 6 - — April 16, 2024

*650 Fifth Ave. and Related Props.*, 934 F.3d at 164 (instructing district courts to "view[] affairs as they existed at the instant before the unlawful search . . ." (citation and quotation omitted)).

**Biometrics**. Nor, for the same reasons stated in our April 12 filing, can the government rely on biometrics as a means of inevitable discovery. While Mr. Isolda testified that one of the devices had biometric capabilities, his examinations occurred the day before and the morning of the hearing.[6] Again, as in *Lauria*, the record shows that "but for" the suppression motion, "the government would have had no reason—and, therefore, would have been unlikely—to pursue alternative lawful means,"[7] here the use of the devices' biometric capabilities. As such, biometric capabilities do not provide a basis for inevitable discovery.

***

Accordingly, the Court should grant the motion to suppress.

Respectfully submitted,

*/s/ Brendan F. Quigley*
Brendan F. Quigley

---

[6] (Tr. 80:6-23).

[7] 70 F.4th at 124.