**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

      v.

YANPING WANG,

          Defendant.

23 Cr. 118-3 (AT)

---

# MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTIONS IN LIMINE

Brendan F. Quigley
Sarah Reeves
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, N.Y. 10112
Tel: (212) 408-2500
brendan.quigley@bakerbotts.com
sarah.reeves@bakerbotts.com

*Attorney for Yanping Wang*

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
INTRODUCTION ...................................................................................................1

DISCUSSION ........................................................................................................2

I.    The Government's Arguments Regarding Co-Conspirator and Purported "Agent" Admissions................................................................................................ 2

    A.    Applicable Law ..................................................................................... 2

    B.    Discussion ............................................................................................. 3

        1.    The Court Should Reject The Government's "Framework" for Assessing the Ability of Agent Statements ............................................................... 3

II.    The Government's Other Acts Evidence ........................................................ 7

    A.    Applicable Law ..................................................................................... 8

        1.    Rule 404(b) ................................................................................. 8

        2.    Other "Other Acts" Evidence .................................................... 9

        3.    Rule 403 ................................................................................... 10

    B.    Discussion ........................................................................................... 11

        1.    A10 Project ............................................................................... 11

        2.    Alleged "False Promise" to Donate $100 Million .................. 13

        3.    Pre-Fundraising Asset Seizure ................................................. 14

        4.    Post-Arrest Conduct ................................................................. 15

        5.    Bankruptcy ............................................................................... 19

████████████████████████████████████████

III.   The Government's Arguments Regarding the GTV Private Placement ......................... 27

IV.   The Government's 902(11) Authentication Argument.................................... 28

V.    The Government's Arguments About Bank Records from the First Abu Dhabi Bank .... 31

    A.    Applicable Law .................................................................................... 31

    B.    The bank records do not meet the standard for admission under Rule 807 .......... 32

VI.   The Government's Attempts to Constrain the Defense, Require the Defendants to Testify, and to Place Evidentiary Burdens on the Defendants ........................................ 35

    A.    Evidence Regarding the CCP's Targeting of the Defendant's Is Relevant and Admissible ........................................................................................... 36

        1.    Background ............................................................................... 36

        2.      Discussion ................................................................................. 36

B.    The Government's Improper Attempts to Preclude "Arguments, Evidence, [and/or] Cross-Examination" Concerning Central Elements of Fraud .............................. 42

        1.      Materiality, Misrepresentations, and Intent ............................... 42

        2.      Defendants' "Prior Good Acts" and Personal Circumstances May Be Relevant to Provide Context .................................................... 44

C.    The Victim's Financial Losses Are Not Relevant ................................ 47

D.    The Government Must Prove an Intent to Cause Actual Harm to the Victims .... 48

CONCLUSION ............................................................................................50

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alexander v. Hanson,*
566 F. Supp. 3d 162 (N.D.N.Y. 2021)..................................................................9

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988)..........................................................................................43

*Crawford v. Washington,*
541 U.S. 36 (2004)............................................................................................30

*Davis v. Alaska,*
415 U.S. 308 (1974).....................................................................................38, 41

*Despins et al. v. HCHK Technologies, Inc. et al.,*
23-ap-05013 (Bankr. D. Conn.) ........................................................................21

*Despins v. Lamp Capital LLC, et al.,*
23-ap-05023 (Bankr. D. Conn.) ........................................................................21

*Despins v. Wang,*
5:24-ap-05027 (Bankr. D. Conn.) .....................................................................21

*Despins, et al. v. Ace Decade Holdings Ltd., et al.,*
23-05028 (Bankr. D. Conn.) .............................................................................21

*Estelle v. Williams,*
425 U.S. 501 (1976)..........................................................................................17

*Huddleston v. United States,*
485 U.S. 681 (1988)............................................................................................9

*Idaho v. Wright,*
497 U.S. 805 (1990)..........................................................................................32

*In re Cnty. of Erie,*
473 F.3d 413 (2d Cir. 2007)..............................................................................27

*In re Lifetrade Litig.,*
No. 17-CV-2987(JPO)(KHP), 2022 WL 3644357 (S.D.N.Y. Aug. 24, 2022)......................25

*In re Reserve Fund Secs. & Derivative Litig.,*
No. 09 CIV. 4346 (PGG), 2012 WL 12354233 (S.D.N.Y. Oct. 3, 2012)................................3

*Lakah v. UBS AG,*
    996 F. Supp. 2d 250 (S.D.N.Y. 2014)..................................................31, 32, 33, 34

*Melendez-Diaz v. Massachusetts,*
    557 U.S. 305 (2009)...........................................................................................30

*Old Chief v. United States,*
    519 U.S. 172 (1997)................................................................................24, 25, 48

*Orsaio v. New York State Dep't of Corr. & Cmty. Supervision,*
    No. 22-596, 2023 WL 3410554 (2d Cir. May 12, 2023) ........................................4

*Pappas v. Middle Earth Condo. Ass'n,*
    963 F.2d 534 (2d Cir. 1992)..................................................................................3

*Park W. Radiology v. CareCore Nat. LLC,*
    675 F. Supp. 2d 314 (S.D.N.Y. 2009)..................................................................39

*Parsons v. Honeywell, Inc.,*
    929 F.2d 901 (2d Cir. 1991).................................................................................32

*TSC Indus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976).............................................................................................43

*TVT Recs. v. Island Def Jam Music Grp.,*
    250 F. Supp. 2d 341 (S.D.N.Y. 2003)...............................................................1, 36

*United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.,*
    822 F.3d 650 (2d Cir. 2016).............................................................................7, 15

*United States v. Agne,*
    214 F.3d 47 (1st Cir. 2000) ...................................................................................4

*United States v. Bankman-Fried,*
    No. S6 22-CR-0673 (LAK), 2023 WL 6283509 (S.D.N.Y. Sept. 26, 2023)..................2, 6, 29

*United States v. Beech-Nut Nutrition Corp.,*
    871 F.2d 1181 (2d Cir. 1989).................................................................................5

*United States v. Benedetto,*
    571 F.2d 1246 (2d Cir. 1978)...............................................................................12

*United States v. Brandt,*
    196 F.2d 653 (2d Cir. 1952)...........................................................................39, 43

*United States v. Brooks,*
    No. 06-CR-550(S-1)(JS), 2010 WL 11515680 (E.D.N.Y. Jan. 25, 2010)..............47

iv

*United States v. Carboni*,
    204 F.3d 39 (2d Cir. 2000).................................................................................................9

*United States v. Carter*,
    No. 21-CR-681-01-02-03 (NSR), 2024 WL 268248 (S.D.N.Y. Jan. 24, 2024) .....................30

*United States v. Carton*,
    No. 17 CR 680 (CM), 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018).....................................38

*United States v. Curley*,
    639 F.3d 50 (2d Cir. 2011)..................................................................................................8

*United States v. Detrich*,
    865 F.2d 17 (2d Cir. 1988)................................................................................................40

*United States v. Diaz*,
    176 F.3d 52 (2d Cir. 1999)................................................................................................23

*United States v. DiMaria*,
    727 F.2d 265 (2d Cir. 1984).........................................................................................39, 40

*United States v. Dingle*,
    862 F.3d 607 (7th Cir. 2017) ............................................................................................23

*United States v. Dingle*,
    No. 12-30098, 2014 WL 5152109 (C.D. Ill. Oct. 14, 2014)................................................23

*United States v. Donovan*,
    577 F. Supp. 3d 107 (E.D.N.Y 2021) ............................................................................16, 17

*United States v. Doyle*,
    130 F.3d 523 (2d Cir. 1997)..............................................................................................33

*United States v. Figueroa*,
    618 F.2d 934 (2d Cir. 1980)..............................................................................................18

*United States v. Gotti*,
    399 F. Supp. 2d 417 (S.D.N.Y. 2005)................................................................................24

*United States v. Gotti*,
    457 F. Supp. 2d 395 (S.D.N.Y. 2006)................................................................................40

*United States v. Harris*,
    733 F.2d 994 (2d Cir. 1984)..............................................................................................40

*United States v. Harvey*,
    547 F.2d 720 (2d Cir. 1976).....................................................................................38, 41, 44

*United States v. Hsu*,
    669 F.3d 112 (2d Cir. 2012)............................................................................13, 14

*United States v. Jadusingh*,
    No. 18-CR-257 (KAM), 2020 WL 207950 (E.D.N.Y. Jan. 14, 2020) ...................................10

*United States v. Kadir*,
    718 F.3d 115 (2d Cir. 2013)....................................................................................49

*United States v. Krug*,
    198 F. Supp. 3d 236 (W.D.N.Y. 2016) ...................................................................10

*United States v. Levy*,
    No. S5 11 CR 62 PAC, 2013 WL 655251 (S.D.N.Y. Feb. 22, 2013) ...................................19

*United States v. Litvak*,
    808 F.3d 160 (2d Cir. 2015)............................................................................39, 43

*United States v. Males*,
    459 F.3d 154 (2d Cir. 2006)....................................................................................48

*United States v. McCallum*,
    584 F.3d 471 (2d Cir. 2009)............................................................................9, 15

*United States v. Napout*,
    963 F.3d 163 (2d Cir. 2020)....................................................................................49

*United States v. Nektalov*,
    325 F. Supp. 2d 367 (S.D.N.Y. 2004)....................................................................9

*United States v. O'Connor*,
    580 F.2d 38 (2d Cir. 1978)....................................................................................20

*United States v. Perez*,
    989 F.2d 1574 (10th Cir. 1993) ....................................................................................5

*United States v. Prevezon Holdings, Ltd.*,
    319 F.R.D. 459 (S.D.N.Y. 2017) ...................................................................33, 34

*United States v. Pipola*,
    83 F.3d 556 (2d Cir. 1996)....................................................................................23

*United States v. Russo*,
    302 F.3d 37 (2d Cir. 2002)....................................................................................16

*United States v. Shin*,
    No. 19 Cr. 552 (JPC), 2022 WL 153184 (S.D.N.Y. Jan. 15, 2022) ...................................42

*United States v. Snype*,
    441 F.3d 119 (2d Cir. 2006)................................................................16

*United States v. Sutton*,
    No. CR 21-0598 (PLF), 2024 WL 278070 (D.D.C. Jan. 25, 2024)......................38

*United States v. Townsend*,
    No. S1 06 CR. 34 (JFK), 2007 WL 1288597 (S.D.N.Y. May 1, 2007).................9

