UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

          -against-

YANPING WANG,

                      Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  04/22/2024
```

23 Cr. 118-3 (AT)

**ORDER**

ANALISA TORRES, District Judge:

       Defendant, Yanping Wang, is charged with eleven counts of wire fraud, securities fraud, and unlawful monetary transactions, as well as conspiring to commit racketeering offenses, wire and bank fraud, money laundering, and securities fraud. S2, ECF No. 215. Wang moves to suppress a cell phone passcode she disclosed during her arrest on March 15, 2023, as well as the evidence later retrieved from her devices using the disclosed passcode. ECF No. 196; *see* ECF No. 197 at 11–13.

       On April 9, 2024, the Court held an evidentiary hearing to resolve factual issues, including whether Wang invoked her right to counsel prior to providing the passcode and whether the Government would have inevitably accessed the cell phones. Dkt. Entry 4/9/24; *see* Order at 20, ECF No. 251. Melissa Baccari and Jessica Cardenas, special agents for the Federal Bureau of Investigation (the "FBI"), testified for the Government, along with Jessica Volchko and Christian Isolda, both digital forensics examiners with the FBI's Computer Analysis Response Team. Tr. at 3:13–4:4, 46:1–16, 53:9–54:13, 75:7–76:5. Wang did not call any witnesses. The Court credits the testimony of all of the witnesses. For the reasons stated below, Wang's motion is DENIED.

**BACKGROUND**

       On March 15, 2023, FBI officers arrested Wang at her Manhattan apartment. Tr. at 4:23–

5:5. About eleven FBI agents, including Baccari, were members of the arrest team. *Id.* at 5:6–15. At around 6:00 a.m., the agents knocked on Wang's door and asked her to come to the door. *Id.* at 5:21–6:4, 20:1–16. Wang did not do so immediately, and the team "called four [phone] numbers" to try to reach her. *Id.* at 20:20–22, 21:16–24. When Wang came to the door, she was brought out into the hallway and handcuffed. *Id.* at 6:11–16, 22:8–17. Wang was then "passed" to Baccari, who was standing behind the agents who had handcuffed Wang. *Id.* at 6:3–4, 17–19. Baccari and another female agent interacted with Wang while the other team members entered the apartment to "clear the residence." *Id.* at 6:18–7:7, 25:23–25 ("[T]he agents went in as soon as [Wang] came out of the apartment."). Baccari told Wang that the agents had an arrest warrant for her and a search warrant for electronics. *Id.* at 6:17–22. Baccari then read Wang her *Miranda* rights from a card. *Id.* at 6:23–7:4.

In an affidavit submitted with her suppression motion, Wang stated, "[W]hile I was still handcuffed in the hallway, a female FBI agent asked me if I wanted to make a statement. I said I wanted to speak to my lawyer first." Wang Aff. ¶ 5, ECF No. 199-4. Wang did not testify at the hearing.

Baccari, who was "supposed to try to talk to [] Wang on the day of the arrest," testified that Wang neither asked for a lawyer in the hallway nor stated that she did not want to speak. Tr. at 7:8–14, 19:15–17, 45:9–13. Baccari also testified that she did not ask Wang to make a statement in the hallway. *Id.* at 7:17–19. Instead, Baccari wanted to make Wang feel more comfortable "in the hopes that [Wang] would like to speak to" Baccari. *Id.* at 7:20–8:4. Baccari said that because her "intention was to bring [Wang] back inside [the apartment] to attempt to try and speak with her, [] there would be no real reason for me to do that outside in the hallway." *Id.* at 27:15–18.

