UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **SUPERSEDING INDICTMENT** |
| v. | S3 23 Cr. 118 (AT) |
| MILES GUO,<br>    a/k/a "Ho Wan Kwok,"<br>    a/k/a "Miles Kwok,"<br>    a/k/a "Guo Wengui,"<br>    a/k/a "Brother Seven,"<br>    a/k/a "The Principal,"<br>    a/k/a "Boss," | |
| KIN MING JE,<br>    a/k/a "William Je,"<br>    a/k/a "Yu Jianming," and | ORIGINAL |
| YVETTE WANG,<br>    a/k/a "Yanping,"<br>    a/k/a "Y," | |
| Defendants. | |

**COUNT ONE**
**(Racketeering Conspiracy)**

The Grand Jury charges:

**Overview of the "G Enterprise"**

1.    From at least in or about 2018 through at least in or about March 2023, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, conspired to defraud thousands of victims of more than approximately $1 billion, including victims located in the Southern District of New York.  KWOK, JE, WANG, and their co-conspirators operated the G Enterprise through a series of complex fraudulent and fictitious businesses and

investment opportunities that connected dozens of interrelated entities, which allowed the defendants and their co-conspirators to solicit, launder, and misappropriate victim funds (collectively, the "G Enterprise" as defined in paragraph 3b. below).

2.      MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "YanpingYVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and their co-conspirators, took advantage of GUO's prolific online presence and hundreds of thousands of online followers to solicit investments in various entities and programs by promising outsized financial returns and other benefits.  In truth and in fact, and as GUO, JE, and WANG well knew, the entities were instrumentalities that GUO, JE, and WANG created and used to perpetrate their fraud, strengthen the G Enterprise, and exploit GUO's followers.  The scheme allowed GUO, JE, and WANG to enrich themselves, their family members, and their co-conspirators, and to fund GUO's extravagant lifestyle.

3.      To effectuate their scheme, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, created and maintained several interrelated and overlapping entities—*i.e.*, the G Enterprise.  The G Enterprise obtained fraud proceeds, laundered those proceeds, spent fraud proceeds on expensive and luxury items, vehicles, and property for the benefit of GUO and his family, used fraud proceeds to promote the G Enterprise, and used fraud proceeds to operate and manage the G Enterprise.

a.   The interrelated and overlapping entities that form the G Enterprise include: ACA Capital Group Limited, ACA Investment Management Limited, Freedom Media Ventures

Limited, G Club International Limited, G Club Operations LLC, G Fashion LLC, G Fashion International Limited, GF Italy, LLC, GFNY, Inc., G Music LLC, GETTR USA, Inc., Golden Spring (New York) Limited, Greenwich Land, LLC, GTV Media Group, Inc., Guo Media, G News LLC, Hamilton Capital Holding Limited, Hamilton Investment Management Limited, Hamilton Opportunity Fund SPC, HCHK Property Management, Inc., HCHK Technologies, Inc., the Himalaya Exchange, the Himalaya Farm Alliance, Himalaya Currency Clearing Pty Ltd., Himalaya International Clearing Limited, Himalaya International Financial Group Limited, Himalaya International Reserves Limited, Holy City Hong Kong Ventures Ltd., Hudson Diamond NY LLC, Infinity Treasury Management, Inc., Jovial Century International Limited, Lamp Capital LLC, Leading Shine NY Limited, Lexington Property and Staffing Inc., Major Lead International Limited, Mountains of Spices LLC (d/b/a New York Farm), the New Federal State of China, O.S.C. Orbit Service Company LLC, Rule of Law Foundation III, Inc., Rule of Law Society IV, Inc., Saraca Media Group, Inc., Taurus Fund LLC, Taurus Management LLC, and Voice of Guo Media Inc., among others.

   b. The defendants and the entities set forth in paragraph 3a., together with others known and unknown, were members and associates of a criminal organization (the "G Enterprise") that engaged in criminal activity, to include wire fraud, bank fraud, money laundering, and securities fraud. The G Enterprise, including its leaders, members, and associates, constituted an enterprise as defined in Title 18, United States Code Section 1961(4); that is, a group of entities and individuals associated in fact, consisting of GUO, JE, WANG, the entities set forth in paragraph 3a., and others known and unknown. The G Enterprise constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise. The G Enterprise operated in the Southern District of New York

and elsewhere. The G Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

4.    To further effectuate their scheme, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and their co-conspirators, laundered hundreds of millions of dollars of fraud proceeds. To conceal the illegal source of the funds, GUO, JE, and WANG transferred, and directed the transfer of, money into and through more than approximately 500 accounts held in the names of at least 80 different entities or individuals, including entities that are part of the G Enterprise. Hundreds of millions of dollars of the fraudulent scheme's proceeds were transferred, either directly or indirectly, to bank accounts in the United States, the Bahamas, Switzerland, and the United Arab Emirates ("UAE"), among other places, and held in the name of entities owned or otherwise controlled by JE, including ACA Capital, Hamilton Investment Management Ltd., and Hamilton Opportunity Fund SPC.

5.    MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," and KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," the defendants, used more than approximately $300 million of the fraudulent scheme's proceeds for their and their families' benefit. For example, GUO used fraudulently-obtained victim money to purchase, fund, or finance: a $26.5 million approximately 50,000-square-foot mansion in New Jersey for GUO and his family; luxury vehicles, including an approximately $3.5 million Ferrari and an approximately $4.4 million custom Bugatti for one of GUO's close family members and co-conspirators ("Relative-1"); an approximately $37 million luxury yacht that was used by GUO and his family and purchased in the name of one of GUO's

close family members ("Relative-2"); a piano valued at approximately $140,000; two approximately $36,000 mattresses; and a $100 million investment in a high-risk hedge fund for the ultimate benefit of Relative-1, among other things. For his part, among other things, JE transferred at least $10 million of the fraud proceeds into his and his spouse's personal bank accounts. For her part, among other things, YVETTE WANG, a/k/a "Yanping," a/k/a "Y," was paid at least approximately $500,000 per year, was gifted an approximately $1.1 million-dollar Manhattan condominium, and was promised millions of dollars' worth of a purported cryptocurrency.

6.    MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and their co-conspirators, operated the scheme for years, and continued to do so through at least March 2023. They did so by, among other things, expanding the G Enterprise to include additional entities and individuals; continually adapting the scheme's means and methods to evade the enforcement of investor-protection, anti-money laundering, and bankruptcy laws in the United States; and retaliating against individual victims, and others, who complained, requested return of invested funds, or criticized the G Enterprise.

