UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

MILES GUO and YVETTE WANG,

Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  04/29/2024
```

23 Cr. 118 (AT)

**ORDER**

ANALISA TORRES, District Judge:

The Court has reviewed the motions *in limine* filed by the Government and Defendants, Miles Guo and Yvette Wang.[1]  This order addresses all but one of Guo and Wang's requests, and two of the Government's motions that overlap with Guo and Wang's requests.[2]  Guo Mem., ECF No. 269; Wang Mem., ECF No. 266; Gov. Mem., ECF No. 273.  The Court shall rule on the remaining motions by separate order.

Guo makes the following requests:

1.    To exclude evidence of Guo and his followers' responses to his critics ("Guo Motion 1"), Guo Mem. at 17, ECF No. 271: **DENIED**.

2.    To exclude evidence concerning the contempt order issued in *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan et al.*, No. 652077/2017 (Sup. Ct. N.Y. Cnty. 2017) (the "PAX Litigation") ("Guo Motion 2"), Guo Mem. at 23: **DENIED**.[3]

3.    To exclude evidence related to his bankruptcy cases ("Guo Motion 3"), Guo Mem. at 25: **DENIED**.[4]

4.    To exclude evidence related to allegations of ███████████████ against Guo ("Guo Motion 4"), Guo Mem. at 30: **DENIED AS MOOT**.

---

[1] A grand jury returned a third superseding indictment ("S3") in this matter on April 24, 2024.  S3, ECF No. 307. S3 identifies Defendants as "Miles Guo" and "Yvette Wang," the names by which they are primarily known, instead of "Ho Wan Kwok" and "Yanping Wang."  *Id.*; see ECF No. 308.  This order refers to Defendants by those names.

[2] The Court shall address Guo's request to exclude the Government's cryptocurrency expert by separate order.

[3] Conversely, the Government moves to introduce certain evidence related to the PAX Litigation and Guo's bankruptcy cases ("Government Motion 6"), Gov. Mem. at 27–28, 31.  The motion is **GRANTED**.

[4] *See supra* n.3.

5.  To preclude the Government from using the terms "shell company," "shell corporation," or "alter ego" ("Guo Motion 5"), Guo Mem. at 34: **DENIED**.

6.  To refer to the Mahwah Property by its street address ("Guo Motion 6"), Guo Mem. at 35: **DENIED**.

7.  To exclude evidence related to Guo's assertion of his Fifth Amendment Rights ("Guo Motion 7"), Guo Mem. at 36: **DENIED AS MOOT**.

8.  To order the Government to produce any oral *Brady* material in its possession ("Guo Motion 8"), Guo Mem. at 36: **DENIED AS MOOT**.

9.  To reserve the right to oppose the admissibility of document metadata ("Guo Motion 9"), Guo Mem. at 57: **GRANTED**.

Wang makes the following requests:

1.  To exclude evidence that Fund-1 ultimately lost $30 million in value ("Wang Motion 1"), Wang Mem. at 1, ECF No. 267: **DENIED**.

2.  To preclude the Government from using the terms "shell company," "figurehead executives," "straw owners," and similar terms ("Wang Motion 2"), Wang Mem. at 4: **DENIED**.

3.  To preclude the Government from arguing that the GTV Private Placement was an improper unregistered securities offering ("Wang Motion 3"), Wang Mem. at 6: **DENIED**.

4.  To exclude evidence of Wang's compensation and the purchase of her condominium ("Wang Motion 4"), Wang Mem. at 9: **DENIED (IN PART AS MOOT)**.

5.  To preclude the Government from asking witnesses hypothetical questions about materiality ("Wang Motion 5"), Wang Mem. at 12: **DENIED**.

6.  To preclude judicial findings from other proceedings ("Wang Motion 6"), Wang Mem. at 14: **DENIED AS MOOT**.

7.  ███████████████████████████████████████████████████████ ("Wang Motion 7"), Wang Mem. at 16: **DENIED**.[5]

8.  To reserve the right to file further motions in limine ("Wang Motion 8"), Wang Mem. at 17: **GRANTED**.

---

[5] ███████████████████████████████████████████████████████

Unless otherwise indicated, the Court's decisions on the motions *in limine* are without prejudice to renewal at trial if an appropriate basis for the objection arises.

