```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/02/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

MILES GUO and YVETTE WANG,

                          Defendants.

23 Cr. 118 (AT)

**ORDER**

ANALISA TORRES, District Judge:

The Court has reviewed the remaining motions *in limine* filed by the Government.[1] Gov. Mem., ECF No. 273.[2]

The Government makes the following requests:

1. To admit statements of co-conspirators and agents of Defendants, Miles Guo and Yvette Wang, as not hearsay ("Government Motion 1"), Gov. Mem. at 2–12: **GRANTED IN PART AND DENIED IN PART**;

2. To admit evidence of "evolving scams that the [D]efendants used to continue to defraud their victims, including the A10 Project" ("Government Motion 2"), Gov. Mem. at 12–19: **GRANTED IN PART AND DENIED IN PART**;

3. To admit evidence of Guo's false promise to donate $100 million to Rule of Law charities ("Government Motion 3"), Gov. Mem. at 19–21: **GRANTED**;

4. To admit evidence that Guo's assets were seized prior to his fundraising efforts ("Government Motion 4"), Gov. Mem. at 21–23: **GRANTED**;

5. To admit "evidence that the [D]efendants continued to direct the affairs of the [G] Enterprise following their arrests and detention" ("Government Motion 5"), Gov. Mem. at 23–26: **GRANTED IN PART AND DENIED IN PART**;[3]

---

[1] The Court addressed Government Motions 6 and 23, as well as Defendants' requests, by separate order dated April 29, 2024. ECF No. 311. The Court also ordered further briefing on Government Motion 7 on April 29, 2024. ECF No. 310.

[2] A grand jury returned a third superseding indictment ("S3") in this matter on April 24, 2024. S3, ECF No. 307. S3 identifies Defendants as "Miles Guo" and "Yvette Wang," the names by which they are primarily known, instead of "Ho Wan Kwok" and "Yanping Wang." *Id.*; *see* ECF No. 308. This order refers to Defendants by those names.

[3] In S3, the Government refers to the alleged criminal racketeering enterprise as the "G Enterprise," instead of the "Kwok Enterprise," the name used in S2. S3 ¶ 1; *see* ECF No. 308. This order uses the "G Enterprise" when referring to the alleged racketeering enterprise.

6. To permit the authentication of certain records under Federal Rule of Evidence 902(11) ("Government Motion 8"), Gov. Mem. at 34–36: **DENIED**;

7. To admit bank records from First Abu Dhabi Bank under Federal Rule of Evidence 807 ("Government Motion 9"), Gov. Mem. at 36–46: **DENIED**;

8. To preclude Defendants from arguing that the prosecution is linked to the Chinese Communist Party ("CCP") or malicious ("Government Motion 10"), Gov. Mem. at 46–47: **GRANTED**;

9. To limit Defendants' evidence and claims related to CCP activities, including targeting ("Government Motion 11"), Gov. Mem. at 47–49: **DENIED**;

10. To exclude extrinsic evidence of CCP targeting outside of Defendants' testimony ("Government Motion 12"), Gov. Mem. at 49–52: **DENIED**;

11. To "closely police Defendants' testimony to avoid impermissible bases for a verdict" ("Government Motion 13"), Gov. Mem. at 52–56 (capitalization altered): **DENIED**;

12. To preclude argument and evidence suggesting the alleged crimes were justified, necessary, or a result of duress ("Government Motion 14"), Gov. Mem. at 56–57: **GRANTED**;

13. To preclude general evidence of contact between the Chinese police and victims ("Government Motion 15"), Gov. Mem. at 57–58: **DENIED**;

14. To exclude evidence of Defendants' good acts, including dissident activity, to prove innocence ("Government Motion 16"), Gov. Mem. at 58–62: **GRANTED IN PART AND DENIED IN PART**;

15. To preclude Defendants from arguing they are not guilty because of disclaimers in transaction documents ("Government Motion 17"), Gov. Mem. at 62–65: **DENIED**;

16. To exclude evidence and claims that the victims were negligent or failed to conduct adequate due diligence ("Government Motion 18"), Gov. Mem. at 65–66: **GRANTED**;

17. To preclude Defendants from arguing that the Securities and Exchange Commission ("SEC") or the Government are responsible for victims' losses ("Government Motion 19"), Gov. Mem. at 67–68: **GRANTED**;

18. To exclude evidence and claims that Defendants intended to repay victims ("Government Motion 20"), Gov. Mem. at 68–70: **GRANTED IN PART AND DENIED IN PART**;

19. To exclude evidence of Defendants' personal circumstances and potential punishment ("Government Motion 21"), Gov. Mem. at 70: **GRANTED IN PART AND DENIED IN PART**; and

20. To preclude Defendants from offering their own statements for their truth ("Government Motion 22"), Gov. Mem. at 70–71: **DENIED**.

