IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Complainant<br><br>-v-<br><br>HO WAN KWOK, a/k/a "Miles Guo," "Miles Kwok," "Guo Wengui," "Brother Seven," or  "The Principal,"<br><br>and<br><br>KIN MING JE, a/k/a "William Je,"<br><br>and<br><br>YANPING WANG, a/k/a "Yvette,"<br><br>Defendants. | Criminal No.:  23-cr-118 (AT)<br><br>RENEWED MOTION AFTER TRIAL OF FINANCIAL VICTIMS FOR RETURN OF THEIR PROPERTY<br><br>Assigned to the Honorable U.S. District Court Judge Analisa Torres, Presiding Judge |

STATUTORY DEMAND FOR RESTITUTION OF ILLEGALLY
SEIZED VICTIM FUNDS OF "MEMBERS" OF
(A)         HIMALAYA EXCHANGE
(B)         G CLUBS
(C)         FARM LOAN PROGRAM
(D)         GTV PRIVATE PLACEMENT

_____

Claimants, represented by the undersigned Bradford L. Geyer, Esq., of FormerFedsGroup.Com, respectfully demand the return of funds illegally seized by the U.S. Government, as authorized by 18 U.S.C. § 983(a)(1)(A)(i), the Bank Robbery Act (18 U.S.C. § 2113), common law larceny by trick and false pretenses, 21 U.S.C. §§ 853(i) and (n), 18 U.S.C. § 3771, Rule 41(g), 42 U.S.C. § 10607, Fed. R. Crim. P. 32.2(b), and principles of unjust

1

enrichment. The funds, identified by the U.S. Government as belonging to victims of the defendants, should be fully restored. Representing five additional victims alongside thousands of Himalaya Exchange customers, undersigned counsel urges the immediate return of these funds and demands that bankruptcy Trustee from further expenses drawdowns.

Under the Crime Victim's Rights Act 18 U.S. Code § 3771 (CVRA), any 18 U.S.C. § 983(a)(1)(A)(i) process must comply with CVRA. Section 983 was designed before the emergence of cryptocurrency exchanges and innovations in human rights capital creation innovations (bit coin, Himalaya Coin, etc.), and what had already been a gulf between the two, is here now a chasm with notice failures, unreasonable delays and perhaps uniquely in this case, a requirement that anyone wanting their stolen money returned, must submit to "doxing" to foreign governments, many of whom are at serious risk and are still in mainland China, where they could be easily persecuted for participating in these activities just like the witness Mr. Yi.[1]

---

[1] **Jianhu Yi** (23 Cr. 118 (AT); July 3, 2024) provided detailed testimony of retaliatory actions by the Chinese Communist Party (CCP), particularly through its Ministry of State Security (MSS) and Ministry of Public Security (MPS). Key points Yi highlighted included:

**Detention and Interrogation**: Being detained and interrogated by officers from the Ministry of National Security. They held him for extended periods, confiscated his personal items, and questioned him under duress about his investments and associations.

**Intimidation Tactics**: Enduring threats of imprisonment if he refused to comply with the authorities. They demonstrated knowledge of his and his family's whereabouts, leveraging this information to heighten fear and compliance.

**Forced Cooperation**: Coerced into signing documents, including accusations against others, which he described as fabricated or inaccurate. Authorities used his family and his assets as leverage, demanding his cooperation under the threat of repercussions.

**Defamation and Asset Freezes**: The CCP allegedly employs tactics like "spamouflage" to discredit critics through false narratives and media campaigns. Retaliatory freezing of bank accounts and assets, both domestically and internationally, were mentioned as tools used to stifle dissent and complicate critics' lives abroad.

**Global Surveillance and Harassment**: highlighted transnational repression, indicating that the CCP surveils and harasses dissidents overseas, including attempts to manipulate legal systems and leverage international mechanisms like Interpol Red Notices for political purposes.

This court must act to halt further harm to victims.

## I. STATUS AS VICTIM

| Legal Name | Farm Loan | G Clubs | GTV | Himalaya Exchange Costomer |
|---|---|---|---|---|
| Person A | $102,000.00 | $70,000.00 | Yes | No |
| Person B | $0.00 | $50,000.00 | Yes | No |
| Person C | $20,000.00 | $50,000.00 | No | No |
| Person D | $0.00 | $130,000.00 | No | No |
| Person E | $50,000.00 | $0.00 | No | No |

Five identity protected clients referenced above, who are classified by the government as victims of Kwok, Je, and Wang, assert that their true victimization stems from the U.S. Government's tortious interference, which disrupted their secured investments. They argue that without this interference, there would have been no loss, nor would the bankruptcy trustee have been able to unjustly seize funds belonging to genuine victims. They believe their community comprises the lion share of ownership and report widespread apprehension to come forward. While prosecutors allege unfulfilled promises by the defendants, the victims maintain that government actions prevented the defendants from fulfilling those promises.

