Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY

March 21, 2025

Your Honor,

We respectfully submit this letter motion on behalf of over approximately 5,242 individual members of the Himalaya Exchange (HEX), who the government itself concedes are innocent victims of the Government seizures (they do not accept they are victims of the offences and or any of the defendants, which is clear from my numerous previous filings).[1]

We request that the Honorable Court to:

***VACATE WITHOUT PREJUDICE*** *the Preliminary Order of Forfeiture entered on January 7, 2025;*

***TOLL AND STRIKE*** *the ancillary petition deadline currently set for April 7, 2025;*

---

[1] These 5,242 members of the Himalaya Exchange (HEX) (the only business conducted by Himalaya International Clearing, Ltd., Himalaya International Reserve Ltd ]holding HDO reserve that was the subject to the seizure], part of the Exchange group companies. of and in the British Virgin Islands), were authenticated on January 4, 2024 (ECF 212). At that time, HEX confirmed that for 5,242 clients on January 4, 2024, there was a total of $13,739,075.51 in HCN, $45,222,849.46 in HDO, based on $207,067,553.60 in reserves. It will take 2-4 weeks to compile an updated client list with updated clients and losses. Since that time we have had clients terminate the attorney client relationship, while others created one. This is all contained in a secure email account where incoming emails are received from HimalayaRestoration.Com and only identified by a 7 digit Himalaya Identification Number (HID#). This deters hacking and this key can then be used to unlock KYC, identity information, account information and banking information stored and encrypted by HEX.  This account has received thousands of emails joining, a few dropping, and in some cases, dropping and rejoining, most times in good faith, but also including separate communications by suspected plants, bad actors and chaos agents.

> **DIRECT** the government to reissue any forfeiture-related notices only after the sentencing of Defendant Ho Wan Kwok (Miles Guo);
>
> **QUARANTINE** any petitions already submitted under 21 U.S.C. § 853(n) until a valid forfeiture judgment can be issued after Defendant Guo's sentencing.

## Inadequate Notice

The claims-filing deadlines triggered by the government's Final Notice of Forfeiture, premised solely upon the purported consent of Defendant Yanping Wang—who expressly disclaims any ownership or legitimate nexus to the HEX assets—cannot legally bind other interested third parties. While forfeiture interests in well counseled, compliance driven crypto exchanges are relatively new subject matter for courts, it is well-established law that forfeiture actions cannot rest upon the consent of a party lacking a forfeitable interest. See United States v. Ribadeneyra, 105 F.3d 833, 835 (2d Cir. 1997) ("A court cannot order the forfeiture of property unless the defendant has an interest in it."); United States v. Totaro, 345 F.3d 989, 993 (8th Cir. 2003) ("Forfeiture is not an independent punishment; it must be tied to the defendant's own interest in the tainted property."). Deadlines for filing forfeiture claims are therefore binding only if grounded upon valid forfeiture proceedings initiated by individuals with demonstrable, legitimate ownership or authority.

In United States v. Morrison, 656 F. Supp. 2d 338, 344-45 (E.D.N.Y. 2009), the court emphasized that forfeitures under RICO require a clear nexus between the seized property and the underlying racketeering activity. Similarly, United States v. Schlesinger, 396 F. Supp. 2d 267, 278-79 (E.D.N.Y. 2005), clarified that valid consent-based forfeitures must originate from individuals who possess genuine control or ownership interests in the targeted assets. Defendant Wang's consent, lacking any requisite ownership or lawful authority, fundamentally invalidates the government's basis for initiating claims-filing deadlines.

Further, enforcing deadlines premised upon invalid consent infringes upon fundamental due process rights guaranteed by the Fifth Amendment, mandating meaningful notice and a genuine opportunity to contest governmental actions against one's property. See Mullane v.

<u>Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 313 (1950) (requiring notice reasonably calculated to inform interested parties and provide them an opportunity to respond). A forfeiture notice that is procedurally defective—here, because it rests entirely upon the purported authority of a party without lawful standing for the government to use her in the way they have—cannot impose legally binding deadlines upon legitimate third-party claimants.

Accordingly, because Defendant Wang's consent—when looked at alone--could not legally trigger valid forfeiture proceedings under either statutory authority or constitutional standards, the resulting claims-filing deadlines lack legal force. Therefore, these deadlines must be deemed unenforceable as against legitimate third-party claimants or co-defendants who received notice solely through procedurally defective and insufficient means.

Additionally, the government appears to have made no effort to provide notice beyond posting on a website. Although this method might meet minimum statutory notice requirements, the context and unique circumstances of this case call for heightened scrutiny. The government's aggressive approach—posting notice prematurely, simultaneously pushing for the expedited sentencing of Defendant Guo as a necessary prerequisite, when it long ago seized all HEX bank account records reflecting funds from thousands of individuals unrelated to the criminal prosecution—raises concerns regarding the validity and sufficiency of the original forfeiture notice. Furthermore, given the numerous filings by undersigned counsel highlighting humanitarian concerns and unique challenges presented by this matter, and Defendant Wang's lack of any discernible interest in HEX funds after a full criminal trial, it becomes clear that reliance on the prior notice is questionable. The better course of action, in light of these factors, would be for the government to undertake a proper notification process or a procedural "do-over" following Defendant Guo's sentencing.

### **Contextual Inaccuracies**

We also respectfully submit this response to the government's letter dated March 18, 2025, addressing several critical omissions and failure to provide context that significantly impact this matter (ECF 503).

First, the government's letter states it has "been contacted by counsel purporting to represent a group comprised of thousands of victims," yet inexplicably fails to disclose that this counsel is the undersigned, Bradford L. Geyer, who has consistently represented these victims through numerous filings on record in this Court. The government has consistently referred to HEX, cryptocurrency, victims, customers and asserted legal representation as "purported" implying doubt about their authenticity. They are all real.

Second, the government omits critical context from its arguments. Upon becoming aware of the government's preliminary forfeiture order, we promptly engaged with government representatives to propose an efficient, secure, and humanitarian approach for repatriating the seized funds. Our proposal leveraged independently verified source information securely housed within HEX's encrypted system, designed specifically to resist cyberattacks by hostile state actors. This proposed method would protect victim identities from potential exploitation or retaliation, substantially reduce resource expenditures, and expedite restitution to victims.

Alarmingly, the government misrepresented these good-faith discussions to the Court, suggesting incorrectly that customers sought to accelerate Defendant Guo's sentencing. In truth, our dialogue focused exclusively on the practical challenges of filing thousands of affidavits and the possibility of an aggregated filing within a tight timeframe and the legitimate concerns regarding the public exposure of victims' identities before protective measures could be established by the Court.

Undersigned Counsel emphasizes unequivocally that there was never any attempt or intent to influence the timing of Defendant Guo's sentencing for financial recovery. These discussions were driven solely by statutory filing deadlines and the imperative need to safeguard victims. The government's contradictory positions—first proceeding under Wang and subsequently pushing forward Guo's sentencing—are inherently inconsistent and further substantiate the merits of this motion. Despite these on-going negotiations and proffering a path forward (Attachment A, p.5-6), the government moved precipitously the very next day (ECF 493) to initiate remission proceedings—vetoing almost all the points that we were discussing.

Third, the government's actions have raised substantial concerns regarding its commitment to victims, prompting our formal request for escalation to Main Justice made more timely from a discerned a shift in policy regarding cryptocurrency exchanges.[2] The current administration's policy reportedly no longer classifies cryptocurrency transactions as inherently suspect, nor seeks the dismantlement of exchanges without clear evidence of illegality. We detailed these significant policy considerations in prior correspondence to the SDNY on March 13, 2025, urging reconsideration of the preliminary forfeiture and highlighting the potential for devastating harm to thousands of innocent victims who face unrealistic deadlines, language barriers, and threats to their personal safety and security. (Attachment B)

The government's insistence on initiating these proceedings prior to Miles Guo's sentencing, effectively constitutes an unlawful confiscation of victims' funds, depriving them of due process. By imposing unforgiving deadlines now instead of waiting until after sentencing, the government has denied victims all the procedural protections that would typically accompany properly timed forfeiture proceedings. This approach forces those few victims fortunate enough to have seen the government's notice—which was available for only a brief 30-day period—into an untenable position: either compromise their personal safety by publicly disclosing sensitive identifying information or abandon their rightful claims entirely.

