# EXHIBIT 1

{00288096.2 }

**EXHIBIT 1 - Seized G Club Assets**

| Amount/Item | Location | Holder | Seizure Date | Source |
|---|---|---|---|---|
| $64,826.87 | Account Number 5090037713 at Silvergate Bank | Hamilton Opportunity Fund SPC | 9/18/2022 | Indictment |
| $75,000,000.00 | Account Number 5090037705 at Silvergate Bank | Hamilton Opportunity Fund SPC | 9/18/2022 | Indictment |
| $467,343.00 | Account Number 5090037754 at Silvergate Bank | Hamilton Opportunity Fund SPC | 9/18/2022 | Indictment |
| $89,992,861.75 | Account Number 5090042770 at Silvergate Bank | Hamilton Opportunity Fund SPC | 9/18/2022 | Indictment |
| $1,683,077.40 | Account Number 5090042762 at Silvergate Bank | Hamilton Opportunity Fund SPC | 9/18/2022 | Indictment |
| $85,899,889.20 | Account Number 5090042853 at Silvergate Bank | Hamilton Opportunity Funds SPC | 9/18/2022 | Indictment |
| $1,800,000.00 | Account Number 5090037739 at Silvergate Bank | Hamilton Opportunity Fund SPC | 9/18/2022 | Indictment |
| $85,899,889.20 | Account Number 5090042853 at Silvergate Bank | Hamilton Opportunity Funds SPC | 9/18/2022 | Indictment |
| $48,230,709.62 | Account Number 5090030288 at Silvergate Bank | Hamilton Investment Management Ltd. | 9/18/2022 | Indictment |
| $1,187,278.87 | Account Number MBI10171-0000 at Mercantile Bank International | Hamilton Investment Management Ltd. | October 16, 2022 and March 10, 2023 | Indictment |
| $3,090,856.54 | Account Number MBI10137-0000 at Mercantile Bank International | Hamilton Capital Holding Ltd. | October 16, 2022 and March 10, 2023 | Indictment |
| $4,643,744.70 | Account Number 7801000590 at FV Bank | Himalaya International Reserves, Ltd. | 9/20/2022 | Indictment |
| $272,350,313.76 | Account Number MBI10138-0000 at Mercantile Bank International | Himalaya International Reserves, Ltd. | October 16, 2022 and March 10, 2023 | Indictment |
| $14,599,257.25 | Account Number 7801000254 at FV Bank | Himalaya International Clearing, Ltd. | 9/20/2022 | Indictment |
| $10,008,284.04 | Account Number MBI10133-0000 at Mercantile Bank International | Himalaya International Clearing, Ltd. | October 16, 2022 and March 10, 2023 | Indictment |
| $310,594.31 | Account Number MBI10139-0000 at Mercantile Bank International | Himalaya International Financial Group Ltd. | October 16, 2022 and March 10, 2023 | Indictment |
| $161,809.47 | Account Number MBI10183-0000 at Mercantile Bank International | Himalaya Currency Clearing Pty Ltd. | 10/16/2022 | Indictment |
| $11,538,579.87 | Account Number MBI10103-0000 at Mercantile Bank International | G Club International Ltd. | 10/16/2022 | Indictment |
| All monies, funds, and assets held in account, including accrued interest, and all funds traceable thereto | TD Bank, N.A. official check account that were previously held in TD Bank, N.A. accounts 440- 5491468 and 440-5492044 | G Club Operations LLC | 5/12/2023 | Seizure Warrant 23 MAG 3908 Looks to include the 2 checks totaling $7,173,427.25 |

**EXHIBIT 1 - Seized G Club Assets**

| Amount/Item | Location | Holder | Seizure Date | Source |
|---|---|---|---|---|
| **PROPERTY** | | | | |
| 675 Ramapo Valley Road, Mahwah, New Jersey 07430, Township: MAHWAH TWP | | | | Indictment |
| Bugatti Chiron Super Sport, bearing VIN VF9SW3V3XNM795047 | | | 5/11/2023 | Indictment |
| Lamborghini Aventador SVJ Roads, bearing VIN ZHWUN6ZD2MLA10393 | | | 3/15/2023 | Indictment |

