UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>YVETTE WANG<br>a/k/a "Yanping,"<br>a/k/a "Y,"<br><br>Defendant. | **THIRD-PARTY PETITION TO ADJUDICATE PETITIONER'S INTEREST IN FORFEITED PROPERTY AND TO AMEND THE PRELIMINARY ORDER OF FORFEITURE -**<br><br>**VERIFIED CLAIM OF HAMILTON INVESTMENT MANAGEMENT, LTD.**<br><br>S4 23 Cr. 118 (AT) |

Petitioner Hamilton Investment Management, Ltd. ("Petitioner") files this Third-Party Petition to Adjudicate Petitioner's Interest in Forfeited Property and to Amend the Preliminary Order of Forfeiture, pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c) (the "Petition"). Petitioner seeks the return of funds in which Petitioner has a legal right, title, and/or interest ("Petitioner's Property") (as more fully defined below) and that the United States Government (the "Government") improperly seized as part of an order of forfeiture entered into with Defendant Yvette Wang ("Defendant Wang"). Specifically, Petitioner's Property was improperly seized by the Government when the Government seized all the funds in the Accounts (as more fully defined and described below). However, any order of forfeiture reaching the funds in the Accounts was unlawful and improper as Defendant Wang has no legal right, title, or interest in the Accounts or the funds therein. The Forfeiture Order[1] is therefore rendered invalid as to Petitioner's Property because the right, title, or interest in Petitioner's Property was vested in

---

[1] Reference is to the Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (the "Forfeiture Order") that this Court entered on January 7, 2025, with consent from Defendant Wang. ECF No. 488.

1

Petitioner rather than Defendant Wang, and was superior to any right, title, or interest of Defendant Wang at the time of the commission of the acts which gave rise to the Forfeiture Order. As such, this Court should amend the Forfeiture Order to remove Petitioner's Property from the Forfeiture Order and order that the Government immediately return Petitioner's Property to Petitioner. In support of Petitioner's claim, Petitioner respectfully states as follows:

I.   **PRELIMINARY STATEMENT**

It appears that Petitioner's Property – the funds in the Accounts – was purely "collateral damage" in the Government's seizure of assets prior to its prosecution of Defendant Wang and Miles Guo ("Defendant Guo"). Since the seizure of the Accounts in the Fall of 2022 and Spring of 2023, there has never been any explanation as to how funds in the Accounts are related to any of the offenses to which Defendant Wang pled guilty, a necessary prerequisite to a valid forfeiture order under the law. There was never any showing that any proceeds of any unlawful activity to which Defendant Wang pled guilty were ever deposited in the Accounts; no showing that any proceeds of such activity were ever commingled with Petitioner's Property; and, indeed, no showing that Defendant Wang ever had anything to do with the Accounts.

As will be shown below, Petitioner is the named owner on the Accounts and thus has a vested, legal, right, title and interest in the funds therein – Petitioner's Property – and Petitioner's Property cannot be seized by the Government in this case. Neither Defendant Wang, nor the Government who now stands in her shoes, has ever demonstrated that they have any interest whatsoever in Petitioner's Property. While Defendant Wang consented to the forfeiture of "all her right, title, and interest" in the Accounts (and thus, Petitioner's Property) in the Forfeiture Order (ECF No. 488 at 2-3), Defendant Wang never had such "right, title, and interest" in the Accounts or any funds therein – she was not a signatory on the Accounts, she never deposited money into the Accounts, and did not otherwise have any control over the Accounts. It is axiomatic that

2

Defendant Wang cannot forfeit property that she does not own, and in which she has no interest. In fact, it appears that the Court never established that Petitioner's Property is even subject to forfeiture in the first instance, as required by Fed.R.Crim.P. 32.2.(b)(1)(A).

For all the foregoing reasons, and for the reasons demonstrated below, Petitioner respectfully requests that this Court: (1) grant this Petition; (2) amend the Forfeiture Order to exclude Petitioner's Property; (3) order the immediate return of Petitioner's Property to Petitioner, less any funds that were returned to other petitioners seeking the return of their investment directly; (4) order that Petitioner is entitled to recover Petitioner's attorneys' fees and costs incurred in connection with this Petition and grant Petitioner leave to submit an application for such attorneys' fees and costs; and (5) grant such and other relief that is necessary and just.

