UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

United States of America,

Plaintiff,

v.

Ho Wan Kwok, a/k/a "Miles Guo," et al.,

Defendants.

**Case No. 1:23-cr-00118 (AT)**

## I. BACKGROUND AND IDENTITY DECLARATION

1. Petitioner's Identity and Appearance.

   Petitioner ╳╳╳╳╳ (HID: ╳╳╳╳╳), appearing pro se, pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c), respectfully petitions the Court to adjudicate his interests in certain property identified in the forfeiture proceedings in this case. Petitioner simultaneously requests privacy protection under Fed. R. Crim. P. 49.1, and will provide an unredacted identity declaration under seal if the Court so directs.

2. Declaration of Non-Victim Status and Investment Purpose.

   Petitioner is not a victim in this criminal matter and does not invoke any rights under the Crime Victims' Rights Act, 18 U.S.C. § 3771. Petitioner appears solely as a third-party property claimant under 21 U.S.C. § 853(n). Petitioner invested lawfully and in good faith for long-term value; funds came from legitimate sources and, at the time of each transaction, Petitioner had no knowledge—and no reason to believe—that the property was subject to forfeiture. Petitioner seeks only the adjudication and exclusion of Petitioner's property interests from any forfeiture orders, consistent with § 853(n)(6).

For details on unauthorized CVRA filings, see Section II.

## II. STATEMENT OF POSITION.

Petitioner states as follows:

1. Petitioner has never applied for any refund or criminal restitution, and does not seek such relief in this proceeding.

2. Petitioner's investments were lawful and made in good faith for long-term value; funds came from legitimate sources and, at the time of each transaction, Petitioner had no reason to believe the property was subject to forfeiture.

3. Petitioner seeks an adjudication under 21 U.S.C. § 853(n) excluding Petitioner's property from any forfeiture orders, and such corresponding relief as is necessary to effectuate that exclusion with respect to account balances held at Himalaya Exchange/Himalaya International entities.

4. The closure and freezing of Petitioner's accounts have caused pecuniary loss; Petitioner reserves all civil claims for damages against any responsible party, without prejudice to this petition.

5. Petitioner remains a long-term investor and requests protection of Petitioner's rights as a bona fide purchaser for value under § 853(n)(6).

6. Petitioner proceeds solely under § 853(n) and does not consent to any designation as a CVRA "victim," nor to any representation or filing on Petitioner's behalf without Petitioner's informed written consent. Any purported authority implied from prior mass registrations or web forms—beyond asset-recovery vis-à-vis DoJ/SEC—is revoked. Petitioner requests removal from any CVRA notice or restitution lists.

7. As to any third-party submissions affecting the same asset pools, Petitioner requests that they be supported by competent evidence of (i) standing/ownership, (ii) actual authority to represent the listed claimants, and (iii) the absence of fraud, coercion, or conflicts; to the extent mass counsel or trustees rely on procedurally defective registrations or conflicted solicitations, Petitioner asks the Court to scrutinize and, where appropriate, disregard or strike such submissions as to assets in which Petitioner claims a superior interest under § 853(n)(6).

8. Petitioner reserves all civil and disciplinary remedies against any party that misuses Petitioner's data or purports to act for Petitioner without informed written consent.

**III. PROPERTY INTERESTS (SPECIFIC ASSETS & EXHIBITS)**

Guiding note. Petitioner asserts interests only in identifiable property potentially implicated by the forfeiture pools (e.g., Himalaya Exchange HDO/HCN balances and reserves; G-Club related balances; programmatic deposits such as "A10"). Pure donations are listed for background and good-faith context only and are not asserted as § 853(n) property unless Petitioner later ties them to a seized account.

*A. Himalaya Exchange Digital Assets (HDO/HCN) — Asserted*

HID: ☒☒☒☒☒

Deposits (Top-Ups) to HEX Account (USD; credited as HDO at par) — evidence presently limited to a single portal screenshot because the HEX site is offline due to government action; Petitioner will supplement when access is restored. See Exhibit 2.H-1:

1. June 4, 2021 — USD 9,965 (deposit/top-up)

2. September 29, 2021 — USD 7,722 (deposit/top-up)

3. October 29, 2021 — USD 1,945 (deposit/top-up)

4. November 10, 2021 — USD 9,945 (deposit/top-up)

5. April 5, 2022 — USD 14,945 (deposit/top-up)

6. February 3, 2022 — USD 29,489 deposit via counter-trade; credited to HEX account as HDO — Exhibit 2.H-2 (HEX Transaction Details).

