IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>HO WAN KWOK, a/k/a  "Miles Guo," "Miles Kwok," "Guo Wengui," "Brother Seven," or  "The Principal,"<br><br>and<br><br>KIN MING JE, a/k/a "William Je,"<br><br>and<br><br>YANPING WANG, a/k/a "Yvette,"<br><br>Defendants. | Restitution of Seized Funds<br>Criminal No.:  23-cr-118 (AT)<br><br><br>RESPONSE OF 6,512 CLAIMANTS AS MEMBERS OF THE HIMALAYA EXCHANGE AND THEIR COUNSEL TO INDIVIDUAL MOTIONS<br><br><br>Assigned to the Honorable U.S. District Court Judge Analisa Torres, Presiding Judge |

**RESPONSE OF 6,540 CLAIMANTS AS MEMBERS OF THE HIMALAYA EXCHANGE AND THEIR COUNSEL TO INDIVIDUAL MOTIONS**

Counsel for Petitioners (Claimants), representing approximately 6,512 Himalaya Exchange's investor members, hereby address relevant portions of motions filed by individual investors seeking the return of their funds. These motions, documented in ECF Nos. 733, 734, 738 (supplemented by ECF No. 743), 740, and 744, and informed by Defendant Kwok (Guo)'s disclaimer of any property interest, ownership, or rights in the Himalaya Exchange in ECF No. 710, contain sections that appear coordinated. The Court and the government should carefully consider these motions, including their additional content. While there is no issue with individual claimants collaborating, the coordinated efforts targeting undersigned counsel involve spreading clear falsehoods. A review of the court record would reveal that these statements about counsel are untrue, despite their frequent repetition.

1

For Petitioners (Claimants) who are customers of the Himalaya Exchange hereby respond to those portions of motions which are relevant, filed by individual investors seeking the return of their funds. In ECF No. 733, and ECF No. 734 and ECF No. 738 (supplemented by ECF No. 743), and ECF No. 740, and ECF No. 744, all as informed by Defendant Kwok (Guo) disclaiming any property interest in the assets, ownership, or rights in the Himalaya Exchange in ECF No. 710, the motions of individual investors include sections which are almost certainly coordinated, along with other content, should be carefully listened to by the Court and the government. There is of course nothing wrong with individual claimants working together, except that – concerning undersigned counsel's efforts – they are evidently coordinating in spreading obvious falsehoods. Were they referring to the court record, they would know that their statements about this counsel are false, even if often repeated.

## I.   INNOCENT INVESTORS PASSIONATELY RESIST BEING CALLED VICTIMS

The ongoing cryptocurrency-related prosecutions and enforcement actions, despite the President's directives and the recent passage of the "Genius" Act by Congress, warrant careful consideration by prosecutors and the Court. Many investors in the Himalaya Exchange (HEX) have expressed frustration at being labeled as victims. A key issue is the government's apparent view that crypto exchanges like HEX were invalid under U.S. law, even when their operations may not have fallen under U.S. jurisdiction. The criminal case against Defendants Kwok (Guo), Je, and Wang rests on the assertion that they defrauded investors, yet many of these investors insist they were not defrauded and reject the victim label. There is no evidence in the record showing that HEX investors suffered losses, except for reputational and financial harm to HEX caused by the government's actions, including what has been described as overreaching into international jurisdictions, such as the British Virgin Islands, and seizing reserve or trust fund

2

assets supporting the exchange. Prosecutors have not identified specific victims or quantified their alleged losses, which is critical in this context to substantiate fraud claims.

Fraud, whether in criminal or civil contexts, requires proof of losses proximately caused by a misrepresentation that a reasonable person would rely upon. Statements by the Defendants about HEX, such as optimistic claims often considered non-actionable "puffery" in legal terms, do not constitute fraud, especially since the Defendants are not owners, executives, or in control of HEX or its parent entities. Without evidence of specific losses or reasonable reliance, the fraud allegations lack foundation.  Approximately two-thirds of HEX members, now represented by undersigned counsel, align with individual investor motions rejecting victim status. There is consensus among investors that they were not defrauded by Kwok, Je, or Wang, but rather harmed by the U.S. government's actions, which seized their investments. Counsel has consistently argued that the government's seizure of funds—intended to protect investors from alleged fraud—ironically caused the very financial harm it aimed to prevent.

The government's determination to pursue this case, particularly against Chinese dissidents, raises questions, especially in light of new legislation that may alter the legal framework governing HEX. With no convictions yet finalized, the relevance of the "Genius" Act to this case merits attention. The investors' unified rejection of victim status, coupled with the lack of evidence of fraud by the Defendants, calls into question the purpose and beneficiaries of the government's actions. Counsel appreciates the investors' clear stance against being labeled as defrauded, which should prompt careful reflection by the Court and prosecutors. The focus remains on ensuring the return of seized funds to investors, who maintain that their losses stem solely from government intervention.

## II.  NEVERTHELESS, COUNSEL CANNOT REPRESENT THE CRIMINAL DEFENDANTS

"It is confusing at times that those seeking return of seized funds by innocent bystanders do not represent Kwok (Guo), Wang or Je.  The criminal defendants have their own attorneys.  They have to have different attorneys.

However, at the same time, if Kwok, Wang and Je committed no crimes -- at least with regard to HEX -- then any basis for seizing the investors' funds evaporates.  The innocent third parties whose funds were seized have a direct, proximate cause, slam-dunk personal interest into whether Kwok, Wang, or Je are convicted falsely and in violation of due process, the rules of evidence, the standard of guilt beyond a reasonable doubt, and confusion of ambiguity and innuendo.  It affects them directly if there never was any crime, which there was not.

