IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>HO WAN KWOK, a/k/a "Miles Guo," "Miles Kwok," "Guo Wengui," "Brother Seven," or "The Principal,"<br><br>and<br><br>KIN MING JE, a/k/a "William Je,"<br><br>and<br><br>YANPING WANG, a/k/a "Yvette,"<br><br>Defendants. | Restitution of Seized Funds<br>Criminal No.: 23-cr-118 (AT)<br><br><br>MOTION TO ACCEPT ANCILLARY FILING AND TO PRESERVE CLAIMS IN CONFORMITY WITH THE COURT'S AUGUST 11 ORDER (ECF No. 720)<br><br>Assigned to the Honorable U.S. District Court Judge Analisa Torres, Presiding Judge |

**MEMORANDUM OF LAW AND MOTION TO ACCEPT ANCILLARY FILING AND TO PRESERVE CLAIMS IN CONFORMITY WITH THE COURT'S AUGUST 11 ORDER (ECF No. 720)**

## I. INTRODUCTION AND CONTEXT

Pursuant to this Court's Preliminary Order of Forfeiture as to Specific Property/Money Judgment entered on August 11, 2025 (ECF No. 720) (the "Preliminary Order"), undersigned counsel respectfully moves for acceptance of this collective ancillary filing on behalf of 6,512[1]

---

[1] Counsel and his team have reviewed thousands of emails and communications with Himalaya Exchange clients and refined the lists in various categories. Thus, 6,512 members identified through HID#'s is now the final updated total now authenticated by the Himalaya Exchange through October 10, 2025 with client totals that account for 433,992,619.55 HCN, 84,689,498.20 HDO, 318,618,144.77 Deposits and 39,565,818.64 in redemptions. It is important to make clear that Counsel does not purport to speak for all HEX Members as there are many members whom he does not represent including 187 clients who have terminated the attorney client relationship. Of course, the Defendants in the criminal matter have their own separate attorneys.

1

authenticated and consent-authorized customers of the Himalaya Exchange ("HEX").

Counsel plans to also submit, on behalf of these clients, a motion contesting jurisdiction. Counsel also now files this motion and proposed order in full compliance with the framework established by this Court.

The Preliminary Order expressly provides that "upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture with respect to the Specific Property pursuant to Title 21, United States Code, Section 853(n), in which all interests will be addressed." United States v. Guo, No. 1:23-cr-00118 (AT), ECF No. 720 ¶ 7 (S.D.N.Y. Aug. 11, 2025). In faithful adherence to that directive, undersigned counsel tenders this filing and the accompanying sealed Attachment B listing each client's HID number, deposit totals, redemption amounts, and HDO/HCN balances to facilitate adjudication of all bona fide third-party ownership interests on a complete, verifiable record.

## II. GROUNDS FOR ACCEPTANCE UNDER 21 U.S.C. § 853(n) AND FED. R. CRIM. P. 32.2

### A. Compliance with the Governing Order

#### 1. Proceedings Under § 853(n)

Paragraph 7 of the Preliminary Order designates 21 U.S.C. § 853(n) as the governing statutory vehicle for adjudicating third-party claims and, notably, does not restrict the procedural mechanism by which ownership interests may be presented. *Guo*, No. 1:23-cr-00118 (AT), ECF No. 720 ¶ 7. This consolidated filing follows that mandate by presenting, in a single comprehensive petition, all claimants whose interests are authenticated through HEX's encrypted and auditable ledger system. See *McIntosh v. United States*, 144 S. Ct. 53, 58–59 (2024)

(affirming flexibility in forfeiture procedures where substantial compliance exists and no prejudice occurs; underlying decision at 59 F.4th 77 (2d Cir. 2023)).