*United States v. Tussa*,
    816 F.2d 58 (2d Cir. 1987)................................................................16

*United States v. Ulbricht*,
    79 F. Supp. 3d 466 (S.D.N.Y. 2015).....................................................10

*United States v. Vilar*,
    729 F.3d 62 (2d Cir. 2013)................................................................43

*United States v. Weaver*,
    860 F.3d 90 (2d Cir. 2017)...........................................................45, 46

*United States v. Weigand*,
    No. 20-cr-188 (JSR), 2021 WL 568173 (S.D.N.Y. Feb. 14, 2021) ...............29, 30

*United States v. Williams*,
    No. 13 Cr. 419, 2016 WL 4536864 (E.D.N.Y. Aug. 30, 2016)......................12

*Viada v. Osaka Health Spa, Inc.*,
    No. 04 Civ. 2744.............................................................................29

STATUTES

18 U.S.C. § 3505...............................................................................34, 35

OTHER AUTHORITIES

17 C.F.R. Part 230...............................................................................27

Fed. R. Evid 106 ...............................................................................14

Fed. R. Evid. 401 ...............................................................................13

Fed. R. Evid. 403 ......................................................................... *passim*

Fed. R. Evid. 404(a)...........................................................................20

Fed. R. Evid. 404(b)....................................................................... *passim*

vii

Fed. R. Evid. 801 ............................................................................................................2, 3

Fed. R. Evid. 803(6) ......................................................................................................34, 35

Fed. R. Evid. 807 ......................................................................................................31, 32, 35

Fed. R. Evid. 902(11) ..............................................................................................28, 29, 30, 34

Fed. R. Evid. 902(12) ........................................................................................................34

U.S. Const. amend. V........................................................................................................39

Defendant Yanping Wang respectfully submits this memorandum in opposition to the government's motions *in limine*, *see* ECF No. 273 ("Gov't Mem.").

## INTRODUCTION

"The purpose of *in limine* motions is to enable the Court to rule on disputes over the admissibility of discrete items of evidence." *TVT Recs. v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003). Motions *in limine* are not "preemptive weapons . . . to strike in shotgun fashion at whole topics [or] sources of prospective evidence . . . ." *Id.* at 344-45.

Yet, by and large, that is what the government's 73-page motions *in limine* try to do. The government seeks preliminary rulings on "categories" of evidence by offering "examples" (as opposed to "discrete items") of that evidence;[1] seeks to admit "evidence" without limit from another sprawling litigation (the Kwok Bankruptcy);[2] and seeks to have the Court write the direct and cross examinations of Mr. Kwok and Ms. Wang in advance.

This is bad enough and it would, standing alone, be sufficient to deny the majority of the government's motions.

Even worse though, on substance, the government tries to constrain the defense on key issues by making arguments that run headlong into well-established Second Circuit case law and the Bill of Rights. Perhaps there is no clearer evidence of this then the government's argument that the defendants should be precluded from offering certain evidence to "***prove their innocence***."[3] But the government also appears to argue that the defendants can introduce evidence of their state

---

[1] *See* Gov't Mem. at 5 (citing "examples of Je's statements"), 6 ("Examples of Mileson's Statements"), 8 ("Examples of Hoaran He Statements").

[2] *See* Gov't Mem. at 26-31.

[3] Gov't Mem at 58 (emphasis added) (arguing the Court should prohibit the defendants from introducing evidence to "prove their innocence").

of mind only if they testify—a theory that conflicts with *decades* of Second Circuit case law. And the government's argument that "disclaimers" are "irrelevant" in a criminal case is directly contradicted by the primary authority the government cites.

Further, while attempting to improperly constrain the defense on issues that do matter in this fraud case (like scienter and materiality), the government argues for the admission of whole categories of evidence plainly not offered for any proper purpose, like a sprawling bankruptcy, ███ ███████████████████████████, and which have no place in this fraud trial.

## DISCUSSION

**I.    The Government's Arguments Regarding Co-Conspirator and Purported "Agent" Admissions**

The Court should reject the government's motions *in limine* for pre-trial rulings regarding "statements of the defendant's co-conspirators and agents." *See* Gov't Mem. at 2-12. The government's arguments on these issues proceed largely in the abstract and largely without reference to specific items of evidence, and the motions can, and should, be denied on that basis alone. *See United States v. Bankman-Fried*, No. S6 22-CR-0673 (LAK), 2023 WL 6283509, at *3 (S.D.N.Y. Sept. 26, 2023) (explaining "bases of admissibility cannot be determined in the abstract" and admissibility "must turn on characteristics of the particular items of evidence and the purposes for which they are offered," and accordingly denying hearsay-related motions *in limine* without prejudice to renewal at trial).

### A. Applicable Law

Rule 801(d) of the Federal Rules of Evidence provides that a "statement . . . offered against an opposing party" is not hearsay if, among other things, it either:

> **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed [("Agent Statements")]; or

2

**(E)** was made by the party's coconspirator during and in furtherance of the conspiracy [("Statements in Furtherance of the Conspiracy")].

Fed. R. Evid. 801(d)(2)(D)-(E).

**B. Discussion**

> **1. The Court Should Reject the Government's "Framework" for Assessing the Ability of Agent Statements**

To admit Agent Statements against a defendant, the government must "establish (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992). "Although the statement to be introduced may not itself be relied upon to establish the alleged agency relationship, this foundational predicate may be established by circumstantial evidence." *Id.* at 538 (internal citations omitted).

The government proposes a "framework" for "assessing the admissibility of Kwok Enterprise employee or agent statements that the Government will offer," specifically that "the statements are not hearsay and may be offered for their truth." Gov't Mem. at 10.

That is some "framework."

To begin with, as noted above, motions *in limine* are for specific items of evidence, not "framework[s]" and the Court should reject this motion as premature, particularly in the context of preliminary rulings on what is and what is not hearsay. Notably, by way of comparison, the government's primary authority in this section of its brief—*In re Reserve Fund Secs. & Derivative Litig.*, No. 09 CIV. 4346 (PGG), 2012 WL 12354233 (S.D.N.Y. Oct. 3, 2012)—dealt with questions around three specific exhibits "compiled . . . largely from excerpts of prior testimony" that the SEC sought to offer, not a wholesale "framework." *Id.* at *3.

And even if a "framework" is appropriate on a motion *in limine*, the following one should apply to the government's efforts to introduce against Ms. Wang, as Agent Statements, "[s]tatements made by Kwok Enterprise employees . . . or by Farm members."[4]

- *First*, the Kwok Enterprise, of course, is a creation of the government's RICO theory, not an actual company or set of companies and, as such no one was a "Kwok Enterprise employee[]." Gov't Mem. at 9.

- *Second*, to admit an Agent Statement against Ms. Wang, the government must do more than simply show a person worked for a company for which Ms. Wang was listed on bank records as an owner or had similar title. Instead, the government must show a principal-agent relationship between Ms. Wang and that declarant. An agency relationship may be shown by showing the "the declarant is directly responsible to the defendant; that the declarant reports directly to the defendant who owns an overwhelming majority of stock in the company; that the declarant was hired by the defendant and worked on matters in which the defendant was actively involved; or that the defendant directed [the declarant's] work on a continuing basis." *United States v. Agne*, 214 F.3d 47, 55 (1st Cir. 2000) (internal citations omitted).

- *Third*, the government must show that the statement was made within the scope of the declarant's agency. *See Orsaio v. New York State Dep't of Corr. & Cmty. Supervision*, No. 22-596, 2023 WL 3410554, at *3 (2d Cir. May 12, 2023) (affirming district court's ruling that "the colleague's personal opinion about the roots of his supervisor's dislike of [petitioner] did not 'relate[ ] to a matter within the scope of the [colleague's] agency.'" (alteration in original) (quoting *Pappas*, 963 F.2d at 537-38)).

- *Fourth*, a declarant who is an agent of Mr. Kwok is not necessarily an agent of Ms. Wang (and vice versa), and, as such, the Court must make agency and scope determinations on both a defendant-by-defendant and a statement-by-statement basis and issue appropriate limiting instructions as necessary.[5]

Further, as to the government's arguments regarding videos made by Mr. Kwok, *see* Gov't Mem. at 11-12, the same "framework" should apply. In particular, "Kwok's [and] Kwok's agents,"

---

[4] Gov't Mem. at 9.

[5] Among other things, while the government contends that "statements from Je, Mielson [sic], and Hoaran He are . . . statements of the defendants' agents," Gov't Mem. at 8, the government is unlikely to be able to show that any of those men were somehow subject to Ms. Wang's direction or control.

Gov't Mem. at 11, are not necessarily "Wang's agents." And it is simply illogical, and non-sensical, for the government to argue that a statement attributed to Mr. Kwok that "Everyone sees that we are so busy G-TV, G-News, Wang Yanping, and all the employees of our rule of law fund," somehow "proves" that Ms. Wang "controlled" G News, GTV, and GETTR." *Cf.* Gov't Mem. at 11 & n.5 (internal punctuation and citation omitted) (arguing that Mr. Kwok's statement "proves the point" that the "media platforms . . . were controlled by Kwok and Wang").[6]

Accordingly, the Court should deny the government's request for a pre-trial ruling regarding the admissibility of Agent Statements.

### 2.   Alleged Statements in Furtherance of a Conspiracy

As noted above, co-conspirator statements may be admitted only if the Court finds, by a preponderance of the evidence, they are made "in furtherance of the conspiracy," meaning they were intended to "promote" conspiratorial objectives. *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1198-99 (2d Cir. 1989) (internal punctuation omitted).

Courts construe the "in furtherance of requirement" "strictly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (collecting cases) (internal punctuation omitted). "[A] 'merely narrative' description by one co-conspirator or the acts of another" does not meet the "in furtherance" test nor does "idle chatter" among co-conspirators. *Beech-Nut Nutrition Corp.*, 871 F.2d at 1199 (internal punctuation and citation omitted). Nor does a statement relating to a past event, even if connected to the conspiracy, meet the standard if the statement "serves no immediate or future conspiratorial purpose." *Perez*, 989 F.2d at 1578 (internal punctuation and citation omitted).

---

[6] Further, Ms. Wang reserves the right to challenge any such videos on other grounds, including but not limited to authenticity.