Wang, Baccari, and another agent remained in the hallway for "a couple of minutes" and then entered the apartment. *Id.* at 8:5–7. The three walked by Wang's kitchen, where Baccari saw "a line of phones on the kitchen counter," before they entered Wang's bedroom. *Id.* at 8:8–17. There, Baccari saw a cell phone on Wang's nightstand. *Id.* at 9:5–8. Baccari asked Wang "if this was her phone and the phone that she used every day." *Id.* at 9:9–11. Wang said yes. *Id.* at 9:13. Baccari requested the phone's passcode. *Id.* at 9:18. Wang answered, "777777" (the "Sevens Passcode"). *Id.* at 9:19–22, 10:3–6. Baccari then asked Wang if the phones in the kitchen belonged to her. *Id.* at 10:13–18. Wang replied that they did and volunteered that she had multiple phones because she was "a refugee of the CCP." *Id.* at 10:19–23.

Baccari asked if Wang knew where Kwok was that morning. *Id.* at 11:3–8. Wang indicated that she did not. *Id.* at 11:18. Baccari inquired whether Wang would like to give a statement, and Wang responded, "I think I'd like to have my attorney." *Id.* at 11:20–12:4. Baccari estimated that Wang invoked her right to counsel around 6:15 a.m., approximately ten minutes after Baccari's first interaction with her. *Id.* at 27:21–28:1, 30:14–31:9.

Baccari did not "have any further substantive conversation with" Wang because she "had asked for an attorney at that point," and said that the agents' "focus would have transitioned to processing her, taking her down to transport and process her." *Id.* at 12:5–14.

Later that morning, when asked by another agent, Wang provided a different passcode (the "Non-Sevens Passcode"). *Id.* at 12:25–13:5, 41:5–16. Baccari testified that she was "not as confident that" Wang had disclosed the Non-Sevens Passcode before invoking her right to counsel. *Id.* at 41:5–16. Baccari did not recall when she told the other agents that Wang had requested her lawyer. *Id.* at 43:18–44:7.

The agents took Wang to 26 Federal Plaza at approximately 7:00 a.m., about forty-five

3

minutes after she had asked to speak with her attorney. *Id.* at 34:21–25.

The FBI accessed thirteen of Wang's electronic devices. *See* GX-S1; ECF No. 261 at 3, 5. Five were either freely accessible or accessed by non-passcode methods. GX-S1. Eight were accessed using the Sevens Passcode. *Id.* No device was accessed using the Non-Sevens Passcode. *Id.*

Wang moves to suppress both the Sevens Passcode and the eight devices accessed using the Sevens Passcode. *See* Def. Br. at 8 n.10, ECF No. 278.

## LEGAL STANDARD

The Fifth Amendment's prohibition against compelled self-incrimination guarantees that custodial interrogation "must cease until an attorney is present" if the defendant requests counsel. *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). "[W]hen an accused has invoked [her] right to have counsel present during custodial interrogation, . . . [she] is not subject to further interrogation by the authorities until counsel has been made available to [her], unless the accused [herself] initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). The invocation of the right "requires a *clear* assertion of the right to counsel," not an ambiguous reference such as, "Maybe I should talk to a lawyer." *United States v. Medunjanin*, 752 F.3d 576, 586–87 (2d Cir. 2014) (cleaned up and emphasis in original). Interrogation includes both express questioning and "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). But, "routine booking questions do not constitute interrogation protected by *Miranda*." *United States v. Haygood*, 157 F. App'x 448, 449 (2d Cir. 2005) (summary order).

Once the defendant has established the basis for a motion to suppress a statement

4

obtained in violation of *Miranda* and *Edwards*, the Government bears the burden to prove by a preponderance of the evidence that the officers' actions were legal. *United States v. Deleston*, No. 15 Cr. 113, 2015 WL 4745252, at *5 (S.D.N.Y. July 24, 2015); *accord Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

## DISCUSSION

The question before the Court is whether Wang, having received the *Miranda* warnings and before reentering the apartment, invoked her right to counsel in the hallway. The Court concludes that the Government has shown by a preponderance of the evidence that she did not; rather, she provided the Sevens Passcode before asking to speak with her attorney. Therefore, there is no *Edwards* violation, and suppression is not warranted.