Purposes of the Enterprise

7.    The purposes of the G Enterprise included, but were not limited to, the following:

   a.    Enriching the members and associates of the enterprise;

   b.    Obtaining the money and property of victims;

   c.    Concealing and laundering fraud proceeds;

d.   Purchasing, with fraud proceeds, expensive and luxury items, vehicles, and property for the benefit of the defendants and their co-conspirators; and

e.   Promoting, increasing, and preserving the standing of the G Enterprise, entities that are part of the G Enterprise, and members of the G Enterprise, including MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," in order to solicit additional victims, as well as to exert influence over, or to intimidate, those who criticized or threatened the G Enterprise.

<u>Means and Methods of the Enterprise</u>

8.     The means and methods by which the members and the associates of the G Enterprises conducted their affairs included, but were not limited to, the following:

a.   Causing the G Enterprise to amass significant assets through false and fraudulent misrepresentations;

b.   Obstructing and circumventing law enforcement and civil regulatory authorities;

c.   Obstructing and ignoring court orders;

d.   Concealing fraud proceeds through, among other things, monetary transfers between entities within the G Enterprise; and

e.   Harassing, threatening, and silencing critics of MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," the defendant, and the G Enterprise.

**Relevant Persons and Entities**

9.      At all relevant times, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," the defendant, was the leader of, and directed, the G Enterprise.

           a.   GUO is an exiled Chinese businessman who fled to the United States in or about 2015 and purchased a penthouse apartment at a New York City hotel for approximately $67.5 million.  Starting at least in or about 2017, GUO, who then purported to be a billionaire, garnered a substantial online following.  GUO granted numerous media interviews and posted on social media, claiming to advance a movement against the Chinese Communist Party.

           b.   In or about 2018, GUO founded two purported nonprofit organizations, namely, the Rule of Law Foundation and the Rule of Law Society.  The Rule of Law Society's website listed GUO as its "founder, a promot[e]r, and a spokesperson."  Both organizations feature photographs of GUO on their websites.  GUO used the nonprofit organizations to amass followers who were aligned with his purported campaign against the Chinese Communist Party and who were also inclined to believe GUO's statements regarding investment and money-making opportunities.  In truth and in fact, and as GUO well knew, he and others provided false and materially misleading information to promote these "opportunities" and to defraud GUO's followers and other victims.  GUO directed others to create and maintain a variety of corporate entities that would come to make up the G Enterprise over which GUO was in charge.

10.      At all relevant times, KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," the defendant, was a dual citizen of Hong Kong and the United Kingdom who principally resided in the United Kingdom, while traveling to the United States and elsewhere.  JE owned and operated

numerous companies and investment vehicles central to the scheme and served as the financial architect and key money launderer for the G Enterprise.

11.    At all relevant times, YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendant, was a citizen of China who principally resided in New York, New York and has had a close relationship with MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," the defendant. In particular, WANG has worked for GUO and GUO's family for several years, since at least in or about 2018, and has operated as a "chief of staff" for GUO and the G Enterprise. In that capacity, WANG has held titles in, and exercised control over, a variety of entities that were part of the G Enterprise and instrumentalities of the fraud described herein. For example, WANG has served as the President, Treasurer, and Secretary of entities that purportedly managed GUO's money, and exercised control over other entities within the G Enterprise, even where she held no formal position or title.

12.    At certain times relevant to this Indictment, Saraca Media Group, Inc. ("Saraca") was a corporation based in New York, New York. Relative-1 was its ultimate beneficial owner.

13.    At certain times relevant to this Indictment, GTV Media Group, Inc. ("GTV") was a purported news-focused social media platform based in New York, New York. GTV was functionally owned and controlled by MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," the defendant, although GUO held no formal position or title at GTV. KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," the defendant, likewise held no formal position or title at GTV, but in fact exercised control over its finances. Saraca was the parent company of GTV. YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendant, was an "Executive Director" of GTV.

14.     At certain times relevant to this Indictment, G Club Operations, LLC ("G|CLUBS") was a purported membership organization based in Puerto Rico and in New York, New York. G|CLUBS was functionally owned and controlled by MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," the defendant, although GUO held no formal position or title at G|CLUBS. KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," the defendant, likewise held no formal position or title at G|CLUBS, but exerted influence over its finances and laundered its proceeds. YVETTE WANG, a/k/a "Yanping," a/k/a "Y," similarly held no formal position or title at G|CLUBS, but in fact exercised control over its day-to-day operations and ensured that GUO's instructions were implemented across the organization. G|CLUBS was formally owned by a coconspirator ("CC-1") who worked in concert with GUO, WANG, Relative-1, and others known and unknown to further the goals of the G Enterprise.

15.     At certain times relevant to this Indictment, the "Himalaya Exchange" was a purported cryptocurrency "ecosystem" that KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," the defendant, founded and operated through various entities he owned, which were based abroad. Entities functionally owned and controlled by MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," the defendant, such as G|CLUBS and G|Fashion, had purported business relationships with the Himalaya Exchange. GUO promoted the Himalaya Exchange and claimed to be the designer of its purported cryptocurrency, although GUO held no formal position or title at the Himalaya Exchange. WANG likewise held no formal position or title at the Himalaya Exchange but, among other things, was allocated millions of dollars in its purported cryptocurrencies, assisted in the

recruitment of Himalaya Exchange personnel, and worked to transfer fraud proceeds to the Himalaya Exchange.

### The G Enterprise's Fraud

*The GTV Private Placement*

16.     Between in or about April 2020 and in or about June 2020, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, fraudulently obtained more than $400 million in victim funds through an illegal private stock offering related to GTV (the "GTV Private Placement"). The GTV Private Placement scheme included, but was not limited to, the following:

        a.   On or about April 21, 2020, GUO posted, and caused to be posted, a video on social media announcing the unregistered offering of GTV common stock via a private placement. In that video, GUO described, in substance and in part, the investment terms for the GTV Private Placement, and directed people to contact him, via a mobile messaging application, with any questions about the GTV Private Placement. The video and GTV Private Placement materials—including the written "Confidential Information Memorandum" (the "Private Placement Memorandum" or "PPM"), Subscription Agreement, and Investment Procedure Guidelines—were transmitted to thousands of potential investors, including those in the Southern District of New York, via mobile messaging applications, social media, and text messages.

        b.   The PPM promoted GTV as the "first ever platform which will combine the power of citizen journalism and social news with state-of-the-art technology, big data, artificial intelligence, block-chain technology and real-time interactive communication."

c. According to the PPM's metadata, JE was the "author" of the PPM. The PPM disclosed the terms of the GTV Private Placement and identified GUO as GTV's "Sponsor and Adviser." According to the PPM, among other GTV materials, neither GUO nor JE held any formal management position with GTV. YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendant, was identified in the PPM as an "Executive Director" of GTV.