## DISCUSSION

I.    <u>Guo Motion 1</u>

Guo moves to preclude the Government from introducing evidence about his and his followers' responses to his critics.  Guo Mem. at 17.  Specifically, Guo objects to the use of his social media posts, protests organized by him, and a lawsuit filed by a "Farm" against a critic of Guo.  *Id*.

First, Guo contends that permitting the Government to introduce his statements condemning political adversaries would impermissibly allow protected First Amendment activity to "form the basis of [his] criminal prosecution."  *Id*.  The Court disagrees.  The lawfulness of the statements is not at issue, and "the First Amendment does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."  *United States v. Salameh*, 152 F.3d 88, 112 (2d Cir. 1998) (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (cleaned up)); *see id.* (distinguishing between an impermissible prosecution for reading terrorist materials and a permissible prosecution that relied on the reading materials "to prove the existence of the bombing conspiracy and its motive").

Second, Guo argues that this information is irrelevant.  Guo Mem. at 19–22.  The Government seeks to offer the social media statements, protests, and lawsuit to show that "[Guo] labeled those who posed a threat to [the G Enterprise[6]] as 'traitors' and CCP 'spies' or 'agents' and directed his followers to harass those individuals."  Gov. Opp. at 13, ECF No. 290.  As such,

---

[6] In S3, the Government refers to the alleged criminal racketeering enterprise as the "G Enterprise," instead of the "Kwok Enterprise," the name used in S2.  S3 ¶ 1; *see* ECF No. 308.  This order, therefore, uses the "G Enterprise" when referring to the alleged racketeering enterprise.

the evidence directly bears upon the indictment's allegation that one of the means and methods used by the purported RICO enterprise was "[h]arassing, threatening, and silencing critics" of Guo.[7]  S3 ¶ 8(e), ECF No. 307; *see United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) ("[U]ncharged acts may be admissible as direct evidence of the conspiracy itself.").  To the extent that the harassing conduct introduced at trial includes physical violence, the parties may propose a limiting instruction.  *See United States v. Frank*, 749 F. App'x 5, 9 (2d Cir. 2018).  Accordingly, the motion is DENIED.

II.  Guo Motion 2 and Government Motion 6

In 2017, a New York state court found Guo liable for breach of contract in an action brought by Pacific Alliance Asia Opportunity Fund L.P. ("PAX") and "ordered him to pay $116,402,016.57."  Guo Mem. at 10.  To satisfy the judgment, the state court ordered Guo to transport "a yacht . . . to the jurisdiction of the court." *Id.* at 10–11.  "When the vessel was not returned on time," the state court found Guo in contempt in February 2022 "and imposed mounting fines" (the "PAX Contempt Order").  *Id.* at 11 (citing *Pac. All. Asia Opportunity Fund L.P. v. Kwok*, No. 652077/2017, NYSCEF No. 1181 (Sup. Ct. N.Y. Cty. Feb. 9, 2022)).

The Government seeks to offer evidence pertaining to the PAX Litigation and PAX Contempt Order as (1) background to Guo's February 15, 2022 bankruptcy filing, (2) background to the existence of the charged RICO enterprise, and (3) evidence of "the intent with which certain acts were performed—including, for example, [codefendant Kin Ming] Je's transfer of $37 million in Himalaya Exchange fraud proceeds to [Guo]'s daughter to avoid [Guo]'s being assessed substantial civil penalties for his obstructive conduct in transferring the

---

[7] Guo claims that the social media statements, protests, and lawsuit are part of the "Chinese pro-democracy movement," and therefore cannot demonstrate the existence of the G Enterprise.  Guo Mem. at 20.  That is a fact issue for the jury to decide.

[yacht] outside the jurisdiction" of the New York court.  Gov. Mem. at 31; *see id.* at 27–28; Gov. Opp. at 17–19.  Guo moves to preclude the Government from introducing the PAX Contempt Order into evidence, contending that it is irrelevant, risks confusing the jury, and is unfairly prejudicial.  Guo Mem. at 23.