Unless otherwise indicated, the Court's decisions on the motions *in limine* are without prejudice to renewal at trial if an appropriate basis for the motion or objection arises.

## DISCUSSION

I. Government Motion 1

The Government moves to admit out-of-court statements by Defendants' "co-conspirators, agents, and employees," and seeks a ruling that such statements are not hearsay if offered for their truth. Gov. Mem. at 2. Federal Rules of Evidence 801(d)(2)(D) and (E) provide that an out-of-court statement offered against an opposing party is not hearsay if the statement "was made by the party's co[-]conspirator during and in furtherance of the conspiracy," or "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."

A. Co-Conspirator Statements

First, the Government states that it intends to offer "statements by [Guo's] and Wang's co-conspirators, including co-defendant Kin Ming Je and other co-conspirators, such as Qiang Guo, a/k/a "Mileson" ([Guo]'s son) and Haoran He (the purported beneficial owner of several of the [G] Enterprise entities, including G|CLUBS and G|FASHION)." Gov. Mem. at 4. The Government seeks a preliminary ruling that the statements of Je, Mileson, and He are admissible, "subject to the introduction of trial evidence (including the statements themselves) sufficient to show the existence of a conspiracy." *Id.*

The Court may admit co-conspirator statements "on a conditional basis, subject to the later submission of the necessary evidence" to establish that the co-conspirator exception is applicable. *See United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993). Specifically, the Government must establish by a preponderance of the evidence that "a conspiracy existed, that the defendant and declarant were members, and that the statements were made during the course of and in furtherance of the conspiracy." *Id.* (citing *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969)). The Court may consider the hearsay statements themselves to determine whether there is sufficient evidence to deem the declarant a co-conspirator. *Bourjaily v. United States*, 483 U.S. 171, 179 & n.2 (1987).

The Government provides "examples" of Je, Mileson, and He's statements. Gov. Mem. at 5, 6, 8. "[A]s is the practice in this [C]ircuit," the statements "will be admitted in the Government's case 'subject to connection' and without the need for a pretrial hearing on the sufficiency of the evidence concerning each defendant's participation in the alleged conspiracy." *United States v. Giovanelli*, 747 F. Supp. 875, 880 (S.D.N.Y. 1989) (citation omitted). The Government's motion as to the co-conspirators is, therefore, GRANTED. Should the Government intend to offer statements of Je, Mileson, and He beyond those quoted in its papers, or statements by other purported co-conspirators, the Government shall provide the statements to the Court and move for their conditional admission before presenting them to the jury. The Court will make the required *Geaney* findings outside the presence of the jury at the close of the Government's case and, if necessary, give an appropriate limiting instruction. *See Tracy*, 12 F.3d at 1200.

### B. Statements by G Enterprise Agents and Employees

Second, the Government seeks to admit statements of unnamed "[G] Enterprise [a]gents and [e]mployees," including employees of "the [Guo] family office entities, GTV, the Himalaya Farm entities, G|CLUBS, G|FASHION, G News, the HCHK entities, and the Himalaya Exchange" and the "attorneys, consultants, and translators working on behalf of the [D]efendants or the [G] Enterprise companies." Gov. Mem. at 9–10. Federal Rule of Evidence 801(d)(2)(D) "cannot be applied in the abstract. Admissibility ultimately must turn on characteristics of the particular items of evidence and the purposes for which they are offered." *United States v. Bankman-Fried*, No. 22 Cr. 673, 2023 WL 6283509, at *3 (S.D.N.Y. Sept. 26, 2023). The Government's request to admit for their truth "statements [made] by *all* of the [D]efendants' agents and employees," Gov. Mem. at 10 (emphasis in original), without offering any specific statements or any details about the purported agency and employment relationships, is DENIED.