## II. STATUTORY COMMANDS WITHOUT EXCEPTION TO MAKE RESTITUTION TO THESE VICTIMS

### 1. Applicable Law[2]

The Justice for All Act of 2004 (the "Act") expanded the rights of victims in federal criminal proceedings and established certain requirements concerning the Government's notification of victims. See 18 U.S.C. § 3771(a).

---

[2] ECF #10

The Act provides that:

> *Crime victims have the following rights, among others: (1) the right to be reasonably protected from the accused; (2) the right to reasonable, accurate, and timely notice of any public court proceeding, or parole proceeding, involving the crime, and timely notice of the release of the defendant; (3) the right not to be excluded from any such public court proceeding, unless the Court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding; (4) the right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding; (5) the reasonable right to confer with the attorney for the Government in the case; (6) the right to full and timely restitution as provided in law; (7) the right to proceedings free from unreasonable delay; (8) the right to be treated with fairness and with respect for the victim's dignity and privacy; (9) the right to be informed in a timely manner of any plea bargain or deferred prosecution agreement; and (10) the right to be informed of these rights. See 18 U.S.C. § 3771(a). The Act defines a victim of a crime as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 377l(e)(2)(A). Section 3771 requires the Court to ensure that crime victims are afforded the rights enumerated in the statute, see 18 U.S.C. 377l(b), and obligates the Government to use "best efforts to see that crime victims are notified of, and accorded, the rights" provided, see 18 U.S.C. § 377l(c)(1). The Act does not set forth any specific notification procedures. In addition, the Act recognizes that in cases involving a large number of crime victims, it may be impracticable to accord all of the victims the rights identified in Section 3771(a). See 18 U.S.C. § 377l(d)(2). Specifically, the Act provides that in such cases, "the court shall fashion a reasonable procedure to give effect to [the Act] that does not unduly complicate or prolong proceedings." Id. A number of Courts in this district have addressed the effect of the Act in cases involving large numbers of victims, particularly securities fraud prosecutions, and have approved procedures similar to those proposed and outlined below. See, e.g., United States v. Brown, 20 Cr. 524 (KPF) (ECF N United States v. Scott, 17 Cr. 630 (ER) (ECF No. 481, entered June 8, 2022); United States v. Madoff, 09 Cr. 213 (DC); United States v. Rigas, 02 Cr. 1236 (LBS); United States v. Ebbers, S3 02 Cr. 1144 (BSJ); United States v. Eberhard, S1 03 Cr. 562 (RWS); United States v. Bongiorno, 05 Cr. 390 (SHS).*

The CVRA unequivocally mandates compliance without allowing discretion, exceptions, conditions, or qualifiers. Undersigned counsel represents 5,280 and counting Himalaya Exchange (HE) depositors whose full investments remain frozen in seized custodial accounts, as well as five additional depositors who confirm there are many more victims like them. These individuals have been thoroughly vetted through their community as legitimate claimants.

The Government's inaction and failure to prioritize victim protection not only violate statutory obligations but also risk exacerbating the suffering of those most in need of justice and restitution. Swift and decisive action is essential to restore trust and prevent further harm.[3]

### III.    CONFLICT BETWEEN 18 U.S.C. § 983(a)(1)(A)(i) and CVRA

The inherent conflict between the formulaic process of 18 U.S.C. § 983 and the Crime Victims' Rights Act (CVRA) is starkly evident here, where failures of notice, mass confusion, language barriers, secretive actions, and threats to victims' safety converge. These systemic barriers make § 983's procedural requirements not only unworkable for thousands of victims but also dangerous. Victims, particularly those facing language barriers or confusion about their rights, are forced to risk exposure of their identities to assert claims—a threat that jeopardizes their safety.

For victims under threat of retaliation, including from powerful actors like the Chinese Communist Party (CCP),[4] which reportedly operates covertly in Western nations, complying with § 983's framework amplifies their vulnerability. The Government's awareness of these risks yet indifference—or tacit encouragement—violates CVRA's protections, which exist to prevent re-victimization, safeguard dignity, and prioritize victim safety.

---

[3] The vast majority of legitimate victims affected by these seizures are too fearful to communicate with the U.S. Government, viewing it as complicit in their oppression rather than a source of relief. Recently, we were retained by an HE client who uncharacteristically felt safe enough to engage with the Government. However, the redacted communications we reviewed suggest that the Government is, at best, showing no urgency in returning the seized funds and, at worst, potentially violating the Crime Victims' Rights Act (CVRA), raising concerns that the funds may never be returned.
https://acrobat.adobe.com/id/urn:aaid:sc:US:311caba5-c281-4ce1-8955-c429c9881d9a (see highlights).