The combined impact of an extremely brief claims submission period, significant language barriers, the inability of many HEX customers located in China to access the government's forfeiture notice, the abrupt and unannounced seizure of the HEX website (the primary means for victims to access their account information and for HEX customers to be contacted), and the stringent requirement for victims to substantiate specific financial losses "directly caused by the criminal offense" (ECF 493, p.2)—despite their belief that their losses were caused by U.S. government actions rather than by any defendant—means many victims will likely forego the process rather than submit false statements or endanger themselves and their families.

---

[2] https://www.cryptopolitan.com/president-trump-demands-that-congress-pass-stablecoin-bill/

Given these circumstances, it is reasonable to question whether the government, aware of the absence of a legitimate legal basis for these actions, is attempting to prematurely enforce the remission process in order to produce claims that might prejudice Miles Guo's sentencing while suppressing of claimants who successfully reclaim their funds. Forfeiture should not be used to bolster the case against Guo. The government is attempting to construct a situation where there are practical difficulties in noticing the defendants, having shut down the HEX website, and obtaining, collating and filing of the affidavits, due to the factors outlined herein leaving victims with the remission only method to which they don't agree. Indeed, we have documented multiple instances where clients have withdrawn from this process precisely because they do not view themselves as victims of the defendants. [3]

Undersigned counsel can't send up any more emergency flares than he already has: terrible consequences will ensue from this government action. Innocent people will walk away from their money because the US government is terrifying them, many will be targeted, many will feel coerced into making submissions that are not properly protected, many will live in fear that their families will be persecuted or worse.

Through this process, it has become clear that minimal credible evidence exists linking Miles Guo to HEX operations. Despite the government's prior acknowledgment in ECF Nos. 500 and 502 that forfeiture proceedings could not commence until after Mr. Guo's sentencing, the government prematurely initiated the forfeiture process affecting as many as 10,000 HEX customers. It appears they acted hastily, failing to provide proper notice to undersigned counsel—or indeed, to any relevant party—as evidenced by their filing of Defendant Wang's forfeiture consent on the docket. This unilateral action imposed restrictive deadlines through preliminary forfeiture notices, thereby pressuring customers into submitting remission certifications—many of which are likely inaccurate or unfounded—to bolster the government's

---

[3] The government's reference to undersigned counsel, along with its false implication that we seek to expedite Mr. Guo's sentencing in violation of his Sixth Amendment rights (Attachment C), has caused significant panic and confusion among HEX customers. Following the government's filing on March 18th, undersigned counsel received numerous termination emails. Attached is a sample of the correspondence we have received since the government filing (Attachment D).

sentencing position against Mr. Guo, despite the ongoing lack of substantive connection between Mr. Guo and HEX.

Moreover, Defendant Wang lacks legitimate authority or ownership rights over HEX assets. Her purported consent, therefore, does not and cannot legally justify the government's seizure of these funds. Simply put, an individual cannot lawfully authorize the seizure of property to which she holds no valid claim or ownership interest.

For the foregoing reasons, we respectfully request that the Court vacate the initial final forfeiture without prejudice and temporarily hold any coerced claims in abeyance until after Defendant Gou's sentencing. Additionally, if jurisdictional challenges or ancillary proceedings fail to invalidate the government's forfeiture or otherwise preserve HEX assets for judicially supervised distribution, we urge the Court to adopt the secure and efficient repatriation method currently under negotiation, which we will soon detail in forthcoming filings. This approach ensures full compliance with the government's obligations under the Crime Victims' Rights Act, provides timely restitution to victims with dramatic judicial and government economies, and prevents further irreparable harm.

For the Court's consideration we have submitted a draft order (Attachment E)

.

Very Kind Regards,

Bradford L.  Geyer
(856) 607-5708
NJ 022751991
Brad@FormerFedsGroup.Com
FormerFedsGroup.Com, LLC
141 "I" Rt. 130 South, 303
Cinnaminson, NJ 08077

EXHIBIT A

**RE: [EXTERNAL] Re: Submission of Sample File and Supporting Documents for HEX Claims Process**

**FR** Finkel, Ryan (USANYS) <Ryan.Finkel@usdoj.gov>

Sun, 09 Mar 2025 8:37:43 PM -0400 •

To   "Brad Geyer" <brad@formerfedsgroup.com>

Cc   "Murray, Juliana 1 (USANYS)" <Juliana.Murray@usdoj.gov>, "Fergenson, Micah (USANYS)" <Micah.Fergenson@usdoj.gov>, "Horton, Justin (USANYS)" <Justin.Horton@usdoj.gov>

Brad – The Government is going to hire a claims administrator to assist in the management of the remission process. We believe this will be the most efficient way to return money to victims of the defendants' fraud.  After checking with MLARS, we can't yet agree to any of your requests until the claims administrator is put in place.  That said, we hope to work with you at that time and agree that there we can derive efficiencies through collaborative efforts.

Happy to further discuss.

Ryan

---

**From:** Brad Geyer <brad@formerfedsgroup.com>
**Sent:** Saturday, March 8, 2025 4:40 PM
**To:** Finkel, Ryan (USANYS) <RFinkel@usa.doj.gov>
**Cc:** Murray, Juliana (USANYS) 1 <JMurray1@usa.doj.gov>; Fergenson, Micah (USANYS) <MFergenson@usa.doj.gov>; Horton, Justin (USANYS) <JHorton@usa.doj.gov>
**Subject:** RE: [EXTERNAL] Re: Submission of Sample File and Supporting Documents for HEX Claims Process

Hey all,

Sorry for the delay.  Lots of client relations stuff.  I also worked very hard to frame this so as to not garner your objection.  If I filed something like this that would permit me to begin the arduous process of pulling things together, would it draw an objection and, if so, on what part? I think I made it flexible for all eventualities.

Very Kind Regards, Brad

**Bradford L. Geyer** FormerFedsGroup.Com

Mobile: (856) 607-5708
Email: Brad@FormerFedsGroup.com

USA:
141 I Route 130 South, Suite 303
Cinnaminson, NJ 08077 **888-486-FEDS**

*"Surround Yourself With FormerFeds Who Share Your Mission (TM)"*

IMPORTANT: FormerFeds LLC (FormerFedsGroup.Com) now provides law firm services under the supervision of Bradford L. Geyer who is a member of the Pennsylvania and New Jersey Bars. The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

---- On Wed, 05 Mar 2025 15:43:23 -0500 **Finkel, Ryan (USANYS) <Ryan.Finkel@usdoj.gov>** wrote ---

Brad –the Government is very likely to hire a claims administrator to manage the remission process. The questions about <mark>data sensitivity, and using HEX data will need to be addressed once that administrator is hired</mark>. I can say that we believe all victims should be protected and will work toward ensuring that is the case -- including by keeping their identities appropriately protected.

Thanks,

Ryan

---

**From:** Brad Geyer <brad@formerfedsgroup.com>
**Sent:** Friday, February 28, 2025 9:27 AM
**To:** Finkel, Ryan (USANYS) <RFinkel@usa.doj.gov>
**Cc:** Murray, Juliana (USANYS) 1 <JMurray1@usa.doj.gov>; Fergenson, Micah (USANYS) <MFergenson@usa.doj.gov>; Horton, Justin (USANYS) <JHorton@usa.doj.gov>
**Subject:** RE: [EXTERNAL] Re: Submission of Sample File and Supporting Documents for HEX Claims Process

Team Government:

I know there are a bunch of distractions right now that makes this all even harder, but I wanted to give you a quick update. I <mark>am still working through challenges on my side that sort of moots the last draft and I am developing a new draft/process that incorporates tracks available to the Court.</mark>

Do you have any insight about the substance of Monday's hearing? Is it in person or does she do virtual?