{00409250.1}

# EXHIBIT 2

{00288096.2 }

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
**COURT CASE NUMBER: S4 23 CR. 118 (AT); NOTICE OF FORFEITURE**

Notice is hereby given that on January 07, 2025, in the case of <u>U.S. v. Yvette Wang, a/k/a "Yanping", a/k/a "Y"</u>, Court Case Number S4 23 CR. 118 (AT), the United States District Court for the Southern District of New York entered an Order condemning and forfeiting the following property to the United States of America:

$7,715.00 in United States currency formerly on deposit in account number 7801000589 at FV Bank, held in the name of "Himalaya International Financial Group, Ltd." and seized by the Government on or about September 20, 2022 (23-FBI-000011)

$9,899,659.19 in United States currency formerly on deposit in account number 157525208185 at US Bank, held in the name of "G Fashion" and seized by the Government on or about September 18, 2022 (23-FBI-000046)

$4,643,744.70 in United States currency formerly on deposit in account number 7801000590 at FV Bank, held in the name of "Himalaya International Reserves, Ltd." and seized by the Government on or about September 20, 2022 (23-FBI-000050)

$14,599,257.25 in United States currency formerly on deposit in account number 7801000254 at FV Bank, held in the name of "Himalaya International Clearing, Ltd." and seized by the Government on or about September 20, 2022 (23-FBI-000051)

$2,745,377.75 in United States currency formerly on deposit in account number 9878904409 at Manufacturers & Traders Trust Co., held in the name of "GETTR USA, Inc." and seized by the Government on or about September 18, 2022 (23-FBI-000067)

$85,899,889.20 in United States currency formerly on deposit in account number 5090042853 at Silvergate Bank, held in the name of "Hamilton Opportunity Funds SPC" and seized by the Government on or about September 18, 2022 (23-FBI-000069)

$48,230,709.62 in United States currency formerly on deposit in account number 5090030288 at Silvergate Bank, held in the name of "Hamilton Investment Management, Ltd." and seized by the Government on or about September 18, 2022 (23-FBI-000072)

$1,683,077.40 in United States currency formerly on deposit in account Number 5090042762 at Silvergate Bank, held in the name of "Hamilton Opportunity Fund SPC" and seized by the Government on or about September 18, 2022 (23-FBI-000073)

$89,992,861.75 in United States currency formerly on deposit in account number 5090042770 at Silvergate Bank, held in the name of "Hamilton Opportunity Fund

SPC" and seized by the Government on or about September 18, 2022 (23-FBI-000074)

$64,826.87 in United States currency formerly on deposit in account number 5090037713 at Silvergate Bank, held in the name of "Hamilton Opportunity Fund SPC" and seized by the Government on or about September 18, 2022 (23-FBI-000075)

$467,343.00 in United States currency formerly on deposit in account number 5090037754 at Silvergate Bank, held in the name of "Hamilton Opportunity Fund SPC" and seized by the Government on or about September 18, 2022 (23-FBI-000077)

$75,000,000.00 in United States currency formerly on deposit in account number 5090037705 at Silvergate Bank, held in the name of "Hamilton Opportunity Fund SPC" and seized by the Government on or about September 18, 2022 (23-FBI-000078)

$1,800,000.00 in United States currency formerly on deposit in account number 5090037739 at Silvergate Bank, held in the name of "Hamilton Opportunity Fund SPC" and seized by the Government on or about September 18, 2022 (23-FBI-000079)

$310,594.31 in United States currency formerly on deposit in account number MBI10139-0000 at Mercantile Bank International, held in the name of "Himalaya International Financial Group Ltd." and seized by the Government between on or about October 16, 2022, and on or about March 10, 2023 (23-FBI-000182)

$176,983.37 in United States currency formerly on deposit in account number MBI10183-0000 at Mercantile Bank International, held in the name of "Himalaya Currency Clearing Pty Ltd." and seized by the Government on or about October 16, 2022 (23-FBI-000183)