## II.     BACKGROUND FACTS

### A.   Background on Petitioner

1. Petitioner is an investment management company registered in the British Virgin Islands.

2. Petitioner is regulated by the Financial Services Commission of the British Virgin Islands. In addition, it is also required to register in the Cayman Islands Monetary Authority to manage the regulated funds in the Cayman Islands.

3. Petitioner is a technology-focused, value-oriented investment management firm serving institutional and high net worth investors who invest in a broad spectrum of asset classes. Petitioner adopts a multi-strategy approach to investing in order to generate an optimal risk-return profile while ensuring that it captures the most compelling investment opportunities across different investment products and geographical markets.

4. In view of the above, Petitioner was appointed to provide investment management services for the Hamilton Opportunity Fund SPC ("Hamilton Opportunity Fund") and its

segregated portfolios.

5. Hamilton Opportunity Fund is a Cayman Islands Segregated Portfolio Company operating as a mutual fund and registered with the Cayman Islands Monetary Authority under Section 4(3) of the Mutual Funds Act (Revised) of the Cayman Islands.

6. In order to maintain independence and the highest industry standard, Petitioner, as the fund manager, engaged NAV Fund Services, the largest fund administrator in the world, to be its fund administrator to be responsible for all the customer on-boarding, Know-Your-Customer ("KYC") and Anti-Money-Laundering ("AML") checks for all its customers, accounting and fund administration works. The fund managers only focus on selection and investment of investment products.

7. The fund managers employed by Petitioner have decades of experience in the sector and adhere to the highest compliance and investment standard.

8. Petitioner has investment management agreements with each of the segregated portfolios of Hamilton Opportunity Fund, charges annual management fees based on the market value of each portfolio, and shares in the profits when the segregated portfolio funds are profitable. The fee rates charged are either the same as the market standard (which is normally 2% annual fees on the total value of the portfolio and 20% profit sharing) or substantially lower than the market rates.

9. The Accounts that are the subject of this Petition were Petitioner's operating accounts.

### B. The Seizure of the Accounts

10. The Government seized funds from two of Petitioner's bank accounts. The first bank account seized by the Government is as follows:

$48,230,709.62 in United States currency formerly on deposit in account number 509003 0288 at Silvergate Bank, held in the name of "Hamilton Investment Management, Ltd." and seized by the Government on or about September 18, 2022 (23-FB 1-000072)

Original Forfeiture Order[2] at 3; Forfeiture Order at 3. The second bank account seized by the Government is as follows.

$1,187,278.87 in United States currency formerly on deposit in account number MBl10171-0000 at Mercantile Bank International, held in the name of "Hamilton Investment Management Ltd." and seized by the Government between on or about October 16, 2022, and on or about March 10, 2023 (23-FBl-000184)

Original Forfeiture Order at 4; Forfeiture Order at 3. Hereinafter, these two accounts are referred to as the "Accounts."

### C. The Criminal Case of Defendant Wang and Defendant Guo

11. On March 6, 2023, the Government filed an indictment against Defendant Wang, Defendant Guo, and a third defendant, William Je, who has never been arraigned. ECF No. 2.

12. On May 3, 2024, the Government filed a superseding information (the "Superseding Information") against Defendant Wang. ECF No. 325. The Superseding Information charged Defendant Wang with one count of Conspiracy to Commit Wire Fraud (Count I) (Superseding Information at 1-2) and one count of Conspiracy to Commit Money Laundering (Count II) (Superseding Information at 2-4). The Superseding Information also contained a Forfeiture Allegation (the "Forfeiture Allegation"). Superseding Information at 4.

13. On the same day, May 3, 2024, Defendant Wang pled guilty to Count I and Count II as charged in the Superseding Information.

14. Also on May 3, 2024, this Court entered the Original Forfeiture Order. ECF No.

---

[2] Reference is to the Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment ("Original Forfeiture Order") entered by this Court on May 3, 2024, as consented to by Defendant Wang. ECF No. 329.

329.