**Record-Limitation Note:** Because the U.S. Government's actions have taken the HEX customer portal offline, Petitioner cannot download full statements or CSVs. Petitioner therefore submits contemporaneous account screenshots (Exhibit 2.H-1 and Exhibit 2.H-2) as the best available evidence. See Fed. R. Evid. 1004 (original not required when unobtainable without bad faith). Petitioner stands ready to supplement with native statements if access is restored.

*B. A10 Program Investments (via HEX) — Asserted*

1. October 24, 2022 — USD 6,000 — Exhibit 2.A10-1

2. October 30, 2022 — USD 20,127 — Exhibit 2.A10-2

3. February 10, 2023 — USD 20,011 — Exhibit 2.A10-3

**Note:** The above three transfers were all made from Petitioner's HEX personal account to the A10 project investment account FMVLIMITED@proton.me. Because the HEX portal is presently offline due to government action, contemporaneous screenshots are provided; Petitioner will supplement with additional statements when access is restored.

*C. G-Club Membership — Asserted*

1. April 28, 2021 (initial membership funding) — USD 10,045 — Exhibit 2.Gclub-1 (Bank transfer to the designated account; transfer receipt)

2. February 21, 2022 (upgrade funding) — HDO 10,000 (USD 10,000) — Exhibit 2.Gclub-2 (In-platform transfer from Petitioner's HEX wallet to the G-Club HEX account, transfer receipt)

*D. VOG — Asserted*

1. 2021-2022 — USD 11,000 total — Exhibit 2.VOG-1 (Three transfers in the amounts of USD 3,600, USD 2,700, and USD 3,800 respectively, all made via bank transfer)

## IV. GROUNDS FOR RELIEF

*A. Unauthorized Expansion of Scope by Attorney Bradford L. Geyer (Alleged "Bait-and-Switch")*

1. Critical Issue: Alleged Bait-and-Switch Legal Representation

   **Original Promise vs. Actual Action:**
   1. On September 25, 2023, Petitioner received an email from Himalaya Exchange

4

recommending Bradford L. Geyer as an "independent lawyer" (see Exhibit 3-A, email screenshot).

2. The email stated that the engagement was "in connection with actions by the U.S. Department of Justice (DOJ) and the U.S. Securities and Exchange Commission (SEC)" and that counsel would "seek independent legal advice and pursue legal recourse to protect and recover your asset."

3. The email directed Petitioner to https://himalayarestoration.com/ to register with Geyer's services and to provide Petitioner's HID: ⨯⨯⨯⨯⨯ (however, this website is now no longer accessible).

4. Relying on these representations, Petitioner signed a retainer believing counsel would take legal action against the DOJ/SEC, as explicitly described in the email. Petitioner's reasonable understanding—and the scope to which Petitioner consented—was SEC/DOJ asset-recovery only.

5. To solicit more authorizations, Mr. Geyer hosted a December 8, 2023 livestream titled "Launch Legal Action Against the Department of Justice." Notably, SEC was no longer mentioned. (YouTube: https://www.youtube.com/watch?v=IHwVX8zKkg8; see Exhibit 3-B, subtitle/transcript.)

6. However, Geyer NEVER filed any lawsuit against the SEC or DOJ as promised. He only filed a Rule 41(g) motion (a standard procedure requesting the return of property), not a genuine legal challenge.

7. Mr. Geyer then turned to filings in the criminal matter against Mr. Miles Guo. Initially he made submissions under 21 U.S.C. § 853(n) on behalf of customers as non-victim third-party claimants.

8. Subsequently—without Petitioner's authorization and contrary to Petitioner's intent—he invoked 18 U.S.C. § 3771 (CVRA) to intervene as though claimants were criminal "victims" seeking restitution. (See, e.g., ECF No. 478 (Nov. 25, 2024).)

In summary:

1. The record reflects a step-by-step shift in representation goals, fundamentally inconsistent with both the original authorization and initial representations to customers.

2. Petitioner did not provide informed, written authorization for Mr. Geyer or FormerFedsGroup to appear in this criminal case, invoke CVRA, or seek criminal restitution on Petitioner's behalf.