But neither undersigned counsel nor any other lawyer seeking the return of seized funds are legally allowed to act as the defendants' attorney.   Counsel may argue all the reasons why his clients should get their money back, but is careful to represent his clients and not intrude into the job of Kwok (Guo)'s legal representation.

## III.  SPECULATION

The complaints directed at undersigned counsel repeatedly criticize both the Bankruptcy Trustee and federal prosecutors while simultaneously promoting unfounded conspiracy theories regarding counsel's conduct. These allegations are not only baseless but also internally inconsistent, undermining the credibility of those advancing them.

For example, claims that FormerFeds' undersigned counsel's representation was orchestrated by Himalaya Farm Alliance leaders, or that clients were reclassified as "victims" without their consent, are entirely false. FormerFeds' client engagements are initiated directly by the clients themselves, are fully documented, and bear no connection to any alleged co-

4

conspirators. A mere introduction through public channels does not compromise the integrity of the attorney–client relationship. Moreover, these allegations defy logic: counsel has consistently supported the same concerns raised by complainants regarding the Trustee's conduct. If counsel were colluding with the individuals alleged, why would he align himself with the very parties criticizing him and advocate for their interests?

This contradiction is further illustrated in ECF Docket No. 742, page 8, which states:

> I also emphasize once more: this criminal case is by its nature a global RICO conspiracy. At the very time Defendant filed Motion 724, his co-conspirator Zhang Yongbing openly admitted to meeting with him at MDC [Metropolitan Detention Center in Brooklyn]. This, along with other evidence, confirms that the organized criminal activity at the heart of this case has never ceased.

This claim lacks coherence. A jail visit, standing alone, proves nothing. It is common for friends or associates to visit an incarcerated person, and such a visit reveals nothing about the content of their discussions—whether substantive or mundane. While questions about such interactions may warrant inquiry, they do not constitute evidence of wrongdoing. The statement cited may simply reflect a misstatement or poor phrasing—an occurrence familiar even to undersigned counsel. Unfortunately, many of the complaints against counsel follow this same pattern of speculation and faulty reasoning.

The structure of representation in this matter further dispels any suggestion of impropriety. The criminal defendants, the Himalaya Exchange, and related business entities are each represented by separate counsel because their interests diverge. Undersigned counsel

5

represents many, but thousands of HEX customers are not his clients. If Defendants Guo, Je, and Yang succeed in overturning their convictions, undersigned counsel's clients may recover their funds, to the extent they have not been dissipated by the Trustee. Similarly, if the Himalaya Exchange itself prevails, all Members—represented and unrepresented alike—could potentially recover funds not lost to government seizure or Trustee expenses. The existence of overlapping yet distinct interests among these parties is both expected and legitimate.

If the Himalaya Exchange succeeds, Members could potentially recover up to 100% of their investments, assuming no losses from mismanagement. However, if undersigned counsel's clients prevail independently, recovery will depend on their ability to navigate the complex claims process—a process that appears intentionally burdensome, especially for foreign-language speakers with limited familiarity with the U.S. legal system, but also because they are fearful regarding the confidentiality of their claims. Many clients may understandably choose to opt out of the standard forfeiture process due to these barriers and concerns, risking that recoverable funds will go unclaimed.

In multi-party proceedings of this magnitude, it is not unusual for interests to converge and diverge at different stages. Given the complexity of the criminal case and the large number of overseas HEX Members—many of whom are dissidents with limited legal resources—undersigned counsel believed that the justice system would benefit from hearing their voices. Counsel's participation has always been motivated by a sincere commitment to ensuring that this vulnerable community was fairly represented and that justice was served.

IV.     **WIDESPREAD FAILURE TO UNDERSTAND THE U.S. BANKRUPTCY COURT**

While neither the Court, its personnel, nor an unrelated attorney may provide legal advice

to non-clients, a well-established principle in legal ethics is that it is always appropriate to respond to such inquiries with: "I think you should consult a U.S.-based attorney about that."

One persistent misunderstanding has undermined the handling of these forfeiture cases from the beginning: non-attorneys unfamiliar with the U.S. legal system have incorrectly assumed that the U.S. Bankruptcy Court is a subordinate branch of this U.S. District Court for the Southern District of New York. This error has led to significant missteps, unnecessary complaints cluttering the Court's docket, and irrelevant discussions—all stemming from the misguided notion that this Court can issue orders to the Bankruptcy Trustee or the Bankruptcy Court in Connecticut. To this, counsel can only advise: "You should speak with a U.S.-based attorney about that."

The undersigned counsel shares the movants' concerns regarding the excessive expenses . The underlying bankruptcy petition is a Chapter 11 reorganization case, which is designed to restructure struggling entities and restore them to viability—even if that requires legal or operational changes to ensure compliance. Under Chapter 11, a qualified trustee could modify the business model to address any defects, remove legal, regulatory, or practical barriers to success, and guide the reorganized entities toward profitability. Creditors with valid claims could then receive payments over an extended timeline, with the potential for full recovery. However, the trustee failed to pursue any such reorganization. Moreover, the Chapter 11 petition improperly lists Ho Wan Kwok as an individual debtor rather than as a business entity.

That said, repeated efforts to enlist this Court in issuing orders to the bankruptcy trustee represent an inefficient use of judicial resources. Individuals concerned about these apparent violations of bankruptcy law must file appropriate motions in the U.S. Bankruptcy Court for the District of Connecticut, where the proceeding is venued—not here.

Dated:  October 22, 2025                 RESPECTFULLY SUBMITTED

/s/ Brad Geyer
Bradford L. Geyer, PHV
NJ 022751991
Suite 141 Route 130 S.  303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.Com
(856) 607-5708

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2025, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the Southern District of New York.

/s/ Brad Geyer
Bradford L. Geyer, PHV
NJ 022751991
Suite 141 Route 130 S.  303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.Com
(856) 607-5708