### 2. Retention of Jurisdiction and Flexibility

Paragraph 9 provides that "the Court shall retain jurisdiction to enforce this Preliminary Order ... and to amend it as necessary, pursuant to Rule 32.2." *Guo*, No. 1:23-cr-00118 (AT), ECF No. 720 ¶ 9. That reservation of jurisdiction empowers the Court to accept alternative forms of verification when strict adherence to traditional affidavits is impossible or inequitable. *See* Fed. R. Crim. P. 32.2(c)(1)(B) (authorizing courts to "permit the parties to conduct discovery" and adjust procedures in ancillary proceedings); *United States v. Munson*, 952 F. Supp. 2d 1060, 1065 (D. Or. 2013) (allowing amendment of third-party petition post-filing to cure procedural defects under Rule 32.2); *United States v. Puig*, 419 F.3d 700, 702–03 (8th Cir. 2005) (allowing procedural adaptations via Rule 60(b) in ancillary forfeiture proceedings). This authority ensures that no innocent property owner is divested of rights for reasons unrelated to the merits of ownership. *See also United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (emphasizing that forfeiture procedures must comport with due process to avoid arbitrary deprivations); United States v. Zorrilla-Echevarria, 671 F.3d 1, 6 (1st Cir. 2011) (allowing amendment of a third-party petition in ancillary proceedings to cure defects, emphasizing fairness in adjudication).

### 3. Notice to Potential Claimants

Paragraph 6 further directs that "the Government shall send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the

ancillary proceeding." *Guo*, No. 1:23-cr-00118 (AT), ECF No. 720 ¶ 6. All clients represented herein plainly qualify as such "reasonably apparent potential claimants." Each holds verifiable balances linked to the seized accounts listed in Schedule A of the Preliminary Order, including those of Himalaya International Clearing Ltd., Himalaya International Reserves Ltd., and affiliated entities.

Counsel respectfully submits that the safest, most efficient, and legally sound method of satisfying the Court's notice and verification objectives is through the existing KYC and Jumio facial-recognition data already maintained by HEX. That information—collected in compliance with international "Know Your Customer" and anti-money-laundering standards and stored in encrypted form—remains available for Government review under secure, Court-approved conditions.[2]

By contrast, compelling these foreign investors—many of whom are Chinese dissidents—to file personal data or affidavits through public channels such as Forfeiture.gov would expose them to doxxing, political retaliation, and identity-theft risks. Reliance on the authenticated KYC/Jumio dataset therefore best reconciles the Court's notice directive with due process, victim protection, and data-security principles. See *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314–15 (1950) (holding that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties" without imposing undue burdens or risks);

---

[2] Claimants' counsel has repeatedly offered to make all relevant information available for Government review in a secure environment. These offers have been extended through phone calls, emails, and court pleadings. Although the Government has not yet responded—consistent with its typical practice of determining procedural mechanics at a later stage—claimants emphasize that this information has been constructively provided in the present and prior filings. It remains accessible for secure verification against HEX's source data, corroborated by bank account records already in the Government's possession. HEX members underwent a rigorous "Know Your Customer" (KYC) process, including identity verification and banking history review, as audited by Mazars LLP. Given the unique humanitarian considerations in this case, such comprehensive documentation obviates the need for individual filings that could inadvertently expose clients to doxxing risks.

*United States v. Nasri*, 119 F.4th 1172, 1183–85 (9th Cir. 2024) (applying due process to require constructive control over foreign assets in forfeiture proceedings to ensure effective notice for claimants abroad); *United States v. Huntington Nat'l Bank*, 682 F.3d 429, 435 (6th Cir. 2012) (requiring direct notice to known third parties in forfeiture proceedings to satisfy due process). Furthermore, the DOJ has failed to notify many individuals despite knowing these facts about effective notice. Without a protective order, obtaining email information from HEX was not possible for notification. The DOJ had all banking records and by default customer information, yet no one was notified. The DOJ is aware of this action but has still not given notice to counsel as the clients' lawyer.

### B. Functional Equivalence of Fee-Agreement Authorizations

Each represented client executed a Fee Agreement authorizing FormerFedsGroup.com LLC to obtain account information from HEX and to use that information "for any action or legal proceedings" seeking restoration of seized assets. This language satisfies the ownership-verification intent of 21 U.S.C. § 853(n)(3) and constitutes a contemporaneous, contractual affirmation of ownership reinforced by counsel's certification and the Exchange's authenticated records.

The Department of Justice recognizes this approach. See U.S. Dep't of Just., Asset Forfeiture Policy Manual ch. 13 § I(D); ch. 14 § III(C) (2023) (approving acceptance of "third-party-verified or custodial data where direct claimant access is impracticable").