In light of this "strict[]," statement-by-statement requirement, the government's request for a conditional ruling on broad categories of statements—calls recorded by Employee-1, including unidentified and summarized "other Crane recordings";[7] "[e]xamples of Mileson's Statements,"[8] "other Mileson statements that will be offered at trial,"[9] and "[e]xamples of Haoran He Statements,"[10]—is inappropriate. And even where the government purports to refer to specific statement or calls, it does so via excerpts and through the use of ellipses. *See generally* Gov't Mem. at 4-7.

Without more detail on what the actual statements the government seeks to introduce are, the Court should deny the government's motion. *See Bankman-Fried*, 2023 WL 6283509, at *3 (rejecting government request for pre-trial ruling that certain statements were admissible as statements in furtherance of the conspiracy where the government sought "preliminary rulings on the admissibility of general categories of out of court statements as well as excerpted out of court statements of which the Court has been provided only portions").

---

[7] Gov't Mem. at 6.

[8] *Id.*

[9] Gov't Mem. at 8.

[10] *Id.* Although not directly relevant to the motion *in limine*, it is remarkable and telling that the government has no issue publicly outing (uncharged, supposed) co-conspirators in its motion, *see, e.g.*, Gov't Mem. at 6, while anonymizing its own witnesses (Employee-1, Witness-1) who appear themselves to be uncharged potential co-conspirators and not victims, *see, e.g., id.* at 31.

## II.    **The Government's Other Acts Evidence**

The Court should reject the government's attempts to introduce large swaths of "other acts" evidence. Most of this evidence is neither direct evidence of the charged schemes or admissible for a proper purpose under Rule 404(b).

As the government acknowledges the "central disputed issue in the trial" will be "the defendant's fraudulent intent and lack of good faith."[11] As the Second Circuit has made clear, the crucial time period for assessing fraudulent intent is at the time the statements were made, not at some later time. *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016) ("It is emphatically the case—and has been for more than a century—that a representation is fraudulent only if made with the contemporaneous intent to defraud . . . .").

In this regard, it bears noting the government's brief makes clear that, consistent with the fact that the GTV Private Placement, the establishment of G|Clubs, and the Farm Loan program all occurred in 2020, the core of the government's case concerns events that happened in 2020 and 2021.[12] As such, events occurring in 2022, 2023, and 2024 (e.g., the bankruptcy and the defendants' pre-trial detention) are plainly not probative of the government's acknowledged "central disputed issue in the trial," i.e., "the defendant's fraudulent intent and lack of good faith."[13] Nor can they show the "background" of the charged schemes. Nor is the alleged "A10" scheme

---

[11] Gov't Mem. at 25.

[12] *See* Gov't Mem. at 5-6 (discussing a recorded call on May 4, 2021 discussing the disposition of funds received from G|Clubs members); *id.* at 6 (discussing a May 6, 2021 call); *id* at 7 (same); *id.* at 11 (discussing a November 16, 2021 video post); *id.* at 11 n.5 (citing an April 2020 G News post); *id.* at 34 (asserting that "GTV ceased to exist as of in or about 2020"); *id.* at 39-44 (discussing the receipt of Farm Loan Program proceeds between August 2020 and February 2021). While page 40 of the government's brief refers to "October 20 and October 22, 2022 transfers to 'Greenwich Land,'" this appears to be a typo and the actual records (and subsequent text) show that these transfers occurred in 2020.

[13] Gov't Mem. at 25.

part of a common scheme or plan with the other charged schemes, and it does not meet the Second Circuit's high standard for "*modus operandi*" evidence. Moreover, much of the government's proposed other acts evidence—in an already-sprawling case—runs afoul of Rule 403.

### A. Applicable Law

#### 1. Rule 404(b)

Rule 404(b) of the Federal Rules of Evidence governs the admissibility of evidence of other "crimes, wrongs, or acts" that are not charged in the indictment. While Rule 404(b) bars all propensity evidence, the Rule does permit evidence of prior acts introduced for a non-propensity purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" as to the defendant. *See* Fed. R. Evid. 404(b). The rule provides, in relevant part:

> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

*Id.*

"'Other act' evidence serves a proper purpose" only if "it is not offered to show the defendant's propensity to commit the offense." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011). The Second Circuit has cautioned, however, that even when used for a permitted purpose, such evidence presents a special danger of prejudice to the defense. Thus, in the Second Circuit, "[t]o determine whether to admit Rule 404(b) evidence, the court should consider whether: '(1) the prior act evidence is being 'offered for a proper purpose'; (2) the evidence is relevant to a disputed issue; (3) the probative value of the evidence is substantially outweighed by its potential

for unfair prejudice pursuant to Rule 403; and (4) there is an appropriate limiting instruction." *Alexander v. Hanson*, 566 F. Supp. 3d 162, 167 (N.D.N.Y. 2021) (citing *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (internal alterations omitted)). Moreover, "evidence of third-party's bad act is only admissible against the defendant upon a sufficient showing, by independent evidence, of a conspiracy among one or more other defendants." *Hanson*, 566 F. Supp. 3d at 167 (internal citation and quotation omitted).

Additionally, at the defendant's request, the district court should give the jury an appropriate limiting instruction. *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).

### 2. Other "Other Acts" Evidence

Evidence of uncharged conduct may be admitted as direct proof of the charged conduct rather than "other act" evidence under Rule 404(b) "if it [1] arose out of the same transaction or series of transactions as the charged offense, [2] if it is inextricably intertwined with the evidence regarding the charged offense, or [3] if it is necessary to complete the story of the crime on trial." *United States v. Nektalov*, 325 F. Supp. 2d 367, 370 (S.D.N.Y. 2004) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)).

In all events, "where it is not manifestly clear that the ['other act'] evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *United States v. Townsend*, No. S1 06 CR. 34 (JFK), 2007 WL 1288597, at *1 (S.D.N.Y. May 1, 2007), *aff'd sub nom. United States v. Mercado*, 573 F.3d 138 (2d Cir. 2009) (quoting *Nektalov*, 325 F. Supp. 2d at 372).

9

### 3. **Rule 403**

A determination that "other act" evidence is admissible under Rule 404(b) or as direct evidence is not the end of the inquiry. Otherwise-admissible evidence may also be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

It is thus proper to exclude relevant evidence under Rule 403 where, among other things, its admission would require "mini trials" on collateral issues, which "may mislead the jury and lead it to convict [the] defendant for uncharged conduct." *United States v. Ulbricht*, 79 F. Supp. 3d 466, 492-93 (S.D.N.Y. 2015) (in prosecution relating to the defendant's alleged operation of an online marketplace for illicit goods and services, excluding evidence that "may lead to a mini-trial on collateral issues, such as whether or not" certain goods not included in the indictment were, in fact, contraband); *United States v. Jadusingh*, No. 18-CR-257 (KAM), 2020 WL 207950, at *4 (E.D.N.Y. Jan. 14, 2020) (excluding "other act" evidence that would require exploration of the circumstances of the prior act and "runs the risk of confusing the jury and leading to a mini-trial").

Where the probative value relative to the risk of unfair prejudice, confusion, misleading the jury, or waste of time cannot be resolved on the record available on a motion *in limine*, the court may reserve decision until closer to trial when the record is more fully developed. *See United States v. Krug*, 198 F. Supp. 3d 236, 252 (W.D.N.Y. 2016) (reserving decision on motion to sever or admissibility of evidence of severed charges under Rule 404(b) until "closer to trial, once the parties have better identified their anticipated evidence and witnesses, and once they have had an opportunity to fully brief (and once the Court has had an opportunity to fully consider) the Rule 404(b) issue").

10

### B. Discussion

In determining what evidence is direct evidence of the crimes alleged or admissible for a proper purpose under Rule 404(b), the government's own characterization of the charges is instructive. Just a few months ago, the government stressed that "[t]his is a fraud case." Gov't Motion to Compel Opp., ECF No. 201 at 1. The return of a RICO indictment just weeks later did not change that. Indeed, in arguing that only a "modest adjournment" of the original April 8 trial date was necessary despite the RICO indictment, the government noted that, while adding a RICO charge, the S2 RICO indictment "relies principally on the same allegations as the S1 indictment" and that the prior indictment and the new RICO indictment "both rely upon the same conduct, the same evidence, and the same witnesses." Gov't Letter, ECF No. 228 at 1.

#### 1. A10 Project

The Court should reject the government's efforts to offer evidence of the "A10 Project." *See* Gov't Mem. at 15-19. To begin with, the government's proffer concerning how this evidence is relevant is thin; consisting of a two-plus, single-spaced script from an individual named "Fei Fei," not Ms. Wang (or even Mr. Kwok). *See id.* at 16-18. In any event, the evidence does not meet the standards for admitting other act evidence.

*First*, the A10 Project is not admissible as direct proof of the charged schemes. It does not arise out of the "same transaction or series of transactions as the charged offense," as it was a completely separate program that took place in 2023, years after the core 2020-21 time period in this case. *See* S2 Indictment ¶¶ 16-18 (describing the GTV Private Placement, G|Clubs, and Farm Loan programs as occurring primarily in 2020). The government offers no evidence, nor is there any, for example, that the funds collected for GTV, G|Clubs or the Farm Loan programs were re-

directed or otherwise went to the A15 or A10 programs, or were in any way used to further or support the other alleged investment offerings, which occurred years prior.

*Second*, the A10 Project is not admissible under Rule 404(b). Indeed, the government's acknowledgement that the A10 Project differed from the other charged schemes as to "its particular fraudulent details," Gov't Mem. at 19, is itself is an admission that the A10 Project does not meet the high standard in the Second Circuit for *modus operandi* evidence. That standard requires that the charged and uncharged conduct share "unusual and distinctive" characteristics akin to a "signature." *United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir. 1978) ("The device used must be so unusual and distinctive as to be like a signature."); *United States v. Williams*, No. 13 Cr. 419, 2016 WL 4536864, at *7 (E.D.N.Y. Aug. 30, 2016) (applying this standard and excluding evidence because "[a]s the case law of this Circuit demonstrates, transporting contraband in a secret vehicle compartment is hardly 'unusual' or 'unique'" (citations omitted)). Unfortunately, there is nothing "distinct," "unusual," or "unique," about "promise[s] of extremely high returns and a need to act fast." Gov't Mem. at 19. As such, the A10 Project is inadmissible under Rule 404(b).

Indeed, it appears the real reason the government seeks to introduce this evidence is to achieve a "these-defendants-commit-fraud-schemes" inference, the very kind of propensity inference the law forbids.