Baccari testified that Wang did not request counsel in the hallway. Tr. at 7:8–14, 45:9–13; *see id.* at 27:21–28:1, 30:14–31:9. Baccari recalled that she did not ask Wang to say anything and Wang said nothing. *Id.* at 7:15–19. This was consistent with Baccari's stated goal: to "make [Wang] feel a bit more comfortable instead of asking her questions in the hallway outside . . . in the hopes that she'd like to speak with me." *Id.* at 7:17–8:4, 19:15–17. Baccari testified that in the bedroom, in response to her inquiry about the phone on the nightstand and its passcode, Wang stated that the phones in the apartment were hers and disclosed the Sevens Passcode. *Id.* at 9:5–10:23. Wang gave this information to Baccari before she asked to speak with her attorney. *Id.* at 10:3–12:4.

Wang urges this Court to reject Baccari's account of the events for several reasons. First, Wang suggests that Baccari was not confident about her assertion that she did not speak with Wang in the hallway. Wang points to the Government's notes of an April 2, 2024 interview with Baccari, in which Baccari said that she didn't "*think* [she] would have asked [Wang] in the

5

hallway to make a statement." Def. Br. at 2 (quoting Tr. at 27:8–9) (emphasis added in brief). But, Baccari explained that her "intention was to bring [Wang] back inside to attempt to try and speak with her, so there would be no real reason for me to do that outside in the hallway." Tr. at 27:15–18. Therefore, Baccari said, her hesitation in the April 2 interview reflected an attempt to explain why her actions aligned with her intention that morning, rather than—as Wang suggests—uncertainty. *See United States v. Iodice*, 525 F.3d 179, 186 (2d Cir. 2008) (holding that an agent "provid[ing] different levels of detail regarding his recollection of the events" in two separate statements did not undermine his credibility).

Second, Wang argues that Wang and Baccari did not enter the apartment until 6:18 a.m., so the 6:15 a.m. invocation must have taken place in the hallway. According to Baccari's notes, Wang was arrested at about 6:05 a.m., and Wang requested counsel around 6:15 a.m. *See* DX-1 (3501-17); Tr. at 30:3–31:4. However, an FBI Form FD-302—a document authored by Katrina Laperuta, one of the FBI agents on the scene, which summarized the agents' search of Wang's apartment—states that "entry" photos were taken at 6:18 a.m. and the search commenced "thereafter." *See* DX-2 (3501-05);[1] Tr. at 33:17–34:10. As an initial matter, Baccari testified that the timestamps were "approximate[]." Tr. at 27:21–28:1, 31:5, 36:20. But even if the timestamps were precise, the record supports the conclusion that Wang, Baccari, and the other agents entered the apartment before the entry photos were taken. Indeed, Baccari testified that the agents went into the apartment to "clear" it "as soon as [Wang] came out of the apartment,"

---

[1] At the hearing, Wang introduced as DX-2 only the FD-302 with Bates stamp 3501-05. *See* Tr. at 33:17–34:10. The Government states that DX-2 nevertheless includes documents with Bates stamps 3501-05 to 3501-15, claiming that the FD-302 is only the "first page of a document that spans from 3501-05 to 3501-15." Gov. Br. at 4 n.1, ECF No. 279. The Court disagrees. The Government—when providing Wang with 3500 material—"chose to mark 3501-05 through 15 as separate documents." Def. Opp. at 1, ECF No. 285. And, the documents do not comprise one single document: for example, the FD-302 is marked as 3501-05, a photo log is marked as 3501-09, and the search warrant is marked as 3501-15. *See id.* at 2. Therefore, DX-2 includes only the document Bates-stamped 3501-05, and the Court shall not rely on documents that were not introduced into evidence at the hearing.

Tr. at 25:23–25, and that Baccari, Wang, and one other agent stayed in the hallway for only "a couple of minutes" before entering the apartment and going to Wang's bedroom. *Id.* at 8:5–7, 24:20–25:6. This timeline supports a 6:15 a.m. invocation of the right to counsel in the bedroom, consistent with Baccari's notes.