d. The PPM also contained the following representations, in substance and in part, among others:

i. The GTV Private Placement was for investors who were "interested in evaluating an opportunity to invest capital into GTV;"

ii. GTV planned to use the proceeds raised from the GTV Private Placement "to expand and strengthen the business;" and

iii. The PPM included a chart itemizing the "contemplated use of proceeds" raised from the GTV Private Placement:

| Description | Percentage of Proceeds |
| --- | --- |
| Acquisition of companies to strengthen and grow GTV | Approximate 70% |
| Upgrade of GTV technology and security | Approximate 10% |
| Marketing | Approximate 8% |
| Working capital | Approximate 7% |
| Other | Approximate 5% |
| Total | 100% |

e. Between on or about April 20, 2020 and on or about June 2, 2020, approximately $452 million worth of GTV common stock was sold to more than 5,500 investors

located in the United States, including in the Southern District of New York, and abroad. Investors participated in the GTV Private Placement based, in part, on the belief that their money would be invested into GTV to develop and grow that business, as the PPM promised.

       f.   The vast majority of the proceeds derived from investors in the GTV Private Placement were not used to develop and grow the GTV business, but instead were deposited directly into bank accounts held in the name of Saraca, GTV's parent company, which is beneficially owned by Relative-1.

       g.   The GTV Private Placement was not made pursuant to a registration statement filed with the U.S. Securities and Exchange Commission ("SEC"). Rather, the offering was purportedly made pursuant to SEC regulations that permit the sale of unregistered securities subject to limitations on the type of investors to whom the securities are offered and the manner in which their investments may be solicited. To evade these limitations, however, GUO and others under his control used at least one intermediary entity to purchase GTV stock on behalf of pools of investors who did not individually qualify to participate in the GTV Private Placement.

       h.   In or about early June 2020, and only days after the GTV Private Placement closed, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and their co-conspirators, misappropriated approximately $100 million raised from investors in the GTV Private Placement and directed that those funds be placed with a high-risk hedge fund ("Fund-1") for the benefit of Saraca and its ultimate beneficial owner, Relative-1. This transaction was contrary to the PPM's representations to prospective GTV investors about how investments in GTV would be used. Indeed, the $100 million investment into Fund-1 was not made "to strengthen

and grow" GTV's business or to benefit GTV, but rather was made for the benefit of Saraca and Relative-1. The victims who supplied the $100 million invested into Fund-1 did not own any shares of Saraca. Ultimately, the investment into Fund-1 lost approximately $30 million in value.

   i. After directing $100 million of GTV victim funds into Fund-1, HO WAN GUO, a/k/a "Miles Guo," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," the defendant, continued to promote GTV using false and misleading representations.

<em>The Farm Loan Program</em>

17. Beginning in or about June 2020—the same month that MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and their co-conspirators misappropriated money from the GTV Private Placement for the benefit of Saraca and Relative-1—GUO, JE, and their co-conspirators fraudulently obtained more than approximately $150 million in victim funds through the "Himalaya Farm Alliance." The Himalaya Farm Alliance, which GUO organized and promoted, was a collective of informal groups (each known as a "Farm") located in various cities around the world. GUO, JE, WANG and others working on their behalf and at their direction, obtained these funds by making further misrepresentations to the investors in the GTV Private Placement and fraudulently soliciting further investments, this time in the form of "loans" to a Farm, and promising that such loans would be convertible into GTV common stock at a conversion rate of one share per dollar loaned (the "Farm Loan Program"). The Farm Loan Program scheme included, but was not limited to, the following:

a.   Starting in or about June 2020, domestic banks that held accounts used to process the funds raised through the GTV Private Placement began to freeze and close GTV-associated bank accounts because, among other reasons, the accounts had received dozens of large incoming wire transfers, some of which referenced an unregistered stock offering.

b.   These bank account closures frustrated the ability of GUO, JE, and their co-conspirators to collect proceeds from victims seeking to invest in GTV.

c.   On or about July 22, 2020, in a video distributed via social media, GUO promoted the Farm Loan Program, stating, in substance and in part, "the money has been changed to a new way of cooperation, signing a loan contract with a local farm, with 6% interest, giving you equity. . . . [i]n this case, it is a loan, and then you can ask for stocks . . ." According to GUO and those working on his behalf, individuals seeking to invest (or reinvest) in GTV could participate in the Farm Loan Program.

d.   After launching the Farm Loan Program, GUO continued to promote GTV and to falsely represent the value of GTV.  For example, on or about August 2, 2020, in a video distributed via social media, GUO falsely stated, in substance and part, "How much is GTV? . . . a market value of 2 billion US dollars." [1]  In truth and in fact, and as GUO well knew, GTV's market value was far less because, among other things, GTV was a new business that generated no revenue.

e.   Thousands of victims "loaned" money to the Farms by sending money to bank accounts controlled by the Farms (and not GTV).  According to the "Loan Agreements," which the Farms frequently did not countersign, these funds were to be used for a Farm's "general working capital purposes."

---

[1] All statements attributed herein to KWOK have been translated from Mandarin to English.

      f.  GUO and JE misappropriated funds that were raised through the Farm Loan Program.  For example:

      i.  Approximately $20 million was transferred to Relative-1, approximately $950,000 of which was used to pay for flight crew services on a private jet;

      ii.  Approximately $5 million was transferred to an entity owned by GUO's spouse;

      iii.  Approximately $2.3 million was used to cover maintenance expenses associated with an approximately 145-foot luxury yacht worth approximately $37 million, nominally owned by Relative-2 and used by GUO; and

      iv.  Approximately $10 million was transferred to personal bank accounts in the name of JE and/or JE's spouse.

*G|CLUBS*

18.    While making misrepresentations regarding the Farm Loan Program, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, fraudulently induced GUO's followers to transfer additional funds to a purported online membership club called G|CLUBS. From at least in or about June 2020 through at least in or about March 2023, GUO, JE, WANG, and others known and unknown, fraudulently obtained more than approximately $250 million in victim funds through G|CLUBS. The G|CLUBS scheme included, but was not limited to, the following:

a. Starting at least on or about June 20, 2020, in a video distributed via social media, GUO promoted and encouraged individuals to purchase what GUO referred to as a "G Club . . . membership card."

b. Formally launched in or about October 2020, G|CLUBS claimed, on its website, to be "an exclusive, high-end membership program offering a full spectrum of services" and "a gateway to carefully curated world-class products, services and experiences."

c. To join G|CLUBS, a member was required to make a one-time payment to purchase a "membership," in addition to an annual membership fee. The cost of the membership varied based on the membership tier selected by the prospective member: a Tier 5 Membership cost $50,000; a Tier 4 Membership cost $40,000; a Tier 3 Membership cost $30,000; a Tier 2 Membership cost $20,000; and a Tier 1 Membership cost $10,000.