The $37 million transfer is direct evidence of Guo's ability to "use the Himalaya Exchange funds for his benefit."  Gov. Opp. at 18.  Moreover, as discussed in Section III *infra*, certain evidence from Guo's bankruptcy is admissible as direct evidence.  Because the PAX Litigation prompted the $37 million transfer, and the PAX Contempt Order precipitated the bankruptcy filing, they are "inextricably intertwined with the evidence regarding the charged offense" such that they are "necessary to complete the story of the crime on trial."  *United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (cleaned up).

Guo argues that this evidence is unfairly prejudicial because the jury will be tempted to "simply defer to the [s]tate [c]ourt's view."  Guo Opp. at 22, ECF No. 287; *see* Guo Mem. at 24. A court may admit court rulings into evidence "for the fact that they were rendered."  *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 605–06 & n.1560 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016).  However, "statements and conclusions in court rulings and documents" are hearsay and cannot be offered for the truth of the matter asserted "absent a relevant exception." *Id.*  The Government does not seek to offer this evidence of the truth of the matter, Gov. Opp. at 23 n.12, and any risk of prejudice can be cured by a limiting instruction.  *See United States v. Snype*, 441 F.3d 119, 130 (2d Cir. 2006).

Accordingly, the Government's motion is GRANTED, and Guo's is DENIED.

III.     Guo Motion 3, Wang Motion 6, and Government Motion 6

On February 15, 2022, Guo filed for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Connecticut.  *See* ECF Nos. 204, 250 (summarizing procedural history).  Guo moves to exclude evidence pertaining to his bankruptcy.  Guo Mem. at 11, 25.  The Government, conversely, moves to introduce "particularly probative evidence from the bankruptcy proceedings": (1) the fact that Guo declared bankruptcy, and (2) evidence of Guo's "obstructive behavior" in connection with his bankruptcy proceedings.  Gov. Opp. at 19–24; Gov. Mem. at 29–31.

A.  Guo's Bankruptcy Declaration

First, Guo's declaration of bankruptcy is direct evidence of the charged fraud conduct. The Government argues that Guo's "portrayal of himself as a billionaire in a position to personally guarantee his victims' investments was a critical part of the scheme to defraud investors."  Gov. Opp. at 20.  The reality of Guo's finances, therefore, bears on whether he knew his representations to investors were false.  *See United States v. Reifler*, 446 F.3d 65, 95 (2d Cir. 2006) ("The scheme-to-defraud element [of wire fraud] is construed broadly to encompass everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future." (cleaned up)).

Guo contends that the bankruptcy postdates the charged conduct and is, therefore, irrelevant.  Guo Mem. at 26–27.  He is incorrect.  The indictment alleges unlawful conduct through March 2023.  *See, e.g.*, S3 ¶¶ 1, 24, 28, 32, 37.  Guo's declaration of bankruptcy in 2022 and the subsequent proceedings fall within the relevant time period.  *See* Gov. Opp. at 21 ("[T]he Government's evidence at trial will include video-recorded broadcasts by [Guo] which post-date his bankruptcy, in which he continued to personally guarantee any investor losses.").

6

Guo also argues that the bankruptcy is personal to him and, therefore, cannot be introduced as uncharged conduct of the G Enterprise's existence, means, or methods.  Guo Mem. at 25–26.  The Government disputes that Guo's bankruptcy was personal to him and alleges that Guo used the G Enterprise "to obscure and conceal the assets, including fraud proceeds."  Gov. Opp. at 20 n.10; *see* S3.  Indeed, Guo's bankruptcy has precipitated adversary proceedings by the bankruptcy trustee against twelve entities that the Government alleges comprise the G Enterprise and were used to launder money.  *See* ECF No. 219 at 4, 9; S3 ¶ 3(a).  Accordingly, the Court shall not bar the Government from arguing that Guo's bankruptcy filing was part of the G Enterprise's means and methods.[8]

Guo further contends that the bankruptcy evidence "run[s] afoul of Rule 403" because of the stigma attached to filing for bankruptcy.  Guo Mem. at 29.  The Court finds that the potential prejudice is outweighed by the highly probative value of the evidence.