### C. Statements on Guo's Media Platforms

Third, the Government moves to admit "videos, posts, and articles that were made by [Guo] or [Guo's] agents and often hosted on [Guo's] media platforms." Gov. Mem. at 11. Defendants do not contest that their own statements are admissible. *See generally* Guo Opp., ECF No. 287; Wang Opp., ECF No. 291; Fed. R. Evid. 801(d)(2)(A) (a statement made by an opposing party "in an individual or representative capacity" is not hearsay). The Government's motion to admit Guo's and Wang's own statements is, therefore, GRANTED. Its motion to admit the statements of Guo's "agents" is DENIED for the reasons described above: the Government has not shown that an agency relationship existed between Defendants and the

unnamed declarants, nor that the statements concern a "matter within the scope of that relationship and while it existed."[4]  Fed. R. Evid. 801(d)(2)(D).

II.    Government Motion 2

The Government moves to admit "[e]vidence of the [D]efendants' evolving investment schemes," beyond the "four principal schemes" charged in the indictment, "as evidence of the charged offenses."  Gov. Mem. at 15.  In particular, the Government asks to admit evidence about the "A10 Project," a fundraising scheme that initially promised investors ownership of "5% of G|CLUBS, 5% of GETTR, and 5% of the Himalaya Exchange—all entities listed as members of the [G] Enterprise" in the indictment.  Gov. Mem. at 16; *see also id.* at 16–18 (quoting a February 17, 2023 post about the A10 Project on Guo's G News platform).

Evidence about the A10 Project, if offered in non-hearsay form, is admissible as direct evidence of the charged offenses.  *See United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) ("When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself.").  The Government explains that the A10 Project is "directly connected to earlier and ongoing schemes" charged in the indictment; the G News article, for example, references the GTV Private Placement, "GClubs cards," and "H Coin" and "HDO [H Dollar]."  Gov. Mem. at 19.  The Government also "expects that victim witnesses will testify [that] they were defrauded across multiple of the [D]efendants' investment 'projects.'"  *Id.*  Guo argues that because the "A10 program [came] long after the alleged misrepresentations" concerning the four principal fraud schemes, it should be excluded.  Guo Opp. at 8.  However, the indictment alleges that the conspiracy continued "through at least in or about March 2023,"

---

[4] As Wang notes, moreover, "a declarant who is an agent of [] [Guo] is not necessarily an agent of [] Wang (and vice versa)."  *See* Wang Opp. at 4 & n.5.

S3 ¶ 1, ECF No. 307, so the A10 Project falls within the relevant period.  Accordingly, the Government's motion is GRANTED.

To the extent that the Government moves to admit evidence about other unspecified "interconnected scams," the motion is DENIED.  Gov. Mem. at 19.  Again, the Court cannot determine admissibility "in the abstract."  *Bankman-Fried*, 2023 WL 6283509, at *3.

III.     Government Motion 3

The Government moves to admit evidence that Guo "falsely represented that he would be donating $100 million to the Rule of Law organizations."  Gov. Mem. at 19–20.  The Government argues that the promise is relevant to the charged offenses in at least two ways.  First, it argues that Guo's promise is "inextricably intertwined with the charged offenses" because "victim investors in GTV and subsequent . . . 'projects' were required to donate to the Rule of Law entities as a prerequisite to be eligible to invest."  *Id.* at 20.  Second, the Government argues, Guo's promise "supplied false reassurance to investors that he would have no inclination to steal their money."  *Id.* at 21.

The Court agrees that the evidence is relevant: a jury could find that Guo "used his [Rule of Law] investors as a source of" future funds, and used his donation promise "to burnish his reputation for respectability so as to recruit and reassure potential investors."  *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012).  Although Guo argues that evidence of the unfulfilled promise is unfairly prejudicial, Guo Opp. at 12, it is not more inflammatory than the conduct with which he is charged.  *See United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009).  Accordingly, the Government's motion is GRANTED.