[4] Targeting Through Operation Fox Hunt: Expert testimony referenced "Operation Fox Hunt," a CCP initiative targeting overseas dissidents through coercion, intimidation, and false legal claims. These actions underline a systematic effort by the CCP to suppress dissent, silence critics, and maintain control both within and beyond China's borders.

By favoring procedural expediency over the CVRA's substantive protections, the Government effectively creates a system that intimidates victims and punishes them for asserting their rights. This chilling effect,[2] especially in the face of threats from entities like the CCP, is compounded by the outdated nature of § 983, which predates modern financial systems like cryptocurrency exchanges designed to promote economic freedom and human rights.

CVRA was enacted precisely to remedy such deficiencies, ensuring victims are not forced to choose between asserting their rights and protecting their lives. Its protections must take precedence, as adherence to outdated § 983 procedures undermines justice and perpetuates harm.

### IV. APPLICATION TO CLASS MEMBERS

The Government has admitted to seizing $1.4 billion from individuals it acknowledges as innocent victims of the Defendants' alleged crimes (ECF Dkt. #329). The prosecution asserts these funds were stolen from undersigned counsel's clients, not owned by the Defendants, and thus cannot be considered criminal proceeds. By its own admission, the Government recognizes these funds as stolen property belonging to the victims, who have a rightful claim to their return.

## V. UNITED STATES OF AMERICA IS PLUNDERING THE ASSETS OF INDIVIDUALS IT DESIGNATES AS VICTIMS

During the prosecution, the Government formally designated undersigned counsel's clients as "victims" of the alleged crimes charged against Kwok, Je, and Wang allegedly perpetrated by the Defendants connected to:

1. *Himalaya Exchange;*
2. *G Clubs;*
3. *Farm Loan Program;*
4. *GTV private placement.*

The true harm to undersigned counsel's clients appears to stem not from the Defendants but from the U.S. Government, which seized their funds, deprived them of rightful assets, and refuses to return them even after the criminal trial's conclusion. No evidence suggests any alternative explanation for their losses, leaving the Government's actions as the sole cause of harm and underscoring the urgent need to restore these victims' assets that include prominent assets like the Mahwah Conference Center and Bugatti sports car either directly or through the bankruptcy Trustee.[5]

## VI. MAYBE'S, GUESSES and SPECULATION WHEN GOVERNMENT WHEN GOVERNMENT SHOULD KNOW EVERY DETAIL

There can be no excuse of "we don't know" or "we will get back to you" when the Government had to be prepared to prove with competent evidence to a very high standard every aspect of the Defendants' alleged crimes against the designated Victims. If the Government does not have this evidence at its fingertips, then it was never prepared to take the underlying criminal case to trial. In other words, the Government can promptly return the funds of

---

[5] ECF #130; https://www.justice.gov/usao-sdny/pr/ho-wan-kwok-aka-miles-guo-arrested-orchestrating-over-1-billion-dollar-fraud-conspiracy

undersigned counsel's Himalaya Exchange clients through an already established secure authentication process. Once a CVRA-compliant structure and procedure are implemented, all funds—including those belonging to the victim classes represented by the aforementioned clients—can be efficiently restored. This approach would provide the Government with greater certainty while ensuring the necessary protections for the victims.

### V. COLOSSAL WASTE AND PLUNDERING OF CLIENTS' FUNDS BY CHAPTER 11 TRUSTEE

Kwok filed a voluntary Chapter 11 petition for protection from bankruptcy in the U.S. Bankruptcy Court for the District of Connecticut Case No: 22-50073.

The Trustee has plundered an astonishing $38 million and the meter is running relentlessly as he disposes of assets with significant billing to coordinate with the government. The only response to the fact that the government lacks jurisdiction over the Himalaya Exchange – which never operated in the United States and prohibited any U.S. citizen, U.S. resident, or agent of a U.S. citizen or resident from participating – was a comment in a letter to the Honorable Court herein that Himalaya Exchange "may be" part of the bankruptcy estate. That is, after 2 years of investigation and millions of dollars set on fire in bonfires, *he does not know*. How many tens of millions of the clients' money more will he need to shred to find out? If he does not know by now, then the answer is simple: The Himalaya Exchange is *not* part of the bankruptcy estate. There is no evidence that it is.

The Chapter 11 Petition was filed by KWOK personally – **_not by any business._**

Therefore, only the personal shares or deposits of Kwok are within the Chapter 11 Trustee. As laid out in prior filings, if Kwok had any money in the Himalaya Exchange, G Clubs, Farm Loan Program or GTV (and/or any of the other entities) as the Chapter 11 Trustee could only access Kwok's personal funds on deposit. So instead of tens of millions of dollars and two years of investigating, a bankruptcy trustee would have understood that the none of aforementioned assets plays a part in the Chapter 11 bankruptcy.