<mark>I will pull together a new draft that covers the most likely remission scenario by the weekend</mark> (I hope). Any proposed change requires me to brief and educate my clients and it is a taxing process.

VKR/ Brad

**Bradford L. Geyer**FormerFedsGroup.Com

Mobile: (856) 607-5708
Email: Brad@FormerFedsGroup.com

USA:
141 I Route 130 South, Suite 303
Cinnaminson, NJ 08077 **888-486-FEDS**

*"Surround Yourself With FormerFeds Who Share Your Mission (TM)"*

---

IMPORTANT: FormerFeds LLC (FormerFedsGroup.Com) now provides law firm services under the supervision of Bradford L. Geyer who is a member of the Pennsylvania and New Jersey Bars. The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

---- On Tue, 25 Feb 2025 14:07:24 -0500 **Brad Geyer <brad@formerfedsgroup.com>** wrote ---

Hey Team Government:

OK, it took me longer than I had hoped. Not easy getting these folks to trust any process.

Let me know what I need to cut or alter, so that I can file this without triggering an objection. I can scale it down as necessary. The only key deliverable I really need is a consolidated filing. To comport with timelines and get this distilled down to ~5 day clearance process for you, I need to get started ASAP. Some of my clients express deep seated concerns with engaging in the process primarily because they are terrified of an inadvertent disclosure or hacking that will result in retaliation of family members in China. Most of my ethnically Chinese clients share this concern. For these and other reasons, I think this is clearly a way forward that is in the interests of justice

Please let me know what the government position is.

Very Kind Regards,
Brad

**Bradford L. Geyer**FormerFedsGroup.Com



Mobile: (856) 607-5708
Email: Brad@FormerFedsGroup.com

USA:
141 I Route 130 South, Suite 303
Cinnaminson, NJ 08077 **888-486-FEDS**

*"Surround Yourself With FormerFeds Who Share Your Mission (TM)"*

IMPORTANT: FormerFeds LLC (FormerFedsGroup.Com) now provides law firm services under the supervision of Bradford L. Geyer who is a member of the Pennsylvania and New Jersey Bars. The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

---- On Mon, 24 Feb 2025 13:37:26 -0500 **Brad Geyer <brad@formerfedsgroup.com>** wrote ---

To give an idea of the scope of the challenge. <mark>In today's call, we were discussing the terrible situation that low information customers are in (combined with poor language skills) who are really hard to reach.  Some are in jurisdictions where they can't receive emails from certain domains or access certain websites. Some are family members who opened accounts and then minimized their footprint, not from US authorities of course, but from CCP.  That's a significant project for these people to be reached, many by word of mouth.  If I have the consolidated filing course forward approved it makes everything else possible.</mark>

## Bradford L. Geyer FormerFedsGroup.Com



Mobile: (856) 607-5708
Email: Brad@FormerFedsGroup.com

USA:
141 I Route 130 South, Suite 303
Cinnaminson, NJ 08077 **888-486-FEDS**

*"Surround Yourself With FormerFeds Who Share Your Mission (TM)"*

VKR/Brad

IMPORTANT: FormerFeds LLC (FormerFedsGroup.Com) now provides law firm services under the supervision of Bradford L. Geyer who is a member of the Pennsylvania and New Jersey Bars. The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

---

---- On Mon, 24 Feb 2025 13:28:59 -0500 **Brad Geyer <brad@formerfedsgroup.com>** wrote ---

The challenge is the timelines.  I have to start this week. <mark>Can we ask for expediting the request or elevating the request?</mark> I think anyone reviewing it would have to agree its sensible.  I can't imagine the court would object.  I understand the disagreement on the other issues, but if I just get this one piece approved, I can get these people on track to align them with your timelines.
VKR/Brad

## Bradford L. Geyer FormerFedsGroup.Com

Mobile: (856) 607-5708
Email: Brad@FormerFedsGroup.com

USA:
141 I Route 130 South, Suite 303
Cinnaminson, NJ 08077 **888-486-FEDS**

*"Surround Yourself With FormerFeds Who Share Your Mission (TM)"*

IMPORTANT: FormerFeds LLC (FormerFedsGroup.Com) now provides law firm services under the supervision of Bradford L. Geyer who is a member of the Pennsylvania and New Jersey Bars.

The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

---

---- On Mon, 24 Feb 2025 13:16:34 -0500 **Finkel, Ryan (USANYS) <Ryan.Finkel@usdoj.gov>** wrote ---

Brad – thanks for the email.  We will review what you sent.  As mentioned, because there is not a procedure in place yet for requesting restitution/remission, and because we are awaiting feedback from other DOJ components concerning your request(s), we can't yet take a position on the consolidating filing at this time.  As we discussed on Friday, we should have more information on that soon.  You may wish to wait to file a motion until you hear from us.

Thank you.

**From:** Brad Geyer <brad@formerfedsgroup.com>
**Sent:** Monday, February 24, 2025 9:08 AM
**To:** Finkel, Ryan (USANYS) <RFinkel@usa.doj.gov>
**Cc:** Murray, Juliana (USANYS) 1 <JMurray1@usa.doj.gov>; Fergenson, Micah (USANYS) <MFergenson@usa.doj.gov>; Horton, Justin (USANYS) <JHorton@usa.doj.gov>
**Subject:** [EXTERNAL] Re: Submission of Sample File and Supporting Documents for HEX Claims Process

Dear Team Government,

Following our recent discussions and your request to review a sample file, I am pleased to provide the enclosed documents in the filed attachment. These materials are intended to demonstrate the structure, reliability, and comprehensiveness of the data we plan to unlock for the government's clearance process to be arranged with HEX.  We documented this in prior filings (that I can't believe anyone had time to review carefully).

Below is a summary of the contents of the linked attached document:

1. **Exhibit 207-1:** Contains client identity verification records, detailing the customer's full name, date of birth, address, and government-issued identification. This establishes the direct relationship between the customer and the account in question.

2. **Exhibit 207-2:** Provides a comprehensive account history, highlighting all transactions related to the client's Himalaya account, including deposits, withdrawals, and transfers.

3. **Exhibit 207-3:** Offers detailed records of funds moving between the customer's personal bank account and the Himalaya account, demonstrating transaction consistency and legitimacy.

4. **Exhibit 208-2 through Exhibit 208-7:** These exhibits collectively cover audit reports, expert accounting summaries, and compliance assessments. Of particular importance are the identity verification documents and detailed transaction logs that

validate the customer's claims and will substantiate the flow of funds for every one of my clients (2008 pp 1-10 and 208-4 pp 1-44).

**Filing Plan and Timeline**

As I mentioned during our phone calls, my objective is to file a motion tomorrow, that hopefully the government will not object to, that authorizes me to make a consolidated filing for somewhere between 5, 000 and 8,000 clients. Refining and deconflicting my client list will require additional time—approximately 2 to 4 weeks— in the consolidated filing setting where I make the filing on their behalfs.  Just for this simplified process, we need to review between 12,000 and 15,000 emails to ensure accuracy and eliminate duplications.

**Key Points to Consider:**

1. **Efficiency for the Court and Government:**
   A consolidated claims filing by me, on behalf of account holders, will satisfy the court's requirements while reducing your workload and that of the court by an estimated 90%. I can present the information in a more meaningful and comprehensive manner than thousands of independent submissions. As you can see, this includes multiple point, robust customer identification protocols that includes facial matching.