$1,187,278.87 in United States currency formerly on deposit in account number MBI10171-0000 at Mercantile Bank International, held in the name of "Hamilton Investment Management Ltd." and seized by the Government between on or about October 16, 2022, and on or about March 10, 2023 (23-FBI-000184)

$47,888.50 in United States currency formerly on deposit in account number MBI10172-0000 at Mercantile Bank International, held in the name of "G Fashion International Limited" and seized by the Government on or about October 16, 2022 (23-FBI-000185)

$12,620,625.39 in United States currency formerly on deposit in account number MBI10103-0000 at Mercantile Bank International, held in the name of "G Club International Ltd." and seized by the Government on or about October 16, 2022 (23-FBI-000287)

$3,090,856.54 in United States currency formerly on deposit in account number MBI10137-0000 at Mercantile Bank International, held in the
name of "Hamilton Capital Holding Ltd." and seized by the Government

between on or about October 16, 2022, and on or about March 10, 2023 (23-FBI-000288)

$10,008,284.04 in United States currency formerly on deposit in account number MBI10133-0000 at Mercantile Bank International, held in the name of "Himalaya International Clearing Ltd." and seized by the Government between on or about October 16, 2022, and on or about March 10, 2023 (23-FBI-000289)

$272,350,429.22 in United States currency formerly on deposit in account number MBI10138-0000 at Mercantile Bank International, held in the name of "Himalaya International Reserves Ltd." and seized by the Government between on or about October 16, 2022, and on or about March 10, 2023 (23-FBI-000290)

A Lamborghini Aventador SVJ Roads, bearing Vehicle Identification Number ZHWUN6ZD2MLA10393, seized by the Government on or about March 15, 2023 (23-FBI-002741)

All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 675 Ramapo Valley Road, Mahwah, New Jersey 07430, Parcel No. 3300021-03-00001-02 and described as Lot Number: 1.02; Block: 21.03; District: 33; City, Municipality, Township: MAHWAH TWP (the "Subject Property") (23-FBI-002795)

5,000 euros seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-002824)

188,050 Hong Kong dollars seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-002825)

250 Chinese yuan seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-002826)

Yellow coins seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-002827)

$406,235.00 in United States currency seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-002828)

A ring with box and a bracelet with box seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-002829)

600 Chinese yuan seized from the Defendant's apartment by the Government on or about March 15, 2023 (23-FBI-002830)

1,180 Hong Kong dollars seized from the Defendant's apartment by the Government on or about March 15, 2023 (23-FBI-002831)

3,005 in pounds sterling currency seized from the Defendant's apartment by the Government on or about March 15, 2023 (23-FBI-002832)

$138,440.00 in United States currency seized from the Defendant's apartment by

the Government on or about March 15, 2023 (23-FBI-002833)

$2,815,502.30 in United States currency, formerly held in TD Bank, N.A., account 440-5491468 (23-FBI-003000)

$4,357,924.95 in United States currency, formerly held in TD Bank, N.A., account 440-5492044 (23-FBI-003001)

Miscellaneous paintings seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003002), including the following items:
Philip and Kelvin LaVerne Still Life Musicale 1960s bronze wall plaque with colored enamel;
Philip and Kelvin LaVerne Venus Contemplating 1960s bronze wall plaque with colored enamel; and
Philip and Kelvin LaVerne Chinoi Plaque #14 limited edition 1960s bronze and pewter plaque

Baroque Style Carved Gilt Wood Frame, late 19th Century 44.75" X 38.5", seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003003)

A Samsung Q900 Series QN98Q900RBF 98" QLED Smart TV - 8K seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003010)

A Rolls Royce Phantom EWB, bearing Vehicle Identification Number SCATT8C08MU206445, seized by the Government on or about March 20, 2023 (23-FBI-003011)