15. In the Original Forfeiture Order, Defendant Wang consented to forfeit, "all *her* right, title, and interest in" certain assets, including the Accounts, because such property purportedly "constitute[ed] proceeds of the offenses charged in Count One that the Defendant personally obtained and/or property involved in offense charged in Count Two of the [Superseding] Information." Original Forfeiture Order at 2-6 (emphasis added).

16. Defendant Guo did not plead guilty to any of the offenses charged against him. Accordingly, a jury trial was held between May 22, 2024 and July 16, 2024 (the "Guo Trial"). On July 16, 2024, the jury found Defendant Guo guilty of racketeering conspiracy, conspiracy to commit wire fraud, conspiracy to commit money laundering, conspiracy to commit securities fraud, securities fraud, wire fraud, and money laundering. ECF No. 395. As of the date of this Petition, Defendant Guo has not yet been sentenced.

17. On January 6, 2025, Defendant Wang was sentenced.

18. On January 7, 2025, this Court entered the Forfeiture Order. ECF No. 488. As it pertains to Petitioner, the Forfeiture Order is substantially similar to the Original Forfeiture Order in all material respects. In the Forfeiture Order, Defendant Wang consented to forfeit, "all *her* right, title, and interest in" certain assets, including the Accounts, because such property purportedly "constitute[ed] proceeds of the offenses charged in Count One that the Defendant personally obtained and/or property involved in offense charged in Count Two of the [Superseding] Information." Forfeiture Order at 2-11 (emphasis added).

### III. ARGUMENT

19. In an ancillary criminal forfeiture proceeding pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c)(1), this Court must determine, by a preponderance of the evidence, whether a petitioner has a legal right, title, or interest in the property to be forfeited,

and whether such right, title, or interest renders the order of forfeiture invalid, in whole or in part, because such interest was vested in the petitioner rather than the defendant, or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property. *See* 21 U.S.C. § 853(n)(6)(A).

20.     Here, Petitioner has a legal right, title, or interest in Petitioner's Property pursuant to 21 U.S.C. §853(n)(6)(A) by virtue of being the named account owner of the Accounts and by virtue of having full dominion and control over the funds therein. Moreover, Petitioner's interest in Petitioner's Property was both vested in Petitioner and was superior to any right Defendant Wang had in Petitioner's Property because Defendant Wang had *no* legal right, title or, interest in Petitioner's Property. In other words, Defendant Wang could not forfeit her interest in the Accounts because she had no interest that was properly subject to criminal forfeiture. Accordingly, the Forfeiture Order should be modified to remove Petitioner's Property, and Petitioner's Property should be returned to the Petitioner.

**A.   The Government Failed to Demonstrate that the Funds in the Accounts Were Properly Subject to Forfeiture in the First Instance, Making the Forfeiture Order Improper as to Such Funds**

21.     The Government has no legal cause to retain Petitioner's Property because the Government has failed to present any evidence to demonstrate that Petitioner's Property constitutes forfeitable property as required by Fed.R.Crim.P. 32.2(b)(1)(A).

22.     "When the government seeks to obtain an order of forfeiture, 'Federal Rule of Criminal Procedure 32.2(b)(1) ... requires the sentencing court to determine what property is subject to forfeiture under the applicable statute.'" *United States v. Watts*, 786 F.3d 152, 172 (2d Cir. 2015) (citing *United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir.2007)). Pursuant to Fed.R.Crim.P. 32.2, "if the government seeks forfeiture of specific property, the court *must* determine whether the government has established the requisite nexus between the property and

7

the offense." Fed.R.Crim.P. 32.2(b)(1)(A) (emphasis added); *U.S. v. Watts*, 786 F.3d at 172. "At various points in the proceedings, ***the government bears the burden of proving this legal conclusion*** to varying degrees of certainty: as a matter of probable cause at a post-indictment hearing. . .or by a preponderance of the evidence at a bench trial or before a jury." *Id.* (emphasis added) (internal citations omitted). "Only if the government meets the relevant legal threshold, however, may the property in question be considered 'subject to forfeiture' in any legal sense. Prior to that, while the government has simply announced its intent to seek forfeiture through the indictment, the property is seen merely as 'potentially forfeitable' . . . or 'potentially subject to forfeiture.'" *Id.* (internal citations omitted).