3. On information and belief, this exceeded the scope of any retainer and repurposed client information for objectives contrary to the stated SEC/DOJ asset-recovery intent.

4. No adequate notice or consultation was provided before shifting from the promised SEC/DOJ action → to § 853(n) filings → to CVRA "victim" submissions. A one-time web intake cannot confer blanket authority for unrelated criminal-case filings.

5. Petitioner's position is clear: Petitioner sought action against SEC/DOJ, not participation in U.S. v. Kwok as a CVRA "victim." Petitioner does not seek refunds or "victim" compensation; Petitioner asks that reserves be released/unfrozen so Himalaya Exchange can restore Petitioner's account balances and resume normal operations.

6. The government's broad seizures have prevented the Exchange from functioning, harming bona fide investors like Petitioner.

Accordingly, Petitioner objects to—and moves to strike—any filing by Mr. Geyer that purports to represent Petitioner or to classify Petitioner as a CVRA "victim." Mr. Geyer lacks authority to act for Petitioner in this matter; any such authority is expressly denied and, to the extent previously inferred, is hereby revoked. Petitioner further requests that the Court direct the Clerk and the United States Attorney's Office to disregard any submission by Mr. Geyer that lists Petitioner's name or HID, and to note on the docket that Petitioner proceeds solely pro se under 21 U.S.C. § 853(n). Mr. Geyer should not be permitted to participate in this case with respect to Petitioner's interests in any capacity.

*B. Invalidity of Connecticut Bankruptcy Orders and No Preclusive Effect as to Petitioner*

**Procedural and Substantive Defects. Certain third-party claimants invoke orders from the U.S. Bankruptcy Court for the District of Connecticut, Case No. 22-50073, to reach pools of assets at issue here. As to Petitioner—a non-party to that bankruptcy—those orders (i) have no preclusive effect and (ii) should be accorded no weight because they suffer from material due-process and adjudicative deficiencies:**

1. Non-party / No Notice / No Opportunity to Be Heard. Petitioner was not a party to the Connecticut bankruptcy, received no constitutionally sufficient notice, and had no meaningful opportunity to be heard as to title to the assets Petitioner now claims. A judgment cannot bind strangers to the litigation, and due process forbids depriving property without notice and an opportunity to be heard (Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950); Taylor v. Sturgell, 553 U.S. 880, 892-93 (2008); In re Motors Liquidation Co., 829 F.3d 135, 158-60 (2d Cir. 2016)). Moreover, any determination that third-party assets were "property of the estate" required a properly noticed adversary proceeding under the Bankruptcy Rules (Fed. R. Bankr. P. 7001(1)–(2)); absent such process, those orders have no preclusive effect against Petitioner and should be accorded no weight here (11 U.S.C. § 541; Richards v. Jefferson County, 517 U.S. 793, 798 (1996)).

2. Misclassification Without Proper Adversary Proceedings. Contested assets—including "G-series" interests (e.g., GTV-related equity) and Himalaya Exchange balances—were treated as the debtor's personal property without a properly noticed adversary proceeding under Part VII of the Bankruptcy Rules, without joinder of necessary parties, and without asset-specific tracing or findings as to non-debtor investors like Petitioner. But the validity, priority, or extent of a third party's interest must be adjudicated in an adversary proceeding (Fed. R. Bankr. P. 7001(1)–(2); 7019/Fed. R. Civ. P. 19), and property held for others is not property of the estate (11 U.S.C. § 541(a), (d); United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.10 (1983); Begier v. IRS, 496 U.S. 53, 59-60 (1990)). Orders entered without

7

constitutionally sufficient notice and an opportunity to be heard cannot bind nonparties (Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950); In re Motors Liquidation Co., 829 F.3d 135, 158-60 (2d Cir. 2016)).

3. Third-Party Property Is Not Property of the Estate. Under 11 U.S.C. § 541(a)–(d), the bankruptcy estate includes only the debtor's legal or equitable interests; property held merely in name or in trust/for the benefit of others does not enter the estate beyond bare legal title. See Begier v. IRS, 496 U.S. 53, 59–60 (1990); Pearlman v. Reliance Ins. Co., 371 U.S. 132, 135–36 (1962); Superintendent of Ins. v. Ochs (In re First Central Fin. Corp.), 377 F.3d 209, 217–18 (2d Cir. 2004). Assets purchased with Petitioner's funds and held for Petitioner's benefit cannot be swept into the estate by fiat or administrative convenience, because state-law property rights control whether any equitable interest ever belonged to the debtor. Butner v. United States, 440 U.S. 48, 54–55 (1979).