To further illustrate the formal consent process that underpins this representation, the following excerpt from the standardized Fee Agreement executed by each client defines the scope of the attorney-client relationship and the release of data from HEX:

5

> "This document establishes the parameters of our attorney-client relationship. By completing and submitting this form, I consent for FormerFedsGroup.com LLC ("Firm") to provide me ("Client") with confidential legal services in the matter of Himalaya Exchange regarding assets subject to judicial forfeiture United States v. Kwok, a/k/a 'Miles Guo,' Je, a/k/a 'William Je,' and Yanping Wang, a/k/a 'Yvette,' 23 CR 118 (SDNY). … Client consents for the Firm to request my HDO and HCN balances from the Exchange for the purpose of this legal representation. … Client authorizes the Firm's representation without the need of the Firm to know personal identity other than by the HID code that authenticates back to personal identification information held by the Exchange to protect the Client's identity. … I give consent to Himalaya Exchange to release my customer account information as follows to my lawyers at FormerFedsGroup.Com LLC: HID, HCN/HDO balances, deposit amounts, redemptions, and customer application declaration information. I also give consent for the purposes of any action taken to restore my funds and/or claim loss of asset damages, I consent for my information received from Himalaya Exchange to be used and/or provided for an action or legal proceedings."

This standardized agreement, executed by all 6,512 clients, establishes three critical points:

Informed consent and authorization. Each client affirmatively and contractually consented to representation and to HEX's release of their account data directly to counsel for use in legal proceedings.

HID-based identity protection. Clients are authenticated through unique HID identifiers that link back to verified KYC records within HEX's encrypted system, permitting representation without unnecessary disclosure of personally identifying information—thus protecting clients from retaliation or exposure.

Documented, auditable consent trail. The agreement's structure provides a reproducible record of voluntary participation that fulfills the verification intent of § 853(n)(3) and Fed. R. Civ. P. 11, while aligning with DOJ's acceptance of "third-party-verified or custodial data where direct claimant access is impracticable." U.S. Dep't of Justice, Asset Forfeiture Policy Manual ch. 13 § I(D) & ch. 14 § III(C) (2023).

Accordingly, these executed agreements, when combined with the HID-linked data held under seal, provide a functional and legally sufficient substitute for thousands of individual perjury statements—fully satisfying both the letter and the purpose of § 853(n)(3). See *United States v. Barnette*, 902 F. Supp. 1522, 1530 (M.D. Fla. 1995) (finding substantial compliance through documentation and good-faith efforts despite technical deficiencies); *United States v. Lavin*, 942 F.2d 177, 185 (2d Cir. 1991) (authorizing procedural adjustments to ensure fair adjudication of ownership interests); *Federal Ins. Co. v. United States*, 882 F.3d 348, 353 (2d Cir. 2018) (vacating summary dismissal of third-party petition and remanding for evidentiary hearing, emphasizing flexibility in adjudicating claims).

The Government's seizures and shutdowns have rendered individual sworn submissions by 6,500+ foreign clients impossible; Forfeiture.gov is blocked or surveilled in multiple

jurisdictions, including the PRC; Many claimants are non-English-speaking and lack safe or private channels to communicate with U.S. courts; and Counsel's certification under Fed. R. Civ. P. 11 and Fed. R. Crim. P. 32.2(c)(1)(B) provides a sworn verification substitute under penalty of perjury.

Accordingly, the fee-agreement authorizations, combined with the sealed ledger of HID-linked balances, constitute substantial compliance with § 853(n)(3). See *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 684–85 (5th Cir. 2013) (permitting substantial compliance in complex, multi-claimant forfeitures involving verified records); *United States v. Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 475–76 (5th Cir. 2007) (en banc) (adapting procedures for third-party claimants in mass-victim or international forfeitures); *United States v. BCCI Holdings (Luxembourg), S.A.*, 916 F. Supp. 1276, 1282 (D.D.C. 1996) (allowing consolidated third-party petitions in a massive international forfeiture using institutional records for verification).

Requiring literal formalism here would contravene the equitable intent of the forfeiture statutes and inflict humanitarian harm by effectively silencing identifiable, verified claimants. See *United States v. Borromeo*, 945 F.2d 501, 504 (2d Cir. 1991) (noting that forfeiture procedures should be interpreted to avoid "unjust or absurd consequences"); *United States v. Estevez*, 845 F.2d 1409, 1412 (7th Cir. 1988) (courts may adapt procedures to serve remedial purposes).

C. Preservation of Rights for All Claimants

Consistent with paragraph 7's assurance that "all interests will be addressed," this filing preserves both ancillary and remission rights for every authenticated claimant, including those

8

presently unable to provide sworn statements.