Further, the A10 project should not be admitted under Rule 403. Even the "Fei Fei" script makes clear that evidence concerning the A10 project will necessarily include evidence of other tangential issues, such as the "SEC refund" to GTV investors, which the government elsewhere claims is irrelevant. *Cf.* Gov't Mem. at 67.

The government's motion to admit this evidence should be denied.

12

### 2. Alleged "False Promise" to Donate $100 Million

The Court should deny the government's request to introduce evidence of an alleged "false promise[]" by Mr. Kwok "that he would be donating $100 million to the Rule of Law organizations, a pair of nonprofits that Kwok established soon after making this false promise." Gov't Mem. at 19-20. This allegation is neither direct evidence of the charges in the S2 Indictment, nor admissible under Fed. R. Evid. 404(b).

*First*, Mr. Kwok's alleged "false promise" is not direct evidence of the charged schemes or admissible for any other proper purpose. The government's main theory of admissibility seems to be that "victim investors in GTV and subsequent fraudulent investment 'projects' were required to donate to the Rule of Law entities as a prerequisite to be eligible to invest." Gov't Mem. at 20. But nothing about Kwok's alleged false promise years earlier makes the alleged prerequisite more or less likely nor has the government established that this alleged prerequisite makes the charged fraud schemes more or less likely. *See* Fed. R. Evid. 401 (evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; *and* the fact is of consequence in determining the action") (emphasis added).

Nor does the government explain how its "self-funding" theory is relevant. Gov't Mem. at 20. Indeed, if Mr. Kwok was truly capable of "self-funding" the GTV Private Placement, the Farm Loan Program, G|Clubs, and the Himalaya Exchange, there would have been no need for investors to send money to those programs.

*Second*, there is no basis to admit this evidence under Rule 404(b). The government's case law support here largely consists of "boilerplate" cites discussing the Rule 404(b) standard generally. And while *United States v. Hsu*, 669 F.3d 112 (2d Cir. 2012), did involve a fraud case, there the charged campaign finance scheme and uncharged Ponzi scheme overlapped in time and

13

in the use of the proceeds; indeed, the Ponzi scheme investors had directly funded the fraudulent campaign. 669 F.3d at 113-119 (Ponzi scheme occurred between 2000 and 2007; campaign finance scheme occurred between 2005 and 2007).[14] Here, as noted above, the core events in the charged schemes occurred in 2020 and 2021, while the alleged false promise was made in 2018.

Accordingly, the Court should exclude this evidence.

### 3. Pre-Fundraising Asset Seizures

The government also seeks to introduce evidence that Kwok's assets were seized by Chinese and Hong Kong authorities "prior to his fundraising." Gov't Mem. at 22. For one, as the government acknowledges, the asset seizures began in 2017 and an order was issued in October 2018, *see id.*, over a year and a half before the GTV Private Placement. This temporal distance alone makes this evidence less probative.

Further, the government's factual proffer leaves at least the potential for issues under Rule 403 and the hearsay rules, depending on how the government intends to prove up these seizures.

At a minimum, the Court should defer ruling on this evidence until the government provides a fuller factual proffer. And to the extent the Court is inclined to allow any of this evidence, particularly via statements of Mr. Kwok, it should do so mindful of the rule of completeness, which provides that "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time" and that "[t]he adverse party may do so over a hearsay objection." Fed. R. Evid 106.[15]

---

[14] Further, *Hsu* was reviewed under a plain-error standard, given counsel's failure to object to this evidence at trial. 669 F.3d at 118.

[15] To the extent the Court is inclined to allow any of the evidence concerning Mr. Kwok's alleged false promise or seized assets into evidence, it should provide appropriate limiting instructions, which detail the

### 4. Post-Arrest Conduct

The Court should reject the government's attempt to offer "post-arrest"—i.e., prison—conduct of either defendant into evidence. Notably, elsewhere in its brief, the government seeks to prohibit the *defendants* from offering any evidence concerning their "pretrial detention,"[16] an apparent recognition of the irrelevancy of this timeframe.

In any event, the "post-arrest conduct" the government seeks to offer is neither direct evidence of the charged crimes nor offered for a permissible, non-propensity purpose under Rule 404(b). As noted above, the defendants' detention in 2023 and 2024 post-dates the core of the charged scheme by three to four years.[17] As such, it is of no relevance to the "planning," background, or development of the charged schemes. And, as noted above (in the government's words), "the central disputed issue in the trial"—"the defendant's [sic] fraudulent intent and lack of good faith"[18]—is generally assessed at the time the alleged fraudulent representations were made,[19] not years later.

---

permissible uses of the evidence and the limited extent to which the evidence can be considered against Ms. Wang. *See McCallum*, 584 F.3d at 475.

[16] Gov't Mem. at 70.

[17] *See* Gov't Mem. at 5-6 (discussing a recorded call on May 4, 2021 discussing the disposition of funds received from G|Clubs members); *id.* at 6 (discussing a May 6, 2021 call); *id* at 7 (same); *id.* at 11 (discussing a November 16, 2021 video post); *id.* at 11 n.5 (citing an April 2020 G News post); *id.* at 34 (asserting that "GTV ceased to exist as of in or about 2020"); *id.* at 39-44 (discussing the receipt of Farm Loan Program proceeds between August 2020 and February 2021). While page 40 of the government's brief refers to "October 20 and October 22, 2022 transfers to 'Greenwich Land,'" this appears to be a typo and the actual records (and subsequent text) show that these transfers occurred in 2020.

[18] Gov't Mem. at 25.

[19] *See United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016) ("What fraud in these instances turns on, however, is *when* the representations were made and the intent of the promisor *at that time*. As explained below, where allegedly fraudulent misrepresentations are promises made in a contract, a party claiming fraud must prove fraudulent intent at the time of contract execution; evidence of a subsequent, willful breach cannot sustain the claim." (emphasis in original)).

Nor is it probative of any other material issue. Notably, the cases cited by the government, which have allowed the admission of jail calls and other conduct, have involved conduct far more probative of the defendant's guilt, in particular direct admissions. In *United States v. Donovan*, 577 F. Supp. 3d 107 (E.D.N.Y 2021), for example, involved the Court admitted statements that were directly probative of the defendant's guilt, like "they took the coke," "these confidential informants . . . got me," and "I accept the responsibility for what I did. As far as coke, yes . . . ." In contrast, the Court excluded statements like "'I'm screaming -- play this 'cause I don't give a fuck. They can play this shit in court,'" because those statements "do not constitute admissions of guilt or otherwise offer support to the Government's theory of the case[.]" *Id.* at 118-19.[20]

Similarly, here the fact that that defendants may have communicated with other members of the "Kwok Enterprise"—a legal term that came into being only in January 2024 with the government's superseding indictment and thus did not exist at the time of the conversations on page 24 of the government's brief, much less at the time of the alleged fraud—is not probative of their knowledge or intent to deprive GTV investors, G|Club members, or Farm Loan participants of money or property three years earlier. Nor do any of Mr. Kwok's statements on page 24 or the other actions alleged by the government constitute "constitute admissions of guilt or otherwise

---

[20] *United States v. Russo*, 302 F.3d 37 (2d Cir. 2002) involved admitting a recorded prison call of defendant charged with witness tampering in another trial involving his son, telling his son that his co-conspirator "is 'with you, he's with me, I'm with him,'" *id.* at 43, i.e., evidence that was highly probative of agreement among the defendants. None of the examples the government cites on pages 23-26 approach this. Moreover, one of the *Russo* defendants did not even object to this evidence.

Two of the other cases cited by the government on page 26 say nothing at all about prison calls. In *Tussa*, a prosecution in which the defendants were charged with taking delivery of a large quantity of heroin, involved the admission of a *prior* narcotics related crime involving the defendants, which the court ruled was relevant to show intent and knowledge that they were, in fact, taking delivery of heroin in the charged crime. *United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987). *United States v. Snype*, 441 F.3d 119, 127-30 (2d Cir. 2006) involved the erroneous admission of a co-conspirator's redacted guilty plea allocution in a bank robbery case.

offer support to the Government's theory of the case." *Cf. Donovan*, 577 F. Supp. 3d at 119. And the government's claim it will introduce "recorded conversations with individuals within the Kwok Enterprise"—calls that the government made over a year ago, but produced just weeks ago, and has marked AEO[21]—is not an admission by Ms. Wang of anything (she was not a party to calls) and is otherwise inadmissible hearsay.[22]

Further, to the extent the evidence has any minimal probative value, it is far outweighed by the danger of unfair prejudice under Rule 403. The fact that a defendant is in pre-trial detention is unquestionably highly prejudicial, as evidenced by the Supreme Court's holding that compelling a defendant to go to trial in prison clothes impairs the presumption of innocence "so basic to the adversary system." *Estelle v. Williams*, 425 U.S. 501, 504 (1976) ("The potential effects of presenting an accused before the jury in prison attire need not, however, be measured in the abstract. Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system.").

This is why, as noted above, courts have generally required prison-related evidence to be highly probative of guilt (e.g., a direct admission) before admitting it. And as discussed above, none of the evidence proffered by the government is similarly probative here.

---

[21] Unless of course, the government's theory is that "members of the Kwok Enterprise" are both—illogically—somehow victims and perpetrators.

[22]

And the potential for unfair prejudice is particularly high here for at least two reasons. First, while, in practice, *prison calls* can be sanitized to reduce unfair prejudice,[23] testimony and other evidence regarding prison *conduct* cannot. The jury will necessarily know the conduct occurred in prison.

Second, the government's theory that the "defendants used attorneys to facilitate *and* conceal their control and continuation of the crimes,"[24] has no proper purpose other than to impugn counsel. To be sure, we reject the factual predicate of the government's theory. Moreover, the government's theory is not probative of intent at the time the fraudulent representations were made years before. It also creates the opportunity for a side-show and extensive litigation revolving around the attorney-client privilege. And—while the government has been careful to say that these allegations relate only to "prior counsel" and an attorney "who is not counsel of record in the criminal case,"—argument that the defendants have "used attorneys" for improper purposes limiting instruction or not, obviously invites the jury to unfairly and inappropriately speculate about current trial counsel.[25]

In another words, whatever its probative value, this is the very type of evidence Rule 403 is intended to prohibit. *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) ("Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence. The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly

---

[23] For example, by eliminating the "this is a call from a federal prison" preamble.

[24] Gov't Mem. at 25.