Third, Wang contends that the structure of Baccari's notes—i.e., the sequence and arrangement of the words on the page—establish that Baccari discussed Wang's phones after Wang asked to speak with her attorney. Baccari's notes are depicted below. DX-1 (3501-17).

> ≡ ERNST & YOUNG
>
> yvette wang                          3/15/2023
> est. (0605)  Rights Read - invoked
>                           est. (615am)
>         use all phones? - yes
>    O    CCP after her - so always getting
>         hacked, Family arrested 2017
>         b/c she's dissident - they came
>         came b/c of passports taken -
>         she can't go back

Wang argues that because the note stating "use all phones? yes" sits below the note indicating the time when Wang "invoked," Baccari must have elicited the Sevens Passcode after Wang requested counsel. *See* DX-1 (3501-17); DX-3 (3501-16). But, it is logical for Baccari to have recorded the time of the *Miranda* reading, taken notes about the subsequent conversation, and then gone back to the top of the page to note the time that Wang requested counsel. Wang also claims that it "would [] have made sense" for Baccari to have asked about Kwok's whereabouts—prompting Wang to request her lawyer, *see* Tr. at 11:18–12:4—before asking about the phones. Def. Br. at 7–8. That might be so, but it does not bear on the issue of when

7

Wang actually asked for her attorney. *See Mathie v. Fries*, 121 F.3d 808, 812 (2d Cir. 1997) (noting that it is not clear error to credit "coherent and facially plausible" testimony "that is not contradicted by extrinsic evidence").

Finally, Wang argues that Baccari and other agents continued asking questions after Wang requested counsel. Baccari testified that this might have been the case and that the question eliciting the Non-Sevens Passcode may have followed Wang's invocation of counsel. Tr. at 41:5–16. To the extent that these were not routine booking questions, Wang's answers may be validly suppressed.[2] *See Haygood*, 157 F. App'x at 449. But, there is no evidence that agents elicited the Sevens Passcode—the only one Wang challenges, Def. Br. at 8 n.10— following her invocation.

Indeed, the only evidence that Wang asked for her lawyer in the hallway, before she disclosed the Sevens Passcode, is her affidavit. Wang chose not to testify. "[I]n practice, the self-serving affidavit of the moving defendant is usually disregarded if [s]he declines to testify at the hearing." *United States v. Polanco*, 37 F. Supp. 2d 262, 264 n.4 (S.D.N.Y. 1999). "Courts give greater weight to witness testimony, which was subject to cross examination . . . even where an adversary has submitted an affidavit or declaration," if the witness testimony is found to be credible. *United States v. Cherry*, 541 F. Supp. 3d 407, 422–23 (S.D.N.Y. 2021) (cleaned up). "Whatever minor inconsistencies [Wang has] claimed, they do not impair the officer['s] credible recounting of the events at issue." *United States v. Ortega*, No. 15 Cr. 320, 2015 WL 6143758, at *5 (S.D.N.Y. Oct. 19, 2015).

Accordingly, the Government has demonstrated that Wang did not invoke her right to counsel in the hallway. Rather, she provided the Sevens Passcode prior to requesting counsel.

---

[2] For the reasons explained in the Court's March 22, 2024 order, a question about cell phone passcodes is not a routine booking question. *See* Order at 20–21 & n.7.

Because there was no *Edwards* violation, the Court need not address whether the Government would have inevitably discovered the Sevens Passcode. *See* Order at 20–22.

## CONCLUSION

For the foregoing reasons, Wang's motion to suppress the Sevens Passcode and the evidence subsequently retrieved using the Sevens Passcode is DENIED.

The Clerk of Court is directed to terminate the motion at ECF No. 196.

SO ORDERED.

Dated: April 22, 2024
      New York, New York

_____
ANALISA TORRES
United States District Judge