d. On or about July 5, 2021, in a video distributed via social media, GUO stated, in substance and in part, that there were "25,000 [G|CLUBS] member[s] . . . $100 million dollars, the cash [in] the bank account. Then we have the 111 million . . . [who] want to join." By contrast, G|CLUBS internal documents reflected approximately 5,900 active members as of in or about August 2021.

e. In truth and in fact, and as GUO, JE, and WANG well knew, G|CLUBS provided nothing close to "a full spectrum of services" and "experiences" to its members. Despite collecting hundreds of millions of dollars in purported membership fees, G|CLUBS maintained a relatively small number of employees and provided its members few to no discernable membership benefits. As of on or about March 8, 2021—months after G|CLUBS launched and began to collect "membership" fees—G|CLUBS did not have a business plan or a board of directors.

f.  GUO, JE, and WANG also used G|CLUBS as a mechanism to continue fraudulent private placement stock offerings.  GUO, and others known and unknown, told GUO's online followers that their purchase of G|CLUBS memberships would entitle them to stock in GUO-affiliated entities, such as GTV and G|Fashion.

i.  In a conversation regarding G|CLUBS membership funds on or about May 4, 2021, JE stated, in substance and in part, that "first of all, [prospective members] are buying the G|CLUBS membership, but they are expecting they would probably receive some shares, you know, on, on, on the future GTV, I think this is their expectation."

ii.  On or about July 30, 2021, in a video distributed via social media, GUO stated, in substance and in part, "Some of the comrades in arms asked, '[w]ill I still get a free stock offer when I buy a G|CLUBS membership?' 100%.  Because I said that I have to promise that anyone who buys G-Club membership before September 17 must be allotted shares, which is exactly the same. Because we said that anyone can choose whether to use your money to buy G-Club before September 17, G-Club and the stock shares. You'll get both."

g.  GUO, JE, WANG, and others known and unknown, asked investors to purchase multiple memberships in G|CLUBS, enabling GUO, JE, and WANG to increase the amount of money solicited.  In this regard, the G|CLUBS website stated, in substance and in part, that members with multiple memberships would "receive additional benefits" when, in truth and in fact, and as GUO, JE, and WANG well knew, multiple memberships did not provide members with commensurate additional benefits.

h.  All told, investors purchased hundreds of millions of dollars' worth of G|CLUBS memberships.  However, most of this money did not fund the business of G|CLUBS.  Rather, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a

"Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, misappropriated a substantial portion of the funds victims had paid G|CLUBS for "memberships" using, among other things, a complex web of entities and bank accounts to do so.  For example:

       i.  G|CLUBS funds, which had been funneled through bank accounts in other entities' names, were used to pay personal expenses for GUO and his family, including luxury purchases of an approximately $2.6 million yacht and luxury automobiles that together cost more than $5 million.

       ii.  In or about November 2021, JE directed approximately $26.5 million of G|CLUBS funds, which had been funneled through bank accounts in other entities' names, toward the purchase of GUO's 50,000-square-foot New Jersey mansion.

       iii.  JE directed the transfer of an additional $13 million of G|CLUBS membership payments to an escrow account.  The funds were subsequently used to pay for extravagant renovations to GUO's New Jersey mansion, including to a wing for Relative-1 and to a wing for Relative-2, and to purchase various furniture and decorative items including, among other items, Chinese and Persian rugs worth approximately $978,000, a $62,000 television, and a $53,000 fireplace log cradle holder.

       iv.  On or about August 5, 2021, JE directed the transfer of approximately $1.1 million consisting of G|CLUBS membership payments into a bank account that JE controlled.

       v.  G|CLUBS used membership fees to purchase luxury automobiles, including a custom-built Bugatti sports car for approximately $4.4 million.  While the car's signed

purchase agreement listed G|CLUBS as the customer, the initial specifications documentation for the custom-built car named Relative-1 as the customer. Relative-1 had no official position with G|CLUBS.

*The Himalaya Exchange*

19.     From at least in or about April 2021 through at least in or about March 2023, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," and KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," the defendants, and others known and unknown, fraudulently obtained more than approximately $262 million in victim funds through the Himalaya Exchange, a purported cryptocurrency "ecosystem" accessible on the internet. The Himalaya Exchange included a purported stablecoin called the Himalaya Dollar ("HDO" or "H Dollar") and a trading coin called Himalaya Coin ("HCN" or "H Coin"). The Himalaya Exchange claimed that the "stablecoin" was a digital asset with a fixed 1-to-$1 value backed by reserves, and that the "trading coin" was a cryptocurrency with valuation based on supply and demand. JE was the founder and Chairman of the Himalaya Exchange. The Himalaya Exchange scheme included, but was not limited to, the following:

a. In videos distributed via social media, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," the defendant, trumpeted the prospects and valuation of the Himalaya Exchange and both HCN and HDO, which he publicly described as cryptocurrencies. For example, in a video posted on the Internet on or about October 20, 2021, GUO falsely stated the following, among other things, and in substance and in part:

i. "I am talking about your H Coins, 'Brother Seven' [*i.e.*, GUO] designed it . . . .[I]t has the attribute of currency, why? It has 20% gold. Awesome[.] [I]t was born as currency on the first day, so it has value and it is linked to gold . . . clear gold directly. No matter how much it raises, 20% will turn into gold."

ii. "If the H Coin is worthless, [the issuer of H coin] can sell all 20% of the gold, exchange it to you, and become your money. Or take all the value of 20% gold and ask everyone to unify it and make it yours."

iii. "If anyone loses money, I can say that I will compensate 100%. I give you 100%. Whoever loses money, I will bear it."

iv. "I can sell the H Coin in the market in one minute and get it back to my H Dollar, and back to your fiat money unit. . . . [A]nd you can buy anything immediately."

b. The initial coin offering of HCN and HDO occurred on or about November 1, 2021. HCN began trading at 10 cents and, within approximately two weeks, the Himalaya Exchange website claimed that each HCN purportedly was worth approximately 27 HDO (*i.e.*, $27), which represented a 26,900% increase in value. That is, approximately two weeks after the initial coin offering, the Himalaya Exchange website indicated that HCN purportedly had an approximately $27 billion valuation.

c. At the time of the Himalaya Exchange launch, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," the defendant, marketed HCN to his online followers and others. For example, on or about November 1, 2021—the day of the initial coin offering—GUO released an official music video for an original song called "HCoin To the Moon" via social media. The phrase "to the

moon" is popularly associated with cryptocurrencies and implies a sharp increase in value.  The music video depicted GUO in various luxurious locations and depicted imagery of gold and wealth.