### B.  Obstruction of Bankruptcy Proceedings

Second, the Government moves to offer evidence of Guo and his followers' harassment of the bankruptcy trustee and obstruction of the bankruptcy proceedings.  *See* Gov. Opp. at 22–23.  For example, as part of the obstruction evidence, the Government seeks to demonstrate that Guo's followers modified the Mahwah property after his arrest, which was discovered during the bankruptcy trustee's September 2023 walkthrough of the Mahwah property.  *Id.* at 23–24.  Guo claims that the Government has neither laid a proper foundation for this evidence nor tied the purported conduct to Guo.  Guo Opp. at 22–23.  The harassment and obstruction evidence is

---

[8] As the Court previously stated in denying Guo's request to stay the bankruptcy proceedings, "determinations in the Bankruptcy Court . . . are not dispositive in [Guo]'s criminal case, which requires a higher burden of proof."  ECF No. 204 at 8.  And, the fact that the bankruptcy trustee initiated adversary proceedings against an entity that he alleges to be an alter ego of Guo—if offered for the truth of the matter—is inadmissible as hearsay.  *Chevron Corp.*, 974 F. Supp. 2d at 605–06 & n.1560.

relevant to the Government's allegations about the means and methods of the G Enterprise, *see* S3 ¶ 8(b), and the Court shall not preclude its use at this time. However, Guo may raise any valid foundation objections at trial.

Accordingly, the Government's motion to offer certain evidence pertaining to the bankruptcy proceedings is GRANTED, and Guo's motion to exclude such evidence is DENIED.

### C.   Wang Motion 6

Wang, for her part, requests that the Court "prohibit the government from introducing findings in other judicial proceedings," including Guo's bankruptcy proceedings, arguing that this is inadmissible hearsay. Wang Mem. at 14–15. The Court interprets Wang's motion as seeking to preclude the Government from offering judicial findings from other proceedings for their truth. As discussed above, the Government states that it does not seek to offer such evidence for the truth of the matter. Gov. Opp. at 23 n.12. Therefore, Wang's motion is DENIED as moot.

### IV.   Guo Motion 4

Guo moves to preclude evidence related to allegations of ███████████████ against him. Guo Mem. at 30. Because the Government does not intend to offer such evidence, Gov. Opp. at 39, the motion is DENIED as moot.

### V.   Guo Motion 5 and Wang Motion 2

Guo and Wang move to preclude the Government from using the terms "shell company/corporation," "figurehead executives," "straw owners," "alter ego," and similar terms at trial, arguing that the terms are unfairly pejorative and prejudicial. Guo Mem. at 34; Wang Mem. at 4.

It is true that at least one court in this Circuit has found that the terms "'shell company' and 'shell corporation' could be perceived to have a pejorative meaning." *United States v. Watts*, 934 F. Supp. 2d 451, 482 (E.D.N.Y. 2013).  But, to the extent that the terms accurately describe entities and individuals at issue, the Court cannot agree that they are unfairly prejudicial.  *See United States v. Runner*, No. 18 Cr. 578, 2023 WL 3727532, at *5 (E.D.N.Y. May 30, 2023) (ruling that the term "shell company," if accurate, is "neutral"); *Shell corporation*, Black's Law Dictionary (11th ed. 2019) (defining the term as "[a] corporation that has no active business and usu[ally] exists only in name as a vehicle for another company's business operations").  The Government shall not be precluded from using the challenged terms at trial, provided that it lays a sufficient factual predicate beforehand showing that the terms are appropriate.  Accordingly, Guo and Wang's motions are DENIED.

  VI. <u>Guo Motion 6</u>

Guo moves to preclude the Government from referring to the property at 675 Ramapo Valley Road, Mahwah, New Jersey, as the "Mahwah Mansion."  Guo Mem. at 35.  Instead, he proposes that the Court order the parties to refer to the property by its street address.  *Id.*

"While evidence of . . . wealth . . . can unduly prejudice jury deliberations," there is no *per se* rule against the introduction of such evidence.  *United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006).  Given the property's historic names—the "Crocker Mansion" and the "Darlington Mansion"—the Court does not find referring to the property as the "Mahwah Mansion" unduly prejudicial or inflammatory.  Gov. Opp. at 34.  The motion is DENIED.

VII.   <u>Guo Motion 7</u>

Guo moves to exclude evidence related to his invocation of his Fifth Amendment rights in the bankruptcy proceedings.  Guo Mem. at 36.  The motion is DENIED as moot as the Government does not intend to offer such evidence.  Gov. Opp. at 25 n.14.