IV. <u>Government Motion 4</u>

The Government moves to admit evidence that Guo's "assets were seized by Chinese and Hong Kong authorities prior to his fundraising." Gov. Mem. at 22. It caveats that it does not intend to introduce in its case-in-chief "any evidence regarding what underlies the asset seizures, such as proving up the conduct that violated money laundering statutes in Hong Kong and led to the seizure order"—only the fact that the seizure occurred. *Id.*

The Court agrees that the asset seizure is admissible "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events," *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994), and as evidence of [Guo's] alleged "motive" to fundraise, *see* Fed. R. Evid. 404(b)(2). The motion is, therefore, GRANTED. The Court will afford Guo the same opportunity to complete the story by, for example, "explain[ing] the circumstances around that seizure and its role in the larger CCP efforts." Guo Opp. at 15–16.

V. <u>Government Motion 5</u>

The Government moves to admit evidence that Defendants "continued to direct the affairs of the [G] Enterprise following their arrests and detention." Gov. Mem. at 23. Specifically, the Government intends to offer (1) certified translations of "recorded jail calls made by [Guo] following his arrest," and (2) evidence that Defendants "have been having attorney meetings with a co-conspirator who is a licensed attorney . . . and using that attorney to ferry messages between the [D]efendants and the [G] Enterprise." *Id.* at 23–24.

"Courts frequently allow the government to introduce statements by defendants made during recorded jail phone calls." *United States v. Donovan*, 577 F. Supp. 3d 107, 117 (E.D.N.Y. 2021) (citing *United States v. Goolsby*, 820 F. App'x 47, 50 (2d Cir. 2020), and *United States v. Dowdell*, 737 F. App'x 577, 581 (2d Cir. 2018)). Here, the calls appear relevant

to proving Guo's degree of control over the alleged criminal enterprise. *See* Gov. Mem. at 23–24 (describing, among other things, a broadcast in which Guo declared Qidong Xia "the new leader of the Himalaya Alliance" and a phone call in which Guo "instructed his team to follow Qidong's lead unconditionally"). The Government's motion to admit the recorded calls is, therefore, GRANTED. To minimize the risk of prejudice from the jury being made aware that Defendants were incarcerated pretrial, the Government is directed to omit from the recordings any references to Defendants' detention. *See United States v. Hillard*, 546 F. Supp. 1351, 1355 (S.D.N.Y. 1982), *aff'd*, 701 F.2d 1052 (2d Cir. 1983) (noting that a defendant has a "legitimate concern with concealing" his custodial status from the jury, as "it is possible that some jurors will not be aware of the limited purposes of pretrial custody").

The Government's motion to admit evidence of Defendants using an attorney to "ferry messages" to others is, however, DENIED. The Government has not established that the evidence is sufficiently probative to overcome the prejudicial effect of revealing Defendants' detention to the jury. Nor can the Court determine, without a fuller factual proffer, that the Defendants' communications with counsel were not privileged.

VI. <u>Government Motion 8</u>

The Government requests that the Court "[p]ermit" the Government to authenticate, pursuant to Federal Rule of Evidence 902(11), "bank records, bank transaction information, IP logs, call detail records, subscriber information, emails from search warrant returns, and business records" from "certain third parties." Gov. Mem. at 34, 36. The Government's request is insufficiently specific as to which records it seeks to authenticate. *Id.* at 36; *see* Fed. R. Evid. 902(11). Accordingly, the request is DENIED. If the parties fail to agree upon an appropriate stipulation, the Court will consider these issues at trial.

9

VII.   Government Motion 9

The Government next moves to admit "a series of bank records, emails, and documents, from First Abu Dhabi Bank, which is a bank in the United Arab Emirates," pertaining to a bank account opened by co-defendant Kin Ming Je (the "Bank Records").  Gov. Mem. at 36.  The Government invokes Rule 807's residual hearsay exception, which is used "very rarely, and only in exceptional circumstances."  *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991).

The residual hearsay exception provides that hearsay is admissible even if the statement is not admissible under a hearsay exception when "(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a).  The "determination of whether a document is sufficiently trustworthy to be admitted under Rule 807 is a highly fact-specific inquiry."  *United States v. Prevezon Holdings, Ltd.*, 319 F.R.D. 459, 465 (S.D.N.Y. 2017) (quoting *United States v. Turner*, 718 F.3d 226, 233 (3d Cir. 2013)).  Relevant factors include the circumstances surrounding the discovery of the records, the appearance of the records, including their internal consistency, and the contents of the records.  *Id.* at 466.