Based on our limited calculation, between May and Oct 2024, the Trustee has spent hundreds of hours and billed at least 300k USD on matters related to the criminal case, including phone calls with DOJ/prosecutors, criminal dockets, attending criminal trials and forfeiture related documents and discussions. In other words, the trustee knows better than anyone that the frozen assets do not belong to the defendant. Nevertheless, the trustee still works very hard trying to plunder more of them.

**VI. EVEN ASSUMING GOVERNMENT'S THEORY REGARDING DEFENDANTS WERE TRUE, DEFENDANTS SHOULD NOT HAVE GRANTED CAPACITY TO AGREE WITH GOVERNMENTS'S PLAN TO PLUNDER FUNDS**

Even if the Government's allegations against the defendants were accurate, it is indefensible to allow the accused to consent to the seizure of funds that do not belong to them. These assets, by the Government's own admission, are the rightful property of the victims. Allowing individuals accused of fraud to authorize such actions undermines justice and directly harms the victims. The "Consent Order" entered on May 3, 2024 (ECF Dkt. #329), between the

Government and the defendants, further victimizes those already harmed. This agreement effectively enabled the Government to confiscate funds belonging to depositors, including:

- *$4,643,744.70 FV Bank for Himalaya International Reserves, Ltd.;*
- *$14,599,257.25 FV Bank account for Himalaya International Clearing, Ltd.;*
- *$11,538,579.87 Mercantile Bank for G Club International, Ltd.;*
- *$11,538,579.87 Mercantile Bank for Himalaya International Clearing, Ltd.;*
- *$272,350,313.76 Mercantile Bank for Himalaya International Financial Group,Ltd.;*
- *Additional amounts totaling millions from related accounts.*

These funds, held in trust for depositors, were seized over two years before the Consent Order's issuance. The order, sealed and concealed from victims and the public, was executed without notifying undersigned counsel, who represents over 5,242 depositors with claims on these assets. This lack of transparency and consultation flagrantly violates victims' rights under the Crime Victims' Rights Act (CVRA), including their rights to be informed, heard, and treatedwith fairness.

The Government's actions disregarded clear filings on record that established counsel's representation of thousands of Himalaya depositors. By failing to notify counsel or allow input, the Government deprived victims of their ability to contest the seizure or advocate for their rightful assets. This Court should not condone such an agreement, which even under the

government's theory would have enabled those accused of defrauding victims to assist in further stripping them of their property.

This Consent Order sets a dangerous precedent by prioritizing procedural expediency over substantive justice. Victims must not bear the consequences of decisions made without their participation or consent, particularly when those decisions violate the fundamental rights protected under the CVRA. This Court must act to rectify this injustice and ensure that victims' rights are respected and their property is restored.

### VII. BURDEN IS ON THE GOVERNMENT

Under CVRA the Government has the burden of establishing any reason to delay or deny restitution. Again, the Government needed to have evidence prepared and organized to prove these matters at the criminal trial beyond a reasonable doubt.

### VIII. RESTITUTION IS SPECIFIC TO SECURED CREDITORS

Similarly, the investors and claimants under each organization are entitled to the return of *their* specific funds that were taken from that particular organization. The Government and Court are not authorized to mix it all up together and then sprinkle a little around to everyone. Creditors cannot claim funds from a different organization with whom they never did business.

### IX. CONCLUSION AND RELIEF REQUESTED

Government's actions have inflicted significant harm on innocent victims by unjustly seizing their rightful assets without clear justification. To ensure justice and compliance with the Crime Victims' Rights Act (CVRA), this Court should take immediate steps immediately lift all seizures or, alternatively, direct the Government to collaborate on creating a fair, secure, and efficient

process to return funds to innocent victims in compliance with the CVRA and other applicable laws and order a suspension of all actions by the bankruptcy trustee or any other party to claim or utilize these funds. Justice demands swift and decisive action to halt this ongoing harm, protect the rights of innocent victims, and ensure their restitution. Anything less perpetuates the profound injustices these individuals have already endured.

Dated:  November 24, 2024                         RESPECTFULLY SUBMITTED

<u>/s/ Brad Geyer</u>
Bradford L. Geyer, PHV
NJ 022751991
Suite 141 Route 130 S.  303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.Com
(856) 607-5708

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 24, 2024, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the Southern District of New York.

                                          /s/ Brad Geyer
                                          Bradford L. Geyer, PHV
                                          NJ 022751991
                                          Suite 141 Route 130 S.  303
                                          Cinnaminson, NJ 08077
                                          Brad@FormerFedsGroup.Com
                                          (856) 607-5708