2. **Compliance & Reliability:**
   The matching of compliance files via the HID number offers greater reliability than what clients could ever provide themselves.  The HEX information is the definitive original source/account information and the compliance data provided by the exchange in recording and storage procedures that are robust, trustworthy and protected y military grade encryption, that provides a perfect record of all that occurred.

3. **HEX Data Review:**
   I believe reviewing the sample file will remind you of the reliability of this information. I am confident that with the provided documentation and auditor-backed data, you will find the claims process to be most accurate and reliable and efficient to get the government what it needs to authenticate claims.

Later in the process, I look forward to working collaboratively to develop a process that addresses your concerns while serving the best interests of all parties involved.

I will try to get a simple, short motion that nails down key points while highlighting for the court that important aspects of the way forward still needs to be worked out by the parties. This will allow me to begin the deconfliction process so we can stay on the Court's timelines.

Sincerely,
Brad Geyer

EXHIBIT B



Ryan B. Finkel
Justin Horton
Juliana Newcomb Murray
Micah Festa Fergenson
US Department of Justice
Crim Division, SDNY
1 St. Andrew's Plaza
New York, NY 10007                                                    March 13, 2025

Messrs. Finkel, Horton, Murray and Fergenson,

In accordance with required consultations and legal rights, I seek clarification on the following matters. This correspondence may be used as part of the record in subsequent pleadings. Additionally, because of dire urgency, I formally request that this matter be escalated to the Office of the Deputy Attorney General and/or the Office of the Attorney General.

On January 7, 2025, in ECF 489, the Court entered a judgment of criminal conviction solely against Ms. Wang. From our review, there appears to be no judgment against Kwok or Je. Additionally, no sentence has been entered against Kwok, meaning that no statutory clock has begun regarding the return of my clients' funds.

Please confirm whether the government shares this interpretation of the case status.

It is also important to note that Ms. Wang repeatedly disclaimed any interest in the funds belonging to 80 different organizations, including those beyond HEX. Based on available information, Wang never had any ownership interest in HEX. While it is possible she received exaggerated promises from third parties, this does not constitute a legal claim to the assets. The fact that she relinquished rights in ECF 488 is irrelevant if she had no ownership rights to HEX in the first place.

Moreover, Wang's forfeiture was made with consent. However, my clients never consented to forfeiture, nor did HEX. Given that other parties, including my clients and potentially additional stakeholders, have a vested interest, it would have been appropriate for you to confer with me or provide notice regarding your preliminary forfeiture order.

Consequently, as far as we can determine, there has been no valid forfeiture by Wang, as there was nothing for her to forfeit. We were never notified of your intention to include HEX in the preliminary forfeiture order and only learned of it after it was posted when a client brought it to my attention. There has been no legally valid forfeiture with respect to the Himalaya Exchange.

Regarding evidentiary matters, we maintain that the only legally competent and relevant witness in this case was the defense expert, Maggie Sklar, who testified on July 2, 2024. Sklar was the only expert qualified in this case. Some prosecution witnesses, despite objections, provided purported expert opinions without being properly qualified. While Sklar and Paul Hinton discussed the complexities of the cryptocurrency sector, their testimony did not establish wrongdoing. Innovation, a hallmark of American enterprise, should not be conflated with illegality.

Additionally, the assertion that cryptocurrency exchange characteristics are inherently fraudulent is unsustainable. Novelty and unfamiliarity do not equate to criminality. Given recent shifts in policy during the Presidential transition, it appears that cryptocurrency regulations are undergoing significant transformation, which may directly impact this case.

Despite this, without notice to me or my clients, a preliminary forfeiture order was issued and posted. Given the circumstances, this order may be invalid and may not have provided effective notice. I formally request that the forfeiture order be withdrawn until these legal issues are resolved. As a practical matter, the remission process cannot even commence until Guo has been sentenced.

Furthermore, there are as many as 10,000 members of the exchange facing significant language and communication barriers. Some reside in jurisdictions such as China, where accessing the official notice is impossible. Additionally, security concerns force these individuals to reveal their identities before a process has been established to address their safety concerns. We explained this in multiple filings (ECF 186, 198, 207-209, 211, 212, 229 and 250) and I have made numerous attempts to work out a plan since learning of your filing. You must know that not addressing these issues until after the mandatory claims submission date is tantamount to confiscation.

Despite my efforts to collaborate with the government to develop a procedure that prevents a humanitarian crisis—where investors must choose between claiming their funds or jeopardizing their personal safety—it is evident that the government remains committed to proceeding within the statutory timeframe without adjustments. Along with extensive filings is an audited, well understood compliance system that provides the government with a way forward to access audited compliance files tracking all aspects of the entire financial and KYC record of each HEX customer detailing all bank transactions and account activity. (https://acrobat.adobe.com/id/urn:aaid:sc:us:9a748198-aa58-4e60-87db-f0af71a8f825).

Compounding this issue, the government's shutdown of HEX, under a policy that may no longer be in effect, has made it impossible for claimants to access or download the necessary information to support their ancillary or remission claims.

In summary, the process being enforced by SDNY effectively results in the confiscation of funds and the dismantling of the exchange. It imposes unrealistic deadlines, requires customers to put themselves and their families at risk, and demands submission of information that is no longer accessible due to government shutdown of HEX. This is also the platform that HEX would use to notify the victims.  This outcome is troubling under any circumstances, but it is particularly egregious when evolving policy appears to no longer classify cryptocurrency transactions as inherently suspect and criminal and policy goals seem to have shifted away from the ends of shutting down of crypto exchanges justifies the means. This may no longer be government policy. For these reasons, I request that this matter be elevated as requested to determine whether the filing of the preliminary forfeiture prior to the sentencing of Miles Kwok might be reconsidered.

Very Kind Regards,

Bradford L.  Geyer
(856) 607-5708
Brad@FormerFedsGroup.Com
FormerFedsGroup.Com, LLC
141 "I" Rt. 130 South, 303
Cinnaminson, NJ 08077

EXHIBIT C



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 18, 2025

**BY ECF**

Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY

Re:   *United States v. Miles Guo*, S3 23 Cr. 188 (AT)

Dear Judge Torres:

On December 20, 2024, the Court adjourned sentencing in this matter *sine die*, following the defense's filing of an *ex parte* letter and an *ex parte* conference that day relating to the defense's pending request for substitution of counsel. The parties have since submitted multiple letters to the Court by email, and following the Court's March 3, 2025, proceeding, the Government has filed its letters publicly on the docket. (Dkts. 500-502.)

The Government respectfully writes to request that the Court: (i) authorize defense counsel to publicly file their *ex parte* materials regarding the defendant's motion for substitution of counsel as specified below; (ii) unseal the *ex parte* transcripts from the December 20, 2024 and March 3, 2025 conferences, to the extent appropriate; and (iii) if necessary, appoint new counsel to the defendant so that a sentencing date can be promptly scheduled. The defendant was convicted in July 2024 following an eight-week jury trial. Promptly proceeding to sentencing is necessary to serve the interests of justice and specifically to vindicate the rights of victims.

1.   The Court Should Order Defense Counsel to Make Certain Filings Public

On March 3, 2025, the Court directed the parties to advise as to whether *ex parte* and sealed materials relating to the defendant's substitution of counsel motion may be publicly filed. On March 10, 2025, defense counsel filed a letter stating that the defendant has no objection to the public filing of his "(i) CJA financial affidavit; (ii) two documents filed by Mr. Kwok in connection with his bankruptcy which describe the debt he owes others; (iii) letters from defense counsel dated December 10, 2024 and January 28, 2025." (Dkt. 499.) Based on discussions between the parties, the Government understands that defense counsel is awaiting Court authorization to publicly file these documents. Accordingly, the Government, without defense objection, requests that the Court order the defense to publicly file those *ex parte* and sealed materials relating to the defendant's substitution of counsel motions, which were identified in the defendant's March 10, 2025 letter.