Miscellaneous antique furniture, formerly on 1st floor of the Subject Property, seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003012), including the following items:
Pair of ormolu-mounted display cabinets in the style of Francois Linke;
Ormolu mounted single door vitrine with curved glass sides and front, resting on hoof feet;
Ornate wrought iron table with inlaid marble top. Book matched center cartouche, black outline;
Philip and Kelvin LaVerne Special Eternal Forest Game Table labeled on underside bronze and pewter;
Philip and Kelvin LaVerne Marriage Whirl oriental motif boomerang shaped bronze, pewter, and enamel;
Philip and Kelvin LaVerne Eternal Forest Cocktail Table bronze and pewter with colored enamel;
A "K'ang Hsi" extension table in etched and patinated pewter and bronze with hand-painted enamel colors by Philip & Kelvin La Verne;
Pair of Sevres-style porcelain jardiniere/vases having white ground with gold accents, ormolu mounts;
A Sevres-style porcelain jardiniere/vase having a dark blue ground with gold accents, ormolu mounts;
Pair of Louis XVI style giltwood console tables with white marble tops. H-37.5" x

W-6;
Pair of octagonal marble pedestals, white with gray veins. H-32" x Diameter-23";
A "Punto '83" table in stainless steel with mesh tabletop with adjustable height and adjustable petals by Gabriella Crespi, Italy 1982;
Louis XV style French table desk, ormolu mounted marquetry, with leather top;
Philip and Kelvin LaVerne Festival Console with waterfall ends, signed on the top 1960s;
Philip and Kelvin LaVerne Special Festival Console with waterfall ends, signed on the top 1960s;
Philip and Kelvin LaVerne Kuan Su Coffee Table bronze and pewter/silver-tone metal top with floral;
Philip and Kelvin LaVerne Chan round bronze, pewter, and enamel table with Chinese motif;
Regency style cerule x-base footstools with paw feet, red velvet upholstery, and fringe;
Earlier 20th c. Bar Cabinet with sterling silver mounted vertical stiles, cartouches, and ball;
1960s Maison Jansen style French brass, black patina, and smoked glass coffee table;
French ormolu mounted marquetry inlaid table desk with single frieze drawer. Finished front and back;
Pair of French Empire style gilt and patinated bronze ormolu mounted tables with black marble tops;
Empire-style center table with book-matched flamed veneer top;
Jansen Style Two-tier Bouillotte Table on fluted tripod pedestal with ormolu mounts, marble top; and
Boulle-style Bureau Plat silver and gold metal scrolling design table desk inlaid with tortoiseshell

Miscellaneous rugs seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003013), including the following items:
Tabriz, from Iran, modern production. 13'8" x 20'. Quality: 45 raj. Cotton warp and weft;
Bidjar, from Iran, first quarter of the 20th c. 14'5" x 19'7". Wool weft, cotton warp; and
Bidjar, from Iran, late 19th - early 20th c. 12'3" x 19'. Wool warp and weft, wool face

A Bugatti Chiron Super Sport, bearing Vehicle Identification Number VF9SW3V3XNM795047, seized by the Government on or about May 11, 2023 (23-FBI-003014)

Miscellaneous mirrors, formerly on the 1st floor of the Subject Property, seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003015), including the following items:
Pair of mid-19th c. Louis XV style paraclose mirrors, floral;
Italian Tuscan antique giltwood mirror with plume-topped urn finial;
Two (2) Regency style giltwood mirrors with urn and floral finial;
Giltwood Louis XV style overmantel double mirror;
Two (2) Italian Neoclassical giltwood pier mirrors;

Pair of Italian Florentine style giltwood mirrors each with a plume;
Italian giltwood mirror with rococo crest with cross-hatched panels;
Pair of French Regence style giltwood mirrors, the crest with a plume; and
Pair of giltwood mirrors each with a plumed mask crest

Miscellaneous collectible and decorative accessories, formerly on the 1st Floor of the Subject Property, seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003016), including the following items:
Pair of Empire 19th c. gilt bronze floor torcheres embellished with lion masks draped;
Pair of 18-light Baccarat Torcheres. H-95" x W-26". Dimensions are approximate;
19th c. Silver and tortoiseshell mounted table cabinet, with enamel inset;
Pair of small figural patinated black and gilt bronze candlesticks;
Pair of gilt bronze chenet with obelisk, lion mask, and dolphin;
Pair of marble pedestals having a square top, round column; and
Pair of Regency style bronze patinated torcheres, attributed to English lamp manufacturer