23. This means that before the court even reaches the question of whether the petitioner is entitled to the return of the property under §853(n), it is necessary to determine if the property in dispute is actually forfeitable in the first instance. If not, the government had no statutory authority to seize the property. If the property was improperly seized, the government must return the accounts seized regardless of whether the claimant can meet the criteria set forth in §853(n). *See e.g. United States v. Delco Wire & Cable Co.*, 772 F. Supp. 1511, 1518 (E.D.PA, 1991).

24. A full and complete Fed. R. Crim. P. 32.2(b)(1)(A) inquiry is critical to the fair administration of justice. The entire forfeiture system rests upon the supposition that a court has conducted an inquiry and determined that the property is subject to forfeiture. In enacting ancillary proceeding statutes, Congress chose to place the burden of proof on the third-party during an ancillary proceeding, since "the United States will have already proven its forfeiture allegations in the criminal case beyond a reasonable doubt." S. REP. 98-225, 209, 1984 U.S.C.C.A.N. 3182, 3392.

25. In this matter, there has never been a determination that there exists a nexus

between the Accounts and any of the offenses with which Defendant Wang was charged (and to which she pled guilty), and, as a result, Petitioner is forced to file this Petition.

26.     As to Count I, the Forfeiture Allegation states that, "[a]s a result of committing the wire fraud offense alleged in Count One of this Superseding Information, YVETTE WANG, a/k/a "Yanping" a/k/a "Y," the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section[] 981(a)(1)(C)[3]. . .and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense." Superseding Information at 4. The Government must prove the elements of forfeiture under 18 U.S.C. § 981(a)(1)(C) by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). Moreover, "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

27.     The record simply does not contain evidence sufficient to determine that the funds in the Accounts are, or were derived from, proceeds traceable to Defendant Wang's conspiracy to commit wire fraud. The Superseding Information alleges that "[f]rom at least in or about 2018 until at least on or about March 15, 2023, coconspirators made false representations to investors that they would receive stock in exchange for their investments in GTV, the Himalaya Farm Alliance organization, and GClubs, and that they would receive cryptocurrency in exchange for their investments in the Himalaya Exchange [(the "Fraud Scheme")]. Through the [Fraud Scheme],

---

[3] 18 U.S.C. § 981(a)(1)(C) provides that "[a]ny property, real or personal, [is subject to forfeiture] which constitutes or is derived from proceeds traceable to a violation of" various specified offenses, including violations of 18 U.S.C. § 1343, wire fraud, as charged against Defendant Wang in Count I.

9

YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendant, and her coconspirators, including Miles Guo, induced investors to invest more than $1 billion into entities Guo controlled." Superseding Information at 2. There are no allegations in the Superseding Information regarding Defendant Wang depositing any proceeds from the Fraud Scheme into the Accounts. Similarly, there are no allegations in the Superseding Information that as a result of the Fraud Scheme, any investors deposited money into the Accounts.

28.     Finally, there was no relevant evidence during Defendant Guo's trial about the Accounts either. There was no evidence regarding whether any of the proceeds of the Fraud Scheme were ever deposited into the Accounts, nor, for that matter, whether Defendant Wang ever deposited *any* money into the Accounts. Simply put, the record does not indicate that there is a nexus between the Accounts and Defendant Wang's wire fraud charge. There is insufficient evidence to determine that the Government met its burden of showing that the appropriate nexus exists for forfeiture of the Accounts to be proper, and the Court has not properly adjudicated otherwise.

29.     As to Count II, the Forfeiture Allegation states that, "[a]s a result of committing the money laundering offense alleged in Count Two of this Information, YVETTE WANG, a/k/a "Yanping" a/k/a "Y," the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1)[4], any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense." Superseding

---

[4] 18 U.S.C. § 982(a)(1) provides that "[t]he court, imposing sentence on a person convicted of an offense in violation of section 1956 [the money-laundering statute] of this title . . . shall order that the person forfeit to the United States any property, real or personal, *involved in such offense*, or any property *traceable to such property*." 18 U.S.C. § 982(a)(1) (emphasis added).

Information at 4. As to Count II, The Government "must prove the elements of forfeiture under 18 U.S.C. § 982(a)(1) by a preponderance of the evidence." *U.S. v. Beltramea*, 785 F.3d 287, 290 (8th Cir. 2015).