4. No Collateral Estoppel Against Petitioner. Petitioner was neither a party to, nor in privity with a party to, the Connecticut bankruptcy proceedings and had no full and fair opportunity to litigate any issue there. Due process generally forbids non-party preclusion, subject only to narrow exceptions not applicable here. See Taylor v. Sturgell, 553 U.S. 880, 892–905 (2008); Hansberry v. Lee, 311 U.S. 32, 40–43 (1940); Richards v. Jefferson Cnty., 517 U.S. 793, 797–805 (1996). Issue preclusion also requires identity of issue, actual litigation, and a full and fair opportunity to contest. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326–33 (1979); Montana v. United States, 440 U.S. 147, 153–55 (1979). Separately, 21 U.S.C. § 853(n) provides the exclusive and de novo forum for adjudicating third-party interests in criminal forfeiture; findings from proceedings to which Petitioner was a stranger cannot bind this ancillary court. See 21 U.S.C. § 853(k), (n); United States v. Timley, 507 F.3d 1125, 1129–30 (8th Cir. 2007); United States v. Lavin, 942 F.2d 177, 185 (3d Cir. 1991).

5. Forum of Proper Title Adjudication. In criminal forfeiture, 21 U.S.C. § 853(n) supplies the exclusive mechanism for third parties to adjudicate their interests, and Fed. R. Crim. P.

8

32.2(c) provides the ancillary procedure for a de novo determination. By statute, § 853(k) bars third parties from intervening elsewhere or filing separate actions "concerning the validity" of their claimed interests once an indictment is filed; thus, this Court—not the bankruptcy court—must determine whether Petitioner's interest is superior to forfeiture, on competent evidence and with due-process protections. See De Almeida v. United States, 459 F.3d 377, 381–83 (2d Cir. 2006) (exclusive remedy is § 853(n); Rule 41(g) and other routes barred by § 853(k)); United States v. Ribadeneira, 105 F.3d 833, 835–36 (2d Cir. 1997) (§ 853(n) is the only avenue for third-party claims to criminally forfeited property); Libretti v. United States, 516 U.S. 29, 44 (1995) (third-party rights are adjudicated in the ancillary proceeding); United States v. Timley, 507 F.3d 1125, 1129–30 (8th Cir. 2007) (ancillary proceeding is the exclusive forum and is de novo); United States v. Lavin, 942 F.2d 177, 185 (3d Cir. 1991) (same).

**Requested Rulings:** Petitioner respectfully asks the Court to:

1. Hold that the Connecticut bankruptcy orders have no preclusive effect against Petitioner.
2. Accord those orders no weight to the extent they purport to classify third-party assets as the debtor's property without adversary process and without evidence specific to Petitioner.
3. Require any claimant relying on those orders to make independent, asset-specific showings of (i) standing/ownership, (ii) tracing, and (iii) the absence of conflicts, fraud, or coercion—so that assets owned by bona fide investors are not diverted through procedurally defective shortcuts.

### C. Exclusion or Heightened Scrutiny of Claims Organized by Alleged Conspirators

1. Mass-Solicitation Concerns (Proffer).

    On information and belief, during Mr. Miles Guo's pretrial detention at MDC and continuing through trial, entities and individuals identified in Government filings as part of the "Himalaya Alliance/Himalaya Farms" network (see, e.g., ECF Nos. 382, 388, 395) publicly organized, solicited, and packaged large volumes of purported "victim" or "creditor" claims. Some solicitations invoked Mr. Guo's name or purported "call-from-jail" communications; in

9

certain instances, publicly circulated audio appears unauthenticated or AI-generated. Separately, the Bankruptcy Trustee reported substantial reductions or disallowances of mass-filed creditor claims—a pattern consistent with widespread irregularities in solicitations/registrations. Together, these facts create a serious risk that portions of those submissions stem from misinformation, coercion, or material misrepresentation rather than documented ownership.