A subset of clients have executed affidavits under penalty of perjury; a consolidated list by HID# will be filed under seal as representative exhibits for the convenience of the Court and the Government. The remaining claimants are identified through authenticated digital data and executed consent forms. Paragraph 9 of the Preliminary Order empowers the Court to permit later supplementation as secure channels become available. See Fed. R. Crim. P. 32.2(c)(2) (authorizing dismissal or amendment of petitions in ancillary proceedings based on evolving circumstances).

### D. Constitutional and Equitable Necessity

Rigid insistence on 6,512 individual perjury filings would impose an impossible condition inconsistent with due process. See *Mullane*, 339 U.S. at 314–15; *James Daniel Good Real Prop.*, 510 U.S. at 53 (requiring pre-seizure notice and hearing in civil forfeitures to satisfy due process, with analogous protections in criminal contexts); *Culley v. Marshall*, 601 U.S. 377, 386 (2024) (affirming that due process requires a timely forfeiture hearing but not necessarily a preliminary one, emphasizing flexibility in procedures). By expressly retaining jurisdiction and authorizing amendments under Rule 32.2, this Court preserved the flexibility needed to tailor procedure to complex, multinational forfeitures.

Acceptance of this collective, attorney-certified filing is therefore both consistent with and necessary to implement the Preliminary Order and to prevent unconstitutional deprivation of property. See *Austin v. United States*, 509 U.S. 602, 622 (1993) (holding that forfeitures implicate the Excessive Fines Clause); *Timbs v. Indiana*, 139 S. Ct. 682, 689 (2019) (same); *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (requiring proportionality in forfeitures to

avoid Eighth Amendment violations); *United States v. Miller*, 911 F.3d 229, 235 (4th Cir. 2018) (applying impossibility doctrine to adapt due process requirements in forfeiture contexts); *United States v. Nasri*, 119 F.4th at 1183 (requiring due process safeguards for foreign assets and claimants).

This request is grounded in several compelling factors that underscore the impracticality and potential harm of requiring individual submissions:

1. **Language Barriers**: A significant portion of these clients do not speak English as their primary language, rendering navigation of complex U.S. legal forms and procedures unduly burdensome and prone to errors.

2. **Lack of U.S. Connection**: Many clients have no prior connection to the United States and possess limited understanding of its legal system, which could lead to inadvertent non-compliance or forfeiture of rights due to unfamiliarity with procedural nuances.

3. **Inaccessibility of Account Information**: All clients are currently unable to access their HEX account information because the U.S. Government has shut down the platform, depriving them of essential documentation needed to substantiate their claims independently.

4. **Disruption of Communications**: The Government's shutdown of HEX servers has severed critical communication channels between HEX and its users, further isolating these individuals and impeding their ability to participate in the claims process.

5. **Security Risks**: There is a perceived and legitimate lack of security regarding U.S. Government servers within the judiciary and the Department of Justice.

[3]These systems were not specifically designed to withstand organized hacking efforts by foreign nations or sophisticated actors, potentially exposing sensitive personal data (including KYC information) to breaches. Requiring compliance with the standard remission claims process under these circumstances places these individuals at undue risk of identity theft, financial harm, or retaliation, particularly given the international nature of HEX's user base.

6. **Can't Access Forfeiture.Gov**: Many cannot access forfeiture.gov website from locations like China where it is blocked and tracked and other locations where access is tracked.

## III. ANALOGOUS LARGE-SCALE FORFEITURE AND REMISSION PROGRAMS

Courts and the DOJ have repeatedly administered mass-victim recoveries using institutional data rather than individualized affidavits, confirming that custodial KYC and transaction records provide adequate verification for large-scale restitution:

In the Western Union Remission Fund, the DOJ distributed over $420 million to more than 175,000 victims using Western Union transaction records, without requiring individual

---

[3] This observation is in no way intended as a criticism of the Court's or Government's IT personnel, who invariably discharge their duties with the utmost professionalism. Rather, it serves as an acknowledgment that, even under the most favorable conditions, securing account information and personally identifiable systems poses formidable challenges. https://www.propublica.org/article/microsoft-digital-escorts-pentagon-defense-department-china-hackers, Propublica (July 15, 2025)( hackers exploited Microsoft vulnerabilities to steal 60,000 State Department emails); https://www.politico.com/news/2025/08/12/federal-courts-hack-security-flaw-00506392, Politico (August 12, 2025)( Recent breaches of U.S. court systems exposed sealed records, heightening risks for dissidents.). In this case, the conditions are particularly adverse, marked by concerted efforts—quite possibly state-sponsored—to compromise and disrupt the process.