[25] Moreover, the purported "use of attorneys" to commit wrongdoing is, again, unfortunately, not the type of distinctive, unusual, "signature"-type conduct the Second Circuit requires for *modus operandi* evidence. *See supra* Section II.B.1.

to excite emotions against the defendant." (internal citations omitted)); *United States v. Levy*, No. S5 11 CR 62 PAC, 2013 WL 655251, at *1-*2 (S.D.N.Y. Feb. 22, 2013) (denying government's motion to introduce evidence of defendants' prior FTC fraud charges under Rule 403 as unfairly prejudicial). In short, the risk of unfair prejudice to Ms. Wang vastly exceeds any probative value of this evidence. As such, the government's motion should be denied.

### 5. Bankruptcy

The government's motion *in limine* to admit "[e]vidence relating to Kwok's ongoing bankruptcy case . . . and the related adversary proceedings, and the events leading up to Kwok's February 15, 2022 bankruptcy filing" as direct evidence of the charged offenses should be denied for multiple reasons.

**The Government's Motion *in Limine* is Improper.** *First*, again, motions *in limine* are not for a vehicle for obtaining pre-trial admission of entire categories of evidence, much less evidence "relating" to a sprawling litigation in another district, or, for that matter, evidence relating to yet another action, the "PAX Lawsuit," in New York state court, *see* Gov't Mem. at 27-28.

**There is No Proper Purpose.** *Second*, the government has not established a proper purpose for any evidence relating to the bankruptcy. To be sure, the bankruptcy case is not a central part of the government's theory here. If it was, the government would have been being less than candid with the Court when, in arguing earlier this year that only a "modest adjournment" of the original April 8 trial date was necessary despite the RICO indictment, because the RICO Indictment "relies principally on the same allegations as the S1 Indictment" and that both the prior indictment and the new RICO indictment "both rely upon the same conduct, the same evidence, and the same witnesses." 1/12/24 Gov't Letter, ECF No. 228 at 1. None of the charges in the S1 Indictment are premised on the bankruptcy.

**The Bankruptcy is Not Direct Evidence of Any Part of the Alleged Fraud Schemes in Which Ms. Wang is Charged.** And there is no basis to argue that the bankruptcy is "inextricably intertwined" with the schemes with which Ms. Wang is charged (GTV, the Farm Loans, and G|Clubs), which primarily involve events that took place years before the bankruptcy. Nor is there any basis to argue that the bankruptcy is somehow necessary to "complete the story of the crime[s] on trial." Indeed, the government's own brief suggests that the impetus for the bankruptcy was the PAX Lawsuit against Mr. Kwok, not the alleged and charged GTV, G|Clubs, and Farm Loans schemes. *Cf.* Gov't Mem. at 27-28.

**There is No Proper Basis to Admit this Evidence Under Rule 404(b); Instead the Government Seeks an Improper "The Defendants Are Bad People" Propensity Inference.** Nor is there any basis to admit evidence relating to the bankruptcy under Rule 404(b). As noted above, Rule 404(b) allows other act evidence to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Obviously, events occurring from 2022 to the present in the bankruptcy cannot show "motive, opportunity, intent," or any of the other permitted uses in connection with alleged schemes that occurred largely in 2020 and 2021. The government's arguments that Mr. Kwok allegedly hides money, makes false statements about his assets,[26] and "engage[s] in obstructive behavior" are plainly asking the Court and the jury to draw the very kind of propensity inference prohibited by Rule 404(a), and they are not somehow evidence of a "common scheme or plan." *Cf. United States v. O'Connor*, 580 F.2d 38, 42 (2d Cir. 1978) (reversing bribery conviction, because evidence of bribes the defendant took "at three plants in Brooklyn six months or a year before the [charged] payoffs in Manhattan plants,"

---

[26] Gov't Mem. at 28-29.

did not "complete the story of the crime on trial" and while "[i]t was perhaps probative of appellant's habit or character," it did not show "the existence of a specific plan of which the charged acts were just a part").

**The Government Literally Seeks to Have a "Trial within a Trial" and the Evidence Should Be Excluded Under Rule 403.** Further, the government's attempt to offer evidence relating to the bankruptcy literally means the government is seeking to have a "trial within a trial," (and perhaps two trials, depending on what evidence the government seeks to introduce concerning the PAX case under the rubric of the "events leading up to the bankruptcy").

As noted above, the probative value of the bankruptcy to the charged offenses is non-existent. Were it otherwise, the government would have been hard-pressed to say, as it did to the Court, that both the prior indictment and the new RICO indictment "rel[y] principally on the same allegations as the S1 Indictment" and "the same conduct, the same evidence, and the same witnesses." 1/12/24 Gov't Letter, ECF No. 228 at 1.

However, the potential under Rule 403 for "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" is huge. The main bankruptcy case alone had over 3,100 document entries as of April 12, 2024. Many issues are still being litigated and are disputed.[27] In other words, the government seeks to have a "trial within a trial" on what is clearly a non-core part of its theory of the case.

Accordingly, the Court should preclude the government from introducing evidence of the bankruptcy.

---

[27] The Chapter 11 Bankruptcy Trustee has filed multiple adversary proceedings in which Ms. Wang is a defendant. *See, e.g.*, *Despins v. Wang*, 5:24-ap-05027 (Bankr. D. Conn.); *Despins v. Lamp Capital LLC, et al.*, 23-ap-05023 (Bankr. D. Conn.); *Despins, et al. v. Ace Decade Holdings Ltd., et al.*, 23-05028 (Bankr. D. Conn.); *Despins et al. v. HCHK Technologies, Inc. et al.*, 23-ap-05013 (Bankr. D. Conn.).











███████████████████████████████████████████████

████████████████

### III.  <u>The Government's Arguments Regarding the GTV Private Placement</u>

The Court should deny the government's motion *in limine* to permit the testimony of Witness-1 concerning the GTV Private Placement.

*First*, based on the government's proffer of Witness-1's testimony, it appears Witness-1, a lawyer, was, in fact, providing legal advice. While the government claims Witness-1 was "acting in a business, and not a legal, capacity," Gov't Mem. at 31, it also asserts that these conversations were "about the GTV private placement, including the possibility of accepting money from non-accredited investors, or individuals who did not meet the threshold qualifications to participate in an unregistered private placement" and the associated "***legal risks***." *Id.* (emphasis added).

Advice concerning the "possibility of accepting money from non-accredited investors, or individuals who did not meet the threshold qualifications to participate in an unregistered private placement" is plainly a legal matter. *See* 17 C.F.R. Part 230, Regulation D (governing "the limited offer and sale of securities without registration under the Securities Act of 1933"). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct," *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007), exactly what Witness-1 apparently claims he was doing.

*Second*, setting aside whether a privilege still exists for GTV, Witness-1's own under-oath statements in public filings show he was acting as *Mr. Kwok's* attorney around this time. For example, in May 2021, Witness-1 filed a declaration in a civil action in the Southern District of

New York in which Mr. Kwok was a defendant.[33] *See* Ex. 2 ("Witness-1 Decl."). In this declaration, Witness-1 clearly states that "[s]tarting in June 2018 and at all relevant times, I served as counsel to Mr. Guo . . . ." *Id.* ¶ 4. Witness-1 further explained that "[i]n this role, I have regularly served as legal counsel to Mr. Guo and to the individual members of Mr. Guo's family, including by assisting Mr. Guo and other individual family members with legal issues as they arose and giving legal advice on an ad hoc basis." *Id.* ¶ 5. Based on this, and Mr. Kwok's similar declaration, the court found that Mr. Kwok "ha[d] established that he had an attorney-client relationship with [Witness-1] . . . ." Ex. 3 (ECF No. 56). It is therefore irrelevant whether or not anyone from GTV has an employee or representative basis to claim privilege on its behalf; Mr. Kwok had one.

*Third*, Ms. Wang's presence during these conversations does not break any privilege. As the government noted in its March 31 letter, Ms. Wang sometimes served as an interpreter during conversations between Mr. Kwok and his attorneys. *See* 3/31/24 Gov't Letter, ECF No. 255, at 7 ("Kwok has claimed to be represented by, or to have had privileged communications with, at least 39 different law firms . . . or individuals (including Kwok's co-defendant Yanping Wang, in her capacity as a translator) . . . ." (emphasis omitted)).

In short, the Court should reject the government's attempt to overcome the attorney-client privilege and exclude the evidence from Witness-1.

Accordingly, the Court should deny the government's motion *in limine*.

## IV.    The Government's 902(11) Authentication Argument

The Court should deny the government's motion *in limine* regarding authenticating certain records under Federal Rule of Evidence 902(11) as it is vague and premature.

---

[33] "Wengui Guo" is Mr. Kwok.

*First*, much like its motion regarding statements of defendant's co-conspirators, the government again makes an abstract argument that it should be allowed to authenticate "certain records that were created and maintained in the regular course of business by certain third parties" pursuant to certifications that comply with Fed. R. Evid. 902(11). Gov't Mem. at 34-56. The records the government is seeking to authenticate include "bank records, bank transaction information, IP logs, call detail records, subscriber information, emails from search warrant returns, and business records." *Id.* at 36. Given that the government has produced over 49 terabytes of data to date, with many of the documents failing into these general categories, it is impossible to know which records the government is referring to. Where the government fails to identify the discrete items of evidence at issue, its motion must be denied. *See Bankman-Fried*, 2023 WL 6283509, at *3; *see also Viada v. Osaka Health Spa, Inc.*, No. 04 Civ. 2744 VMKNF, 2005 WL 3435111 (S.D.N.Y. Dec. 12, 2005) (denying motion *in limine* because it was "vague in that [it did] not specify the writings or potential testimony that the movants believe should be excluded from the trial of this action" and the Court was "unable to determine, with any degree of certainty, whether the writings and testimony sought to be excluded from the trial would be inadmissible under the Federal Rules of Evidence[]").

*Second*, the government seeks to admit these documents as "self-authenticating" business records pursuant to certifications that comply with Fed. R. Evid. 902(11), some of which have not been produced yet. Gov't Mem. at 34, 36 ("The Government has generally produced the relevant certifications for these records in discovery in this case . . . for any records for which certification has not yet been produced, the Government will produce the relevant certification in advance of trial."). Citing *United States v. Weigand*, the government asserts that a custodian certification pursuant to Fed. R. Evid. 902(11) "is not testimonial," and "use of such certifications to

authenticate business records does not violate the Confrontation Clause." *United States v. Weigand*, No. 20-cr-188 (JSR), 2021 WL 568173, at *1 (S.D.N.Y. Feb. 14, 2021); Gov't Mem. at 35 n. 13. However, the court in *Weigand* specifically denied the government's motion as to the custodian certifications that had not yet been produced, noting that Fed. R. Evid. 902(11) requires the proponent "make the record and certification available for inspection—so that the party has a fair opportunity to challenge them." 2021 WL 568173, at *2. So too must the Court here.