d.  At times, including following the Himalaya Exchange launch, KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," the defendant, misleadingly marketed the Himalaya Exchange.  For example, in or about June 2022, JE attempted to create the impression that a €3,561,127 purchase of a Ferrari (the "Ferrari") from a particular auction house was completed with HDO.  JE stated, in substance and in part, that he was "extremely pleased that [a] buyer decided to purchase [a] world-class car using HDO."  Contrary to JE's claim, the Ferrari was not purchased using HDO.  In truth and in fact, and as JE well knew, a Himalaya Exchange employee sent the auction house an international bank wire to cover the cost of the Ferrari, while also processing a corresponding "transaction" on the Himalaya Exchange to create the false appearance that the purchase had taken place using HDO.  JE's statement was also misleading in that, among other things, the unidentified "buyer" of the Ferrari was, in fact, Relative-1.

e.  Contrary to representations of MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," and KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," the defendants, and others known and unknown, HCN and HDO were not cryptocurrencies.  In particular, and contrary to the defendants' representations that HCN and HDO were cryptocurrencies, transactions using HCN and HDO were—unlike real cryptocurrencies—not recorded on a "blockchain," which is an electronic, publicly accessible, decentralized ledger that uses cryptography to record cryptocurrency transactions  Instead of using a publicly accessible blockchain, transactions in HCN and HDO were recorded in an internal database, which was not subject to public review.

f.  Moreover, HCN and HDO could not be traded anywhere other than (purportedly) on the Himalaya Exchange.  Nor could HCN be traded for, or converted into, other currencies.  HCN purportedly could be traded for only HDO (and only on the Himalaya Exchange), and HDO purportedly could be converted only to or from fiat currency (and only on the Himalaya Exchange).

i.  Indeed, the HDO and HCN Whitepapers, available on the Himalaya Exchange website, provided in fine print that, contrary to GUO's representations, HCN and HDO were merely "Credits."  According to the HCN Whitepaper, the "operation of the Himalaya Exchange and associated applications and infrastructure will be facilitated through the use of 'Credits.'"  Those credits (i) could "only be used on the Himalaya Exchange or within the Himalaya Ecosystem," and (ii) did "not carry any right to require their exchange for fiat currency or crypto-assets."

ii.  Moreover, while Himalaya Exchange members could request to exchange their "HDO" credits for an equivalent payment in U.S. dollars, the HDO Whitepaper stated that the Himalaya Exchange had the "discretion" to deny any such request.

g.  In or about April 2022, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," and KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," the defendants, arranged for the transfer of approximately $37 million in Himalaya Exchange funds from a Himalaya Exchange bank account to a particular escrow account.  The $37 million was structured as a purported "loan" to personally guarantee the cost of a luxury yacht that GUO had previously purchased and used, which yacht was then-owned by an entity held in the name of Relative-2.

*Concealment of Ownership and Control*

20.     Despite his extravagant lifestyle and his control of hundreds of millions of dollars in fraud proceeds, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," the defendant, filed for bankruptcy on or about February 15, 2022. GUO's claim of bankruptcy was based on years-long efforts to obscure the funds used and controlled by GUO, which was a means and method of the G Enterprise. For example, GUO, KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, regularly moved funds within the G Enterprise and for the benefit of GUO, his family, and his associates, by disguising the money movements as "loans" or "investments." As another example, the defendants installed figurehead executives and/or straw owners at the entities within the G Enterprise, while the entities within the G Enterprise were, in reality, owned and/or controlled by GUO, KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown.

*Government Seizure of Proceeds of the G Enterprise*

21.     On or about September 20, 2022 and September 21, 2022, U.S. authorities served judicially-authorized seizure warrants on several domestic banks, and subsequently seized approximately $335 million of proceeds from bank accounts held in the names of Himalaya Exchange entities and other entities associated with the G Enterprise. Following the September 2022 judicially authorized seizures, KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," the defendant,  attempted to transfer approximately $46 million from domestic bank accounts associated with the Himalaya Exchange, which had not yet been seized by the United States, to a bank account in the UAE that JE controlled.

a. Within approximately two days of the first judicially authorized seizures of Himalaya Exchange-related funds, on or about September 22, 2022, JE contacted the management of a domestic bank that held Himalaya Exchange bank accounts. JE sought to implement a wire transfer, which he and a Himalaya Exchange executive claimed to the domestic bank was needed to effectuate a "redemption" from HDO to U.S. dollars for an unnamed "VIP" (*i.e.*, very important) client of the Himalaya Exchange.

b. In subsequent communications with the domestic bank, JE revealed that the VIP was, in fact, JE himself. JE provided the domestic bank with documents reflecting two purported HCN sales by JE on or about September 22, 2022—totaling 46 million HDO—which JE was attempting to "convert" into $46 million. In an attempt to protect the assets of the G Enterprise from a judicially authorized seizure, JE twice emphasized to the domestic bank's management, in substance and in part, that the $46 million transfer needed to happen "today or it is meaningless."

22. On or about October 16, 2022, pursuant to a judicially authorized warrant, U.S. authorities seized an additional approximately $274 million of proceeds from several Himalaya Exchange and G|CLUBS accounts at the domestic bank from which KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," the defendant, requested the $46 million transfer.

23. As a result of the judicially-authorized seizures, U.S. authorities seized more than approximately $634 million of fraud proceeds, including approximately $278 million from bank accounts held in the names of the Himalaya Exchange entities that purported to hold the Himalaya Exchange's HDO cash reserves.

a. Following the seizures, the Himalaya Exchange website continued to represent that HDO was backed by a "Reserve consisting of USD and cash-equivalent assets" when, in truth and in fact, it was not.

b. Despite the seizure of the Himalaya Exchange's cash reserves, the purported price of HCN had not suddenly and sharply declined as of in or about March 2023.

### STATUTORY ALLEGATIONS

24.    From at least in or about 2018 up to and including at least in or about March 2023, in the Southern District of New York and elsewhere, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, being persons employed by and associated with the enterprise described above, namely, the G Enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Title 18 , United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the G Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple:

a. Acts indictable under Title 18, United States Code, Section 1343 (relating to wire fraud);

b. Acts indictable under Title 18, United States Code, Section 1344 (relating to financial institution fraud);

    c.  Acts indictable under Title 18, United States Code, Section 1956 (relating to the laundering of monetary instruments);

    d.  Acts indictable under Title 18, United States Code, Section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity); and

    e.  Offenses involving fraud in the sale of securities, in violation of Title 15, United States Code, Sections 78j (b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

25.    It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

26.    MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, sought to advance the purposes of the racketeering conspiracy, and to conduct and participate, directly and indirectly, in the conduct of the affairs of the G Enterprise, through various unlawful means and methods, including:

    a.  The defendants caused the G Enterprise to amass significant assets through false and fraudulent misrepresentations.

    b.  The defendants caused the G Enterprise to conceal its fraud proceeds through, among other things, monetary transfers between entities within the G Enterprise.

    c.  The defendants caused the G Enterprise to silence its critics through threats and intimidation directed at its opponents.

    d.  The defendants obstructed, influenced, and interfered with an official proceeding.