VIII.   <u>Guo Motion 8</u>

Guo moves for an order compelling the Government to produce any orally communicated *Brady* information in its possession.  He claims that the Government's productions indicate that it has been in contact with "individuals associated with entities of the alleged [G] Enterprise" that may have *Brady* material.  Guo Mem. at 36–37.  The Government represents that it has disclosed all *Brady* material in its possession through "letters or by producing notes of [orally communicated] statements."  Gov. Opp. at 56.  Accordingly, the motion is DENIED as moot.

IX.   <u>Guo Motion 9</u>

Guo moves to reserve his right to challenge the introduction of document metadata, which he states the Government may seek to use to prove he "authored, accessed, edited or reviewed a particular document."  Guo Mem. at 58.  The motion is GRANTED.  The Government's request to similarly reserve its right with regard to unauthenticated metadata is also GRANTED.  *See* Gov. Opp. at 38.

X.   <u>Wang Motion 1</u>

Wang moves to exclude evidence that Fund-1, the alleged recipient of funds from the GTV Private Placement, "ultimately . . . lost approximately $30 million in value."  Wang Mem. at 1 (cleaned up).  She contends that loss is not an element of the substantive mail or wire fraud charges, that there are no allegations she benefited from the transfer, and that the evidence risks confusing the issues and distracting the jury.  *Id.* at 2–3.

The motion is DENIED.  As the Second Circuit has explained, evidence of financial loss may be relevant to show that a defendant "acted with corrupt intent to steer" funds toward a "risky investment in order to enrich himself."  *United States v. Seabrook*, 814 F. App'x 661, 662 (2d Cir. 2020) (finding "loss evidence" relevant in honest services fraud case).  "Fraudulent intent is essential to a scheme to defraud," an element of the mail and wire fraud offenses. *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996) (cleaned up).  And, the Government intends to introduce Guo's "video-recorded false statements regarding the losses," which were purportedly made to con investors "into continuing to make investments in GTV."  Gov. Opp. at 4.  The fact of the losses is necessary to complete that narrative.  *See Old Chief v. United States*, 519 U.S. 172, 188–89 (1997).

XI.   Wang Motion 3

Wang moves to prohibit the Government from arguing that the GTV Private Placement is an improper unregistered offering, contending that "doing so risks a constructive amendment to the [i]ndictment, a prejudicial variance, and confusion of the issues."  Wang Mem. at 7.  She argues that the indictment alleges securities fraud related to Defendants' "false statements and misrepresentations" about "the purpose and use of victims' money"—not their noncompliance with the relevant registration rules.  *Id.*

A constructive amendment of the indictment occurs when "the presentation of evidence . . . so modif[ies] essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."  *United States v. D'Amelio*, 683 F.3d 412, 415 (2d Cir. 2012) (quoting *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988)) (emphasis omitted).  A variance occurs "when the charging terms of the indictment are left unaltered, but the evidence at trial proves

11

facts materially different from those alleged in the indictment." *Id.* (quoting *United States v. Salmonese*, 352 F.3d 608, 621 (2d Cir. 2003)). Constructive amendments are considered prejudicial per se, while variances require a showing of prejudice to the defendants in order to constitute reversible error. *Mollica*, 849 F.2d at 730 (citation omitted).

Still, the Circuit has "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007) (emphasis and citation omitted). "The 'core of criminality' of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview." *D'Amelio*, 683 F.3d at 418.

The Government has provided the necessary notice here. Contrary to Wang's concerns, the Government does not seek to prosecute Defendants only for "engaging in an unregistered, non-exempt offering." Wang Mem. at 7; *see* Gov. Opp. at 12. Instead, the indictment states that, to "evade" limitations on the types of investors who may be solicited for such an offering, "Guo and others under his control used at least one intermediary entity to purchase GTV stock" on behalf of ineligible individuals. S3 ¶ 16(g). As the Government explains, the alleged "core of criminality" "boil[s] down to conning inexperienced and unsophisticated investors out of their money," and the decision not to register the GTV offering was one means of achieving that end. Gov. Opp. at 7. The motion is DENIED.