In support of its motion, the Government attaches to two sets of documents that it claims are examples of the Bank Records.  First, the Government offers an "excel file[] containing transactional information."  Gov. Mem. at 39; Gov. Mem. Ex. G (spreadsheet on file).  The Government claims that the spreadsheet contains a ledger of Je's account transactions:

| | | STATEMENT ENTRY DATED ENQUIRY | | | |
|---|---|---|---|---|---|
| IBAN : AE870357771201996490026   Intellect/T24 IBAN: | | | | | |
| Account :7771201996490026 | | | | | |
| Customer :1996490   ACA CAPITAL GROUP LTD | | | | | |
| Currency :USD | | | | | |
| Balance at Period Start | | | 2,590.90 | | |
| VAL.DATE | TRANS.REF.NO | DESCRIPTION | POST.DAT | AMOUNT | CLOSING BALANC |
| 26 JAN 20 | TT20026V022H\BNK | Credit Card Direct Debit 4572210000012539 | 26 JAN 20 | -91.09 | 2,499.81 |
| 29 JAN 20 | FT2002970575 | Inward Telex Transfer | 29 JAN 20 | 119,990.00 | 122,489.81 |
| 30 JAN 20 | FT2003070745 | Transfer 30012020 | 30 JAN 20 | -105,500.00 | 16,989.81 |
| 01 FEB 20 | 7771201996490026-20200131 | Credit Interest | 31 JAN 20 | 0.32 | 16,990.13 |

Gov. Mem. Ex. G.

The spreadsheet is not sufficiently trustworthy. As described in a declaration from Marlee Miller, an attorney for the SEC, the Government received the Bank Records from the SEC, which in turn received them from the Securities and Commodities Authority of the United Arab Emirates (the "SCA"), which obtained them from the bank. Gov. Mem. at 36–37; *see* Miller Decl. ¶¶ 3–10, ECF No. 273-1. The Government offers no information as to how the Bank Records "were prepared or maintained by the First Abu Dhabi Bank." Guo Opp. at 37. Miller has no firsthand knowledge of how the SCA obtained the Bank Records from First Abu Dhabi, stating only that it "use[d] its domestic procedures to obtain the requested records."[5] Miller Decl. ¶ 5. Further, the SCA "declined to provide bank statements" to the SEC, instead providing the spreadsheet. Gov. Mem. at 39 & n.16. And, neither the bank nor the SCA provided a certification statement. Gov. Mem. at 38; *cf.* Fed. R. Evid. 902(12) (permitting the authentication of a foreign business record in a civil case based on the custodian's certification only where it, "if falsely made, would subject the maker to a criminal penalty in the country where the certification is signed"). A spreadsheet can be easily modified by "even an innocent

---

[5] The Government claims that it obtained the records pursuant to a "reliable and routine" process under an international treaty, Gov. Mem. at 38, but also states that "the United Arab Emirates['] provision of records pursuant to a [m]utual [l]egal [a]ssistance [t]reaty is irregular, at best." *Id.* at 44.

11

mistake," which would alter the nature of the document. Guo Opp. at 42. Without insight into "the exact circumstances by which the [spreadsheet] was prepared," it cannot fulfill the residual hearsay exception's trustworthiness requirement. *See United States v. Hill*, 658 F. App'x 600, 603 (2d Cir. 2016).[6]

Second, the Government seeks to admit a set of documents that it claims are the "account opening documentation [and] signature documents." Gov. Mem. at 39; *see* Gov. Mem. Ex. F, ECF No. 273-6. The Government states that the documents "are visually unremarkable," "bear the insignia of First Abu Dhabi Bank," and contain Je's signature and passport number. Gov. Mem. at 39, 43. The Government cites *Prevezon*, in which a court in this District admitted, under the residual exception, a Russian lawyer's pictures of a Russian criminal case file that included Russian bank records. 319 F.R.D. at 461–62. The *Prevezon* court relied in part on the bank records "appear[ing] to be what the Government says they are," including the "banks' identification of requested accounts on official letterhead." *Id.* at 465. In admitting the documents, the *Prevezon* court also relied on the Russian lawyer's testimony as to how he took pictures of the criminal case file, evidence that the Russian government seized the bank records from the banks, and evidence of the "intricate form through which" the Russian government seized the records—namely, that they were "bound together with twine." *Id.* at 462, 466–67 (cleaned up). The Government has not offered similar chain of custody evidence for the Bank Records.[7] Nor does the Government indicate that the information in the Bank Records is so

---

[6] The Government contends that other bank records in its possession corroborate the Bank Records. But, "[t]o be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Idaho v. Wright*, 497 U.S. 805, 822 (1990).