2.  Non-Privileged Sections of the December 20, 2024, and March 3, 2025 Transcripts Should be Made Public

Following the defense's December 10, 2024 letter to the Court, the Court held two conferences on December 20, 2024 and March 3, 2025—portions of which were *ex parte* and remain sealed.  Only the portions of those *ex parte* conferences that are subject to a valid privilege should remain sealed.

In the context of substitution of counsel proceedings, the right to public access predominates, and generally, "[a]ll motions to withdraw should be served upon the client and (unless excused by the court) upon all other parties."  S.D.N.Y. Local Civ. R. 1.4(b) (applicable in criminal cases pursuant to S.D.N.Y. Local Crim. R. 1.1(b)).  A court may "permit[] the reasons for withdrawal to be stated in camera and under seal," but only in "an appropriate case."  *Id.*  Pre-2024 Cmte. Note. Public access "ensure[s] that 'the public may see [a defendant] is fairly dealt with and not unjustly' denied an important substantive right.  *United States v. Avenatti*, 550 F. Supp. 3d 36, 47 (S.D.N.Y. 2021) (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984))).  To be sure, the Second Circuit has recognized various privileges as reason to restrict access to otherwise public materials. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).  Thus, any statements in the sealed transcripts reflecting attorney-client communications or work product may remain sealed absent a showing otherwise.  However, those protections apply to only a narrow set of information.  "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). Attorney work-product protects only "materials *containing* mental impressions, conclusions, opinions, or legal theories of an attorney or other representative that were prepared in anticipation of litigation." *United States v. Petit*, 438 F. Supp. 3d 212, 214 (S.D.N.Y. 2020) (quotation omitted). Accordingly, the Court should review the sealed transcripts and limit any continued sealing solely to those portions that may be "necessary to preserve the confidentiality of the attorney-client relationship."  *Team Obsolete Ltd. V. A.H.R.M.A. Ltd*, 464 F.Supp.2d 164, 165 (E.D.N.Y. 2006); *see also Ceglia v. Zuckerberg*, No. 10 Cv. 569 (RJA) (LGF), 2013 WL 12234139, at *4-5 (W.D.N.Y. Mar. 20, 2013) (recognizing that "disclosure [of withdrawal motion] would be useful to [the opposing party] primarily to oppose withdrawal," but finding that disclosure request "to be moot" after ruling the "motion should be denied").

Although the Government was not party to the *ex parte* portions of the December 20, 2024 and March 3, 2025 conferences, scrutiny is appropriate to determine what information from those conferences should remain shielded from the Government and the public.  The Government is not, at this time, asserting that any privileged attorney-client communications or attorney work-product information that the Court required to be shared during the *ex parte* portions of those proceedings should be subject to public view.  However, given that the defendant has made known to third parties (including the Government) his desire to substitute his attorneys due to "conflict . . . . lack of trust in his current counsel based on issues at trial and the resulting breakdown of communication between counsel and Mr. Guo,"[1] it is plausible that much of what was discussed during the *ex parte* portions of those conferences is not confidential, and thus not privileged.  *See*

---

[1] Jan. 28, 2025 Ltr. from S. Kamaraju to the Court, copying Government counsel.

*Mejia*, 655 F.3d at 134 (absence of confidentiality defeats claim of privilege).  Accordingly, the defendant's statements regarding displeasure (if any) with his current counsel at the conferences are not subject to protection.  Nor would the defendant's statements to the Court regarding his impressions of counsel's conduct (if any), as such an opinion is not an attorney-client communication.  At this time, all that may be withheld are a recounting, at the Court's direction, of confidential statements between the defendant and his counsel "for the purpose of obtaining or providing legal advice."  *Mejia*, 655 F.3d at 132.  Similarly, the Government does not presently dispute that counsel's statements in response to Court questions during the *ex parte* portions of those conferences about attorney work-product are protected.  But particularly because trial has concluded, and the defense has already provided the Government with its objections to the PSR, counsel's strategies and mental impressions related to sentencing (to the extent they were discussed during the *ex parte* portions of the conferences) may have been disclosed already and thus would not be subject to protection.

Accordingly, the Government requests that the defense provide the Court with proposed redactions to the *ex parte* transcripts by March 24, 2025, and that the unredacted portions be made available on that date, with the redacted portions subject to the Court's review.  The defense does not consent to this request.

3.  This Matter Should Proceed to Sentencing as Soon as Practicable

As set forth in its prior letters, the Government maintains that the defendant's December 10, 2024 motion for substitution of counsel should be denied.  (*See* Dkts. 500-502.)[2]

Nonetheless, under the Crime Victims' Rights Act, 18 U.S.C. § 3771(a), the victims in this case have a statutory right to restitution and to "proceedings free from unreasonable delay." 18 U.S.C. § 3771(a).  As it did with respect to Yanping Wang, the Government intends to seek an order authorizing the United States to compensate the thousands of the defendant's victims with finally forfeited assets through a remission process, as restitution would be impracticable in this case.  *See* 18 U.S.C. § 3663A(c)(3); Dkt. 495.  However, any remission process cannot commence until a final order of forfeiture is entered as to the defendant, which cannot happen until sentencing

---

[2] The Court has discretion to deny the motion unless it finds the conflict "so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001).  That condition is not satisfied.  The Government previously noted that one of the lawyers seeking to withdraw met with the defendant on December 25, 2024—that is, after the filing and hearing on the *ex parte* substitution motion.  *See* Dkt. 500 at 4.  More recently, at the parties' last conference with the Court, three of the lawyers seeking to withdraw met privately with the defendant in the Marshals Service's holding area next to the courtroom. The defendant's *ex parte* statements may have asserted "certain disagreements" with counsel, or even an "intense rift"—but neither condition is tantamount to the "total lack of communication" that is required to deprive the Court of discretion to deny a dilatory motion to substitute counsel after several sentencing adjournments and more than eight months after the jury's verdict. *John Doe No. 1*, 272 F.3d at 124; *United States v. Muhammad*, No. 12 Cr. 337 (ADS) (GRB), 2012 WL 6021458, at *3 (E.D.N.Y. Nov. 19, 2012).

is completed.[3]  The Government has already received dozens of inquiries from victims seeking just compensation, and the Government also has been contacted by counsel purporting to represent a group comprised of thousands of victims.  As the Court knows, many victims lost hundreds of thousands of dollars (or more).  Others lost their retirement funds or substantial amounts of their life savings.  Victims are waiting for closure, accountability, and commencement of the remission process, without visibility into when the defendant will be sentenced.  The Government would like to return the hundreds of millions of dollars it seeks to forfeit to *victims* as soon as reasonably possible and attempt to repair the damage that Guo and his co-conspirators caused.  The Government cannot do so until the defendant is sentenced.  The interests of the victims in this case weigh heavily in favor of scheduling a date certain for the defendant's sentencing.

The need for swift resolution of this matter is therefore acute.  The Government appreciates that the Court is weighing the merits of the defendant's motion to substitute counsel.  The Government respectfully requests that, to the extent the Court intends to grant (or deny) the defendant's substitution request, it do so promptly, and set a sentencing date in short order.  The only remaining work for the defendant's counsel (current or substitute) is to prepare a sentencing submission in consultation with their client, and advocate for their client during a sentencing hearing.  These last remaining activities should happen as soon as possible given the right of victims, and the public, to a timely resolution of this case.  To the extent that the Court grants the defendant's motion, the Government believes that the Federal Defenders—who represented the defendant at his presentment and initial arraignment, and are not conflicted from this matter—could be promptly appointed as substitute counsel with the defendant's current counsel appointed under the Criminal Justice Act as a supplement to new counsel.  *See Morris v. Slappy*, 461 U.S. 1, 13 (1983) (declaring  the decision to grant or deny a motion to change counsel "is within the discretion of the trial court").