Miscellaneous antique furniture formerly on the 2nd floor of the Subject Property, seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003019), including the following items:
Late Georgian Chippendale style hexagonal center table with cabriole legs and hairy paw and ball;
Philip and Kelvin LaVerne Chan elongated hexagonal table, mottled bronze on the top, bronze;
Philip and Kelvin LaVerne Chan hexagonal pedestal, bronze on the top, bronze and pewter Chinese;
Philip and Kelvin LaVerne Les Chine Cocktail Table square mottled bronze top supported; and
A Louis XV Style French Ormolu-Mounted Mahogany Commode by Joseph Emmanuel Zweiner

Persian Silk Tabriz Rug, 7'7" x 11'2", formerly located on the 2nd floor of the Subject Property, seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003020)

Miscellaneous mirrors, formerly on the 2nd floor of the Subject Property, seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003022), including the following items:
Louis XV style giltwood pier mirror;
Pair of Louis XV style giltwood mirrors;
Italian Tuscan giltwood mirror;
French giltwood paraclose mirror with Louis XVI style floral wreath;
Chinese Chippendale Giltwood double parclose mirror; and
Louis XV style giltwood paraclose mirror (double frame) with shell and wave crest

Miscellaneous collectible and decorative accessories, formerly on the 2nd floor of the Subject Property, seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003023), including the following items:

French Brass Three Panel Firescreen with Empire style swags and wreaths;
Ferdinand Barbedienne (1810-1892) French Three-Piece Clock Garniture;
Pair of Victorian urn and swag chenet, H-18" x W-16" x D-6";
Pair of Louis XV style gilt bronze and brass andirons depicting cherubs;
Louis XV style gilt bronze 'log cradle'; and
Pair of gilt bronze Louis XV style chenets

French Tapestry, size 6'8" x 9'5", formerly located on the 3rd floor of the Subject Property, seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003027)

Antique Chinese-export cast brass pair of foo dogs seized by the Government from the Subject Property on or about March 15, 2023 (23-FBI-003030)

  The United States hereby gives notice of its intent to dispose of the forfeited property in such manner as the United States Attorney General may direct. Any person, other than the defendant(s) in this case, claiming interest in the forfeited property must file an ancillary petition within 60 days of the first date of publication (February 06, 2025) of this Notice on this official government internet web site, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(1).  The ancillary petition must be filed with the Clerk of the Court, United States District Court, 500 Pearl Street, Room 120, New York, NY  10007, and a copy served upon Assistant United States Attorney Ryan Finkel, Jacob K. Javits Federal Building, 26 Federal Plaza, New York, NY 10278.  The ancillary petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited property, the time and circumstances of the petitioner's acquisition of the right, title and interest in the forfeited property and any additional facts supporting the petitioner's claim and the relief sought, pursuant to 21 U.S.C. § 853(n).

  Following the Court's disposition of all ancillary petitions filed, or if no such petitions are filed, following the expiration of the period specified above for the filing of such ancillary petitions, the United States shall have clear title to the property and may warrant good title to any subsequent purchaser or transferee.

  The government may also consider granting petitions for remission or mitigation, which pardon all or part of the property from the forfeiture.  A petition must include a description of your interest in the property supported by documentation; include any facts you believe justify the return of the property; and be signed under oath, subject to the penalty of perjury, or meet the requirements of an unsworn statement under penalty of perjury.  *See* 28 U.S.C. Section 1746.  For the regulations pertaining to remission or mitigation of the forfeiture, see 28 C.F.R. Sections 9.1 - 9.9.  The criteria for remission of the forfeiture are found at 28 C.F.R. Section 9.5(a).  The criteria for mitigation of the forfeiture are found at 28 C.F.R. Section 9.5(b).  The petition for remission need not be made in any particular form and may be filed online or in writing.  You should file a petition for remission not later than 11:59 PM EST 30 days after the date of final publication of this notice.  *See* 28 C.F.R. Section 9.3(a).  The https://www.forfeiture.gov/FilingPetition.htm website provides access to a standard petition for remission form that may be mailed and the link to file a petition

for remission online.  If you cannot find the desired assets online, you must file your petition for remission in writing by sending it to Assistant United States Attorney Ryan Finkel, Jacob K. Javits Federal Building, 26 Federal Plaza, New York, NY  10278.  This website provides answers to frequently asked questions (FAQs) about filing a petition for remission.  You may file both an ancillary petition with the court and a petition for remission or mitigation.