30. The Superseding Information alleges that Defendant Wang committed conspiracy to launder money because Defendant Wang "knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions. . .and which in fact involved the proceeds of specified unlawful activity, to wit, proceeds of the wire fraud scheme alleged in Count One of this Information." Superseding Information at 3.

31. It is unclear how the Accounts could be forfeited as a result of the money laundering charge in Count II. From the allegations, the charge of money laundering arises from Defendant Wang engaging in financial transactions with the "proceeds of the wire fraud scheme alleged in Count One." Superseding Information at 3. As argued above, the record does not contain sufficient evidence to show that the funds in the Accounts had any relation to the Fraud Scheme alleged in Count I (*see* ¶¶ 27-29, above) – there is insufficient evidence to show that such funds "constitute[d] or [were] derived from proceeds traceable to the commission of" wire fraud. *See e.g.* 18 U.S.C. § 981(a)(1)(C). As the funds in the Accounts were not, in fact, Fraud Scheme proceeds, nor were they derived from Fraud Scheme proceeds, such funds could not serve as the basis for the money laundering charge in Count II and cannot be forfeited as part of Defendant Wang's conviction for Count II.

32. The overt acts that the Government alleges to support the money laundering charge further fail to show how the funds in the Accounts can be subject to forfeiture. In the Superseding Information, the Government sets forth two acts evidencing money laundering. Superseding

11

Information at 3. Although the Government states that these two overt acts were "among others" that Defendant Wang committed in furtherance of the alleged conspiracy to launder money (Superseding Information at 3), these other acts are not stated.

33. First, per the Superseding Information, on May 20, 2020, Defendant Wang opened a bank account in the name of GTV, which, notably, the Accounts was *not*. Superseding Information at 3. On June 2, 2020, Defendant Wang transferred approximately $200 million to that account. *Id.* The funds transferred into the GTV account were from a JP Morgan Chase Bank account held by Saraca Media, Group, Inc. ("Saraca") (Guo Trial, 05/31/2024, 953:25-954:4; Guo Trial, 06/26/2024, 4359:1-14), *not* from the Accounts. There was never any testimony that any money from the Accounts ever went into the Saraca JP Morgan Chase Bank account to then be transferred to the GTV account cited in the Superseding Information.

34. The second act the Government alleges is that "on or about June 5, 2020," Defendant Wang "authorized a wire transfer of $100 million from GTV's parent company, Saraca Media, Group, Inc., to a high-risk hedge fund, for the benefit of Saraca and its ultimate beneficial owner, Guo's son." Superseding Information at 3-4. First, this plainly alleges that the money was transferred from a Saraca account, which the Accounts were demonstrably not. Also, again, there was never any testimony at Guo's Trial that any money from the Accounts ever went into a Saraca account.

35. As seen from the above argument, there are no allegations or testimony regarding the Accounts whatsoever. The *only* concrete reference in the record as to the Accounts is Defendant Wang's consent to forfeit these funds. However, "a defendant's consent to forfeiture [does not] abrogate the requirement that a nexus exist between the property sought for forfeiture and the conviction of offense." *Beltramea*, 785 F.3d at 291. As the Eighth Circuit stressed, "[t]he district

court had an independent duty to *ensure* that the required nexus exists." *Id.* (emphasis added).

36. Here, there are no factual allegations in the Superseding Information, the Original Forfeiture Order or the Forfeiture Order as to an alleged nexus between the Accounts and the offenses to which Defendant Wang pled guilty.

### B. Petitioner Has Interest in Petitioner's Property Because It is the Named Owner of the Accounts

37. Here, Petitioner has a legal interest and right in the funds in the Accounts by virtue of being the named owner of the Accounts and having complete dominion and control over the funds in the Accounts. Thus, Petitioner has standing to challenge the Forfeiture Order.

### C. Petitioner Has a Superior Interest in the Petitioner's Property

38. Petitioner's interest in Petitioner's Property is superior to any interest that the Government or Defendant Wang may have in Petitioner's Property.