Based on publicly available social media posts and videos that this Court can readily verify, individuals in leadership positions within the "Himalaya Alliance" network have directly:

1. Fabricated or misrepresented communications from Mr. Guo while he was detained and unable to verify or refute such claims;

2. Used these alleged "instructions from jail" to promote cryptocurrency schemes and solicit additional investments from confused investors;

3. Potentially utilized AI-generated voice technology to create false audio recordings purporting to be Mr. Guo;

4. Exploited investors' trust and confusion during Mr. Guo's absence to redirect funds for purposes unknown to the original investors;

5. Flooded social media platforms including YouTube, X (formerly Twitter), and other networks with these misrepresentations to launch cryptocurrency schemes, solicit donations, and organize fundraising campaigns—all purportedly on Mr. Guo's behalf while he was detained and unable to respond.

These activities are not hidden or speculative—they are openly conducted across public social media platforms where anyone can observe them through a simple search. The sheer volume and public nature of these solicitations, combined with their timing during Mr. Guo's detention, raises profound questions about their legitimacy.

These actions, if proven, would constitute a continuation or expansion of the alleged fraud—ironically by some of the same entities the Government identifies as part of the criminal

enterprise, yet whose victim lists the Government appears to accept at face value.

2. Legal Basis for Screening and Exclusion.

    This Court must ensure that only valid third-party property interests are recognized in an ancillary proceeding. See 21 U.S.C. § 853(n)(6); Fed. R. Crim. P. 32.2(c). Claims that are the product of fraud, lack actual authority, or rest on unauthenticated communications should be rejected. See generally Fed. R. Evid. 901 (authentication required); the Court's inherent authority to protect the integrity of its proceedings and prevent abuse of process. Where the Government has evidence that claim streams were orchestrated by entities it elsewhere links to the charged scheme, targeted disclosures to the Court (under seal if necessary) are appropriate so the Court can separate bona fide property claims from tainted submissions. To the extent the Government possesses information undermining such mass-organized claims, disclosure at least to the Court is warranted; and—consistent with Brady v. Maryland, 373 U.S. 83 (1963), and Kyles v. Whitley, 514 U.S. 419 (1995)—the Government should ensure the criminal record is not infected by undisclosed exculpatory/taint information relevant to the provenance of alleged "victim" lists.

    **Brady / Giglio / Kyles (Sealed/In-Camera) Proffer.**

    To the extent the United States and its investigating agencies possess call logs, recordings, or other materials whose authenticity bears on the provenance and credibility of mass-solicited "victim/creditor" lists, those materials may constitute Brady/Giglio information within the criminal record. Petitioner therefore requests that the Court direct the Government to make a sealed, in-camera proffer sufficient for the Court to evaluate authenticity/taint concerns without public dissemination, and to ensure the record is not infected by undisclosed exculpatory or impeachment information. See Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972); Kyles v. Whitley, 514 U.S. 419 (1995).

3. Requested Relief (Targeted and Administrable).

    Petitioner respectfully asks the Court to order the following, to ensure that only bona fide

11

third-party property interests are recognized in this ancillary proceeding:

1. Provenance & Authority Declarations: Require any attorney, trustee, or organizer who submits or sponsors mass third-party claims (including, without limitation, representatives of HEX/HDO/HCN customers or bankruptcy claimants) to file a sworn declaration under 28 U.S.C. § 1746 stating: (i) how each claimant was solicited; (ii) who obtained each signature/authorization; (iii) the specific asset(s) claimed and the tracing basis; and (iv) that no AI/deepfake, unauthenticated "jail calls," or similar materials were used to induce participation. Attach copies of signed retainers/authorizations (with Rule 49.1 redactions as needed).

2. Authentication Protocols (FRE 901): Preclude reliance on any recordings, transcripts, or purported communications attributed to Mr. Miles Guo that are not authenticated under Fed. R. Evid. 901, and bar use of such materials to support solicitation-based claim packages.

3. Targeted Government Disclosure (Sealed/In Camera if Needed): Direct the United States Attorney's Office for the Southern District of New York (USAO-SDNY) to state whether it possesses evidence that any claim streams were organized by entities identified in ECF Nos. 382, 388, or 395, or involved fraud, coercion, or material misrepresentation, and whether the Court has previously been alerted to such taint.

4. Heightened Scrutiny / Possible Exclusion: Impose heightened scrutiny—and where appropriate, exclusion—of claim packages organized by entities the Government has linked to the charged scheme unless each claimant individually establishes standing, ownership, and actual authority with competent, authenticated evidence.