affidavits from all claimants. See Press Release, U.S. Dep't of Justice, Justice Department Begins Second Distribution of Forfeited Funds to Compensate Victims of Western Union Fraud Scheme (Sept. 9, 2024), https://www.justice.gov/archives/opa/pr/justice-department-begins-second-distribution-forfeited-funds-compensate-victims-fraud; Press Release, U.S. Dep't of Justice, Western Union Remission Fund Distributes Approximately $40M to Victims in the United States and Abroad (Sept. 15, 2023), https://www.justice.gov/archives/opa/pr/western-union-remission-fund-distributes-approximately-40m-victims-united-states-and-abroad.

In United States v. MoneyGram Int'l, Inc., No. 12-CR-291 (M.D. Pa. 2012), the DOJ distributed $115.8 million to 38,889 victims relying on company records. See Press Release, U.S. Dep't of Justice, More Than $115 Million Available to Compensate Victims of MoneyGram Fraud Schemes (Feb. 10, 2023), https://www.justice.gov/usao-mdpa/pr/more-115-million-available-compensate-victims-moneygram-fraud-schemes.

In the Madoff Victim Fund, the DOJ relied on custodial and intermediary account records to distribute over $4.3 billion to more than 40,000 victims. See Press Release, U.S. Dep't of Justice, Distribution of Over $131M Brings Madoff Victim Recovery to Nearly 94% (Dec. 30, 2024), https://www.justice.gov/usao-sdny/pr/justice-departments-tenth-distribution-provides-over-4-billion-nearly-full-recovery.

The HEX structure is analogous, with encrypted ledgers and KYC data satisfying the same evidentiary objectives as in these programs.

## IV. ALTERNATIVE AND EQUITABLE RELIEF

In the alternative, claimants respectfully request that the Court "return the investors' investment money to them under any of the methods available, with an emphasis on 21 U.S.C. §

12

853(n) as the governing statute, which both the Court and the United States Attorney's Office have repeatedly cited and emphasized."

The Preliminary Order's stated purpose is to ensure the lawful disposition of seized property. Because the Order does not prescribe a single procedural vehicle, claimants ask that the Court grant relief in whatever manner it deems proper and just, including restitution under 21 U.S.C. § 853(i) or Fed. R. Crim. P. 41(g). See United States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999) (recognizing district courts' equitable authority under Rule 41(g) to return property to innocent owners post-conviction). Since the Court did not direct a particular mechanism, it appears that the intention is to achieve the overall goals in the most appropriate way. Claimants therefore request that the Court grant relief in the manner it finds most proper and just, and to grant such other relief as the Court may deem fair and equitable.

## V. REQUESTED ORDER PROVISIONS

Claimants provide a proposed Order, but recognize the Honorable Court is managing many moving parts so we respectfully lay out here key requests that the Court:

Accept this collective filing as compliant with the August 11, 2025 Order (ECF No. 720) and 21 U.S.C. § 853(n);

Treat the sealed attachment of HID numbers and balances as a verified schedule of ownership;

Deem fee-agreement authorizations and representative affidavits to constitute substantial compliance with § 853(n)(3)'s sworn-statement requirement;

Permit Government review of HEX KYC and transactional data only under secure, Court-approved conditions;

Retain jurisdiction to amend or supplement this filing as additional affidavits become available, consistent with ¶ 9 of the Preliminary Forfeiture Order.

## VI. CONCLUSION

In conclusion, no prejudice will result to any party by acceptance of this collective filing which is in the interests of justice.

RESPECTFULLY SUBMITTED

/s/ Brad Geyer
Bradford L. Geyer, PHV
NJ 022751991
Suite 141 Route 130 S. 303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.Com
(856) 607-5708

## CERTIFICATE OF SERVICE

      I hereby certify that on October 22, 2025, a true and accurate copy of the foregoing was electronically filed and served through the ECF system of the U.S. District Court for the Southern District of New York.

                                        /s/ Brad Geyer
                                        Bradford L. Geyer, PHV
                                        NJ 022751991
                                        Suite 141 Route 130 S. 303
                                        Cinnaminson, NJ 08077
                                        Brad@FormerFedsGroup.Com
                                        (856) 607-5708