While the defense recognizes that courts have generally held that a record custodian's certification to authenticate business records is not testimonial and does not violate the Confrontation Clause, *see, e.g.*, *United States v. Carter*, No. 21-CR-681-01-02-03 (NSR), 2024 WL 268248, at *3 (S.D.N.Y. Jan. 24, 2024), that authority is not unlimited. The Confrontation Clause prohibits the admission of testimonial statements of a witness who did not appear at trial, unless he was unavailable to testify, and the defendant had a prior opportunity for cross examination. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). It is not enough that the evidence at issue is subject to a hearsay exception to be admissible in a criminal trial; if the evidence is "testimonial," it must also comply with the Confrontation Clause's requirements of unavailability and opportunity for prior cross examination. *Id.* at 51.

As such, in certifying self-authenticating records pursuant to 902(11), a clerk is "permitted to certify the correctness of a copy of a record kept in his office, but ha[s] no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance of effect." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 322 (2009) (internal citations omitted). Nor does the clerk have authority to "create a record for the sole purpose of providing evidence against a defendant." *Id.* at 323 (emphasis omitted).

30

Without knowing which certifications the government intends to rely on to authenticate evidence—some of which were purportedly produced in discovery but not specifically identified in the government's motion, and some of which, have yet to have been produced at all—it is impossible to ascertain whether these certifications are offered merely to certify the correctness of underlying records, or whether they improperly interpret or create new evidence. It is simply premature of the Court to rule on the admissibility of these business records without further information. As such, the government's motion must be denied.

## V.    The Government's Arguments About Bank Records from the First Abu Dhabi Bank

The government seeks to admit international bank records, specifically those from the First Abu Dhabi Bank in the United Arab Emirates, under Rule 807. *See* Gov't Mem. at 36-46. These records were first collected from the bank by the Securities and Commodities Authority of the United Arab Emirates ("SCA") and then, later, provided to the SEC. *See id.* at 36-37; *see also* Ex. A of Gov't Mem. The Court should decline to admit these records as their admission "would not best serve purposes of the Rules of Evidence and the interests of justice." *Lakah v. UBS AG*, 996 F. Supp. 2d 250, 257 (S.D.N.Y. 2014).

### A.  Applicable Law

Rule 807 provides that a court may admit a hearsay statement that is not otherwise admissible under another hearsay exception if.

(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a)(1)-(2). The Second Circuit has cautioned that Rule 807 is to "be used very rarely, and only in exceptional circumstances." *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991).[34]

### B. The bank records do not meet the standard for admission under Rule 807

Here, the government seeks to offer the bank records at the end of a long custodial chain. The bank apparently produced the documents to the Abu Dhabi regulators without a certification, the Abu Dhabi regulators then sent them to the SEC, and now the government seeks to offer them via a declaration from an SEC official.

The court in *Lakah* confronted almost this exact scenario and declined to admit foreign records under Rule 807. There, respondents sought to admit "private bank records and investigatory reports collected by Egypt's Public Prosecutor's Office ('PPO')," which the respondents conceded they were "unable to obtain custodial declarations from the banks that created these documents[.]" *Lakah*, 996 F. Supp. 2d at 256-57. While the court admitted certain records signed by petitioner as a statement of a party opponent, it declined to do so for the unsigned records "because their admission would not best serve purposes of the Rules of Evidence and the interests of justice." *Id.* at 257. Specifically, the court observed:

---

[34] The government cites *Idaho v. Wright*, 497 U.S. 805 (1990) for the proposition that the "residual exception constitutes a generally applicable basis for the admission of an out-of-court statement when a court finds, on a case-by-case basis, that the statement is sufficiently reliable and meets the other requirements of the rule." Gov't Mem. at 37. However, the question before the Supreme Court in *Wright* was "whether the State, as the proponent of evidence presumptively barred by the hearsay rule and the Confrontation Clause, has carried its burden of proving that the [declarant's] incriminating statements to [a doctor] bore sufficient indicia of reliability to withstand scrutiny under the [Confrontation] Clause." *Id.* at 816. The residual exception was therefore not the key consideration for the Court in this case. Notably, while considering Idaho's residual hearsay exception, the Supreme Court found that "[h]earsay statements admitted under the residual exception, almost by definition, . . . do not share the same tradition of reliability that supports the admissibility of statements under a firmly rooted hearsay exception" for Confrontation Clause scrutiny. *Id.* at 817.

> In the context of deciding whether to admit privately-generated public records via the public records exception, the Second Circuit has stated that "the admission of privately-generated, business records without further foundation, even though the records were found in the possession of a foreign government agency, would in all probability be an abuse of the discretion by the trial court." *United States v. Doyle,* 130 F.3d 523, 547 (2d Cir. 1997).

*Id.* The court found that this reasoning applied, and that to allow such evidence would "be a major step judicially to forge a new, hybrid exception to the hearsay rule by combining these two distinct varieties of admissibly hearsay simply to correct the Proponent's failing to offer a witness who could present the foundation necessary for the admission of the documents under the business records exception." *Id.* (internal punctuation, alteration and citation omitted). The Court should similarly decline to admit this evidence here. The government seeks to introduce foreign bank records with no certification from either (1) the applicable bank, or (2) the arm of the foreign government that collected these records.

Case law relied upon by the government to argue otherwise is easily distinguishable. In *United States v. Prevezon Holdings, Ltd.*, the court considered whether to admit "a Russian criminal case file (the 'Criminal Case File')", which the government "obtained copies of . . . from Nikolai Gorokhov, who testified via videotaped deposition that he personally photographed the files in connection with his work as a lawyer in an unrelated action," which he took "in a specially designated room at the Russian courthouse, in the presence of the court clerks, over the course of several days." 319 F.R.D. 459, 462 (S.D.N.Y. 2017) (internal punctuation, alteration and citation omitted). The court, distinguishing *Lakah*,[35] found that "the purposes of the rules of evidence and

---

[35] Notably, the court in *Prevezon Holdings* distinguishes *Lakah* under the trustworthiness factor, *see* 319 F.R.D. at 467 ("The indicia of trustworthiness was underwhelming . . . ."), but *Lakah* clearly declined to admit the foreign records because "their admission would not best serve purposes of the Rules of Evidence

the interests of justice are served where . . . the Russian Federation—the country from which the bank records originated—refused to produce them; a portion of these records have separately been obtained from other countries; many of the records can be corroborated from multiple sources; and these records are highly probative[.]" *Prevezon Holdings, Ltd.*, 319 F.R.D. at 468. However, in the instant case, the records were received from the Securities and Commodities Authority of the United Arab Emirates, who did not supply a certification, despite the SEC's request, and, unlike in *Prevezon Holdings*, no one involved in the actual collection of the documents will testify at trial.

Ms. Miller's declaration is hardly curative given she does not possess firsthand knowledge of the SCA's collection of the documents, let alone First Abu Dhabi Bank's collection. Unlike *Prevezon Holdings*, the SEC was not dealing with an uncooperative foreign government, like the Russian Federation, but instead requested and did receive the documents from the foreign government yet did not receive the necessary certification. Accordingly, this case is far more similar to *Lakah* than *Prevezon Holdings*.

The government also argues that "admitting these records is not materially different than admitting bank records pursuant to Rule 902(11), (12) or 18 U.S.C. § 3505." Gov't Mem. at 45. However, it *is* materially different. Rule 902(11) and (12) both require a certification in order for the documents to be properly authenticated, *see* Fed. R. Evid. 902(11) ("The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), *as shown by a certification of the custodian or another qualified person* that complies with a federal statute or a rule prescribed by the Supreme Court." (emphasis added)); Fed. R. Evid. 902(12) ("*In a civil case*, the original or a copy of a foreign record that meets the requirements of Rule 902(11), modified as follows: *the*

---

and interests of justice," 996 F. Supp. 2d at 247. The court in *Prevezon Holdings* did not meaningfully grapple with *Lakah*'s findings under this factor. *See Prevezon Holdings, Ltd.*, 319 F.R.D. at 467-68.

*certification, rather than complying with a federal statute or Supreme Court rule, must be signed in a manner that, if falsely made, would subject the maker to a criminal penalty in the country where the certification is signed.*" (emphasis added)), which 18 U.S.C. § 3505 similarly requires for foreign records to meet its exception to the hearsay rule, *see* 18 U.S.C. § 3505(a)(1) ("In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule *if a foreign certification attests that* . . . ." (emphasis added)). If anything, this only emphasizes that admitting these bank account records is not in the interests of justice as a key requirement for admitting similar evidence cannot be met.

The government is clearly trying to engage in an end run around 18 U.S.C. § 3505 and Rule 803(6) by slipping these records in under Rule 807, and therefore not complying with the requirement that it submit a certification. The Court should not permit such a disregard for the rules concerning the admission of evidence, especially where the foreign government that originally collected the documents has otherwise complied with the SEC's requests. Accordingly, the Court should decline to admit bank records from the First Abu Dhabi Bank.[36]

## VI.    <u>The Government's Attempts to Constrain the Defense, Require the Defendants to Testify, and to Place Evidentiary Burdens on the Defendants</u>

The government spends approximately 35 pages of its brief arguing about what evidence the defendants should not be able to introduce. To begin with, many of these arguments deal with entire categories of evidence, again, essentially inappropriately using motions *in limine* as

---

[36] The government represents that "Marlee Miller, or a similarly situated individual at the SEC, is available to testify as to these records at trial if required." Gov't Mem. at 45. Should the Court admit this evidence, and the government fails to present Ms. Miller, or a similarly situated individual at the SEC, Ms. Wang reserves her right to challenge Ms. Miller's declaration under the Confrontation Clause.

"preemptive weapons . . . to strike in shotgun fashion at whole topics and sources of prospective evidence . . . ." *TVT Records*, 250 F. Supp. 2d at 344-45.