26

e. The defendants obstructed and interfered with court orders.

(Title 18, United States Code, Section 1962(d).)

## COUNT TWO
### (Conspiracy to Commit Wire Fraud and Bank Fraud)

The Grand Jury further charges:

27.     The allegations contained in paragraphs 1 through 23 of this Indictment are repeated and realleged as if fully set forth herein.

28.     From at least in or about 2018, up to and including at least in or about March 2023, in the Southern District of New York and elsewhere, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

29.     It was a part and object of the conspiracy that MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, GUO,

JE, WANG, and others known and unknown, fraudulently induced victims to send money by providing materially false and misleading information and representations.

30.     It was further a part and an object of the conspiracy that MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, knowingly would and did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344, to wit, GUO, JE, WANG, and others known and unknown, made false representations, and caused others to make false representations, to financial institutions to, among other things, open and maintain bank accounts used in furtherance of their fraud and obtain funds under the custody and control of those financial institutions.

(Title 18, United States Code, Section 1349.)

## COUNT THREE
### (Money Laundering Conspiracy)

The Grand Jury further charges:

31.     The allegations contained in paragraphs 1 through 23 of this Indictment are repeated and realleged as if fully set forth herein.

32.     From at least in or about 2018, up to and including at least in or about March 2023, in the Southern District of New York and elsewhere, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss,"

KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping,"
a/k/a "Y," the defendants, and others known and unknown, willfully and knowingly combined,
conspired, confederated, and agreed together and with each other to commit money laundering, in
violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i), 1956(a)(2)(A), and
1956(a)(2)(B)(i).

33.     It was a part and object of the conspiracy that MILES GUO, a/k/a "Ho Wan Kwok,"
a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a
"Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a
"Yanping," a/k/a "Y," the defendants, and others known and unknown, knowing that the property
involved in a financial transaction represented the proceeds of some form of unlawful activity,
would and did conduct and attempt to conduct such a financial transaction, which transaction
affected interstate and foreign commerce and involved the use of a financial institution which was
engaged in, and the activities of which affected, interstate and foreign commerce, and which in
fact involved the proceeds of specified unlawful activity, to wit, Counts Five through Eleven of
this Indictment, knowing that the transaction was designed in whole and in part to conceal and
disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful
activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

34.     It was further a part and object of the conspiracy that MILES GUO, a/k/a "Ho Wan
Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal,"
a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG,
a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown would and did
transport, transmit, and transfer, and attempted to transport, transmit, and transfer, a monetary
instrument and funds from a place in the United States to and through a place outside the United

States, and to a place in the United States from and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represent the proceeds of some form of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, to wit, the offenses alleged in Counts Five through Eleven of this Indictment, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

35.    It was further a part and object of the conspiracy that MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on specified unlawful activity, to wit, the offenses alleged in Counts Five through Eleven of this Indictment, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

(Title 18, United States Code, Section 1956(h).)

## COUNT FOUR
### (Conspiracy to Commit Securities Fraud)

The Grand Jury further charges:

36.    The allegations contained in paragraphs 1 through 23 of this Indictment are repeated and realleged as if fully set forth herein.

37.     From at least in or about 2018, up to and including at least in or about March 2023, in the Southern District of New York and elsewhere, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, (1) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and (2) making false statements to a financial institution, in violation of Title 18, United States Code, Section 1014.

38.     It was a part and an object of the conspiracy that MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of a national securities exchange, used and employed, in connection with the purchase and sale of securities registered on a national securities exchange and any security not so registered, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, to wit, GUO, JE, and WANG agreed to fraudulently induce investors to participate in the GTV Private Placement, the Farm Loan Program,

and G|CLUBS by providing materially false and misleading information and representations in connection with purported shares of GTV common stock and purported companies affiliated with GTV.

Overt Acts

39.    In furtherance of the conspiracy and to effect its illegal objects, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about April 21, 2020, GUO posted, and caused to be posted, a video on social media announcing the unregistered offering of GTV stock via the GTV Private Placement.

b.    On or about May 20, 2020, WANG opened a particular bank account in the name of GTV and, in documents submitted to the bank, indicated that the intended balance of the account would be between $25,000 to $50,000. On or about June 2, 2020, WANG transferred approximately $200,000,000 into that account.

c.    On or about June 5, 2020, WANG, while located in the Southern District of New York, authorized a wire transfer of $100 million from Saraca to Fund-1.

d.    On or about July 22, 2020, in a video distributed via social media, GUO promoted the Farm Loan Program, stating, in substance and in part, "the money has been changed to a new way of cooperation, signing a loan contract with a local farm, with 6% interest, giving you equity. . . . [i]n this case, it is a loan, and then you can ask for stocks . . .".

e.  On or about August 2, 2020, in a video distributed via social media, GUO stated, in substance and part, "How much is GTV? . . . a market value of 2 billion US dollars."

f.  On or about July 30, 2021, in a video distributed via social media, GUO stated, in substance and in part, "Some of the comrades in arms asked, '[w]ill I still get a free stock offer when I buy a G-Clubs membership?' 100%. Because I said that I have to promise that anyone who buys G-Clubs membership before September 17 must be allotted shares, which is exactly the same. Because we said that anyone can choose whether to use your money to buy G-Clubs before September 17, G-Clubs and the stock shares. You'll get both."

g.  On or about August 5, 2021, JE directed the transfer of approximately $1.1 million consisting of funds victims had sent to G|CLUBS in exchange for "memberships" to a bank account that JE controlled.

(Title 18, United States Code, Section 371.)

**COUNT FIVE**
**(Wire Fraud – GTV Private Placement)**

The Grand Jury further charges:

40.    The allegations contained in paragraphs 1 through 23 of this Indictment are repeated and realleged as if fully set forth herein.

41.    From at least in or about April 2020 up to and including at least in or about September 2021, in the Southern District of New York and elsewhere, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted

33

by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, GUO, JE, and WANG conducted the GTV Private Placement to sell GTV stock and fraudulently obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money, which scheme was furthered through electronic communications and monetary transfers to and from the Southern District of New York and elsewhere.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT SIX
### (Securities Fraud – GTV Private Placement)

The Grand Jury further charges:

42.     The allegations contained in paragraphs 1 through 23 of this Indictment are repeated and realleged as if fully set forth herein.