XII.   <u>Wang Motion 4</u>

Wang moves to exclude evidence of her compensation or the condominium allegedly gifted to her. Wang Mem. at 9; *see* S3 ¶ 5. Contrary to Wang's contentions, the Government need not show that her salary was "derived from fraud proceeds" for the evidence to be relevant. Wang Mem. at 11. "Evidence that links a defendant's financial compensation to [her] possible

motives for participating in an alleged fraud is relevant to proving the fraud." *United States v. Ferguson*, No. 06 Cr. 137, 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007); *see United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006). The Government intends to introduce evidence showing that "Wang's salary was paid to compensate her for her role in the [G] Enterprise," giving her a "financial motive to participate in the Enterprise." Gov. Opp. at 25.

As to the condominium, the Government states that it "does not presently intend to offer evidence regarding Wang's condominium purchase at trial." *Id.* at 26 n.16. The motion is, therefore, DENIED as to Wang's salary and DENIED AS MOOT as to her condominium.

XIII.   Wang Motion 5

Wang moves to preclude the Government from "asking investors or other witnesses general hypothetical questions, such as 'would you have liked to know [x]' or 'would [x] have been important to you,' without reference to alleged promises or statements that were actually made to investors or others in connection with alleged investments at issue." Wang Mem. at 14. In a securities fraud case, investor testimony can be relevant to whether a defendant's alleged misstatements or omissions were material. *See United States v. Gramins*, 939 F.3d 429, 446 –47 (2d Cir. 2019). The Second Circuit has expressly held that, when "hypothetical questions utilize[] facts that ha[ve] been independently established in the record," "[a] witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior." *United States v. Cuti*, 720 F.3d 453, 459 (2d Cir. 2013). The defense is free to "challeng[e] the factual accuracy of the disputed testimony" at trial. *Id.*

The Government may ask witnesses hypothetical questions that fall within the *Cuti* framework if the proper foundation is established. The motion is DENIED.

XIV.   <u>Wang Motion 7 and Government Motion 23</u>

The Government moves to admit evidence that Guo and Wang ███████████

████████████████████████████████████████████████████████████

████████████████████. Gov. Mem. at 71–72.  Wang, who moves to exclude the

evidence, argues that the record contains abundant evidence of her close relationship with Guo,

and that the ██████████████ is "highly sensitive" and touches on a "complicated moral

issue."  Wang Mem. at 16–17.

Under Federal Rule of Evidence 404(b), evidence of a criminal defendant's other acts

may be admissible "for any purpose except to show criminal propensity."  *United States v.*

*Germosen*, 139 F.3d 120, 127 (2d Cir. 1998).  In conspiracy cases, prior acts may be admissible

"to explain the mutual trust that existed between coconspirators."  *United States v. Rosa*, 11 F.3d

315, 334 (2d Cir. 1993).

The Government offers the evidence of Guo and Wang's ██████████████

████████████████ for a proper non-propensity purpose: "to prove the two co-defendants had a

level of trust significant enough to operate a vast RICO enterprise with each other."  Gov. Opp.

at 29.  The question, therefore, is whether the probative value of the evidence is substantially

outweighed by the danger of unfair prejudice to Wang.  Fed. R. Evid. 403.

The probative value of the ██████████████, while not substantial, is nonzero.  *Cf.*

*United States v. Stanley*, No. 09 Cr. 141, 2010 WL 1633459, at *1 (E.D.N.Y. Apr. 21, 2010)

(████████████████████████████████████████████████████████████

████████████████████████████████).  The same is true of the risk of

prejudice: although some jurors may have opinions about the ██████████████, it is not

"more inflammatory than the charged crime[s]."  *United States v. Livoti*, 196 F.3d 322, 326 (2d

er

Cir. 1999).  Because the probative value and risk of prejudice are roughly in equipoise, the Court

declines to exclude the ████████ evidence under Rule 403.

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

████████████████████████████

Accordingly, the motion is DENIED IN PART and GRANTED IN PART.

XV.    Wang Motion 8

Finally, Wang reserves the right to make further motions in limine.  The request is

GRANTED.

SO ORDERED.

Dated:  April 29, 2024
           New York, New York

_____
ANALISA TORRES
United States District Judge

_____

9 ██████████████████████████████████████
████████████