[7] That the records were in the SCA's possession neither authenticates the evidence nor renders it admissible. *See United States v. Doyle*, 130 F.3d 523, 547 (2d Cir. 1997) ("[T]he admission of privately-generated, business records without further foundation, even though the records were found in the possession of a foreign government agency,

"distinctive" as to support its trustworthiness, or that Je's account opening forms resemble the routine documentation required to open an account at First Abu Dhabi Bank. *See United States v. Vayner*, 769 F.3d 125, 132 (2d Cir. 2014). The Court finds, therefore, that the Bank Records are insufficiently trustworthy for admission under the residual exception. The Government's motion is DENIED.

VIII.   Government Motion 10

The Government moves to preclude Defendants from arguing that the prosecution team is "improperly linked to the CCP or in any way malicious." Gov. Mem. at 46–47 (capitalization altered). Wang states that she has "no intention of arguing . . . that the prosecutors are agents of the CCP." Wang Opp. at 38. It is less clear whether Guo makes the same concession. *See* Guo Mem. at 51–52.

"In this Circuit, a defendant who advances a claim of selective prosecution must do so in pretrial proceedings" before the Court—not the jury—"because it raises an issue that is independent of the question of the defendants' guilt or innocence." *United States v. Stewart*, No. 03 Cr. 717, 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (quoting *United States v. Sun Myung Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983)). Because neither Guo nor Wang have raised a malicious or selective prosecution argument, the Government's motion is GRANTED.

IX.   Government Motions 11, 12, and 13

The Government moves to broadly exclude "evidence regarding CCP activities . . . beyond the defendants' own testimony as to their state of mind," arguing that the "probative value of such evidence is substantially outweighed by a danger of confusing the issues and

---

would in all probability be an abuse of the discretion by the trial court."); *Lakah v. UBS AG*, 996 F. Supp. 2d 250, 257 (S.D.N.Y. 2014) (declining to use the residual exception to "create an end-run around the holding of *Doyle*").

misleading the jury." Gov. Mem. at 47. It contends that the Court should only permit evidence of CCP targeting that "could have affected [Defendants'] state of mind"—for example, "public reports that they read at that time." *Id.* at 50.

In effect, the Government asks that the Court reconsider its previous order, which held that evidence showing that Guo, "his family, his co-defendants, or the corporate entities relevant to the indictment have been targeted by the CCP" is "material" under Federal Rule of Criminal Procedure 16.[8] ECF No. 243 at 6. The Court declines to do so. Contrary to the Government's arguments, evidence showing that Defendants' fears of CCP targeting were objectively legitimate—even if they were not aware of the specific pieces of evidence—gives credence to certain nonculpable explanations for their actions. Put simply, a jury could find that the targeting evidence elevates Defendants' alternative narrative beyond mere paranoia.

Certainly, presentation of the CCP-related evidence might risk "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. If so, the Government may raise these objections at the appropriate times. The Court—as the Government requests—will "closely police Defendants' testimony to avoid impermissible bases for a verdict." Gov. Mem. at 52 (capitalization altered). But, the Court will not preclude an entire category of relevant evidence before Defendants begin to present their case. The motions are, therefore, DENIED.

X. <u>Government Motion 14</u>

The Government moves to preclude Defendants from arguing, or introducing evidence to

---

[8] Although materiality under Rule 16 is a "low bar," Gov. Mem. at 50, so is relevance under Federal Rule of Evidence 401. *See, e.g.*, *United States v. Ray*, 585 F. Supp. 3d 445, 459 (S.D.N.Y. 2022); *see also* Fed. R. Evid. 401 (evidence is relevant if it "has *any tendency* to make a fact more or less probable than it would be without the evidence; and [] the fact is of consequence in determining the action." (emphasis added)).