The Government is available to address any questions the Court may have.


Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

by:  ___/s/_____
     Micah F. Fergenson
     Ryan B. Finkel
     Justin Horton
     Juliana N. Murray
     Assistant United States Attorneys
     (212) 637-2190 / 6612 / 2276 / 2314

cc:    Counsel of Record (by ECF)

---

[3] The defendant has not offered to consent to a final order of forfeiture.

EXHIBIT D

**STOP Client claims**



Mon, 12 Aug 2024 7:53:32 AM -0400

To    ▮

I did not suffer a loss on the Hi-Tech Exchange, I withdraw my claim for funds, and I am not a victim of Miles Guo, I am a victim of the U.S. Department of Justice, and I was harmed because of the injustice of the Department of Justice. I cease and desist from authorizing counsel to pursue my claim.

**Rescission contract**



Thu, 13 Mar 2025 5:25:55 AM -0400 ·

To



Rescission contract

Hello,

I am very sorry that I did not read the terms carefully when I read this letter again. I feel like <mark>I'm not a victim</mark>, and I want to be released from our relationship.

**I'm asking again to revoke the HID authorization**



Thu, 13 Mar 2025 10:04:06 AM -0400

To ████████████████████████████████

---

MY (HID): ██████

I was misled by Zhang Xinfang's propaganda, I am not a victim, and again I ask that the motion to intervene be withdrawn, I am not a victim of Mr. Kwok's, please understand the withdrawal of my name.

## About Canceling the right of representing for Himalaya Exchange Issues



Thu, 13 Mar 2025 1:31:58 PM -0400

To

Dear Bardford,

My HID: ███████, I'm writing to you to double confirm that I'm not on the list of victims of Yvette Wang or Miles Guo.

If I supplied any requirement that is ONLY for lawsuit withen SEC!

But the situation is changing now, so please delete any request under my HID if there's any existing and stop representing any right of me right now.

Thank you for your feedback.

Wed, 19 Mar 2025 1:51:48 PM -0400 ·

To

Dear Sir ,

I am writing to address certain facts that have been evidently and deliberately misrepresented and to submit an urgent request for your attention. In the court documents pertaining to Miles Guo, it is suggested that I, along with thousands of others, have been victims of Mr. Guo. However, this assertion does not align with the truth.

In reality, each of us voluntarily provided our HID and appointed you as our co-agent with the express purpose of petitioning the court and the Securities and Exchange Commission (SEC) to release the frozen HEX funds and our investments therein. We are victims of the SEC's actions, not of Miles Guo. Accordingly, I respectfully request the immediate revocation of my HID, identified as _____ as I believe it is being misused in this context.

Please be advised that I reserve the right to pursue legal action should this matter remain unresolved. I trust you will address this request with the seriousness it warrants.

Thank you for your attention to this matter. I look forward to your prompt response.

Yours sincerely

## STOP Client claims

 ███████████████████
　　　Mon, 12 Aug 2024 7:53:32 AM -0400

To ████████████████████████████████████

I did not suffer a loss on the Hi-Tech Exchange, I withdraw my claim for funds, and I am not a victim of Miles Guo, I am a victim of the U.S. Department of Justice, and I was harmed because of the injustice of the Department of Justice. I cease and desist from authorizing counsel to pursue my claim.

████████████████

**Rescission contract**



**gu**    ████ @gmail.com
Thu, 13 Mar 2025 5:25:55 AM –0400

To    ████ , ████ @ ██████ , ████ @ ██████



████
████ @ ████ ████
Rescission contract

Hello, **Bradford Geyer**

I am very sorry that I did not read the terms carefully
when I read this letter again. I feel like <mark>I'm not a victim,</mark>
and I want to be released from our relationship.

Client:    



**I'm asking again to revoke the HID authorization**

**23**    ████████ @████ ,
Thu, 13 Mar 2025 10:04:06 AM -0400

To    ████████████████████████ >

MY (HID):
I was misled by ████████████ propaganda, <mark>I am not a victim</mark>, and again I ask that the motion to intervene be withdrawn, I am not a victim of Mr. Kwok's, please understand the withdrawal of my name.

## About Canceling the right of representing for Himalaya Exchange Issues



Dear Bardford,

My ███████████, I'm writing to you to double confirm that <mark>I'm not on the list of victims</mark> of Yvette Wang or Miles Guo.

If I supplied any requirement that is ONLY for lawsuit withen SEC!

But the situation is changing now, so please delete any request under my HID if there's any existing and stop representing any right of me right now.

Thank you for your feedback.



▇▇▇▇▇▇@gmail.com

Wed, 19 Mar 2025 1:51:48 PM -0400  ·

To   ▇▇▇▇▇▇▇▇▇▇▇▇

Dear Sir ,

I am writing to address certain facts that have been evidently and deliberately misrepresented and to submit an urgent request for your attention. In the court documents pertaining to Miles Guo, it is suggested that I, along with thousands of others, have been victims of Mr. Guo. However, this assertion does not align with the truth.

In reality, each of us voluntarily provided our HID and appointed you as our co-agent with the express purpose of petitioning the court and the Securities and Exchange Commission (SEC) to release the frozen HEX funds and our investments therein. We are victims of the SEC's actions, not of Miles Guo. Accordingly, I respectfully request the immediate revocation of my HID, identified as ▇▇▇▇▇▇, as I believe it is being misused in this context.

Please be advised that I reserve the right to pursue legal action should this matter remain unresolved. I trust you will address this request with the seriousness it warrants.

Thank you for your attention to this matter. I look forward to your prompt response.

Yours sincerely

**About revoke my HID authorization**



**fe**

Thu, 20 Mar 2025 3:13:49 AM -0400

To

Dear Mr Geyer:

    Recently, I saw thousands of victims in the documents related to Miles Guo and Yvette Wang. I am not sure whether Himalaya users are included here.

<mark>I am not a victim of Miles Guo and Yvette Wang</mark>, and the original HID authorization was for claims against the US government. In order to avoid unnecessary trouble, I apply to revoke my HID authorization, my Himalaya ID (HID): ▮▮▮▮▮

If you cannot handle this matter as soon as possible, I reserve the right to take legal action.

Thank you for your understanding of this matter.

Best wishes!

      A investor

**Urgent notice regarding the misuse of personal HID.**

**we** 

Thu, 20 Mar 2025 7:38:49 AM -0400 ●

To ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dear Attorney:

Dear Sir ,

I am writing to address certain facts that have been evidently and deliberately misrepresented and to submit an urgent request for your attention. In the court documents pertaining to Miles Guo, it is suggested that I, along with thousands of others, have been victims of Mr. Guo. However, this assertion does not align with the truth.

In reality, each of us voluntarily provided our HID and appointed you as our co-agent with the express purpose of petitioning the court and the Securities and Exchange Commission (SEC) to release the frozen HEX funds and our investments therein. We are victims of the SEC's actions, not of Miles Guo. Accordingly, I respectfully request the immediate revocation of my HID, identified as as I believe it is being misused in this context.

Please be advised that I reserve the right to pursue legal action should this matter remain unresolved. I trust you will address this request with the seriousness it warrants.

Thank you for your attention to this matter. I look forward

to your prompt response.

reasons stated in the attachment to this email (please open the email attachment), I have discovered from the court documents of the Miles Guo case that my client HID in the Himalaya Exchange may have been <mark>mistakenly used for the purpose of identifying victims</mark>, rather than for the purpose of pursuing compensation as required by the SEC. Therefore, I formally request to terminate my status as a client represented by you. Please remove my HID:

from your client representation list. Thank you!