# EXHIBIT 3



# Andrew Childe

Cayman Islands
M +1 345 916 1813
E andrew.childe@ffp.ky

Andrew Childe is an independent director specialising in providing independent board level governance and dispute resolution advice to companies, partnerships, foundations, trusts and other financial structures. Andrew also takes liquidation appointments over both solvent and insolvent entities and is qualified to act as a Court appointed liquidator in the Cayman Islands.

With over 20 years' experience in the financial services sector Andrew held Senior Management positions within the Restructuring and Corporate Finance Department at Big Four accounting firms prior to FFP Cayman.

Andrew has significant experience in dealing with a wide range of assets and with managing complex cross border litigation. He has in depth knowledge of litigation claims, secondary markets, performing and non-performing loans, traded and non-traded equities, asset backed lending, real estate sale and management, derivatives and debt instruments, private equity investments, structured finance products together with a number of other esoteric assets. This experience makes him ideally placed to advise on a wide range of investment strategies and has allowed him to build an extensive network of trusted advisors and legal counsel in multiple jurisdictions.

Andrew is a board member on a variety of investment companies in Cayman and British Virgin Islands, as well as the US, Europe, Africa and the UAE and is a qualified Court appointed liquidator in the Cayman Islands and a Certified Director. He is also a member of the Cayman Islands Directors Association, the Cayman Islands Compliance Association, registered with the Cayman Islands Monetary Authority as an Approved Director, approved by the BVI Financial Services Commission as a Director and registered as an insolvency practitioner with the DIFC Registrar of Companies allowing him to be appointed and serve as a Nominee, Administrator, Receiver, an Administrative Receiver, a Liquidator or provisional Liquidator of an entity registered in the DIFC.

Andrew is a member of the Institute of Chartered Accountants in England & Wales, CIPPA, the American Bankruptcy Institute, and is the former Secretary of the Restructuring and Insolvency Specialists Association in the Cayman Islands.

# EXHIBIT 4



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 18, 2025

**BY ECF**
Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY

    Re:    *United States v. Miles Guo*, S3 23 Cr. 188 (AT)

Dear Judge Torres:

    On December 20, 2024, the Court adjourned sentencing in this matter *sine die*, following the defense's filing of an *ex parte* letter and an *ex parte* conference that day relating to the defense's pending request for substitution of counsel. The parties have since submitted multiple letters to the Court by email, and following the Court's March 3, 2025, proceeding, the Government has filed its letters publicly on the docket. (Dkts. 500-502.)

    The Government respectfully writes to request that the Court: (i) authorize defense counsel to publicly file their *ex parte* materials regarding the defendant's motion for substitution of counsel as specified below; (ii) unseal the *ex parte* transcripts from the December 20, 2024 and March 3, 2025 conferences, to the extent appropriate; and (iii) if necessary, appoint new counsel to the defendant so that a sentencing date can be promptly scheduled. The defendant was convicted in July 2024 following an eight-week jury trial. Promptly proceeding to sentencing is necessary to serve the interests of justice and specifically to vindicate the rights of victims.

    1.    <u>The Court Should Order Defense Counsel to Make Certain Filings Public</u>

    On March 3, 2025, the Court directed the parties to advise as to whether *ex parte* and sealed materials relating to the defendant's substitution of counsel motion may be publicly filed. On March 10, 2025, defense counsel filed a letter stating that the defendant has no objection to the public filing of his "(i) CJA financial affidavit; (ii) two documents filed by Mr. Kwok in connection with his bankruptcy which describe the debt he owes others; (iii) letters from defense counsel dated December 10, 2024 and January 28, 2025." (Dkt. 499.) Based on discussions between the parties, the Government understands that defense counsel is awaiting Court authorization to publicly file these documents. Accordingly, the Government, without defense objection, requests that the Court order the defense to publicly file those *ex parte* and sealed materials relating to the defendant's substitution of counsel motions, which were identified in the defendant's March 10, 2025 letter.