39. 21 U.S.C. § 853(n) is clear that, in addition to Petitioner's interest in the forfeited property, that Petitioner must demonstrate, by a preponderance of the evidence, that Petitioner's interest "renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner *rather than the defendant* or was superior to any right, title, or interest *of the defendant* at the time of the commission of the acts which give rise to the forfeiture of the property under this section." 21 U.S.C. § 853(n)(6)(A) (emphasis added).

40. Here, as set forth above, the Government never met their burden of proof to show that the Accounts were property that would be properly subject to forfeiture in Defendant Wang's case. As such, the Government never demonstrated that its interest in the Accounts is superior to the Petitioner's.

41. To be sure, "[u]nlike a civil forfeiture action, which is an *in rem* proceeding brought against the property sought to be forfeited, criminal forfeiture is an *in personam* proceeding. . .[it]

is a sanction against the individual defendant rather than a judgment against the property itself. . . Thus, in a criminal forfeiture proceeding, the Government acquires only the *defendant's* interest in the property. Because criminal forfeiture follows the defendant as part of his penalty, the Government may seize any of the *defendant's* property that is traceable to the proceeds of criminal conduct." *U.S. v. Bailey*, No. 1:11CR10, 2012 WL 569744, at *14 (W.D.N.C. Feb. 22, 2012) (internal citations omitted) (emphasis in original).

42. It is axiomatic that neither the Government nor Defendant Wang can argue that they have a superior interest in a property in which they never had an interest. Accordingly, Petitioner's interest in the Accounts is superior to that of Defendant Wang and the Government.

### D. Petitioner is Entitled to Costs and Attorneys' Fees

43. Petitioner has been required to retain legal counsel and has incurred costs to file this petition asserting Petitioner's right to Petitioner's Property and to challenge the forfeiture of Petitioner's Property. Upon prevailing in this proceeding, Petitioner reserves all rights to recover attorneys' fees and costs incurred in connection with this Petition and may recover Petitioner's costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Federal courts have consistently held that § 853(n) proceedings are civil for the purposes of allowing a successful claimant to collect attorney's fees under the EAJA. *See United States v. Cox*, 575 F.3d 352, 355 (4th Cir. 2009); *United States v. Douglas*, 55 F.3d 584, 588 (11th Cir. 1995); *U.S. v. Bailey*, 2015 WL 1893610 at *20 (W.D.N.C. Apr. 27, 2015).

### IV. CONCLUSION

44. For the reasons stated above, Petitioner has an interest in Petitioner's Property, which renders the Forfeiture Order invalid as to such property. *See e.g.* 21 U.S.C. § 853(n)(6)(A). Defendant Wang does not have any right, title, or interest in Petitioner's Property, and never did. Petitioner has proven, and can prove at any necessary hearing, by preponderance of evidence that

the Forfeiture Order needs to be amended to exclude Petitioner's Property.

45.     Therefore, Petitioner respectfully requests that this Court: (1) grant this Petition; (2) amend the Forfeiture Order to exclude Petitioner's Property; (3) order the immediate return of Petitioner's Property to Petitioner; (4) order that Petitioner is entitled to recover Petitioner's attorneys' fees and costs incurred in connection with this Petition and grant Petitioner leave to submit an application for such attorneys' fees and costs; and (5) grant such and other relief that is necessary and just.

Dated: April 7, 2025                                                            Respectfully submitted,

/s/ Jeffrey S. Gavenman
Jeffrey S. Gavenman, Esq.
Jeremy W. Schulman, Esq.
SCHULMAN BHATTACHARYA, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, MD 20852
(240) 356-8550
jgavenman@schulmanbh.com
jschulman@schulmanbh.com

/s/ Paul W. Butler
Paul W. Butler, Esq.
BUTLER LEGAL STRATEGIES
1201 Connecticut Avenue, NW, Suite 531
Washington, D.C. 20036
paul@butlerlegalstrategies.com

*Counsel for Petitioner*

## ATTESTATION AND OATH

Pursuant to 21 U.S.C. § 853(n)(3), I attest and declare under penalty of perjury that my claim to this property is not frivolous and that the information provided in support of this claim is true and correct, to the best of my knowledge and belief.

HAMILTON INVESMENT MANAGEMENT, LTD.

By: *E. Masud* (signature)

Name: Ehsan Masud

Title: Chief Financial Officer

Date: 7th April 2024