5. Clarification of Petitioner's Posture: Make clear that Petitioner's claim is independent; Petitioner is not a CVRA "victim" and seeks adjudication solely under 21 U.S.C. § 853(n) based on Petitioner's own evidence of ownership.

6. **Optional Public Advisory:** Authorize a brief notice on the forfeiture docket clarifying that solicitations invoking purported "call-from-jail" communications are not court-sanctioned and that third-party claimants must rely on authenticated proof of ownership and personal authorization.

4. **Anti-Fraud Advisory & Authentication Protocol re "From-Jail" Recordings (Narrowly Tailored).**

To safeguard these proceedings and deter further tainted/mass-solicited submissions premised on unauthenticated materials, Petitioner further requests:

1. **Government Declaration (Sealed/In Camera):** Direct the United States to confer with the Bureau of Prisons and file a sealed declaration (or provide in-camera proffer) indicating whether it possesses MDC call logs/recordings corresponding to widely circulated solicitation audios and whether those public recordings are authentic, altered, or misattributed.

2. **Public Advisory (Docket Notice):** Authorize a brief advisory on the forfeiture docket clarifying that solicitations invoking purported "call-from-jail" communications are not court-sanctioned, and that third-party claimants should rely only on authenticated proof of ownership and personal authorization.

3. **Authentication Certification:** Require any mass representative/organizer to certify, under 28 U.S.C. § 1746, that (a) they did not rely on unauthenticated or AI-generated recordings to solicit claimants; (b) they obtained actual, informed authorization from each listed claimant; and (c) they will produce such authorizations and solicitation materials upon order under Rule 32.2(c).

4. **Protective Order:** Any call data/recordings provided by the Government should be used solely for authentication/disavowal purposes in these proceedings and not publicly disseminated absent further order.

### D. Clarification of Government Claim-Screening in this Ancillary Proceeding

1. Need for Transparent, Administrable Screening Criteria.

   To facilitate orderly adjudication under 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c), Petitioner respectfully requests that the United States, by and through the United States Attorney's Office for the Southern District of New York (the "USAO-SDNY"), file a short statement (under seal if necessary) describing the screening criteria it is applying (or proposes to apply) to third-party claims involving HEX/HDO/HCN-related pools—e.g., required proof of title/traceability, actual authority to file, and basic authenticity requirements. Such a statement will assist the Court in distinguishing bona fide property interests from mass-solicited or otherwise deficient submissions and will conserve judicial resources.

2. Consistency Across Related Proceedings.

   Without asking the Court to resolve issues outside this ancillary forum, Petitioner requests that the United States clarify whether, and to what extent, positions it has taken concerning mass creditor/"victim" registrations in other related matters (e.g., bankruptcy or restitution contexts) are consistent with the government's approach to third-party claims here, and to identify any material distinctions in criteria or evidentiary thresholds that would affect HEX-related pools.

3. Targeted Case-Management Measures.

   To the extent helpful to the Court, Petitioner incorporates by reference the narrow screening tools requested in IV.C.3 (individualized proof of title/authority; baseline FRE 901 authentication for materials used to solicit claims; and, if needed, a neutral protocol or limited special master for authenticity/authority/tracing). These measures are limited to ensuring that only competent, authenticated evidence is used to affect claim adjudication under § 853(n)(6).

**Reservation of Constitutional Objections.**

Without asking the Court to adjudicate broader constitutional issues in this ancillary proceeding, Petitioner expressly preserves objections under the Fifth Amendment—including due process concerns arising from restraint without individualized notice and opportunity to be heard, and Takings Clause concerns to the extent innocent property is effectively appropriated. Petitioner seeks here only the exclusion of Petitioner's property under 21 U.S.C. § 853(n); nothing herein waives Petitioner's ability to pursue appropriate constitutional or damages remedies in a separate action or proceeding, without prejudice to any other rights or remedies.