Even more disturbingly, a number of the government's arguments—like suggesting the defendants must "prove their innocence"[37] and that the defendant's must testify to introduce certain evidence[38]—run headlong into the Bill of Rights and are not what one would expect from a high-school civics student, much less the Department of Justice.

Further, the government's arguments repeatedly rely on strawmen characterizations of the defense's theories to attempt to preclude highly relevant evidence.

The government's arguments can generally be divided into CCP-related arguments[39] and "elements of fraud"-related arguments.[40]

### A. Evidence Regarding the CCP's Targeting of the Defendant's Is Relevant and Admissible

#### 1. Background



---

[37] *See* Gov't Mem., Section VI.C (arguing the Court should exclude certain evidence the defendants may use to "Prove Their Innocence").

[38] *See* Gov't Mem., Section VI.B.2 (arguing that certain evidence should be precluded "outside of Defendants' testimony").

[39] *See* Gov't Mem., Section VI.A-C.

[40] *See* Gov't Mem., Section VI.D-H.



The Court has already ruled that Kwok was entitled to "evidence of CCP targeting" of Kwok, his family, his co-defendants, and the corporate entities relevant to the indictment." 2/21/24 Order, ECF No. 243, at 6.

Among other things, the Court noted that evidence regarding CCP targeting could "provide[] an alternative, non-culpable explanation for the heightened 'secrecy and security' around the [Mahwah,] New Jersey property," help show Kwok's belief that purchasing the property "was an appropriate and nonfraudulent use of G|CLUBS dues," and help show that a "market niche existed" for a social media platform that could break the "Great Firewall" of China, justifying certain statements regarding GTV; and provide an explanation for the defendants' use of "multiple cellphones and bank accounts." *Id.* at 6-7. And although the Court was ruling only on whether the defendants were entitled to this information under Rule 16, it implicitly recognized

41

37

the relevance of this issue at trial, noting that "[w]hether Kwok's explanations ultimately hold water is, of course, a question for the jury." *Id.* at 7.

### 2. Discussion

The Court should reject the government's attempts to exclude this obviously relevant evidence.

**"Selective Prosecution."** The government's selective prosecution argument is a strawman. For avoidance of doubt, the undersigned has no intention of arguing that this is a "selective prosecution," suggesting that the prosecutors are agents of the CCP, or making similar claims. To be sure though, as discussed below, evidence of *witness* bias is *always* relevant in a prosecution and may be proved via extrinsic evidence. *Davis v. Alaska*, 415 U.S. 308, 316, (1974) ("The partiality of a witness is subject to exploration at trial, and is '*always* relevant as discrediting the witness and affecting the weight of his testimony.'" (quoting 3A J. Wigmore, Evidence s 940, p. 775) emphasis added); *United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976) ("[T]he law is well settled in this Circuit, as in others, that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely.").

**Evidence of CCP Targeting Should Not, and Cannot, Be Limited to "the Defendants' Own Testimony."** The government argues that evidence of CCP targeting should be "preclude[d] . . . beyond the defendants' own testimony . . . ." Gov't Mem. at 47-48. The government cites no authority that a defendant *must* testify if he or she wants to present a particular defense.[42] This is

---

[42] None of the cases cited by the government stand for the proposition that a defendant should not be permitted to introduce evidence of their state of mind where it goes to the defendant's intent and provides a legitimate alternative basis to arguments that the government will put forward. *See United States v. Sutton*, No. CR 21-0598 (PLF), 2024 WL 278070, at *12 (D.D.C. Jan. 25, 2024) ("Evidence about these constitutional precedents and [defendant's] compliance with them is thus irrelevant in a prosecution for second degree murder, where the decedent's constitutional rights are not at issue."); *United States v. Carton*, No. 17 CR 680 (CM), 2018 WL 5818107, at *4 (S.D.N.Y. Oct. 19, 2018) ("reports created by the Hedge

perhaps not surprising, since any such authority would create a tension with basic constitutional principles, including the defendant's absolute right not to testify[43] and the right to present a defense. Moreover, the government's theory that state of mind evidence can be presented only through the defendant herself also finds no support in the Federal Rules of Evidence or Second Circuit case law.

Evidence of "state of mind" is of course, not offered for the truth of the matter asserted and is thus not hearsay. It can, and routinely is, presented through the testimony of other witnesses. Indeed, the Second Circuit has stated that because intent and lack of good faith "may be only inferentially proven . . . no events or actions which bear even remotely on [their] probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh any relevancy it might have." *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952) (quoted with approval in *United States v. Litvak*, 808 F.3d 160, 190 (2d Cir. 2015) (citation omitted)).

Indeed, over 40 years ago, in *United States v. DiMaria*, 727 F.2d 265 (2d Cir. 1984), the Second Circuit reversed a defendant's conviction for possessing stolen cigarettes after the trial court precluded the defense from asking an FBI agent witness about the defendant's out of court statement that "I only came here to get some cigarettes real cheap." 727 F.2d at 270. Writing for the panel, Judge Friendly explained that the "I came here to get some cigarettes real cheap," was

---

Fund [one of the defendant's victims] about its own business practices and investment history cannot possibly demonstrate [defendant's] intent"); *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) ("The inclusion of the nonparty fraud allegations here pose the risk of turning the trial into a multi-ringed sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties that may have only tangential bearing, if at all, to the issues and claims disputed in this case." (internal punctuation omitted)).

[43] *See* U.S. Const. amend. V ("[n]o person . . . shall be compelled in any criminal case to be a witness against himself").

not hearsay because it was not offered to prove that the cigarettes were in fact "real cheap," but rather to show that defendant thought he was in possession of bootleg (as opposed to stolen) cigarettes, which tended to disprove the state of mind required for his conviction. *Id.* at 271. Numerous other cases have held that the defendant's state of mind can be proved through witnesses other than the defendant.[44] This basic, fundamental principle should apply in this case as well.

**The Government's Further Strawman Arguments**. In attempting to persuade the Court that this evidence has limited probative value, the government argues that,

- "Kwok's and Wang's guilt or acquittal of the charges in this case do not turn on whether the Chinese government sought to target, repatriate, or silence Kwok." Gov't Mem. at 49.

- The Court should preclude evidence "Suggesting that the Defendants' Fraud Was Justified, Necessary, or a Result of Duress," Gov't Mem. at 56-57.

- The Court should exclude evidence of "the Defendants' Good Acts to . . . Prove their Innocence," Gov't Mem. at 58-62.

Even setting aside the fact that there is obviously no requirement for a criminal defendant to "prove [her] innocence," the government's arguments on these issues are strawmen. Ms. Wang does not intend to rely on any argument that because she was a "*bona fide* dissident[], [she is] *innocent* of the charges," *Cf.* Gov't Mem. at 61, or that the alleged fraud was somehow the result of duress or necessity. Just as it would be inappropriate for the government to argue that the

---

[44] *See, e.g.*, *United States v. Harris*, 733 F.2d 994, 1004 (2d Cir. 1984) (reversing conviction and finding district court erred in excluding defendant's statements to his parole officer and attorney defendant's statements that the government was trying to set him up because they were not offered for the truth but to support defense theory that defendant knew that the declarant was an informant and played along with the declarant out of fear of what would happen to him if he refused); *United States v. Detrich*, 865 F.2d 17,18-22 (2d Cir. 1988) (reversing conviction because trial court improperly excluded co-conspirator's statement to law enforcement that he was getting married, which was not offered by defendant to prove that the co-conspirator was in fact getting married but rather as circumstantial, non-hearsay evidence to prove that defendant was duped into transporting drugs in his co-conspirator's wedding suit); *United States v. Gotti*, 457 F. Supp. 2d 395, 395 (S.D.N.Y. 2006) (holding recorded statements of defendant's associate, made during call with defendant, were admissible to show defendant's state of mind).

defendants should be convicted because they are "bad" people (based on the bankruptcy or their prison conduct for instance), Ms. Wang does not intend to argue she should be acquitted simply because she was indisputably targeted by arguably the most powerful nation in the world (China). Instead, as the Court previously recognized, CCP-targeting evidence is relevant to showing Ms. Wang's good-faith, including her reasons for using multiple telephones and bank accounts, the reasons for establishing GTV, and other issues directly relevant to her state of mind, the central issue at trial.

**The Government's Arguments Regarding "Evidence of Contact Between the Chinese Police and Victims."** The Court should also reject, as premature, the government's efforts to preclude "evidence of contact between Chinese Police and victims." As noted above, a witnesses' bias is *always* relevant and may be proven through extrinsic evidence. *Davis*, 415 U.S. at 316 ("The partiality of a witness is subject to exploration at trial, and is '*always* relevant as discrediting the witness and affecting the weight of his testimony.'" (emphasis added) (quoting 3A J. Wigmore, Evidence s 940, p. 775)); *Harvey*, 547 F.2d at 722 (2d Cir. 1976) ("The law is well settled in this Circuit, as in others, that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely."). The fact that victims may have been approached by the CCP or its agents is potentially relevant and should not be precluded at this stage.

Similarly, evidence of contact between Chinese police (or intelligence agencies) may be relevant to the extent the government seeks to introduce evidence concerning other matters, including banks' decision to close accounts associated with the entities named in the Indictment and/or ███████████████████████████████, because that targeting provides content for those allegations.

41

**The Government's Request that Court "Closely Police Defendants' Testimony."**
Finally, the government's request that the Court "Closely Police Defendants' Testimony" is not an appropriate basis for a motion *in limine*. Gov't Mem., Section VI.B.3. Moreover, much of the "authority" the government cites in support of this argument comes from the indictment itself, i.e., the allegations the government still needs to prove to a jury beyond a reasonable doubt. Indeed, in four pages, from the top of page 52 to the top of page 56, of discussing what the defendants can and cannot testify about, the government cites three court decisions, and there is no basis to categorically restrict portions of the defendants' potential testimony. The government's points on these issues may be appropriate for summation, or potentially for cross-examination if the defendants testify. They are not, however, a basis for a motion *in limine*.

### B. The Government's Improper Attempts to Preclude "Arguments, Evidence, [and/or] Cross-Examination" Concerning Central Elements of Fraud

The government seeks to broadly prevent "arguments, evidence, or cross-examination" that touch upon central elements of the fraud charges the government seeks to prove in this case. *See* Gov't Mem. Sections IV.C-H. As an initial matter, these motions are not an appropriate basis for a motion *in limine*, both because they are categorical and because there are potentially situations in which these "arguments, evidence, [and/or] cross examination" are potentially relevant. *See United States v. Shin*, No. 19 Cr. 552 (JPC), 2022 WL 153184, at *7 (S.D.N.Y. Jan. 15, 2022) ("A court should not grant a motion *in limine* to exclude evidence unless such evidence is clearly inadmissible on all potential grounds." (internal punctuation and citation omitted)).