43.     From at least in or about April 2020 up to and including at least in or about September 2021, in the Southern District of New York, and elsewhere, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security registered on a national securities exchange and any security not so registered, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in

34

order to make the statement made, in light of the circumstances under which it was made, not misleading; and (c) engaging in an act, practice and course of business which operated and would operate as a fraud and deceit upon a person, to wit, GUO, JE, and WANG conducted the GTV Private Placement to sell GTV stock and obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money, which scheme was furthered through electronic communications and monetary transfers to and from the Southern District of New York and elsewhere.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT SEVEN
### (Wire Fraud – Farm Loan Program)

The Grand Jury further charges:

44.    The allegations contained in paragraphs 1 through 23 of this Indictment are repeated and realleged as if fully set forth herein.

45.    From at least in or about June 2020 up to and including at least in or about March 2023, in the Southern District of New York and elsewhere, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, GUO, JE, and WANG conducted the Farm Loan Program to fraudulently obtain money from victims

through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money, which scheme was furthered through electronic communications and monetary transfers to and from the Southern District of New York and elsewhere.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT EIGHT
### (Securities Fraud – Farm Loan Program)

The Grand Jury further charges:

46.    The allegations contained in paragraphs 1 through 23 of this Indictment are repeated and realleged as if fully set forth herein.

47.    From at least in or about June 2020 up to and including at least in or about March 2023, in the Southern District of New York, and elsewhere, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security registered on a national securities exchange and any security not so registered, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statement made, in light of the circumstances under which it was made, not misleading; and (c) engaging in an act, practice and course of business which operated and would operate as a fraud and deceit upon a person, to wit, GUO, JE, and WANG conducted the Farm Loan Program to

obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money, which scheme was furthered through electronic communications and monetary transfers to and from the Southern District of New York and elsewhere.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT NINE
### (Wire Fraud – G|CLUBS)

The Grand Jury further charges:

48.    The allegations contained in paragraphs 1 through 23 of this Indictment are repeated and realleged as if fully set forth herein.

49.    From at least in or about June 2020 up to and including at least in or about March 2023, in the Southern District of New York and elsewhere, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, GUO, JE, and WANG promoted and marketed G|CLUBS to fraudulently obtain money from victims through false statements and misrepresentations, to obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money which scheme was furthered through electronic communications and monetary transfers to and from the Southern District of New York and elsewhere.

37

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TEN
**(Securities Fraud – G|CLUBS)**

The Grand Jury further charges:

50.    The allegations contained in paragraphs 1 through 23 of this Indictment are repeated and realleged as if fully set forth herein.

51.    From at least in or about June 2020 up to and including at least in or about March 2023, in the Southern District of New York, and elsewhere, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security registered on a national securities exchange and any security not so registered, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statement made, in light of the circumstances under which it was made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, GUO, JE, and WANG promoted and marketed G|CLUBS to obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money, which scheme was

furthered through electronic communications and monetary transfers to and from the Southern District of New York and elsewhere.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT ELEVEN
### (Wire Fraud – The Himalaya Exchange)

The Grand Jury further charges:

52.    The allegations contained in paragraphs 1 through 23 of this Indictment are repeated and realleged as if fully set forth herein.

53.    From at least in or about April 2021 up to and including at least in or about March 2023, in the Southern District of New York and elsewhere, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," and KIN MING JE, a/k/a "William Je," a/k/a "Yu Jiaming," the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, GUO and JE operated the Himalaya Exchange to fraudulently obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money, which scheme was furthered through electronic communications and monetary transfers to and from the Southern District of New York and elsewhere.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TWELEVE
### (Unlawful Monetary Transactions)

The Grand Jury further charges:

54.      The allegations contained in paragraphs 1 through 23 of this Indictment are repeated and realleged as if fully set forth herein.

55.      On or about June 5, 2020, in the Southern District of New York and elsewhere, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, within the United States, knowingly engaged and attempted to engage in a monetary transaction, as defined in Title 18, United States Code, Section 1957(f)(1), in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, GUO, JE, and WANG made, and directed others to make, a wire transfer of approximately $100 million derived from the offenses charged in Counts Five and Six to Fund-1.

(Title 18, United States Code, Sections 1957 and 2.)

## COUNT THIRTEEN
### (Obstruction of Justice)

The Grand Jury further charges:

56.      The allegations contained in paragraphs 1 through 23 of this Indictment are repeated and realleged as if fully set forth herein.

57.      From at least on or about September 20, 2022 through at least the date of the filing of this Indictment, in the Southern District of New York and elsewhere, KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," the defendant, corruptly obstructed, influenced, and impeded an official proceeding and attempted so to do, to wit, JE attempted to transfer money to

the UAE, beyond the jurisdiction of the United States, to impede and interfere with a federal grand jury investigation in the Southern District of New York of the offenses alleged in Counts One through Eleven of this Indictment, and proceedings before the United States District Court for the Southern District of New York concerning the seizure and forfeiture of criminally derived proceeds.

(Title 18, United States Code, Sections 1512(c)(2) and 2.)

**FORFEITURE ALLEGATIONS**

58.    As a result of committing the offense alleged in Count One of this Indictment, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963:

a.    any interest acquired or maintained in violation of Section 1962;

b.    any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise the defendants and their co-conspirators established, operated, controlled, conducted, or participated in the conduct of, in violation of Section 1962; and

c.    any property constituting , or derived from, any proceeds obtained, directly or indirectly, from the racketeering activity charged in Count One including the following specific property:

(1)    $64,826.87 in United States currency formerly on deposit in Account Number 5090037713 at Silvergate Bank held in the name of "Hamilton Opportunity Fund SPC," seized by the Government on or about September 18, 2022;

(2)    $75,000,000.00 in United States currency formerly on deposit in Account Number 5090037705 at Silvergate Bank held in the name of "Hamilton Opportunity Fund SPC," seized by the Government on or about September 18, 2022;

(3)    $467,343.00 in United States currency formerly on deposit in Account Number 5090037754 at Silvergate Bank held in the name of "Hamilton Opportunity Fund SPC," seized by the Government on or about September 18, 2022;

(4)    $89,992,861.75 in United States currency formerly on deposit in Account Number 5090042770 at Silvergate Bank held in the name of "Hamilton Opportunity Fund SPC," seized by the Government on or about September 18, 2022;

(5)    $1,683,077.40 in United States currency formerly on deposit in Account Number 5090042762 at Silvergate Bank held in the name of "Hamilton Opportunity Fund SPC," seized by the Government on or about September 18, 2022;