suggest, that "their actions were justified or necessary as a result of targeting by the CCP . . . or that they operated under duress." Gov. Mem. at 56. Defendants state that they do not intend to raise duress or justification defenses. *See* Guo Mem. at 63 ("[Guo] has not argued in any pleading or paper that this [targeting] evidence supports a defense of duress or justification"); Wang Mem. at 40 ("Wang does not intend to rely on any argument that . . . the alleged fraud was somehow the result of duress or necessity."). The Government's motion is, therefore, GRANTED, and Defendants shall not raise these defenses at trial. As explained above, however, the Court will not preclude Defendants at this juncture from introducing evidence of CCP targeting for other permissible purposes.

XI. Government Motion 15

The Government moves to preclude Defendants from introducing "general evidence of contact between the Chinese police and witnesses." Gov. Mem. at 57 (capitalization altered). "The law is well settled in this Circuit, as in others, that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely." *United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976). The parties agree that Defendants are "entitled to cross-examine . . . victim-witnesses" about whether they have been contacted or coerced by the CCP. Guo Opp. at 67; *see* Gov. Mem. at 57; Wang Opp. at 41. To the extent that Defendants intend to introduce other evidence showing that non-testifying victims "may have been approached by the CCP or its agents," Wang Opp. at 41, the Government's motion to exclude such evidence is DENIED. The Government does not identify specific evidence on the subject that it expects Defendants to introduce, and the Court cannot evaluate relevance in the abstract.

XII. <u>Government Motion 16</u>

The Government moves to preclude Defendants from introducing "evidence or argument concerning their prior commission of 'good acts' . . . [and other] evidence of non-criminal activities to disprove guilt of the crimes charged." Gov. Mem. at 58. It is well established that a defendant "may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990). Defendants state that they do not intend to introduce any good-acts evidence to disprove their guilt of the charged offenses. Guo Opp. at 64; Wang Opp. at 44. The Government's motion is GRANTED as to this narrow, impermissible use of good-acts evidence. The Court will not, however, categorically bar Defendants from presenting evidence of nonculpable acts for permissible purposes.

XIII. <u>Government Motion 17</u>

The Government next moves to preclude Defendants from "in any manner suggest[ing] that disclaimers in transactional documents render the [D]efendants innocen[t] of the charges." Gov. Mem. at 62. The Government argues that the disclaimers bear on reliance, which is not an element of criminal wire fraud, and do not affect whether Defendants' misrepresentations were material. *See id.* at 64–65 (citing *United States v. Weaver*, 860 F.3d 90, 92 (2d Cir. 2017)). Defendants do not contest the first point or seek to argue that the disclaimers render their misrepresentations immaterial as a matter of law. *See* Guo Opp. at 70; Wang Opp. at 45–46 (citing *Weaver*, 860 F.3d at 95).

The Court disagrees with the Government that the disclaimers are wholly irrelevant to materiality. *See* Gov. Mem. at 64–65. To determine whether a misrepresentation is material, the jury must decide if there is a "substantial likelihood" that the alleged misrepresentation "would

have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *United States v. Landesman*, 17 F.4th 298, 341 (2d Cir. 2021) (citation omitted). The transactional disclaimers are part of the "total mix" of information for the jury to consider. *See Weaver*, 860 F.3d at 97 (noting that "contractual disclaimers were relevant to the jury's determination of [the defendant's] guilt"); *SEC v. Am. Growth Funding II, LLC*, No. 16 Civ. 828, 2019 WL 1748186, at *5 (S.D.N.Y. Apr. 19, 2019) (permitting SEC to renew objections about purportedly boilerplate risk disclosures at trial). Accordingly, the Government's motion is DENIED.

XIV. Government Motion 18

The Government next seeks to bar Defendants from arguing "that victims were negligent, gullible, or insufficiently vigilant." Gov. Mem. at 66. The Second Circuit "routinely has rejected a gullible victim defense for wire-fraud charges." *United States v. Adelekan*, 567 F. Supp. 3d 459, 470 (S.D.N.Y. 2021) (collecting cases).

Neither Defendant seeks to pursue such a defense. Guo Opp. at 73; Wang Opp. at 47. But, Guo argues that the "level of sophistication of investors (including the due diligence they conducted) is relevant to the materiality of the alleged misstatements." Guo Opp. at 73. And, Wang contends that "what alleged victims knew or understood about [Guo] (or [] Wang)" is relevant to the total mix of information available to the person. Wang Opp. at 47.