Sincerely

Sent from Proton Mail for iOS

**Request the revocation**



**xu**

Thu, 20 Mar 2025 8:47:29 AM -0400 ·

To "

Reading 2 / 3

Dear Sir,

I am a client of Himalaya Exchange. My Himalaya ID (HID) is ▮▮▮▮▮▮

<mark>I have never been a victim of Miles Guo and Yangping Wang.</mark>

I originally entrusted you to unlock the funds of Himalaya Exchange seized by the SEC. It was not to make Himalaya Exchange return any of my funds. Now, I formally withdraw my entrustment to you. Please remove me from your client list.

If my above entrustment has been submitted to the court, please withdraw it as well.

Hope to get your prompt reply. Thank you.

**Re: Guo Wengui's (Miles Guo)case 1:23-cr-00118-AT**



**mo**

Thu, 20 Mar 2025 9:00:47 AM -0400

To █████████████████████████████████

Dear ██████

Today is my third time sending you an email.

I, Yung Chin (Himalaya HID number: ██████ ) hereby formally declare that:

1. <mark>I am not a victim in the case of Guo Wengui.</mark>

2. I will not participate in any legal actions related to this case, including but not limited to lawsuits, claims, or any other legal proceedings.

3. The representation agreement between myself and Bradford Geyer is hereby formally terminated as of March 9 2025 and any legal authorization related to this case is no longer valid.

This statement is a true and accurate representation of my intent.

Thank you for your attention.



「██████████████████████ >」在 2025年3月13日 週四，10:50 寫道：

**Terminate the agency relationship and revoke the HID:LR605BD request**



**le**

Thu, 20 Mar 2025 9:35:00 AM -0400

To

---

Dear Sir,

I am writing to address certain facts that have been evidently and deliberately misrepresented and to submit an urgent request for your attention. In the court documents pertaining to MILES GUO, it is suggested that I, along with thousands of others, have been victims of Mr. Guo. However, this assertion does not align with the truth.

In reality, each of us voluntarily provided our HID and appointed you as our co-agent with the express purpose of petitioning the US Department of Justice (DoJ) and the US Securities and Exchange Commission (SEC) to release the frozen Himalaya Exchange funds and our investments therein. <mark>We are victims of the SEC's actions, not of Miles Guo.</mark> Accordingly, I respectfully request the immediate revocation of my HID, identified as ███████ as I believe it is being misused in this context.

Please be advised that I reserve the right to pursue legal action should this matter remain unresolved. I trust you will address this request with the seriousness it warrants.

Thank you for your attention to this matter. I look forward to your prompt response.

Sent from [Proton Mail](#) for iOS

**Urgent: Request for Immediate Revocation of My HID**



**zc**

Thu, 20 Mar 2025 10:36:58 AM -0400 ·

To

Dear Sir,

I am writing to address certain facts that have been evidently and deliberately misrepresented and to submit an urgent request for your attention. In the court documents pertaining to Miles Guo, it is suggested that I, along with thousands of others, have been victims of Mr. Guo. However, this assertion does not align with the truth.

In reality, each of us voluntarily provided our HID and appointed you as our co-agent with the express purpose of petitioning the court and the Securities and Exchange Commission (SEC) to release the frozen HEX funds and our investments therein. We are victims of the SEC's actions, not of Miles Guo. Accordingly, I respectfully request the immediate revocation of my HID, identified as _____ as I believe it is being misused in this context.

Please be advised that I reserve the right to pursue legal action should this matter remain unresolved. I trust you will address this request with the seriousness it warrants.

Thank you for your attention to this matter. I look forward to your prompt response.



Thu, 20 Mar 2025 10:40:04 AM **-0400** ·

To ᵗ

尊敬的Brad Geyer先生，您好，
我的喜交所ID是████████████，现申请撤回2023年发出的授权。因为当初的授权是为了证明我是喜交所的真实客户，我不是郭先生案件的受害者，而现在得知该授权将被用于其他用途，所以现在向您提出紧急撤回该授权。
谢谢
祝您　切顺利

**Subject: Request for Immediate Revocation of My HID**

**sk** 

Thu, 20 Mar 2025 11:12:39 AM -0400 ·

To ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dear Brad,

I am writing to formally request the immediate revocation of my HID, as I believe it is being misused in this context. My HID is ▮▮▮▮▮▮.

I was severely misled when agreeing to be part of this agency. I was under the impression that the sole purpose of this representation was to recover assets related to Himalaya Exchange and the frozen funds, not to be categorized as a "victim" of Miles Guo. This misrepresentation has led to a situation where legal action is being weaponized in a way that does not reflect my actual position.

In reality, each of us voluntarily provided our HID and appointed you as our co-agent with the explicit purpose of petitioning the court and the SEC to release the frozen HEX funds and our investments therein. We are victims of the SEC's actions, not of Miles Guo.

Accordingly, I demand the immediate revocation of my HID and confirmation of its removal from any related filings. If this matter is not resolved, I reserve the right to pursue legal action.

I trust that you will handle this request with the seriousness it warrants. Please confirm the revocation of my HID at your earliest convenience.

Thank you for your prompt attention to this matter.

Sincerely,



**Notice of Concern: Misrepresentation of My HID in Legal Context**



Thu, 20 Mar 2025 12:01:02 PM -0400

To

**Dear Sir,**

**I am formally addressing you to rectify certain deliberately misrepresented facts and to submit an urgent and serious request that requires your immediate attention.**

**In the court documents concerning Mr. Guo, it is alleged that I, along with thousands of others, am a victim of Mr. Guo. However, this accusation is gravely inaccurate, not only misleading but also entirely inconsistent with the truth.**

**The reality is that we voluntarily provided our HID and explicitly designated you as our co-agent for the sole purpose of petitioning the court and the U.S. Securities and Exchange Commission (SEC) to release the frozen HEX funds and our investments therein. The true infringement on our rights stems from the actions of the SEC, not Mr. Guo. Therefore, I hereby formally and unequivocally demand the immediate revocation of my HID, identified as ▮▮▮▮▮▮▮, as it has been wrongfully utilized and misleadingly represented in this case.**

**Let it be clear that should this matter remain unresolved in a timely and appropriate manner, I reserve the right to pursue legal action to protect my legitimate interests. I trust that you will handle this request with the gravity it warrants and take the necessary steps to ensure that the facts are not further distorted.**

**Thank you for your attention to this matter. I look forward to your prompt response.**

**Statement on I am not Mr. Guo's victim**



Thu, 20 Mar 2025 8:54:13 AM -0400 •

To ██████████████████████

Dear Sir,
I am writing to address certain facts that have been
evidently and deliberately misrepresented and to submit an urgent request for your attention. In the court
documents pertaining to Miles Guo, it is suggested that I, along with thousands of others, have been victims of Mr.Guo. However, this assertion does not align with the truth.
In reality, each of us voluntarily provided our HID and
appointed you as our co-agent with the express purpose of petitioning the court and the Securities and ExchangeCommission (SEC) to release the frozen HEX funds and
our investments therein. <mark>We are victims of the SEC's actions, not of Miles Guo.</mark> Accordingly, I respectfully
request the immediate revocation of my HID, identified as ███████
as I believe it is being misused in this context.Please be advised that I reserve the right to pursue legalaction should this matter remain unresolved. I trust you
will address this request with the seriousness it warrants.Thank you for your attention to this matter. I look forwardto your prompt response.



Fri, 21 Mar 2025 7:28:08 AM -0400

To  "Questions"

Dear Sir,

I am writing to address certain facts that have been evidently and deliberately misrepresented and to submit an urgent request for your attention. In the court documents pertaining to Miles Guo, it is suggested that I, along with thousands of others, have been victims of Mr. Guo. However, this assertion does not align with the truth.

In reality, each of us voluntarily provided our HID and appointed you as our co-agent with the express purpose of petitioning the court and the Securities and Exchange Commission (SEC) to release the frozen HEX funds and our investments therein. We are victims of the SEC's actions, not of Miles Guo. Accordingly, I respectfully request the immediate revocation of my HID, identified as 2TU8U8E as I believe it is being misused in this context.

Please be advised that I reserve the right to pursue legal action should this matter remain unresolved. I trust you will address this request with the seriousness it warrants.

Thank you for your attention to this matter. I look forward to your prompt response.

**Urgent Withdrawal of Authorization for HEX HID**

**qi** 

Fri, 21 Mar 2025 6:45:34 AM -0400

Dear Counsel:

      Greetings!

      I am writing to bring to your attention a recent factual misunderstanding and to kindly request your assistance. In recent court documents related to Mr. Miles Guo, ==it has been reported that I, along with thousands of others, am a victim of Mr. Guo==. However, the actual situation is that I, together with other relevant individuals, voluntarily submitted an HID and designated you as our joint representative to request the court and the U.S. Securities and Exchange Commission (SEC) to release the frozen HEX funds and related investments. ==In reality, we are victims of the SEC's actions, not of Mr. Miles Guo==. For the reasons stated above, I respectfully request your assistance in immediately withdrawing the HID number ▮▮▮▮▮▮ associated with me to correct the erroneous consequences arising from this misinformation. At the same time, I urge you to address this matter as soon as possible. Should the issue not be resolved in a timely manner, I reserve the right to pursue further legal action. However, I believe that with your professional assistance, we can resolve this matter appropriately. Thank you for your attention to this letter. I look forward to your prompt response.

  Sincerely



Fri, 21 Mar 2025 3:21:26 AM -0400

To

Dear Sir,

I am writing to address certain facts that have been evidently and deliberately misrepresented and to submit an urgent request for your attention. In the court documents pertaining to Miles Guo, it is suggested that I, along with thousands of others, have been victims of Mr. Guo. However, this assertion does not align with the truth.

In reality, each of us voluntarily provided our HID and appointed you as our co-agent with the express purpose of petitioning the court and the Securities and Exchange Commission (SEC) to release the frozen HEX funds and our investments therein. We are victims of the SEC's actions, not of Miles Guo. Accordingly, I respectfully request the immediate revocation of my HID, identified as ████████ as I believe it is being misused in this context.

Please be advised that I reserve the right to pursue legal action should this matter remain unresolved. I trust you will address this request with the seriousness it warrants.

Thank you for your attention to this matter. I look forward to your prompt response.

**important. I am not a victim of Miles Guo**


Fri, 21 Mar 2025 2:12:05 AM -0400

To ████████████████████████████████

Dear Mr. Bradford L. Geyer,
I am writing to address certain facts that have been evidently and deliberately misrepresented and to submit an urgent request for your attention.

 In the count documents pertaining to Miles Guo, <mark>it is suggested that I, along with thousands of others, have been victims of Mr.Guo. However, this assertion does not align with the truth</mark>. In reality, each of us provided our HID and appointed you as our co-agent with the express purpose of petitioning the count and the SEC to release the frozen HEX funds and our investments therein.
 As you stated in the relevant video, we are victims of the SEC's actions, not of Miles Guo. Accordingly, I respectfully request the immediate revocation of my HID, identified as █████████ as I believe it is being misused in this context.
 Please be advised that I reserve the right to pursue legal action should this matter remain unresolved.
Thank you for your attention to this matter. I look forward to your prompt response.



Fri, 21 Mar 2025 1:25:59 AM -0400

To ████████████████████████████████████

Dear Mr. Bradford L. Geyer,

I am writing to address certain facts that have been evidently and deliberately misrepresented and to submit an urgent request for your attention.

In the count documents pertaining to Miles Guo, it is suggested that <mark>I, along with thousands of others, have been victims of Mr.Guo. However, this assertion does not align with the truth</mark>. In reality, each of us provided our HID and appointed you as our co-agent with the express purpose of petitioning the count and the SEC to release the frozen HEX funds and our investments therein. As you stated in the relevant video, we are victims of the SEC's actions, not of Miles Guo.

Accordingly, I respectfully request the immediate revocation of my HID, identified as ████████ as I believe it is being misused in this context.

Please be advised that I reserve the right to pursue legal action should this matter remain unresolved.

Thank you for your attention to this matter. I look forward to your prompt response.

**I respectfully request the immediate revocation of my HID**



To

---

Dear Mr. Bradford L. Geyer, I am writing to address certain facts that have been evidently and deliberately misrepresented and to submit an urgent request for your attention. In the count documents pertaining to Miles Guo, it is suggested that <mark>I, along with thousands of others, have been victims of Mr.Guo. However, this assertion does not align with the truth.</mark> In reality, each of us provided our HID and appointed you as our co-agent with the express purpose of petitioning the count and the SEC to release the frozen HEX funds and our investments therein. As you stated in the relevant video, we are victims of the SEC's actions, not of Miles Guo. Accordingly, I respectfully request the immediate revocation of my HID, identified as ▮▮▮▮▮▮ as I believe it is being misused in this context. Please be advised that I reserve the right to pursue legal action should this matter remain unresolved.

Thank you for your attention to this matter. I look forward to your prompt response.

**Request the immediate revocation of my HID from Himalaya Restoration Legal Case**

**ye**    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Fri, 21 Mar 2025 12:22:46 AM -0400

To    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Dear Sir,

I am writing to address certain facts that have been evidently and deliberately misrepresented and to submit and urgent request for your attention. In the court documents pertaining to Mr Miles Guo, it is suggested that I, along with thousands of others, have been victims of Mr Miles Guo. However, this assertion does not align with the truth.

In fact, each of us voluntarily provided our HID and appointed you as the court and the Security and Exchange Commission (SEC) to release the frozen HEX funds and our investments therein. We are victims of The SEC's actions, Not of Mr Miles Guo. Thus, I request the immediate revocation of my HID, identified as ▇▇▇▇▇ as I believe it is being misused in this context.

Please be advised that I receive the right to pursue legal action should this matter remain unresolved. I trust you will address this request with the seriousness it warrants.

Thank you for your attention to this matter. I look forward to your prompt response.

Regards

▇▇▇▇▇▇▇

EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Complainant**<br><br>**-v-**<br><br>**HO WAN KWOK, a/k/a "Miles Guo,"**<br>**"Miles Kwok," "Guo Wengui," "Brother**<br>**Seven," or "The Principal,"**<br><br>**and**<br><br>**KIN MING JE, a/k/a "William Je,"**<br><br>**and**<br><br>**YANPING WANG, a/k/a "Yvette,"**<br><br>**Defendants.** | Criminal No.:  23-cr-118 (AT)<br><br><br>**ORDER**<br><br><br>Assigned to the Honorable U.S.<br>District Court Judge Analisa<br>Torres, Presiding Judge |

## [PROPOSED] ORDER TO VACATE PRELIMINARY ORDER OF FORFEITURE AND TOLL ANCILLARY DEADLINE WITHOUT PREJUDICE

Upon consideration of the Letter Motion submitted by counsel for third-party victims of the Himalaya Exchange (HEX), and for good cause shown, it is hereby ORDERED that:

1. The Preliminary Order of Forfeiture entered on January 7, 2025 is VACATED WITHOUT PREJUDICE;

2. The ancillary petition deadline currently set for April 7, 2025 is TOLLED and STRICKEN pending further order of the Court;

3. The United States Government shall not reissue any forfeiture-related notices or initiate any new forfeiture deadlines related to the HEX property at issue until after the sentencing and forfeiture adjudication of Defendant Miles Guo;

4. Any third-party petitions already filed under 21 U.S.C. § 853(n) are QUARANTINED pending a valid forfeiture determination and shall not be ruled upon until further order of this Court.

SO ORDERED.

Dated: _____, 2025

_____

Hon. Analisa Torres
United States District Judge