2. <u>Non-Privileged Sections of the December 20, 2024, and March 3, 2025 Transcripts Should be Made Public</u>

Following the defense's December 10, 2024 letter to the Court, the Court held two conferences on December 20, 2024 and March 3, 2025—portions of which were *ex parte* and remain sealed. Only the portions of those *ex parte* conferences that are subject to a valid privilege should remain sealed.

In the context of substitution of counsel proceedings, the right to public access predominates, and generally, "[a]ll motions to withdraw should be served upon the client and (unless excused by the court) upon all other parties." S.D.N.Y. Local Civ. R. 1.4(b) (applicable in criminal cases pursuant to S.D.N.Y. Local Crim. R. 1.1(b)). A court may "permit[] the reasons for withdrawal to be stated in camera and under seal," but only in "an appropriate case." *Id.* Pre-2024 Cmte. Note. Public access "ensure[s] that 'the public may see [a defendant] is fairly dealt with and not unjustly' denied an important substantive right. *United States v. Avenatti*, 550 F. Supp. 3d 36, 47 (S.D.N.Y. 2021) (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984))). To be sure, the Second Circuit has recognized various privileges as reason to restrict access to otherwise public materials. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995). Thus, any statements in the sealed transcripts reflecting attorney-client communications or work product may remain sealed absent a showing otherwise. However, those protections apply to only a narrow set of information. "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). Attorney work-product protects only "materials *containing* mental impressions, conclusions, opinions, or legal theories of an attorney or other representative that were prepared in anticipation of litigation." *United States v. Petit*, 438 F. Supp. 3d 212, 214 (S.D.N.Y. 2020) (quotation omitted). Accordingly, the Court should review the sealed transcripts and limit any continued sealing solely to those portions that may be "necessary to preserve the confidentiality of the attorney-client relationship." *Team Obsolete Ltd. V. A.H.R.M.A. Ltd*, 464 F.Supp.2d 164, 165 (E.D.N.Y. 2006); *see also Ceglia v. Zuckerberg*, No. 10 Cv. 569 (RJA) (LGF), 2013 WL 12234139, at *4-5 (W.D.N.Y. Mar. 20, 2013) (recognizing that "disclosure [of withdrawal motion] would be useful to [the opposing party] primarily to oppose withdrawal," but finding that disclosure request "to be moot" after ruling the "motion should be denied").

Although the Government was not party to the *ex parte* portions of the December 20, 2024 and March 3, 2025 conferences, scrutiny is appropriate to determine what information from those conferences should remain shielded from the Government and the public. The Government is not, at this time, asserting that any privileged attorney-client communications or attorney work-product information that the Court required to be shared during the *ex parte* portions of those proceedings should be subject to public view. However, given that the defendant has made known to third parties (including the Government) his desire to substitute his attorneys due to "conflict . . . . lack of trust in his current counsel based on issues at trial and the resulting breakdown of communication between counsel and Mr. Guo,"[1] it is plausible that much of what was discussed during the *ex parte* portions of those conferences is not confidential, and thus not privileged. *See*

---

[1] Jan. 28, 2025 Ltr. from S. Kamaraju to the Court, copying Government counsel.

*Mejia*, 655 F.3d at 134 (absence of confidentiality defeats claim of privilege). Accordingly, the defendant's statements regarding displeasure (if any) with his current counsel at the conferences are not subject to protection. Nor would the defendant's statements to the Court regarding his impressions of counsel's conduct (if any), as such an opinion is not an attorney-client communication. At this time, all that may be withheld are a recounting, at the Court's direction, of confidential statements between the defendant and his counsel "for the purpose of obtaining or providing legal advice." *Mejia*, 655 F.3d at 132. Similarly, the Government does not presently dispute that counsel's statements in response to Court questions during the *ex parte* portions of those conferences about attorney work-product are protected. But particularly because trial has concluded, and the defense has already provided the Government with its objections to the PSR, counsel's strategies and mental impressions related to sentencing (to the extent they were discussed during the *ex parte* portions of the conferences) may have been disclosed already and thus would not be subject to protection.

Accordingly, the Government requests that the defense provide the Court with proposed redactions to the *ex parte* transcripts by March 24, 2025, and that the unredacted portions be made available on that date, with the redacted portions subject to the Court's review. The defense does not consent to this request.

3. This Matter Should Proceed to Sentencing as Soon as Practicable

As set forth in its prior letters, the Government maintains that the defendant's December 10, 2024 motion for substitution of counsel should be denied. (*See* Dkts. 500-502.)[2]

Nonetheless, under the Crime Victims' Rights Act, 18 U.S.C. § 3771(a), the victims in this case have a statutory right to restitution and to "proceedings free from unreasonable delay." 18 U.S.C. § 3771(a). As it did with respect to Yanping Wang, the Government intends to seek an order authorizing the United States to compensate the thousands of the defendant's victims with finally forfeited assets through a remission process, as restitution would be impracticable in this case. *See* 18 U.S.C. § 3663A(c)(3); Dkt. 495. However, any remission process cannot commence until a final order of forfeiture is entered as to the defendant, which cannot happen until sentencing

---

[2] The Court has discretion to deny the motion unless it finds the conflict "so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001). That condition is not satisfied. The Government previously noted that one of the lawyers seeking to withdraw met with the defendant on December 25, 2024— that is, after the filing and hearing on the *ex parte* substitution motion. *See* Dkt. 500 at 4. More recently, at the parties' last conference with the Court, three of the lawyers seeking to withdraw met privately with the defendant in the Marshals Service's holding area next to the courtroom. The defendant's *ex parte* statements may have asserted "certain disagreements" with counsel, or even an "intense rift"—but neither condition is tantamount to the "total lack of communication" that is required to deprive the Court of discretion to deny a dilatory motion to substitute counsel after several sentencing adjournments and more than eight months after the jury's verdict. *John Doe No. 1*, 272 F.3d at 124; *United States v. Muhammad*, No. 12 Cr. 337 (ADS) (GRB), 2012 WL 6021458, at *3 (E.D.N.Y. Nov. 19, 2012).

is completed.³  The Government has already received dozens of inquiries from victims seeking just compensation, and the Government also has been contacted by counsel purporting to represent a group comprised of thousands of victims.  As the Court knows, many victims lost hundreds of thousands of dollars (or more).  Others lost their retirement funds or substantial amounts of their life savings.  Victims are waiting for closure, accountability, and commencement of the remission process, without visibility into when the defendant will be sentenced.  The Government would like to return the hundreds of millions of dollars it seeks to forfeit to *victims* as soon as reasonably possible and attempt to repair the damage that Guo and his co-conspirators caused.  The Government cannot do so until the defendant is sentenced.  The interests of the victims in this case weigh heavily in favor of scheduling a date certain for the defendant's sentencing.

The need for swift resolution of this matter is therefore acute.  The Government appreciates that the Court is weighing the merits of the defendant's motion to substitute counsel.  The Government respectfully requests that, to the extent the Court intends to grant (or deny) the defendant's substitution request, it do so promptly, and set a sentencing date in short order.  The only remaining work for the defendant's counsel (current or substitute) is to prepare a sentencing submission in consultation with their client, and advocate for their client during a sentencing hearing.  These last remaining activities should happen as soon as possible given the right of victims, and the public, to a timely resolution of this case.  To the extent that the Court grants the defendant's motion, the Government believes that the Federal Defenders—who represented the defendant at his presentment and initial arraignment, and are not conflicted from this matter—could be promptly appointed as substitute counsel with the defendant's current counsel appointed under the Criminal Justice Act as a supplement to new counsel.  *See Morris v. Slappy*, 461 U.S. 1, 13 (1983) (declaring  the decision to grant or deny a motion to change counsel "is within the discretion of the trial court").

The Government is available to address any questions the Court may have.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

by:  \_\_\_\_/s/_____
Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314

cc:   Counsel of Record (by ECF)

---

³ The defendant has not offered to consent to a final order of forfeiture.