## V. PRAYER FOR RELIEF

**WHEREFORE,** Petitioner respectfully requests that the Court enter orders that:

1. Adjudicate and exclude Petitioner's property from any forfeiture order pursuant to 21 U.S.C. § 853(n)(6), and grant such further relief as necessary to effectuate that exclusion with respect to balances at Himalaya Exchange/Himalaya International entities;

2. Note on the docket that Petitioner proceeds solely under § 853(n) and is not a CVRA "victim," and strike or disregard any filing purporting to represent Petitioner or to assert CVRA rights on Petitioner's behalf without Petitioner's informed written consent;

3. Implement the case-management/screening measures described in Sections IV(C)–(D), including (i) sworn provenance/authority declarations for any mass-filed claim lists, (ii) FRE 901 authentication for solicitation materials (including any "from-jail" recordings), and (iii) targeted sealed disclosures by the USAO-SDNY sufficient to allow the Court to separate bona fide property claims from tainted submissions;

4. Hold that the Connecticut bankruptcy orders in Case No. 22-50073 have no preclusive effect against Petitioner and accord them no weight as to Petitioner's claimed assets absent proper adversary proceedings and asset-specific proof;

5. Set a schedule and, if necessary, a hearing under Fed. R. Crim. P. 32.2(c) to adjudicate Petitioner's § 853(n) interests de novo;

6. Grant privacy protection under Fed. R. Crim. P. 49.1, permitting Petitioner to file an Unredacted Identity Declaration under seal and to maintain this petition in redacted public form; and

7. Grant such other and further relief as the Court deems just and proper.

## VI. PRIVACY / SEALING REQUEST UNDER FED. R. CRIM. P. 49.1

Petitioner respectfully requests leave to:

(a) file this petition in redacted public form (redacting name, address, email, phone, and account numbers), and

(b) file, under seal, a short Unredacted Identity Declaration attaching Petitioner's full legal name, contact information, and copies of government ID (with DOB/ID numbers redacted to the minimum required).

Given safety and harassment concerns, this limited sealing is narrowly tailored and consistent with Rule 49.1.

## VII. VERIFICATION (28 U.S.C. § 1746)

The undersigned, ☒☒☒☒☒, declares under penalty of perjury that the foregoing is true and correct to the best of Petitioner's knowledge and belief. Executed on September 6, 2025, from Valladolid, Spain.

☒☒☒☒☒ (HID: ☒☒☒☒☒)

Pro Se Petitioner

## VIII. CERTIFICATE OF SERVICE

Petitioner certifies that on September 6, 2025, Petitioner submitted this filing to the Court's Pro Se Intake for docketing. Upon docketing, the CM/ECF system will transmit a Notice of Electronic Filing (NEF) to counsel of record, which constitutes service. Accordingly, service will be effected as follows:

1. United States Attorney's Office, SDNY

    Service: Via CM/ECF NEF upon docketing by the Clerk's Office (Pro Se Intake).

2. Counsel for Defendants (Miles Guo et al.)

    Service: Via CM/ECF NEF to counsel of record.

Petitioner further certifies that the Unredacted Identity Declaration was submitted under seal to the Clerk consistent with Fed. R. Crim. P. 49.1.

 (HID: ) 

Date: September 6, 2025

## IX. EXHIBITS INDEX (ATTACH AFTER THE CERTIFICATE OF SERVICE)

1. Exhibit 1 — Unredacted Identity Declaration (FILED UNDER SEAL)

2. Exhibit 2 — Property Records (redacted public set)

    1. H-1 — HEX account portal screenshot showing top-ups (USD credited as HDO)

    2. H-2 — 2022-02-03 counter-trade deposit (USD 29,489) record/screenshot

    3. A10-1 — 2022-10-24 transfer USD 6,000 to A10 (FMVLIMITED@proton.me)

    4. A10-2 — 2022-10-30 transfer USD 20,127 to A10

    5. A10-3 — 2023-02-10 transfer USD 20,011 to A10

    6. GClub-1 — 2021-04-28 bank transfer USD 10,045 (initial membership funding)

    7. GClub-2 — 2022-02-21 in-platform transfer HDO 10,000 (USD 10,000) to G-Club HEX account

    8. VOG-1 — Three VOG bank transfers (USD 3,600; USD 2,700; USD 3,800)

3. Exhibit 3 — Authorization/Scope Evidence

1. 3-A — 2023-09-25 HEX email recommending Bradford L. Geyer; HID noted; text re DOJ/SEC asset-recovery

2. 3-B — 2023-12-08 livestream ("Launch Legal Action Against the DOJ") subtitle/transcript extract; link reference

**Respectfully submitted,**



_____ Signature

_____ Print Name

_____ Address

_____ City, State, Zip

_____ Telephone

_____ Email

*Pro Se Petitioner*

Date          September 6, 2025