#### 1. Materiality, Misrepresentations, and Intent

Each of the securities fraud and wire fraud counts in the Indictment require the government to prove, among other things, that the defendants made a (i) material (ii) misrepresentation (iii) with the requisite scienter. *See* Modern Federal Jury Instructions, Instr. 44-3 (elements of wire

fraud are (i) "a scheme or artifice to defraud or to obtain money or property . . . by materially false and fraudulent pretenses, representations or promises"; (ii) "that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud"; and (iii) "that in execution of that scheme, the defendant used or caused the use of the [wires]"); *Neder v. United* States, 527 U.S. 1, 22-25 (1999) ("scheme or artifice to defraud" requires "misrepresentation or concealment of material fact" (emphasis omitted)); *United States v. Vilar*, 729 F.3d 62, 92 (2d Cir. 2013) ("to convict a defendant of securities fraud under Section 10(b) and Rule 10b-5, the government must prove that in connection with a domestic purchase or sale of a security the defendant willfully made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device").

In other words, materiality, intent, and the truth or falsity of specific misrepresentations are likely to be the critical elements at trial.

Materiality considers whether the alleged misrepresentation "'significantly altered the *'total mix'* of information'" available to a counterparty in making an investment decision. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (emphasis added)).

As to intent, because "intent or lack of good faith . . . may be only inferentially proven, no events or actions which bear even remotely on [their] probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh any relevancy it might have.'" *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952) (quoted with approval in *United States v. Litvak*, 808 F.3d 160, 190 (2d Cir. 2015) (internal citation omitted)).

### 2. Defendants' "Prior Good Acts" and Personal Circumstances May Be Relevant to Provide Context

The government argues that the defense should be precluded from introducing evidence concerning prior "Good Acts (Including Any Dissident Activity Against the CCP) ***To Prove Their Innocence***," Gov't Mem. at 58 (emphasis added) and "Evidence of the Defendant's [sic] Personal Circumstances and Potential Punishment," *id.* at 70.

The defendants are, of course, presumed innocent and do not have to "prove their innocence." Further, the government again argues in these sections that CCP-related evidence may be offered "[a]t most, if the defendants testify . . . ." Gov't Mem. at 60. But again, it is well settled that the defense can introduce evidence relevant to a defendant's state of mind through other witnesses and evidence. And again, potential pro-CCP witness bias is certainly fair game and may be proven through extrinsic evidence. *See United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976) ("[T]he law is well settled in this Circuit, as in others, that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely.").

Second, the government's arguments rely on red herrings. Ms. Wang has no intention of arguing that "if [she was a] *bona fide* dissident[], [she is] innocent of the charges" or that "dissident activities . . . demonstrate the absence of fraudulent conduct on some other occasions." Gov't Mem. at 61 (internal punctuation and citation omitted). But Ms. Wang's anti-CCP activities *are* certainly relevant to her state of mind, as discussed above.

Nor does Ms. Wang have any intention of arguing that "because she does good acts A and B, she is a good person and therefore not guilty of bad act Z." That would be a forbidden propensity inference, just like the government arguing that because Ms. Wang or Mr. Kwok did some other bad act (like the allegations concerning the bankruptcy and post-arrest conduct), they must be guilty of the fraud and related charges in the S2 Indictment.

44

But Ms. Wang should not be precluded from offering evidence of prior good acts or her personal circumstances to provide context for, and counter, specific aspects of the government's proof. For example, depending on the government's proof, charitable activities around the distribution of PPE during the height of the COVID pandemic, which overlapped in time with the GTV Private Placement, may be relevant to explain the context of certain actions or to counter the government's interpretation of what she or her co-conspirators were referring to in various conversations. Similarly, Ms. Wang's personal circumstances may be relevant to counter or provide context for other elements of the government's proof, in particular if the Court allows (and it should not for the reasons stated elsewhere herein), evidence concerning her pre-trial detention █████████████████████

*** 

In short, even setting aside that Ms. Wang has no obligation to "prove her innocence," the Court should reject the government's requests to categorically preclude evidence concerning her prior good acts and personal circumstances, because, depending on the government's proof, those acts may be relevant evidence of her state of mind and to provide context for her actions during the period of the charged conduct.

### 3. The Transaction Documents Are Relevant Under the Government's Own Primary Authority

The Court should also reject the government's attempt to exclude evidence concerning the transaction documents, *see* Gov't Mem. at 62-65, and to limit relevant cross-examination of potential victims, *see id.* at 65-66. Indeed, the government's primary authority on the transaction documents, *United States v. Weaver*, 860 F.3d 90 (2d Cir. 2017), directly contradicts its argument.

In *Weaver*, the Second Circuit held that "contractual disclaimers of reliance on prior misrepresentations do not *render* those misrepresentations immaterial under the criminal mail and

wire fraud wire statutes." 860 F.3d at 95 (emphasis added). In other words, the issue in *Weaver*—an appeal from a denial of a motion for a judgment of acquittal—was whether the disclaimers of reliance on prior misrepresentations rendered those misrepresentations *immaterial as a matter of law*. *Id.* at 92 ("He contends that those disclaimers rendered the salespeople's oral misrepresentations immaterial as a matter of law.").

What *Weaver* did *not say* was that those disclaimers are irrelevant to the issue of materiality, which considers the "total mix" of information available to the investors. In fact, ***it said the opposite*:** "although the contractual disclaimers ***were relevant*** to the jury's determination of Weaver's guilt, they did not render extra-contract misrepresentations immaterial as a matter of law." 860 F.3d at 97 (emphasis added).[45]

There is good reason that contractual disclaimers, and any other language in the transaction documents, is relevant. Materiality considers the "total mix" of information available to the investor, and, the parties agree that "a scheme to defraud" "may be established [or not] by all the circumstances and facts in the case,"[46] and that "the arrangement of the words [and] the circumstances in which they are used"[47] are also relevant to proving (or not proving) the existence of a scheme to defraud.

Thus, *Weaver* itself shows that cross-examination, arguments, and evidence regarding the contractual disclaimers—and the transactional documents more broadly—should be permitted,

---

[45] *Compare* Gov't Mem. at 65 (claiming *Weaver* stands for the proposition that disclaimers "have no relevant purpose in the trial") *with Weaver*, 860 F.3d at 97 ("the contractual disclaimers ***were relevant***" (emphasis added)).

[46] *See* Joint Requests to Charge, ECF No. 264 at 13.

[47] *See id.*

and indeed, is crucial on the "scheme to defraud," materiality, misrepresentation, and intent elements the government must prove.[48]

For similar reasons, while Ms. Wang has no intention of pursuing a "gullible victim" or lack of "due diligence" defense, it would be improper to preclude argument or cross-examination as to what alleged victims knew or understood about Mr. Kwok (or Ms. Wang) prior to sending money to GTV, G|Clubs, or the Farm Loans program (or, for that matter, the Himalaya Exchange). Such information would plainly be relevant to the "total mix" of information available to the person, and therefore relevant to the issue of materiality.

### C. The Victim's Financial Losses Are Not Relevant

The government also moves to preclude the defense from arguing "that the SEC or the government are responsible for victim's financial losses." Gov't Mem. at 67.

There is an easy solution to this, and Ms. Wang has already suggested it in her motions *in limine*: the government should be precluded from introducing evidence concerning the victim's losses, which is not an element of the wire fraud or securities fraud charges in the Indictment. *See* Wang MIL at 1-3. It would be inappropriate for victims to testify regarding about pecuniary or other loss they allegedly suffered as a result of the allegations in the Indictment. *United States v. Brooks*, No. 06-CR-550(S-1)(JS), 2010 WL 11515680, at *2 (E.D.N.Y. Jan. 25, 2010) (precluding investors' testimony "as it pertains to the impact the alleged fraud had on each witness" because "any probative value of this 'victim impact testimony,' is substantially outweighed by the 'danger

---

[48] In addition, inasmuch as Ms. Wang herself was not the author of the GTV Private Placement memorandum or other transactional documents, the language of those documents is critical to establishing her own understanding of permitted uses of funds.

of unfair prejudice' to the Defendants" and "may mislead the jury to declare guilt on a 'ground different from [the] proof specific to the offense charge[d].'" (citing *Old Chief*, 519 U.S. at 180)).

In short, the government's motion simply highlights why testimony regarding the victim's losses should be precluded.

### D.  The Government Must Prove an Intent to Cause Actual Harm to the Victims

The government also moves to preclude the defendants from offering evidence or arguing that "they intended to return or repay victims' funds . . . ." Gov't Mem. at 68. We do not disagree that the Second Circuit has stated that wire fraud "does not require that [the defendant] intended to permanently deprive the victim's money or property." *United States v. Males*, 459 F.3d 154, 159 (2d Cir. 2006) (internal alterations and quotations omitted).

However, (as the full quote from *Males* makes clear), a wire fraud defendant must contemplate "some actual economic harm or injury to the victim . . . ." 459 F.3d at 159. Accordingly, it would be improper to preclude the defense from arguing, introducing evidence, or conducting cross-examination to show that Ms. Wang did not intend to cause "actual economic harm or injury to the victim . . . ." Further, following the Supreme Court's decision in *Ciminelli v. United States*, the government cannot argue that Ms. Wang is guilty because she somehow intended to deprive victims or investors "of potentially valuable economic information necessary to make discretionary economic decisions" or other intangible interests. 598 U.S. 306, 309 (2023) (internal punctuation and citation omitted).

███████████████████████████████████████████

  ████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████



**CONCLUSION**

For the reasons stated above, and in defendant Ho Wan Kwok's opposition to the government's motions *in limine*, the Court should deny the government's motions *in limine*.

Dated: April 17, 2024                           Respectfully submitted,

                                                BAKER BOTTS L.L.P.

                                                */s/ Brendan F. Quigley*

                                                Brendan F. Quigley
                                                Sarah Reeves
                                                30 Rockefeller Plaza
                                                New York, N.Y. 10112
                                                Tel: (212) 408-2500
                                                brendan.quigley@bakerbotts.com
                                                sarah.reeves@bakerbotts.com

                                                *Attorney for Yanping Wang*