(6)    $85,899,889.20 in United States currency formerly on deposit in Account Number 5090042853 at Silvergate Bank held in the name of "Hamilton Opportunity Funds SPC," seized by the Government on or about September 18, 2022;

(7)    $48,230,709.62 in United States currency formerly on deposit in Account Number 5090030288 at Silvergate Bank held in the name of "Hamilton Investment Management" Ltd., seized by the Government on or about September 18, 2022;

(8)    $1,800,000.00 in United States currency formerly on deposit in Account Number 5090037739 at Silvergate Bank held in the name of "Hamilton Opportunity Fund SPC," seized by the Government on or about September 18, 2022;

(9)    $85,899,889.20 in United States currency formerly on deposit in Account Number 5090042853 at Silvergate Bank held in the name of "Hamilton Opportunity Funds SPC," seized by the Government on or about September 18, 2022;

(10)    $4,643,744.70 in United States currency formerly on deposit in Account Number 7801000590 at FV Bank held in the name of "Himalaya International Reserves, Ltd.," seized by the Government on or about September 20, 2022;

(11)    $14,599,257.25 in United States currency formerly on deposit in Account Number 7801000254 at FV Bank held in the name of "Himalaya International Clearing, Ltd.," seized by the Government on or about September 20, 2022;

(12)    $11,538,579.87 in United States currency formerly on deposit in Account Number MBI10103-0000 at Mercantile Bank International held in the name of "G Club International Ltd.," seized by the Government on or about October 16, 2022;

(13)    $10,008,284.04 in United States currency formerly on deposit in Account Number MBI10133-0000 at Mercantile Bank International held in the name of "Himalaya International Clearing Ltd.," seized by the Government between on or about October 16, 2022 and on or about March 10, 2023;

(14)    $3,090,856.54 in United States currency formerly on deposit in Account Number MBI10137-0000 at Mercantile Bank International held in the name of "Hamilton Capital Holding Ltd.," seized by the Government between on or about October 16, 2022 and on or about March 10, 2023;

(15)    $272,350,313.76 in United States currency formerly on deposit in Account Number MBI10138-0000 at Mercantile Bank International held in the name of "Himalaya

International Reserves Ltd.," seized by the Government between on or about October 16, 2022 and on or about March 10, 2023;

(16)     $310,594.31 in United States currency formerly on deposit in Account Number MBI10139-0000 at Mercantile Bank International held in the name of "Himalaya International Financial Group Ltd.," seized by the Government between on or about October 16, 2022 and on or about March 10, 2023;

(17)     $1,187,278.87 in United States currency formerly on deposit in Account Number MBI10171-0000 at Mercantile Bank International held in the name of "Hamilton Investment Management Ltd.," seized by the Government between on or about October 16, 2022 and on or about March 10, 2023;

(18)     $43,782.71 in United States currency formerly on deposit in Account Number MBI10172-0000 at Mercantile Bank International held in the name of "G Fashion International Limited," seized by the Government on or about October 16, 2022;

(19)     $7,715.00, in United States currency formerly on deposit in Account Number 7801000589 at FV Bank held in the name of "Himalaya International Financial Group, Ltd.," seized by the Government on or about September 20, 2022;

(20)     $161,809.47 in United States currency formerly on deposit in Account Number MBI10183-0000 at Mercantile Bank International held in the name of "Himalaya Currency Clearing Pty Ltd.," seized by the Government on or about October 16, 2022;

(21)     $2,745,377.75 in United States currency formerly on deposit in Account Number 9878904409 at Manufacturers & Traders Trust Co. held in the name of "GETTR USA, Inc.," seized by the Government on or about September 18, 2022;

(22)    $9,899,659.19 in United States currency formerly on deposit in Account Number 157525208185 at US Bank held in the name of "G Fashion," seized by the Government on or about September 18, 2022;

(23)    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 675 Ramapo Valley Road, Mahwah, New Jersey 07430, Parcel No. 3300021-03-00001-02 and described as Lot Number: 1.02 Block: 21.03 District: 33 City, Municipality, Township: MAHWAH TWP;

(24)    A Bugatti Chiron Super Sport, bearing Vehicle Identification Number VF9SW3V3XNM795047;

(25)    A Lamborghini Aventador SVJ Roads, bearing Vehicle Identification Number ZHWUN6ZD2MLA10393;

(26)    A Rolls Royce Phantom EWB, bearing Vehicle Identification Number SCATT8C08MU206445;

(27)    A 46m 2014 Feadship superyacht "Lady May" (ex Como), bearing IMO Number 112359, MMSI Number 319059500, and Callsign ZGDQ9;

(28)    A Bösendorfer 185VC Porsche #49539 piano with custom bench, purchased for approximately $140,938.69;

(29)    A Railis Design Iceland Contemporary Poseidon Bed with Nightstands, Ebony Veneer, Brass, Velvet, purchased for approximately $31,413.71;

(30)    A Hästens 2000T md mattress, purchased for approximately $36,590.00;

(31)    A Hästens 2000T sf mattress, purchased for approximately $36,210.00;

(32)    A Wembe watch storage box, purchased for approximately $59,392.91;

(33)    A Samsung Q900 Series QN98Q900RBF 98" QLED Smart TV – 8K, purchased for approximately $62,787.54;

(34)    A Louis XV Style French Ormolu-Mounted Mahogany Commode by Joseph Émmanuel Zweiner;

(35)    A "K'ang Hsi" extension table in etched and patinated pewter and bronze with hand-painted enamel colors by Philip & Kelvin LaVerne, purchased for approximately $180,000.00; and

(36)    A "Punto '83" table in stainless steel with mesh tabletop with adjustable height and adjustable petals by Gabriella Crespi, Italy 1982, purchased for approximately $180,000.00.

(1) through (36), collectively, the "Specific Property."

59.    As a result of committing the wire fraud and securities fraud offenses alleged in Counts Two, Four, and Five through Eleven of this Indictment, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and the Specific Property.

60.    As a result of committing the money laundering offenses alleged in Counts Three and Twelve of this Indictment, MILES GUO, a/k/a "Ho Wan Kwok," a/k/a "Miles Kwok," a/k/a "Guo Wengui," a/k/a "Brother Seven," a/k/a "The Principal," a/k/a "Boss," KIN MING JE, a/k/a "William Je," a/k/a "Yu Jianming," and YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offenses, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses and the Specific Property.

**Substitute Assets Provision**

61.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third person;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to

seek forfeiture of any other property of the defendants up to the value of the above forfeitable

property.

(Title 18, United States Code, Sections 981, 982, and 1963;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)


_____
FOREPERSON


_____
DAMIAN WILLIAMS
United States Attorney

48