The Court does not interpret the Government's motion as seeking to prohibit Defendants from questioning witnesses about either topic. Indeed, the "reasonable investor" is an objective standard and may vary "with the nature of the traders involved in the particular market." *United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018). But, there is a fine line between properly asking about an investor's sophistication and improperly implying to the jury that the investor should

have found out the truth about the alleged misrepresentations. Accordingly, the Government's motion is GRANTED. The Government may object at the appropriate time if Defendants' questioning verges toward the latter.

XV.     Government Motion 19

The Government moves to preclude argument that the SEC or the Government are responsible for the victims' financial losses. Gov. Mem. at 67–68. Guo argues that the SEC's investigation and the Government's seizure of funds from the Himalaya Exchange are necessary to complete the story: for example, the SEC investigation explains why banks froze GTV accounts, which the Government alleges is the reason that Guo began the Farm Loans program, and the Himalaya Exchange seizures are relevant if the Government argues that the seizures did not affect the price of H Coin. Guo Opp. at 74–75.

Guo's argument does not respond to the Government's motion, which is GRANTED. Guo may not imply that the SEC or the Government are responsible for the victims' financial losses, or that the failure of GTV and the Himalaya Exchange was the fault of the SEC or the Government, because such argument has a substantial danger of confusing the issues and misleading the jury. *See* Fed. R. Evid. 403. Neither party is categorically barred from referencing SEC or Government actions, and specific relevance objections shall be addressed at trial.

XVI.    Government Motion 20

The Government next moves to bar Defendants from "arguing that they intended to return or repay victims' funds"—including by pointing to evidence of the amount of money seized by the Government—as a defense to the fraud charges. Gov. Mem. at 68. Wire fraud "does not require that [the defendant] intended to permanently deprive the victim's money or

property." *United States v. Males*, 459 F.3d 154, 159 (2d Cir. 2006) (cleaned up); *see United States v. Bankman-Fried*, 680 F. Supp. 3d 289, 308 (S.D.N.Y. 2023) ("[T]he [wire fraud] offense is complete where . . . there is an immediate intent to misapply and defraud." (quotation marks and citation omitted)).

Although Guo and Wang disclaim this argument, Wang Opp. at 48; Guo Opp. at 77, Guo argues that he should be allowed to point to the amount of money and assets seized by the Government to show that "the *purported* loans at issue in this case, were in fact loans." Guo Opp. at 77 (emphasis in original). The Court agrees. Accordingly, the Government's motion is GRANTED, except that Guo will be allowed to introduce evidence on the narrow factual issue of whether the Farm Loans and the $37 million Himalaya Exchange loan were fictitious.

XVII.   Government Motion 21

The Government moves to preclude Defendants from offering evidence "concerning family background, health, age, pretrial detention, or any other similar factors," as well as the "punishment or consequences they face if convicted." Gov. Mem. at 70.

A jury should reach its verdict "without regard to what sentence might be imposed," and information about sentencing "distracts [jurors] from their factfinding responsibilities." *Shannon v. United States*, 512 U.S. 573, 579 (1994) (citations omitted). Although Guo states that he will not point to his potential sentence, Guo Opp. at 78, Wang does not explicitly disclaim this argument. *See* Wang Opp. at 44–45. Accordingly, this portion of the Government's motion is GRANTED.

The rest of the Government's motion is overbroad. The Court has discretion to exclude evidence that could " cause the jury to be influenced by sympathies having no bearing on the merits of the case." *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991); *see* Fed. R.

Evid. 403.  But, elements of Defendants' family backgrounds or health could be relevant to the merits of the case, and the Government does not identify specific evidence that it seeks to exclude.  Accordingly, the balance of the motion is DENIED.  The Government may make specific relevance objections at trial.

    XVIII. <u>Government Motion 22</u>

The Government seeks to broadly preclude Defendants from "offering any of their own statements from emails, mobile chat threads, text messages, voicemails, public statements, or videos," arguing that they are inadmissible under Federal Rule of Evidence Rule 801(d)(2). Gov. Mem. at 70–71.  Again, however, admissibility ultimately turns on the characteristics of the particular item of evidence and the purpose for which it is offered.  These statements may be admissible if Defendants are subject to cross-examination about them and the other requirements of Rule 801(d)(1) are met, or if a hearsay exception applies.  Accordingly, the motion is DENIED as both premature and overbroad.

    SO ORDERED.

Dated: May 2, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge